NANCY J. GEENEN, CA BAR NO. 135968, NGEENEN@FOLEY.COM
KIMBERLY K. DODD, CA BAR NO. 235109, KDODD@FOLEY.COM
**FOLEY & LARDNER LLP**
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3404
TELEPHONE:     415.434-4484
FACSIMILE:     415.434-4507

ROBERT L. BINDER (TO BE ADMITTED *PRO HAC VICE*), RBINDER@FOLEY.COM
**FOLEY & LARDNER LLP**
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202
TELEPHONE (414) 271-2400
FACSIMILE (414) 297-4900

PAVAN K. AGARWAL (TO BE ADMITTED *PRO HAC VICE*), PAGARWAL@FOLEY.COM
**FOLEY & LARDNER LLP**
3000 K STREET, N.W., SUITE 500
WASHINGTON, D.C. 20007-5143
TELEPHONE: (202) 672-5300
FACSIMILE: (202) 672-5399

Attorneys for Defendant/Counterclaim Plaintiff **Phillips Plastics Corporation**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST<br><br>Plaintiff,<br><br>vs.<br><br>PHILLIPS PLASTICS CORPORATION, a Wisconsin Corporation; and DOES 1 THROUGH 100,<br><br>Defendants. | Case No: 08-CV-03094-MHP<br><br>**PHILLIPS PLASTICS CORPORATION'S NOTICE AND ALTERNATIVE MOTIONS TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR TO STAY PENDING PATENT OFFICE REEXAMINATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>DATE:     SEPTEMBER 8, 2008<br>TIME:     2:00 P.M. |
| PHILLIPS PLASTICS CORPORATION,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Counterclaim Defendant. | |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .......................................................................... v

INTRODUCTION .......................................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT ................................................................................................................. 5

I.     UNDER 28 U.S.C. § 1404(A) THIS CASE SHOULD BE
       TRANSFERRED TO THE SOUTHERN DISTRICT OF CALIFORNIA
       WHERE PLAINTIFF IS LOCATED AND WHERE A SINGLE JUDGE IS
       HANDLING  ANOTHER CASE BETWEEN THE SAME PARTIES
       INVOLVING THE '184 PATENT AND DOZENS OF OTHER '184
       CASES BROUGHT BY SORENSEN; THIS DISTRICT HAS
       VIRTUALLY NO CONNECTION TO THE PARTIES OR THE PATENT. ........ 5

       A.     The Interests of Justice. ................................................................. 6

       B.     Absence of Connection to the Northern District ........................... 7

       C.     Forum Shopping ............................................................................. 9

II.    ALTERNATIVELY, THIS ACTION SHOULD BE STAYED PENDING
       THE PATENT OFFICE REEXAMINATION OF THE VALIDITY OF
       THE '184 PATENT, WHICH IS LIKELY TO RENDER THIS ACTION
       MOOT. ........................................................................................................... 9

       A.     Legal Standard for a Stay Pending Reexamination ....................... 9

       B.     All Factors in the Stay Analysis Strongly Support the Motion for
              Stay. ............................................................................................... 13

CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*02 Micro Int'l Ltd. v. Microsemi Corp.*,
No. C 07-02073 CRB, 2007 WL 1615430 (N.D. Cal. June 4, 2007) ....................................7, 8

*Alere Med., Inc. v. Health Hero Network, Inc.*,
No. C 07-05054 CRB, 2007 WL 4351019 (N.D. Cal. Dec. 12, 2007) .................................5, 6

*Applera Corporation-Applied Biosystems Group v. Illumina, Inc.*,
282 F. Supp. 2d 1120 (N.D. Cal. 2003) .........................................................................10, 12

*Arete Power, Inc. v. Beacon Power Corp.*,
No. C 07-5167 WDB, 2008 WL 508477 (N.D. Cal. Feb. 22, 2008) ........................................6

*ASCII Corp. v. STD Entertainment USA, Inc.*,
844 F. Sup. 1378 (N.D. Cal. 1994) ...............................................................................10-12

*Broadcast Innovation, LLC v. Charter Commc'ns, Inc.*,
03-CV-2223, 2006 U.S. Dist. LEXIS 46623, (D. Colo. July 11, 2006) ...............................16

*Broadcom Corp. v. Agere Sys., Inc.*,
No. C 03-02197 CRB, 2003 WL 21982473 (N.D. Cal. Aug. 8, 2003)....................................7

*CoxCom, Inc. v. Hybrid Patents, Inc.*,
No. C-06-7918 MMC, 2007 WL 2500982 (N.D. Cal. Aug. 30, 2007) .................................7, 9

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ...............................................................................................6

*Elecs. for Imaging, Inc. v. Tesseron, Ltd.*,
No. C 07-05534 CRB, 2008 WL 276567 (N.D. Cal. Jan. 29, 2008) .................................6, 7

*Forrand v. Federal Express Corporation*,
2008 WL 276389 (N.D. Cal. Jan. 31, 2008) .........................................................................5, 9

*Fresenius Medical Care Holdup, Inc. v. Baxter International*,
2007 WL 1655625 (N.D. Cal. June 7, 2007) ........................................................................12

*Gould v. Control Laser Corp.*,
705 F.2d 1340 (Fed. Cir. 1983)............................................................................................11

*Hewlett-Packard Co. v. Acuson Corp.*,
C-93-0808 MHP, 1993 WL 149994 (N.D. Cal. May 5, 1993) .........................................11, 15

*Jaco Envt'l Inc. v. Appliance Recycling Ctrs.*,
No. C 06-06601 JSW, 2007 WL 951274 (N.D. Cal. Mar. 27, 2007) ....................................9

ii

MILW_7444743.1

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ............................................................................6

*KLA-Tencor Corp. v. Nanometrics, Inc.*,
    No. C 03-1431 SBA, 2006 WL 708661 (N.D. Cal. Mar. 16, 2006) .............................. 11-14

*Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*,
    No. C 06-2252 SBA, 2007 U.S. Dist. Lexis 18785 (N.D. Cal. Feb. 26, 2007) .......... 10, 12-14

*Patlex Corp. v. Mossinghoff*,
    758 F.2d 594 (Fed. Cir. 1985)...........................................................................10

*Photoflex Prods., Inc. v. CIRCA 3 LLC*,
    No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743 (N.D. Cal. May 24, 2006)............ 12-14

*Sorensen v. The Black & Decker Corp.*,
    No. 06-cv-1572 BTM (CAB), 2007 U.S. Dist. 66712 (S.D. Cal., Sept. 10, 2007) ......... *passim*

*Sorensen v. Daimler Chrysler*,
    No. C 02-4752 MMC (EDL), 2003 WL 1888866 (N.D. Cal. Apr. 11, 2003) ...................... 5-8

*Sorensen v. Digital Networks North America Inc.*,
    No. C-07-05568, 2008 WL 152179 (N.D. Cal. Jan. 16, 2008)....................................... *passim*

*Sorensen v. Lexar Media Inc.*,
    No. C-08-00095 (N.D. Cal. Apr. 30, 2008) .......................................................... *passim*

*Wiley v. Trendwest Resorts, Inc.*,
    No. C 04-4321 SBA, 2005 WL 1910934 (N.D. Cal. Aug. 10, 2005).....................................8

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*,
    No. C 03-3711 MHP, 2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) ..............................6, 8


**FEDERAL STATUTES**

28 U.S.C.
    § 1331...............................................................................................................5
    § 1338(a)...........................................................................................................5
    § 1400(b)...........................................................................................................5
    § 1404(a)....................................................................................................... *passim*

35 U.S.C.
    § 302................................................................................................................9
    § 303(a) ..........................................................................................................10

MILW_7444743.1

**RULES**

Local Rules
  Rule 3-12.................................................................................................4, 9
  Rule 40.1(d) .................................................................................................6

**REGULATIONS**

37 C.F.R. § 1.530(j) .................................................................................................12

**OTHER AUTHORITIES**

House Report No. 96-1307(I) .................................................................................................10

*Manual of Patent Examining Procedure* § 2250(III).................................................................................................12

PHILLIPS' ALTERNATIVE MOTIONS TO TRANSFER OR STAY
CASE NO. 08-03094-MHP

MILW_7444743.1

**NOTICE OF MOTION AND MOTION**

**Notice Statement**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:  PLEASE TAKE NOTICE THAT** on September 8, 2008 at 2:00 p.m., Defendant and Counterclaim Plaintiff Phillips Plastics Corporation ("Phillips") will and hereby does move the Court to transfer this action to the United States District Court for the Southern District of California, or, alternatively, to stay this action pending the conclusion of the Patent Office's reexamination of the '184 patent.  This motion is supported by the memorandum of points and authorities set forth below, the Declarations of Robert L. Binder, John Conlin, and Jess Norris Johnson, any reply memoranda that may be filed, the complete files and record of this action (including any evidence and argument that may be presented at the hearing on this motion), and all other matters of which the Court may or must take judicial notice.

**Nature of Relief Sought**

Phillips requests that the Court transfer this action to the Southern District of California.  In the alternative, Phillips requests that the Court stay this action pending the conclusion of the Patent Office's reexamination of the '184 patent.

MILW_7444743.1

### INTRODUCTION

Plaintiff Jens Erik Sorensen, as Trustee of Sorensen Research and Development Trust ("Sorensen") holds a patent relating to a two shot plastic injection molding process (the '184 patent).  Sorensen claims that Defendant Phillips Plastics Corporation ("Phillips") infringes the '184 process in the manufacture of plastic housings for Sears Craftsman tape measures.

There is an earlier case between Sorensen and Phillips pending in the Southern District involving the same '184 patent, *Sorensen v. The Black & Decker Corp.,* No. 06-cv-1572 BTM (CAB), 2007 U.S. Dist. 66712 (S.D. Cal., Sept. 10, 2007) ("*Black & Decker*").  Sorensen has brought more than two dozen other infringement cases in San Diego, where they are assigned to a single judge.  Sorensen, his counsel and expert witness are located in San Diego.

There is no logical reason for the case being venued in San Francisco.  Phillips' manufacture and sale of the Craftsman tool bodies has no relationship to the Northern District.  There are no witnesses or documents in the Northern District.

The '184 patent is currently undergoing reexamination in the United States Patent and Trademark Office("PTO").  Most of the Sorensen '184 cases in San Diego have been stayed pending completion of the reexamination, including the other Sorensen/Phillips case.  Sorensen's choice of a Northern District venue seems to be motivated more by a desire to avoid an adverse determination on the stay issue in San Diego than by any particular advantages of San Francisco as a forum.

Accordingly, in the interests of justice, this case should be transferred to the Southern District of California under 28 U.S.C. § 1404(a).

Alternatively, Phillips moves for a stay of proceedings pending reexamination of the '184 patent by the PTO, which has been underway since July 2007.  The PTO has already determined that 12 pieces of prior art, plus several distinct combinations of them, which were not considered by the PTO during the original '184 patent application process, *each* raise a "substantial new question of patentability."  Binder Decl., Ex. A

1   and B.  [Hereafter all Exhibits to the Binder Decl. are referred to simply as "Ex. ___."]

2         A stay pending reexamination should be "liberally granted" given (1) Congress's

3   intent that the PTO, rather than the courts, should evaluate prior art claims and (2) the

4   significant practical benefits of the stay to the courts and parties in avoiding unnecessary

5   litigation or narrowing the issues.  In this case, granting the stay likely will save the

6   parties and the Court the enormous time and resources typically expended in a major

7   patent case.  At the same time, there is no danger of prejudice to the plaintiff, whose

8   patent expired before this suit was even filed and who seeks only monetary damages for

9   past infringement.  Indeed, in this case *all* of the recognized factors in the reexamination

10  stay analysis weigh decisively in favor of granting the stay.

11  <u>**STATEMENT OF FACTS**</u>

12        The Sorensen Research and Development Trust, based in San Diego, California,

13  holds certain patents on inventions by Jens Ole Sorensen.  Among the patents owned by

14  Sorensen is the '184 patent, issued on June 19, 1990, which relates to a two-shot process

15  of injection molding of plastic parts.  Ex. C.  In two-shot molding, molten plastic is

16  injected into the base mold using two different complementary mold pieces, resulting in a

17  single part comprised of two different plastics (e.g., a smooth plastic side panel with a

18  sticky plastic grip).  *Id.*

19        Phillips Plastics Corporation is a Wisconsin corporation with its principal place of

20  business in Phillips, Wisconsin.  Conlin Decl. at 2.  Phillips is in the business of plastic

21  injection molding.  Phillips makes injection molded two-shot plastic pieces incorporated

22  into products sold by, among others, Black & Decker Corporation (drill housings) and

23  Sears (Craftsman tape measure housings).  *Id.*

24        Sorensen first accused Phillips of infringing the '184 patent in 1994 with respect

25  to Black & Decker drill housings.  However, Sorensen did not sue Phillips on the Black

26  & Decker housings until February 2007, when Phillips was added as an additional

27  defendant in *Black & Decker* in the Southern District.  In that action Sorensen seeks

28  damages exceeding $1 billion.  Ex. D.

*Black & Decker* is one of approximately forty lawsuits that Sorensen has brought for alleged infringement of the '184 patent, the large majority in San Diego. Ex. E. Five other '184 suits have been filed in the Northern District of California, of which two are still pending. *Id*. A handful of cases were started outside California. The Southern District cases have all been assigned to Judge Barry Moskowitz and will continue to be assigned to him. Ex. F at 21.

On July 30, 2007, Black & Decker filed with the PTO a notice of request for reexamination of the '184 patent, contending that the PTO had not been furnished with evidence of key prior art in the original patent application process showing that the teaching of the '184 patent had been anticipated by others. Phillips Plastics filed its own reexamination request based on additional prior art on December 21, 2007. In decisions issued on October 11, 2007 and February 21, 2008, the PTO agreed that twelve separate pieces of prior art submitted by Black & Decker and Phillips, plus several combinations, each raised "a substantial new question of patentability" and that for each of them "there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable." Ex. A and B.

Black & Decker and Phillips filed a joint motion to stay *Black & Decker* pending reexamination. Judge Moskowitz granted the motion in a written decision dated September 10, 2007 (discussed below). Ex. G. Subsequently, Judge Moskowitz has stayed at least 17 other cases in the Southern District pending the outcome of the reexamination. Ex. E. Apparently he has not denied a stay in any case. *Id*.

Stay motions have also been brought in two cases involving the '184 patent in the Northern District of California. This Court granted a stay in one case, *Sorensen v. Digital Networks North America Inc.*, No. C-07-05568, 2008 WL 152179 (N.D. Cal. Jan. 16, 2008) (Judge Jeffrey White) (Ex. H) and denied it in the other, *Sorensen v. Lexar Media Inc.*, No. C-08-00095 (Apr. 30, 2008) (Judge James Ware) (Ex. I).

On June 26, 2008, Sorensen filed this action against Phillips in this Court, claiming that Phillips has infringed the '184 patent in manufacturing housings for certain

3

1    Sears Craftsman tape measures.  The central allegations are all stated upon information
2    and belief.  Ex. C, paras. 15-23, at 4-5.  Sorensen states that he started this action in order
3    to discover whether the Craftsman tape measure infringes the '184 patent because he was
4    unable to obtain such discovery voluntarily in the stayed *Black & Decker* case.  *Id*., para.
5    12 at 4.

6           Sorensen then filed a motion to transfer the case to Judge Ware on the ground that
7    *Lexar* and this case are related cases under Rule 3-12.  Plaintiff's Administrative Motion
8    to Consider Whether Cases Should Be Related.

9           Sorensen has not alleged that the '184 patent or Phillips' alleged infringement of
10   the patent in making Craftsman housings have any connection with the Northern District
11   of California.  *Id*.  Phillips has not designed, manufactured or sold the accused Craftsman
12   bodies in this district.  Instead the Craftsman bodies were sold to companies based in
13   North Carolina and South Carolina and delivered to factories there and in Puerto Rico
14   where Phillips' customers assembled the completed tape measure.  *Id*.  The finished
15   product presumably was sold by them to Sears and sold in its stores throughout the
16   United States.  *Id*.  Other than maintaining a small design facility (2-3 employees) and
17   two salesmen in the Northern District, Phillips has no connection to the Northern District.
18   Conlin Decl. at 2.  These employees were not involved in designing, manufacturing or
19   selling the Craftsman bodies.  *Id*.; Johnson Decl. at 2.

20          Jens Ole Sorensen, the '184 inventor and one of two key witnesses for Sorensen,
21   Jens Erik Sorensen, the Sorensen Trust itself, the other key witness (Paul Brown) and
22   Sorensen's counsel are all located in the San Diego area.  Binder Decl. at 2 and Ex. N.
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

4

PHILLIPS' ALTERNATIVE MOTIONS TO TRANSFER OR STAY
CASE NO. 08-03094-MHP

# ARGUMENT

**I.    UNDER 28 U.S.C. § 1404(A) THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF CALIFORNIA WHERE PLAINTIFF IS LOCATED AND WHERE A SINGLE JUDGE IS HANDLING ANOTHER CASE BETWEEN THE SAME PARTIES INVOLVING THE '184 PATENT AND DOZENS OF OTHER '184 CASES BROUGHT BY SORENSEN; THIS DISTRICT HAS VIRTUALLY NO CONNECTION TO THE PARTIES OR THE PATENT.**

The transfer statute, 28 U.S.C. § 1404(a), provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Alere Med., Inc. v. Health Hero Network, Inc.*, No. C 07-05054 CRB, 2007 WL 4351019 at *1 (N.D. Cal. Dec. 12, 2007) (internal quotation marks omitted). District courts use a two-step analysis to determine whether transfer is proper. The court must first find "that the district court is one where the action might have been brought"[1] and second, "that the convenience of parties and witnesses in the interest of justice favor transfer." *Sorensen v. Daimler Chrysler*, No. C 02-4752 MMC (EDL), 2003 WL 1888866 at *1 (N.D. Cal. Apr. 11, 2003) (internal quotation marks omitted).

The courts in this district have identified numerous factors to consider in the transfer analysis.[2] Three of these factors are dispositive in this case.

---

[1] This action might have been brought in the Southern District of California, and there is a related patent infringement action between Sorensen and Phillips pending there. The Southern District of California has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). The Southern District has personal jurisdiction over Phillips because Phillips does business in that district. Venue is proper in the Southern District under 28 U.S.C. § 1400(b) because Sorensen is located there. See Binder Decl. at 2 and Ex. N.

[2] Some of these factors include the convenience of parties, convenience of witnesses, the interest of justice, the plaintiff's choice of forum, the local interest in the issues, the relative ease of access to evidence, the availability of compulsory process for unwilling witnesses and the cost involved in securing willing witnesses, the practical issues that make a case easier or more difficult to try in a forum and the relative court congestion in each forum. *Forrand v. Federal Express Corporation,* 2008 WL 276389 at

5

## A.     The Interests of Justice.

The "interests of justice" factor involves several elements, including "promoting consistency among court rulings" and "reducing the aggregate transaction costs imposed by the litigation upon the parties." *Arete Power, Inc. v. Beacon Power Corp.,* No. C 07-5167 WDB,  2008 WL 508477 at *9 (N.D. Cal. Feb. 22, 2008).  Generally, it is considered the most important factor in the transfer analysis and it will trump other factors, such as convenience of witnesses, where there is a strong showing.  *See Alere*, 2007 WL 4351019 at *1; *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.,* No. C 03-3711 MHP, 2003 WL 22387598 at *4 (N.D. Cal. Oct. 14, 2003); *Elecs. for Imaging, Inc. v. Tesseron, Ltd.,* No. C 07-05534 CRB, 2008 WL 276567 at *1 (N.D. Cal. Jan. 29, 2008).

In this case the interests of justice would be well-served by a transfer to the Southern District where so many other '184 cases – including one between Phillips and Sorensen – are pending before the same judge.  In the Southern District, cases involving the same patent are selected automatically as potential related cases.  L.R. 40.1(d)  Judge Moskowitz has indicated that he expects to continue to handle new '184 filings.  Ex. F.

On the threshold issue of whether the case should be stayed pending reexamination, Judge Moskowitz has already written a detailed opinion discussing the issues affecting Sorensen and Phillips (discussed below).  Ex. G.  If the case continues after reexamination, Judge Moskowitz with his extensive knowledge of the issues can most efficiently handle the claim construction and other issues common to all thirty-plus '184 cases.[3]  There is little point in a second court going through all the same effort for

---

*2 (N.D. Cal. Jan. 31, 2008), citing *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986); *see also Sorensen,* 2003 WL 1888866 at *1-3, citing *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir. 2000) for additional factors.

[3]     Judge Moskowitz denied a motion to consolidate the Southern District '184 cases as premature pending the reexamination decision.  Ex. O.  However, he has indicated he intends to consolidate all cases for claim construction after the reexamination.  See Ex. E, *passim* ("T]he presiding judge has indicated a preference for a consolidated claim construction hearing").

PHILLIPS' ALTERNATIVE MOTIONS TO TRANSFER OR STAY
CASE NO. 08-03094-MHP

MILW_7444743.1

just one case.  Transfer also eliminates the possibility of inconsistent adjudications.

This Court has consistently held that the interest of justice and judicial economy weigh in favor of transfer where a related patent action is pending in the transferee court. See, e.g., *Elecs. for Imaging,* 2008 WL 276567 at *1; *02 Micro Int'l Ltd. v. Microsemi Corp.,* No. C 07-02073 CRB, 2007 WL 1615430 at *1 (N.D. Cal. June 4, 2007); *Broadcom Corp. v. Agere Sys., Inc.,* No. C 03-02197 CRB, 2003 WL 21982473 (N.D. Cal. Aug. 8, 2003).  In these situations, transfer is warranted to avoid "'wastefulness of time, energy and money that § 1404(a) was designed to prevent.'"  *Elecs. for Imaging,* 2008 WL 276567 at *1.

Lawsuits involving overlapping patents and technology should be heard before a single judge to "obviate the need for duplicative tutorials and evidence." *Id.*; *see also 02 Micro Int'l,* 2007 WL 1615430 at *1.  A single judge can also more effectively coordinate discovery, motion and hearing scheduling, eliminate duplicative discovery, avoid conflicting rulings, determine the proper grouping of patents for trial, and construe the patents at issue.  *See Id.*; *CoxCom, Inc. v. Hybrid Patents, Inc.,* No. C-06-7918 MMC, 2007 WL 2500982 at *3 (N.D. Cal. Aug. 30, 2007).  In addition, having all the parties' disputes before a single court may facilitate settlement.  *Broadcom,* 2003 WL 21982473 at *1.

## B.     Absence of Connection to the Northern District

There is no evidence that the Northern District has any special connection to the parties, the '184 patent or the accused products.  The plaintiff, Sorensen, has no witnesses or documents here.  Binder Decl. at 2 and Ex. N.  The alleged infringement activity by Phillips occurred in Wisconsin and the Carolinas.  Johnson Decl. at 2.  The sole reference to the Northern District in Sorensen's complaint refers to Phillips' office in Sunnyvale. This is a slender reed upon which to base venue given that the office employs only two to three persons and had no connection with the Craftsman housing project.  Conlin Decl. at 2.

In *Sorensen v. Daimler Chrysler AG*, *supra*, 2003 WL 1888866 (Judge Chesney)

7

(Ex. K), another '184 patent case, the court transferred the case to New Jersey[4] pursuant to 28 U.S.C. § 1404(a), after finding "there is no showing that either Sorensen or SRD Trust have any contacts with . . . the Northern District. . . ."  As in this case, the Court found "no potential witness resides in or near the Northern District of California."  *Id*. at *4.  The Court concluded:  "Significantly, no factor weighs in favor of retention of the action in the Northern District given that neither Sorensen nor SRD Trust resides in the Northern District, that no potential witness resides in the Northern District, and that no party has identified any potential evidence located in the Northern District."  *Id*. at *5.  As in this case, the Court noted that the Northern District's relationship to the case was limited to the extent "that infringing products may have been sold in the Northern District.  Those contacts, however, are likely to exist in every district in the United States. . . ."  *Id*. at *4.

The Court also held that "a plaintiff's choice of forum is accorded little deference where the central facts of the lawsuit occur outside the plaintiff's chosen forum."  *Id*. at *3.  See also *Wireless Consumers,* 2003 WL 22387598 at *3, holding that a plaintiff's choice of forum is given only minimal consideration if plaintiff does not reside in the district, the operative facts have not occurred in the district and the forum has no particular interest in the subject matter or the parties.  If the plaintiff lacks any significant connection to the district and has a proclivity for filing lawsuits in the proposed transferee district (which is certainly true of Sorensen), the court will give little deference to plaintiff's choice of forum elsewhere.  *02 Micro Int'l,* 2007 WL 1615430 at *1.

Of course, Sorensen cannot complain that the Southern District of California is an inconvenient forum since Sorensen is located there, chose to venue 28 other '184 cases there, and the chief witness and counsel handling all the '184 cases (Mr. Kaler and Ms. Kramer) are officed there.  Binder Decl. at 2 and Ex. N.  *See Wiley v. Trendwest Resorts,*

---

[4]    As of 2003 when *Daimler Chrysler* was transferred, there were no cases pending in the Southern District of California.  See Third Am. Notice of Related Cases (Ex. E). Since then Sorensen has brought about 28 cases in the Southern District.  *Id*.

PHILLIPS' ALTERNATIVE MOTIONS TO TRANSFER OR STAY
CASE NO. 08-03094-MHP

*Inc.,* No. C 04-4321 SBA, 2005 WL 1910934 at *6 (N.D. Cal. Aug. 10, 2005) (finding that location of plaintiff's counsel in transferee district was a "critical factor" in favor of transfer).

### C.    Forum Shopping

There is only one logical explanation why Sorensen brought this patent case in a different forum from where he brought his other case against Phillips. That case and 17 other cases in the Southern District have been stayed pending PTO reexamination by Judge Moskowitz over the vigorous opposition of Sorensen. Sorensen has asked for this case to be assigned to Judge Ware, who recently denied a stay motion in *Lexar*, another '184 case, the only judge to do so in any jurisdiction. Ex. I.[5]

If there is any indication that plaintiff is forum shopping, his choice of forum is given little deference. *Jaco Envt'l Inc. v. Appliance Recycling Ctrs.,* No. C 06-06601 JSW, 2007 WL 951274, *2 (N.D. Cal. Mar. 27, 2007); *CoxCom,* 2007 WL 2500982 at *2. The interest of justice weighs heavily in favor of transfer if transfer discourages plaintiff's forum shopping. *Forrand v. Fed. Express,* No. C 07-4674 TEH, 2008 WL 276389 at *3 (N.D. Cal. Jan. 31, 2008). Sorensen's attempt to avoid the stay that is pending in the similar cases that he filed in the Southern District of California should be discouraged and transfer is warranted.

## II.    ALTERNATIVELY, THIS ACTION SHOULD BE STAYED PENDING THE PATENT OFFICE REEXAMINATION OF THE VALIDITY OF THE '184 PATENT, WHICH IS LIKELY TO RENDER THIS ACTION MOOT.

### A.    Legal Standard for a Stay Pending Reexamination

In establishing the reexamination procedure, 35 U.S.C. § 302, Congress provided a means by which any citizen could obtain an expeditious reevaluation of the validity of a

---

[5]        Sorensen, in requesting the reassignment, failed to mention there is an older Sorensen '184 case in the Northern District, *Digital Networks, supra,* in which Judge White recently *granted* a stay motion. Also, prior to the stay denial in *Lexar,* Sorensen had contended the '184 cases were unrelated under the local rules. See Phillips' Response to the Administrative Motion to Consider Whether Cases Should Be Related Under Local Rule 3-12, filed herewith.

1  patent based on anticipatory "prior art" not considered by the PTO in the original patent

2  application process.  The PTO initially determines whether the applicant has raised "a

3  substantial new question of patentability."  35 U.S.C. § 303(a).  If so, then the PTO

4  formally reexamines the validity of the patent.

5      Congress intended the reexamination procedure to assist the courts by transferring

6  the esoteric prior art analysis to the PTO, which is best able to perform it efficiently.

7  "The stay of pending litigation to enable PTO review of contested patents was one of the

8  specified purposes of the reexamination legislation."  *Nanometrics, Inc. v. Nova*

9  *Measuring Instruments, Ltd.*, No. C 06-2252 SBA, 2007 U.S. Dist. Lexis 18785 at *11

10  (N.D. Cal. Feb. 26, 2007), quoting the Federal Circuit in *Patlex Corp. v. Mossinghoff*,

11  758 F.2d 594, 606 (Fed. Cir. 1985).  See also House Report No. 96-1307(I) at 42

12  concerning the reexamination legislation.  Ex. P.

13      As this Court explained in *Applera Corporation-Applied Biosystems Group v.*

14  *Illumina, Inc.*, 282 F. Supp. 2d 1120, 1129 (N.D. Cal. 2003) (Judge Patel), quoting *ASCII*

15  *Corp. v. STD Entertainment USA, Inc.*, 844 F. Sup. 1378, 1380 (N.D. Cal. 1994) (Judge

16  Walker):

17          [By enacting the reexamination procedure Congress meant]

18          "to provide an inexpensive, expedient means of determining

19          patent validity which, if available and practical, should be

20          deferred to by the courts  . . . ."

21  Thus, "[c]ongressional intent [   ] favors a district court's issuance of a stay pending

22  reexamination."  *Id*.

23      See also *Nanometrics* at *2, where the court stated:

24          Congress instituted the reexamination process to shift the

25          burden or reexamination of patent validity from the courts to

26          the PTO.  Patent validity is a commonly asserted defense in

27          litigation and courts are cognizant of Congress's intention of

28          utilizing the PTO's specialized expertise to reduce costly and

10

1    timely litigation.

2        Furthermore, the advantages of a stay pending reexamination to the court and

3    parties can be significant.  As this Court explained in *Hewlett-Packard Co. v. Acuson*

4    *Corp.*, C-93-0808 MHP, 1993 WL 149994 (N.D. Cal. May 5, 1993) (Judge Patel):

5            Ordinarily, courts need not expend unnecessary judicial

6            resources by attempting to resolve claims which may be

7            amended, eliminated, or lucidly narrowed by the patent

8            reexamination process and the expertise of its officers.  *See*

9            *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342

10           (Fed.Cir.), *cert. denied*, 464 U.S. 935 (1983).  The purpose of

11           the reexamination procedure is to eliminate the need for a

12           trial if the claim is canceled or to provide the district court

13           with the expert view of the Patent Office if the claim survives

14           the reexamination.  *Id.*  Additionally, there is clear

15           congressional intent to maximize efficiency and reduce cost

16           in this regard; thus, district courts often stay patent

17           proceedings pending reexamination.

18       There are three possible outcomes of a reexamination petition.  First, the PTO may

19   confirm the patentability of all the claims as issued.  According to the PTO, this occurs

20   approximately 26% of the time. Ex. J.  In such a case, the litigation is resumed where it

21   left off when the stay was granted.

22       However, even where patentability is confirmed, the reexamination process

23   "facilitates the trial by providing the court with the opinion of the PTO and clarifying the

24   scope of the claims."  *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 03-1431 SBA, 2006

25   WL 708661, at *4 (N.D. Cal. Mar. 16, 2006).  The PTO's findings in upholding the

26   patent will "facilitate trial of that issue by providing the district court with the expert

27   view of the [USPTO]."  *ASCII Corp.,* 844 F. Supp. at 1380, quoting the Federal Circuit in

28   *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).  See also

*Nanometrics*, at *7 ("[I]f the claims survive, [the stay] facilitates the trial by providing the Court with the opinion of the PTO and clarifying the scope of the claims").

Second, in about 10% of the cases (Ex. J), the PTO may find that the prior art renders the entire patent unpatentable, without the possibility of amendment.

Third, the PTO may find that the relevant claims are unpatentable but could be amended to make them patentable, thereby resulting in a valid modified patent. About 64% of reexamination petitions are resolved in this fashion. Ex. J. In most cases, the patent owner may enforce the modified patent claims going forward until the original expiration date, but cannot make claims for past infringement. In this case, however, the patent has expired so a prospective amendment is not possible. "No amendment may be proposed for entry in an expired patent." 37 C.F.R. § 1.530(j). "The cancellation of the original patent claims is the only 'amendatory' change permitted in an expired patent." *Manual of Patent Examining Procedure* § 2250(III). As a result, even claims that could have been saved with amendment before patent expiration will fail in this case.

Given the congressional mandate and the practical advantages of a stay, motions for stay pending reexamination are liberally granted. As this Court has explained, the district courts have a "liberal policy in favor of granting such motions informed by the intent of Congress." *Applera*, 282 F. Supp. 2d at 1129. See also *ASCII Corp.,* 844 F. Supp. at 1380, 1381; *Sorensen v. Digital Networks N.A.* at *2; *Photoflex Prods., Inc. v. CIRCA 3 LLC*, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743 (N.D. Cal. May 24, 2006) (Judge Jeffrey S. White) at *3; *Nanometrics* at *4; *KLA-Tencor* at *9.

However, there are circumstances, notably if the case is already significantly advanced when the motion is brought or where significant prejudice or tactical disadvantage would befall the plaintiff, where the court in its discretion should deny a motion for stay. E.g., *Fresenius Medical Care Holdup, Inc. v. Baxter International*, 2007 WL 1655625 at *5 (N.D. Cal. June 7, 2007) (Judge Armstrong), where a reexamination stay motion was brought after the first phase of a trial and the court observed that "it is difficult to imagine a scenario in which a dilatory motive could be more apparent."

12

MILW_7444743.1

In this district and elsewhere the courts have utilized a three factor test to determine the propriety of a motion to stay pending reexamination. These factors are:

1.   The stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial.

2.   Whether a stay will unduly prejudice or be tactically disadvantageous to the non-moving party.

3.   Whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court.

See *Photoflex* at *3; *Nanometrics* at *4; *KLA-Tencor Corp.* at *7; *Sorensen v. Digital Networks* at 2.

## B.   All Factors in the Stay Analysis Strongly Support the Motion for Stay.

On the facts of this case, there is no room for debate that each of the three factors evaluated on a motion for stay pending reexamination strongly supports a stay.

First, the motion has been brought before *any* discovery or other proceedings in this case. "Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation." *Photoflex,* at *5; *Nanometrics,* at *6 and cases discussed therein; *KLA-Tencor,* at *7. As Judge White of this Court commented in granting a stay pending reexamination in another Sorensen '184 case, "the fact that this case is still in the early stages and the parties have not yet conducted 'significant discovery' or invested 'substantial expense' into the litigation weighs in favor of granting a stay." *Sorensen v. Digital Networks,* at *2.[6]

The concerns expressed in some cases where the defendant brings a stay motion after the case has been pending for a long time, or where decisions adverse to the defendant have been made, simply do not apply here.

Second, there is no question of prejudice to the plaintiff in this case. The '184

---

[6]   In *Lexar*, the only '184 case in which a stay has been denied, Judge Ware concluded that the defendant had not met its burden of proof on the stay but did not discuss the details of the three-factor test. Ex. I.

1  patent has expired and Sorensen's only claim is for past damages.[7]  As Judge Moskowitz

2  concluded in rejecting Sorensen's prejudice arguments in granting a stay in *Black &*

3  *Decker*:

4          Plaintiff's [Sorensen's] cognizable claims of prejudice if a

5          stay should be entered basically boil down to his

6          inconvenience in delaying final collection of any monetary

7          award of royalties, assuming he ultimately wins.  However, as

8          the court recognized in *Broadcast* the prejudice factor "is best

9          summarized by one question:  *do the Plaintiffs have an*

10          *adequate remedy at law?*"  2006 U.S. Dist. LEXIS 46623, at

11          *32.  Just as in *Broadcast*, the answer here is that clearly

12          Plaintiff does have an adequate remedy.

13  *Id*. at *13 (italics original).

14       The court also observed that the "general prejudice of having to wait for resolution

15  is not a persuasive reason to deny a motion for stay."  *Id*., at *13.  See also *Photoflex,* at

16  *5 ("The delay inherent to the reexamination process does not constitute, by itself, undue

17  prejudice.");  *Nanometrics* at *9; *Sorensen v. Digital Networks* at *3.

18       Sorensen, whose rights derive from the patent laws, has no right to complain about

19  Phillips' exercising *its* rights under the patent laws to seek reexamination.  *KLA-Tencor,*

20  at *7.  Also, any delay in the instant litigation "is more than off-set by increased certainty

21  of whether this single patent [the '184 patent] will survive reexamination and whether

22  there will be any need for litigation."  *Nanometrics* at *10.

23       Moreover, since the reexamination has been pending for over one year, any delay

24  will be shorter than in the typical stay situation.

25       Any concern about delay that may be expressed by Sorensen must be taken with a

26  

---

27  [7]      Sorensen never made any products using the '184 process, i.e., it was never a

28  competitor of Phillips, Ex. N at 97-98, so injunctive relief was never an issue even before
expiration of the patent.

PHILLIPS' ALTERNATIVE MOTIONS TO TRANSFER OR STAY
CASE NO. 08-03094-MHP

grain of salt given his own record of extraordinary delay enforcing his (alleged) rights against Phillips.  Sorensen first claimed that Phillips was violating the '184 patent in 1994.  He did not file any litigation against Phillips until 2006.  Now he has waited an additional two years to commence this action.  Judge Moskowitz observed in *Black & Decker* that the average reexamination delay of "18-23 months is especially inconsequential where [Sorensen] himself waited as many as twelve years before bringing the present litigation."  *Id.* at *14.  As this Court noted in an analogous situation, "[Plaintiff's] ten year delay in seeking to protect its patented interests weighs heavily against denying [Defendant's] motion for stay."  *Hewlett-Packard* at *2.

Third, there is no question that the reexamination will "simplify the issues and streamline the trial."  The stay will either render the case moot or materially assist the court in resolving the prior art issues.  As noted above, due to expiration of the patent, statistically there is a 74% chance the PTO will cancel the patent in whole or in part.  In this case the odds are probably greater since the PTO has determined that *twelve* separate pieces of prior art never disclosed to the PTO during the original prosecution raise over *twenty* "substantial new questions of patentability."  Ex. A and B.  Moreover, since the '184 patent has expired and Sorensen cannot amend any patent claims, see *Black & Decker* at 9, there is an even greater chance that reexamination will render moot all or most claims.

The benefits of avoiding unnecessary litigation in this case are substantial.  No one can predict exactly how this case will be litigated but the previous lawsuit between Sorensen and Phillips involving Black & Decker drill housings is instructive.  The Sears Craftsman tape measure housing is a similar mass market product with tens of millions of unit sales.  Johnson Decl. at 2.  In *Black & Decker*, the stay was granted *before* claim construction, the major summary judgment motions and the close of discovery.  Still, the parties and court already had invested enormous resources in litigation.  E.g., the docket sheet (Ex. L) contains over 250 items.  As Sorensen has pointed out elsewhere, the parties served more than 2,000 requests for production, interrogatories and requests for

15

admission.  Ex. M, Kaler Decl. at 4.  The magistrate judge had established a bi-weekly

discovery conference to deal with the scores of discovery issues raised by the parties.  *Id*.

Millions of dollars had been expended on legal fees.  Binder Decl. at 2-3.

Even if the PTO sustains the '184 patent in all respects, the stay would be

beneficial since the PTO will evaluate 12 separate pieces of prior art to determine if they

invalidate the patent in whole or in part.  Judge Moskowitz found that "the stay will result

in a simplification of issues in this case," whether or not the patent is declared invalid.

*Id*. at *15.[8]  The action "will benefit from the PTO's evaluation of how the previously

unconsidered prior art references impact the claims of the patent-in-suit.  The PTO's

expert evaluation is likely to be of assistance not only as to the issues of validity, but its

understanding of the claims is also likely to aid this Court in the preliminary process of

claim construction."  *Id*. at *17.  Judge Moskowitz also stressed that Sorensen itself

benefits from the stay to permit the PTO to reexamine the patent.  If the PTO does not

invalidate the claims of the patent, then plaintiffs' case will be stronger and, if the claims

are invalidated in whole or in part, both parties benefit from avoiding needless waste of

resources.  *Id*.

---

[8]     The court listed numerous advantages to "shifting the patent validity issue to the PTO":

   1.  All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

   2.  Many discovery problems relating to prior art can be alleviated by the PTO examination.

   3.  In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

   4.  The outcome of the reexamination may encourage a settlement without the further use of the Court.

   5.  The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

   6.  Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.

   7.  The cost will likely be reduced both for the parties and the Court.

Page 8, quoting *Broadcast Innovation, LLC v. Charter Commc'ns, Inc.*, 03-CV-2223, 2006 U.S. Dist. LEXIS 46623, at *9-10 (D. Colo. July 11, 2006).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant and Counterclaim Plaintiff Phillips Plastics Corporation respectfully moves the Court to transfer this case to the United States District Court for the Southern District of California or, alternatively, to stay this case pending the conclusion of the Patent Office's reexamination of the '184 patent.

DATED:    JULY 23, 2008                                  FOLEY & LARDNER LLP

BY:  _____/s/_____

KIMBERLY K. DODD
**Attorneys for Defendant/Counterclaim
Plaintiff Phillips Plastics Corporation**

17

MILW_7444743.1

NANCY J. GEENEN, CA BAR NO. 135968, NGEENEN@FOLEY.COM
KIMBERLY K. DODD, CA BAR NO. 235109, KDODD@FOLEY.COM
**FOLEY & LARDNER LLP**
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3404
TELEPHONE:    415.434-4484
FACSIMILE:     415.434-4507

ROBERT L. BINDER (TO BE ADMITTED *PRO HAC VICE*), RBINDER@FOLEY.COM
**FOLEY & LARDNER LLP**
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202
TELEPHONE (414) 271-2400
FACSIMILE (414) 297-4900

PAVAN K. AGARWAL (TO BE ADMITTED *PRO HAC VICE*), PAGARWAL@FOLEY.COM
**FOLEY & LARDNER LLP**
3000 K STREET, N.W., SUITE 500
WASHINGTON, D.C. 20007-5143
TELEPHONE: (202) 672-5300
FACSIMILE: (202) 672-5399

Attorneys for Defendant/Counterclaim Plaintiff **Phillips Plastics Corporation**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST<br><br>Plaintiff,<br><br>vs.<br><br>PHILLIPS PLASTICS CORPORATION, a Wisconsin Corporation; and DOES 1 THROUGH 100,<br><br>Defendants. | Case No: 08-CV-03094-MHP<br><br>**DECLARATION OF ROBERT L. BINDER IN SUPPORT OF ALTERNATIVE MOTIONS TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR TO STAY PENDING PATENT OFFICE REEXAMINATION**<br><br>DATE:       SEPTEMBER 8, 2008<br>TIME:       2:00 P.M. |
| PHILLIPS PLASTICS CORPORATION,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Counterclaim Defendant. | |

DECLARATION OF ROBERT L. BINDER
CASE NO. 08-03094-MHP

MILW_7440811.1

I, Robert L. Binder, declare and state as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am a partner of the law firm of Foley & Lardner LLP resident in the Milwaukee office located at 777 E. Wisconsin Avenue, Milwaukee, WI 53202.

2.      I have acted as lead trial counsel for Phillips Plastics in both cases brought by Sorensen involving the '184 patent, *Sorensen v. Black & Decker, et al.*, No. 06-cv-1572 BTM (CAB), Southern District of California, and this case.

3.      Attached as Exhibits A-P are documents relevant to the pending motions. In each case I have attached a true copy of a Court pleading or Patent Office documentation which I personally obtained.

4.      Laches is a significant issue in the *Black & Decker* case and will be a significant defense in this case.  To briefly summarize, in December 1994 Sorensen first contacted Phillips and its customer, Black & Decker, claiming that the Phillips' process for manufacturing two-shot parts for Black & Decker violated the '184 patent.  The parties had significant correspondence about the allegations and at least one personal meeting in San Diego.  Sorensen even prepared a draft complaint naming Black & Decker and Phillips.  However, Sorensen took no action on the alleged violation of the '184 patent until it filed an action against Black & Decker in August 2006 to which it subsequently joined Phillips in February 2007.  The Sears Craftsman parts are made by Phillips on the same equipment in the same location as the Black & Decker parts.

5.      The complaint in this action does not disclose where plaintiff resides, but there has been significant testimony in other litigation concerning where the plaintiff and its key witnesses are located.  Jens Erik Sorensen is president of a company located in the Southern District of California.  See *Sorensen v. Daimler Chrysler AG*, 2003 WL 1888866 at *2 fn. 6, Exhibit K to Binder Decl.  In the *Black & Decker* case, the inventor, Jens Ole Sorensen, identified himself and Paul Brown as the key witnesses on the '184 technology.  Ex. N.  Sorensen's business (Turn-Key), The Sorensen Research and Development Trust, and counsel for Sorensen are located in the same building at 9930

1

Mesa Rim Road, San Diego.  Ex. N at 64-68.  Jens Ole Sorensen frequently works in the Turn-Key office at the same address.

6.    Based on our experience in the *Black & Decker* case, litigation against Sorensen involving the '184 patent is extremely expensive.  Extrapolating from the evidence of our own bills and expenses in that case, the parties spent millions of dollars in the aggregate in defense of the case up to the date of the stay.  As of that time, there still remained the claim construction process, most discovery relating to Phillips and other defendants other than Black & Decker, expert discovery, summary judgment motions by both sides on substantive issues, a separate mini trial of the laches issues, and trial preparation for the case in chief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of July, 2008.

/S/
_____
Robert L. Binder

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this efiled document.

Executed on    July 23, 2008          /S/
                              _____
                              Kimberly K. Dodd

2

MILW_7440811.1

1
NANCY J. GEENEN, CA BAR NO. 135968, NGEENEN@FOLEY.COM
KIMBERLY K. DODD, CA BAR NO. 235109, KDODD@FOLEY.COM
**FOLEY & LARDNER LLP**
2
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3404
3
TELEPHONE:    415.434-4484
FACSIMILE:    415.434-4507

4
ROBERT L. BINDER (TO BE ADMITTED *PRO HAC VICE*), RBINDER@FOLEY.COM
**FOLEY & LARDNER LLP**
5
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202
TELEPHONE (414) 271-2400
6
FACSIMILE (414) 297-4900

7
PAVAN K. AGARWAL (TO BE ADMITTED *PRO HAC VICE*), PAGARWAL@FOLEY.COM
**FOLEY & LARDNER LLP**
3000 K STREET, N.W., SUITE 500
8
WASHINGTON, D.C. 20007-5143
TELEPHONE: (202) 672-5300
FACSIMILE: (202) 672-5399
9

10
Attorneys for Defendant/Counterclaim Plaintiff **Phillips Plastics Corporation**

11
## UNITED STATES DISTRICT COURT

12
## NORTHERN DISTRICT OF CALIFORNIA

13

14
JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST

15
             Plaintiff,

16
    vs.

17
PHILLIPS PLASTICS CORPORATION, a Wisconsin Corporation; and DOES 1 THROUGH 100,

18

19
             Defendants.

20

21
PHILLIPS PLASTICS CORPORATION,

22
             Counterclaim Plaintiff,

23
    vs.

24
JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,

25

26
             Counterclaim Defendant.

Case No: 08-CV-03094-MHP

**INDEX OF EXHIBITS TO THE DECLARATION OF ROBERT L. BINDER IN SUPPORT OF ALTERNATIVE MOTIONS TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR TO STAY PENDING PATENT OFFICE REEXAMINATION**

27

28

MILW_7441201.1

**INDEX OF EXHIBITS**

A.  U.S. Patent and Trademark Office, Order Granting Request for Ex Parte Reexamination, October 11, 2007.

B.  U.S. Patent and Trademark Office, Order Granting Request for Ex Parte Reexamination, February 21, 2008.

C.  Complaint for Patent Infringement, *Sorensen v. Phillips Plastics Corp.*, No. C-08-03094.

D.  Excerpt from Complaint, *Sorensen v. Black & Decker, et al.*, No. 06-cv-1572, Southern District of California.

E.  Third Amended Notice of Claims, dated June 27, 2008, filed in *Sorensen v. Black & Decker, et al.*, *supra.*

F.  Transcript of proceedings in *Sorensen v. Helen of Troy Texas Corp.*, No. 07-cv-02278 BTM, S.D. Cal., February 25, 2008.

G.  Decision Granting Stay, dated September 10, 2007, in *Sorensen v. Black & Decker, et al.*

H.  Decision Granting Stay, dated January 16, 2008, in *Sorensen v. Digital Networks N.A., Inc.*, 2008 WL 152179, N.D. Cal. (Judge Jeffrey White).

I.  Decision Denying Stay, dated April 30, 2008, *Sorensen v. Lexar Media Inc.*, No. C-08-00095 (Judge James Ware).

J.  U.S. Patent and Trademark Office, Ex Parte Reexamination Filing Data, December 31, 2007.

K.  *Sorensen v. Daimler Chrysler AG*, 2003 WL 1888866 (N.D. Cal., Apr. 11, 2003) (Judge Chesney).

L.  Docket sheet, *Sorensen v. Black & Decker, et al., supra.*

M.  Declaration of Michael Kaler, dated August 17, 2007, filed in *Sorensen v. Black & Decker, et al., supra.*

N.  Excerpts from deposition of Jens Ole Sorensen, December 20, 2006, in *Sorensen v. Black & Decker, et al., supra.*

1

MILW_7441201.1

1  O.    Order Denying Motion to Consolidate as Premature, May 5, 2008, in *Sorensen v.*

2        *Black & Decker, et al., supra.*

3  P.    House Report No. 96-1307(I).

INDEX OF EXHIBITS TO THE DECLARATION OF ROBERT L. BINDER
CASE NO. 08-03094-MHP

MILW_7441201.1

# Exhibit A

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,775 | 07/30/2007 | 4935184 | X32441 | 9943 |

22653      7590      10/11/2007

EDWARD W CALLAN
NO. 705 PMB 452
3830 VALLEY CENTRE DRIVE
SAN DIEGO, CA  92130

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 10/11/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,775 | Patent Under Reexamination 4935184 |
|---|---|---|
| | Examiner Alan Diamond | Art Unit 3991 |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>30 July 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☐ Other: _____

1. ☒    The request for *ex parte* reexamination is GRANTED.

### RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

  a) ☐ by Treasury check or,

  b) ☐ by credit to Deposit Account No. _____,  or

  c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Alan Diamond
Primary Examiner
Art Unit: 3991

cc:Requester ( if third party requester )

Application/Control Number: 90/008,775

Page 2

Art Unit: 3991

### Decision on Reexamination Request

1.    A substantial new question of patentability affecting claims 1, 2, 4, and 6-10 of

United States Patent Number 4,935,184 to Sorensen, is raised by the request for *ex*

*parte* reexamination.  The request for reexamination is Third Party requested.

2.    Since requestor did not request reexamination of claims 3 and 5 and did not

assert the existence of a substantial new question of patentability (SNQ) for such claims

(see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), such claims will not be

reexamined.  This matter was squarely addressed in *Sony Computer Entertainment*

*America Inc., et al v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22,

2006), Slip Copy, 2006 WL 1472462.  The District Court upheld the Office's discretion to

not reexamine claims in a reexamination proceeding other than those claims for which

reexamination had specifically been requested.  The Court stated:

> "To be sure, a party may seek, and the PTO may grant, ...review of each and every
> claim of a patent. Moreover, while the PTO in its discretion may review claims for
> which ... review was not requested, nothing in the statute compels it to do so. To
> ensure that the PTO considers a claim for ... review, ...requires that the party
> seeking reexamination demonstrate why the PTO should reexamine each and every
> claim for which it seeks review. Here, it is undisputed that **Sony** did not seek review
> of every claim under the '213 and '333 patents. Accordingly, **Sony** cannot now
> claim that the PTO wrongly failed to reexamine claims for which **Sony** never
> requested review, and its argument that AIPA compels a contrary result is
> unpersuasive."

### Extension of Time

3.    Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that

Application/Control Number: 90/008,775                                    Page 3
Art Unit: 3991

*ex parte* reexamination proceedings "will be conducted with special dispatch" (37

CFR 1.550(a)).  Extensions of time in *ex parte* reexamination proceedings are provided

for in 37 CFR 1.550(c).


### Substantial New Question of Patentability (SNQ)

4.      The presence or absence of a "substantial new question of patentability"

determines whether or not reexamination is ordered.

       For a "substantial new question of patentability" to be present, it is only

necessary that :

       A) the prior art patents and/or printed publications raise a substantial new

question of patentability regarding at least one claim, i.e., the teaching of the (prior art)

patents and printed publications is such that a reasonable examiner would consider the

teaching to be important in deciding whether or not the claim is patentable; and

       B) the same question of patentability as to the claim has not been decided by the

Office in a previous examination of the patent or in a final holding of invalidity by the

Federal Courts in a decision on the merits involving the claim.

       A SNQ may be based solely on old art where the old art is being

presented/viewed in a new light, or in a different way, as compared with its use in the

earlier concluded examination(s), in view of a material new argument or interpretation in

the request.  (MPEP 2242).

Application/Control Number: 90/008,775                                    Page 4
Art Unit: 3991

## *Request*

5.     **The request indicates the Requestor considers that Moscicki (U.S. Patent 3,178,497) raises a substantial new question of patentability with respect to claims 1, 4, 6-8 and 10 of Sorensen.**

It is agreed that consideration of Moscicki raises a substantial new question of patentability as to claims 1, 4, 6-8 and 10 of Sorensen.  Page 28, line 14 though page 32, seventh line from the bottom; page 56 at the start of section 8 through page 58, line 5; page 83, line 13 through page 86, line 9; page 86, line 22 through page 87, line 22; page 94, lines 1-19; page 98, line 6 through page 99, line 2; and page 107, line 18 through page 108, line 11, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Moscicki that was not present in the prosecution of the application which became the Sorensen patent.  There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 4, 6-8 and 10 of Sorensen were patentable. Accordingly, Moscicki raises a substantial new question of patentability as to claims 1, 4, 6-8 and 10, which question has not been decided in a previous examination of the Sorensen patent.

6.     **The request indicates the Requestor considers that Selma (GB 2004494 A) raises a substantial new question of patentability with respect to claims 1, 2 and 6-10 of Sorensen.**

Application/Control Number: 90/008,775                                    Page 5
Art Unit: 3991

It is agreed that consideration of Seima raises a substantial new question of

patentability as to claims 1, 2 and 6-10 of Sorensen.  Page 32, sixth line from the

bottom, through the end of page 36; page 60, fifth line from the bottom, through page

62, line 3; page 80, line 10 through page 83, line 12; page 88, line 13 through page 89,

line 15; page 95, line 13 through page 96, line 9; page 99, line 15 through page 100,

line 11; page 104, line 1 through page 107, line 4; and page 109, lines 1-20, of the

request for reexamination are hereby incorporated by reference for their explanation of

the teaching provided in Seima that was not present in the prosecution of the

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claims 1, 2 and 6-10 of Sorensen were patentable.  Accordingly, Seima raises a

substantial new question of patentability as to claims 1, 2 and 6-10, which question has

not been decided in a previous examination of the Sorensen patent.


7.    **The request indicates the Requestor considers that Gits (U.S. Patent**

**2,863,241) raises a substantial new question of patentability with respect to claim**

**1 of Sorensen.**

It is agreed that consideration of Gits raises a substantial new question of

patentability as to claim 1 of Sorensen.  Page 37, line 1 through the end of section 3 on

page 40, of the request for reexamination are hereby incorporated by reference for their

explanation of the teaching provided in Gits that was not present in the prosecution of

the application which became the Sorensen patent.  There is a substantial likelihood

Application/Control Number: 90/008,775                                    Page 6
Art Unit: 3991

that a reasonable examiner would consider this teaching important in deciding whether

or not claim 1 of Sorensen was patentable. Accordingly, Gits raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.


8.      **The request indicates the Requestor considers that Shiho** *et al* **(U.S. Patent**

**4,440,820, hereinafter "Shiho") raises a substantial new question of patentability**

**with respect to claims 1, 6-8 and 10 of Sorensen.**

        It is agreed that consideration of Shiho raises a substantial new question of

patentability as to claims 1, 6-8 and 10 of Sorensen. The beginning of section 4 on

page 40 through the end of section 4 on page 44; page 90, lines 4-20; page 96, line 23

through page 97, line  6; page 101, lines 1-11; and page 110, lines 14-23, of the request

for reexamination are hereby incorporated by reference for their explanation of the

teaching provided in Shiho that was not present in the prosecution of the application

which became the Sorensen patent. There is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not claims 1, 6-

8 and 10 of Sorensen were patentable. Accordingly, Shiho raises a substantial new

question of patentability as to claims 1, 6-8 and 10, which question has not been

decided in a previous examination of the Sorensen patent.

Application/Control Number: 90/008,775                                    Page 7
Art Unit: 3991

9.    The request indicates the Requestor considers that JP 60-119520 U to Toyota Motor (hereinafter "Toyota") raises a substantial new question of patentability with respect to claim 1 of Sorensen.

It is agreed that consideration of Toyota raises a substantial new question of patentability as to claim 1 of Sorensen. The beginning of section 5 on page 44 through the end of section 5 on page 48; and page 70, line 1 through page 71, line 8, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Toyota that was not present in the prosecution of the application which became the Sorensen patent. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claim 1 of Sorensen was patentable. Accordingly, Toyota raises a substantial new question of patentability as to claim 1, which question has not been decided in a previous examination of the Sorensen patent.


10.    The request indicates the Requestor considers that German Published Patent Application No. 1850999 to Echterholter raises a substantial new question of patentability with respect to claim 1 of Sorensen.

It is agreed that consideration of Echterholter raises a substantial new question of patentability as to claim 1 of Sorensen. The beginning of section 6 on page 48 through page 53, line 6; and page 73, line 10 through page 74, line 17, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Echterholter that was not present in the prosecution of the

Application/Control Number: 90/008,775                                      Page 8
Art Unit: 3991

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 of Sorensen was patentable.  Accordingly, Echterholter raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.


11.    The request indicates the Requestor considers that Wright, "New vigor for

two-shot molding automation... versatility... ingenuity," Modern Plastics, May

1986, pp. 79-83, (hereinafter "Modern Plastics") raises a substantial new question

of patentability with respect to claims 1, 6 and 8 of Sorensen.

It is agreed that consideration of Modern Plastics raises a substantial new

question of patentability as to claims 1, 6 and 8 of Sorensen.  Page 53, line 7 through

the end of section 7 on page 56; page 77, line 1 through page 78, line 8; page 92, line 9

through page 93, line 12; and page 102, line 16 through page 103, line 11, of the

request for reexamination are hereby incorporated by reference for their explanation of

the teaching provided in Modern Plastics that was not present in the prosecution of the

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claims 1, 6 and 8 of Sorensen were patentable.  Accordingly, Modern Plastics raises a

substantial new question of patentability as to claims 1, 6 and 8, which question has not

been decided in a previous examination of the Sorensen patent.

Application/Control Number: 90/008,775                                   Page 9
Art Unit: 3991

12.    **The request indicates the Requestor considers that Moscicki in view of Echterholter and further in view of Modern Plastics raises a substantial new question of patentability with respect to claims 1, 4, 6-8 and 10 of Sorensen.**

It is agreed that consideration of Moscicki in view of Echterholter and further in view of Modern Plastics raises a substantial new question of patentability as to claims 1, 4, 6-8 and 10 of Sorensen.  Page 58, line 6 through the end of section 9 on page 60; page 86, lines 10-21; page 88, lines 1-12; page 95, lines 1-12; page 99, lines 3-14; and page 108, lines 12-23, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Moscicki, Echterholter and Modern Plastics that was not present in the prosecution of the application which became the Sorensen patent.  There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 4, 6-8 and 10 of Sorensen were patentable.  Accordingly, Moscicki in view of Echterholter and further in view of Modern Plastics raises a substantial new question of patentability as to claims 1, 4, 6-8 and 10, which question has not been decided in a previous examination of the Sorensen patent.

13.    **The request indicates the Requestor considers that Seima in view of Echterholter and further in view of Modern Plastics raises a substantial new question of patentability with respect to claims 1 and 6-10 of Sorensen.**

It is agreed that consideration of Seima in view of Echterholter and further in view of Modern Plastics raises a substantial new question of patentability as to claims 1 and

Application/Control Number: 90/008,775                           Page 10
Art Unit: 3991

6-10 of Sorensen.  Page 62, line 4 through page 64, line 3; page 89, line 16 through

page 90, line 3; page 96, lines 10-22; page 100, lines 12-24; page 107, lines 5-17; and

page 110, lines 1-13, of the request for reexamination are hereby incorporated by

reference for their explanation of the teaching provided in Seima, Echterholter and

Modern Plastics that was not present in the prosecution of the application which

became the Sorensen patent.  There is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not claims 1

and 6-10 of Sorensen were patentable.  Accordingly, Seima in view of Echterholter and

further in view of Modern Plastics raises a substantial new question of patentability as to

claims 1 and 6-10, which question has not been decided in a previous examination of

the Sorensen patent.


**14.    At page 64, line 4 through page 67, line 18; page 90, line 21 through page**

**91, line 13; page 97, lines 7-16; and page 101, lines 12-22, the request indicates**

**the Requestor considers that Schad (U.S. Patent 4,422,995) raises a substantial**

**new question of patentability with respect to claims 1 and 6-8 of Sorensen.**

Schad **does not** raise a substantial new question of patentability with respect to

claims 1 and 6-8 of Sorensen.  In the prosecution of application Serial No. 07/386,012,

which matured into the Sorensen patent, Schad was used to reject all the claims (1-10)

under 35 USC 103(a).  The rejection over Schad was overcome and the Sorensen

patent was allowed after applicant amended steps (h) and (i) of claim 1 so as to recite

the injection of first/second plastic material until it reaches the portion of the first/second

Application/Control Number: 90/008,775                                      Page 11
Art Unit: 3991

mold cavity that defines the rim of the product.  Third party requestor even admits at

page 66, lines 16-18, of the request that "Schad does not specifically disclose a first

injection material which 'reaches the portion of the mold cavity that defines the rim of

the product.'"  Third party requestor cites *KSR int'l Co. v. Teleflex Inc.* and design

choice for the obviousness of modifying Schad so that a first injection material reaches

the portion of the mold cavity that defines the rim of the product (Request, pages 66-

67).  Third party requestor notes that "design choice" with respect to product shape was

considered by the Examiner in the rejection over Schad that was mailed 10/11/1988

during prosecution of the 07/386,012 application (see page 67 of the Request).

Consideration of Shad in view of *KSR int'l Co. v. Teleflex Inc.* or  "design choice" does

not provide any new teaching with respect to Schad as compared with its use in the

prosecution of the Sorensen patent.  Accordingly, Schad is not being viewed in a new

light compared with its use in the prosecution of the Sorensen patent, and thus, does

not raise a substantial new question of patentability with respect to claims 1 and 6-8 of

Sorensen.


15.    **The request indicates the Requestor considers that Schad in view of**

**Moscicki and further in view of Seima and Shiho raises a substantial new**

**question of patentability with respect to claims 1 and 6-8 of Sorensen.**

It is agreed that consideration of Schad in view of Moscicki and further in view of

Seima and Shiho raises a substantial new question of patentability as to claims 1 and 6-

8 of Sorensen.  Page 67, lines 19 through the last line on page 69; page 91, line 14

Application/Control Number: 90/008,775                              Page 12
Art Unit: 3991

through page 92, line 8; page 97, line 17 through page 98, line 5; and page 102, lines 1-

15, of the request for reexamination are hereby incorporated by reference for their

explanation of the teaching provided in Schad, Moscicki, Seima and Shiho that was not

present in the prosecution of the application which became the Sorensen patent. There

is a substantial likelihood that a reasonable examiner would consider this teaching

important in deciding whether or not claims 1 and 6-8 of Sorensen were patentable.

Accordingly, Schad in view of Moscicki and further in view of Seima and Shiho raises a

substantial new question of patentability as to claims 1 and 6-8, which question has not

been decided in a previous examination of the Sorensen patent.


16.    The request indicates the Requestor considers that Toyota in view of

Moscicki and further in view of Seima and Shiho raises a substantial new

question of patentability with respect to claim 1 of Sorensen.

It is agreed that consideration of Toyota in view of Moscicki and further in view of

Seima and Shiho raises a substantial new question of patentability as to claim 1 of

Sorensen. Page 71, line 9 through page 73, line 9, of the request for reexamination are

hereby incorporated by reference for their explanation of the teaching provided in

Toyota, Moscicki, Seima and Shiho that was not present in the prosecution of the

application which became the Sorensen patent. There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 Sorensen was patentable. Accordingly, Toyota in view of Moscicki and further

in view of Seima and Shiho raises a substantial new question of patentability as to claim

Application/Control Number: 90/008,775                                    Page 13
Art Unit: 3991

1, which question has not been decided in a previous examination of the Sorensen patent.

17.    **The request indicates the Requestor considers that Echterholter in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability with respect to claim 1 of Sorensen.**

It is agreed that consideration of Echterholter in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability as to claim 1 of Sorensen.  Page 74, line 18 through the last line on page 76, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Echterholter, Moscicki, Seima and Shiho that was not present in the prosecution of the application which became the Sorensen patent.  There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claim 1 Sorensen was patentable.  Accordingly, Echterholter in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability as to claim 1, which question has not been decided in a previous examination of the Sorensen patent.

18.    **The request indicates the Requestor considers that Modern Plastics in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability with respect to claims 1, 6 and 8 of Sorensen.**

Application/Control Number: 90/008,775                                    Page 14
Art Unit: 3991

It is agreed that consideration of Modern Plastics in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability as to claims 1, 6 and 8 of Sorensen. Page 78, line 9 through page 80, line 9; page 93, lines 13-25; and page 103, lines 12-24, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Modern Plastics, Moscicki, Seima and Shiho that was not present in the prosecution of the application which became the Sorensen patent. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 6 and 8 of Sorensen were patentable. Accordingly, Modern Plastics in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability as to claims 1, 6 and 8, which question has not been decided in a previous examination of the Sorensen patent.

### *Duty to Disclose*

19.    The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 4,935,184 throughout the course of this reexamination proceeding. The third party requestor is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/008,775                                    Page 15
Art Unit: 3991

### *Correspondence*

14.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Alan Diamond whose telephone number is (571) 272-

1338. The examiner can normally be reached on Monday through Friday from 5:30

a.m. to 2:00 p.m.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Deborah Jones can be reached on (571) 272-1535.

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).


### *Notice Re Patent Owner's Correspondence Address*

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte*
reexamination or an *inter partes* reexamination is designated as the correspondence
address of the patent.

        *Revisions and Technical Corrections Affecting Requirements for Ex Parte
        and Inter Partes Reexamination, 72 FR 18892 (April 16, 2007)(Final Rule)*

**The correspondence address for any pending reexamination proceeding not
having the same correspondence address as that of the patent is, by way of this**

Application/Control Number: 90/008,775                               Page 16
Art Unit: 3991

revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of
the effective date.

This change is effective for any reexamination proceeding which is pending before the
Office as of May 16, 2007, including the present reexamination proceeding, and to any
reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct
communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for
the present proceeding is different from the correspondence address of the patent, it is
strongly encouraged that the patent owner affirmatively file a Notification of Change of
Correspondence Address in the reexamination proceeding and/or the patent (depending
on which address patent owner desires), to conform the address of the proceeding with
that of the patent and to clarify the record as to which address should be used for
correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice        (571) 272-7703
Central Reexam Unit (CRU)                   (571) 272-7705
Reexamination Facsimile Transmission No.    (571) 273-9900

Please mail any communications to:
        Attn: Mail Stop "Ex Parte Reexam"
        Central Reexamination Unit
        Commissioner for Patents
        P. O. Box 1450
        Alexandria VA   22313-1450

Please FAX any communications to:
        (571) 273-9900
        Central Reexamination Unit

Application/Control Number: 90/008,775                                     Page 17
Art Unit: 3991

Please hand-deliver any communications to:
    Customer Service Window
    Attn: Central Reexamination Unit
    Randolph Building, Lobby Level
    401 Dulany Street
    Alexandria, VA  22314

Signed:

Alan Diamond
Primary Examiner
Central Reexamination Unit
Art Unit 3991
(571) 272-1338

/Jerry D. Johnson/
Primary Examiner
Art Unit 3991

STEPHEN J. STEIN
CRU EXAMINER - AU 3991

PTO/SB/08a (05-07)
Approved for use through 09/30/2007. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 90/008,775 |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | 3991 |
| | Examiner Name | Diamond |
| | Attorney Docket Number | REQUEST FOR REEXAMINATION |

## U.S.PATENTS

| Examiner Initial* | Cite No | Patent Number | Kind Code1 | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| /AD/ | 1 | 2863241 | | 1958-12-09 | Gits | all |
| /AD/ | 2 | 3178497 | | 1965-04-13 | Moscicki | all |
| /AD/ | 3 | 4422995 | | 1983-12-27 | Schad | all |
| /AD/ | 4 | 4440820 | | 1984-04-03 | Shiho | all |

If you wish to add additional U.S. Patent citation information please click the Add button.

## U.S.PATENT APPLICATION PUBLICATIONS

| Examiner Initial* | Cite No | Publication Number | Kind Code1 | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

## FOREIGN PATENT DOCUMENTS

| Examiner Initial* | Cite No | Foreign Document Number3 | Country Code2 i | Kind Code4 | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T5 |
|---|---|---|---|---|---|---|---|---|

EFS Web 2.0.1

/Alan Diamond/                    10/05/2007

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | 90/008,775 |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | |
| | Art Unit | 3991 |
| | Examiner Name | Diamond |
| | Attorney Docket Number | REQUEST FOR REEXAMINATION |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| /AD/ | 1 | 1 850 999 | DE | 1962-05-03 | Echterholter | all | ☑ |
| /AD/ | 2 | 2 004 494 | GB | 1979-04-04 | SEIMA | all | ☑ |
| /AD/ | 3 | 60-119520 U | JP | 1985-08-13 | Toyota Motor | all | ☑ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

### NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (In CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| /AD/ | 1 | VAL WRIGHT, New Vigor For Two-Shot Molding With Automation . . . Versatility . . . Ingenuity, Modern Plastics, May 1968, pages 79-83, published in US | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

### EXAMINER SIGNATURE

| Examiner Signature | /Alan Diamond/ | Date Considered | 10/05/2007 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

¹ See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. ² Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). ³ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁴ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁵ Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.0.1

# Exhibit B



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,976 | 12/21/2007 | 4935184 | 065640-0260 | 6753 |

22653        7590        02/21/2008

EDWARD W CALLAN
NO. 705 PMB 452
3830 VALLEY CENTRE DRIVE
SAN DIEGO, CA  92130

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 02/21/2008

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C  (Rev. 10/03)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Pavan Agarwal

Foley & Lardner LLP

3000 K Street, NW, Suite 500

Washington, DC 20007

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,976*.

PATENT NO. *4935184*.

ART UNIT *3991*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,976 | Patent Under Reexamination 4935184 | |
|---|---|---|---|
| | Examiner Krisanne Jastrzab | Art Unit 3991 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>21 December 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,      b)☒ PTO/SB/08,      c)☐ Other: _____

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐ by Treasury check or,

b) ☐ by credit to Deposit Account No. _____,  or

c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

/Krisanne  Jastrzab/
Primary Examiner
Art Unit: 3991

cc:Requester ( if third party requester )

71338
U.S. PTO

12/21/07

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

00000970

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** Date Submitted: December 21, 2007 | Reexamination Control Number | Unassigned |
| | Patent Number | 4,935,184 |
| | First Named Inventor | Jens O. Sorensen |
| Sheet | 1 | of | 2 | Attorney Docket Number | 065640-0260 |

12/21/07

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| /K.J./ | A1 | 4,935,184 | 06/19/1990 | SORENSEN | |
| ↓ | A2 | 4,422,995 | 12/27/1983 | SCHAD | |
| | A3 | 4,508,676 | 04/02/1985 | SORENSEN | |
| /K.J./ | A4 | 3,375,554 | 04/02/1968 | BLUMER | |

## UNPUBLISHED U.S. PATENT APPLICATION DOCUMENTS

| Examiner Initials* | Cite No.[1] | U.S. Patent Application Document Serial Number-Kind Code[2] (if known) | Filing Date of Cited Document MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| /K.J./ | A5 | JP 59-199227 | 11/12/1984 | IDEMITSU SEKIYU KAGAKU KK | | Tr. |
| ↓ | A6 | JP 60-154022 | 08/13/1985 | FUJITSU, LTD. | | Tr. |
| | A7 | JP 58-82401 | 05/18/1983 | NISSAN MOTOR CO., LTD. | | Tr. |
| /K.J./ | A8 | JP S52-51449 | 04/25/1977 | KABUSHIKI KAISHA YOSHINO KOGYOSYO | | Tr. |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | A9 | ~~SUMITOMO HEAVY INDUSTRIES, LTD., Promat 190-100/100 Sumitome-Netstal Dual Material Injection Molding Machine~~ | Tr. |

| Examiner Signature | /Krisanne Jastrzab/ | Date Considered | 02/20/2008 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

WASH_2164550.1

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** Date Submitted: December 21, 2007 | | | | Reexamination Control Number | Unassigned |
| | | | | Patent Number | 4,935,184 |
| | | | | First Named Inventor | Jens O. Sorensen |
| Sheet | 2 | of | 2 | Attorney Docket Number | 065640-0260 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
| /K.J./ | A10 | WRIGHT, "New Vigor for Two-Shot Molding with Automation," *Modern Plastics*, Vol. 45, No. 9, May 1968, pp. 78 – 83. | |
| | A11 | Plaintiff's Amended Preliminary Claim Constructions and Extrinsic Evidence , SORENSEN v. THE BLACK & DECKER CORPORATION ET AL., U.S. District Court for the Southern District of California, Case No. 06-cv-1572 BTM (CAB). | |
| | A12 | SORENSEN v. INTERNATIONAL TRADE COM'N., 427 F.3d 1375 (Fed. Cir. 2005) | |
| | A13 | Deposition of Paul P. Brown, December 19, 2006, SORENSEN v. THE BLACK & DECKER CORPORATION ET AL., U.S. District Court for the Southern District of California, Case No. 06-cv-1572 BTM (CAB). | |
| /K.J./ | A14 | Plaintiffs' Local Civil Rule 56.1 Statement of Material Facts In Opposition to Defendants' Motion for Summary Judgment of Invalidity Based on Prior Art, U.S. District Court for the District of New Jersey Newark Vicinage, CIV. No. 03-1763(HAA). | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | /Krisanne Jastrzab/ | Date Considered | 02/20/2008 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MEP 609. Draw line through citation if not in conformance and not considered.
Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

Application/Control Number:                                    Page 2
90/008,976
Art Unit: 3991

## Reexamination

### Decision on Reexamination Request

A substantial new question of patentability affecting claims 1, 2, 4 and 6-10 of

United States Patent Number 4,935,184 (hereinafter referred to as "the '184 patent) is

raised by the request for *ex parte* reexamination. The request was filed by a Third Party

on 12/21/2007.

Since requestor did not request reexamination of claims 3 and 5 and did not

assert the existence of a substantial new question of patentability (SNQ) for such claims

(see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), such claims will not be

reexamined. This matter was squarely addressed in *Sony Computer Entertainment*

*America Inc., et al v. Jon W. Dudas,* Civil Action No. 1:05CV1447 (E.D.Va. May 22,

2006), Slip Copy, 2006 WL 1472462. The District Court upheld the Office's discretion to

not reexamine claims in a reexamination proceeding other than those claims for which

reexamination had specifically been requested. The Court stated:

"To be sure, a party may seek, and the PTO may grant .... review of each and every
claim of a patent. Moreover, while the PTO in its discretion may review claims for
which ... review was not requested, nothing in the statute compels it to do so. To
ensure that the PTO considers a claim for ... review, ...requires that the party
seeking reexamination demonstrate why the PTO should reexamine each and every
claim for which it seeks review. Here, it is undisputed that Sony did not seek review
of every claim under the '213 and '333 patents. Accordingly, Sony cannot now
claim that the PTO wrongly failed to reexamine claims for which Sony never
requested review, and its argument that AIPA compels a contrary result is
unpersuasive."

### Extensions of Time

Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that

Application/Control Number:                                    Page 3
90/008,976
Art Unit: 3991

*ex parte* reexamination proceedings "will be conducted with special dispatch" (37

CFR 1.550(a)).  Extensions of time in *ex parte* reexamination proceedings are provided

for in 37 CFR 1.550(c).

## Substantial New Question of Patentability (SNQ)

The substantial new question of patentability (SNQ) is based on:

JP S59-199227 (hereinafter referred to as "JP '227")

JP 60-154022 (hereinafter referred to as "JP '022")

JP 58-82401 (hereinafter referred to as "JP '401")

JP S52-51449 (hereinafter referred to as "JP '449")

Schad, U.S. patent No. 4,422,995 (hereinafter referred to as "Schad")

Blumer U.S. patent No. 3,375,554 (hereinafter referred to as "Blumer")

Sorensen U.S. patent No. 4,508,676 (hereinafter referred to as "Sorensen")

Promot 100-100/100 (hereinafter referred to as "Promot 100")

Modern Plastics, "New Vigor for Two-Shot Molding with

Automation...Versatility...Ingenuity" (hereinafter referred to as "Modern Plastics")


A discussion of the specifics follows:


## Request

Application/Control Number: .    Page 4
90/008,976 ·
Art Unit: 3991

**The request indicates that the Requestor considers JP '227 as raising a**

**substantial new question of patentability for claims 1, 6-8 and 10 of the '184**

**patent.**

It is agreed that the consideration of JP '227 raises an SNQ as to claims 1, 6-8

and 10 of the '184 patent. The last paragraph of page 31 through page 42 of the

request is hereby incorporated by reference for the explanation of the teachings

provided in JP '227 regarding a method of two-shot injection molding of a part utilizing a

common mold core. These teachings were not present in the prosecution of the

application which became the '184 patent. Further, there is a substantial likelihood that

a reasonable examiner would consider these teachings important in deciding whether or

not these claims are patentable. Accordingly, JP '227 raises a substantial new question .

of patentability as to claims 1, 6-8 and 10, which question has not been decided in a

previous examination of the '184 patent.

**The request indicates that the Requestor considers JP '022 as raising a**

**substantial new question of patentability for claims 1 and 10 of the '184 patent.**

It is agreed that the consideration of JP '022 raises an SNQ as to claims 1 and

10 of the '184 patent. Page 43 through the top of page 47 of the request is hereby

incorporated by reference for the explanation of the teachings provided in JP '022

regarding a method of two-shot injection molding of a part utilizing a common mold

core. These teachings were not present in the prosecution of the application which

became the '184 patent. Further, there is a substantial likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, JP '022 raises a substantial new question of patentability as to claims 1 and 10, which question has not been decided in a previous examination of the '184 patent.

**The request indicates that the Requestor considers JP '401 as raising a substantial new question of patentability for claims 1 and 10 of the '184 patent.**

It is agreed that the consideration of JP '401 raises an SNQ as to claims 1 and 10 of the '184 patent. The bottom of page 47 through the top of page 52 of the request is hereby incorporated by reference for the explanation of the teachings provided in JP '401 regarding a method of two-shot injection molding of a part utilizing a common mold core. These teachings were not present in the prosecution of the application which became the '184 patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable. Accordingly, JP '401 raises a substantial new question of patentability as to claims 1 and 10, which question has not been decided in previous examination of the '184 patent.

**The request indicates that the Requestor considers the combination of JP '449 and the Admitted State of the Prior Art as raising a substantial new question of patentability for claims 1 and 6-9 of the '184 patent.**

Application/Control Number:                                          Page 6
90/008,976
Art Unit: 3991

It is agreed that the combination of JP '449 and the Admitted State of the Prior

Art raises an SNQ as to claims 1 and 6-9 of the '184 patent. The bottom of page 6

through the top of page 9, page 22 beginning at "E." through the top of page 27 and

page 54 through the top of page 60 of the request is hereby incorporated by reference

for the explanation of the Admitted State of the Prior Art and the teachings in JP '449

regarding a method of molding a two-component part. These combined teachings were

not present in the prosecution of the application which became the '184 patent. Further,

there is a substantial likelihood that a reasonable examiner would consider these

teachings important in deciding whether or not these claims are patentable.

Accordingly, the combination of JP '449 and the Admitted State of the Prior Art, raise a

substantial new question of patentability as to claims 1 and 6-9, which question has not

been decided in previous examination of the '184 patent.


**The request indicates that the Requestor considers the combination of JP**

**'449, the Admitted State of the Prior Art and Schad as raising a substantial new**

**question of patentability for claim 10 of the '184 patent.**

It is agreed that the combination of JP '449, the Admitted State of the Prior Art

and Schad raises an SNQ as to claim 10 of the '184 patent. Page 60 of the request is

hereby incorporated by reference for the explanation of the teachings of Schad

regarding the separation of mold components in a two-shot molding process as

applicable to the combination of the JP '449 and the Admitted State of the Prior Art.

These combined teachings were not present in the prosecution of the application which

Application/Control Number:                                    Page 7
90/008,976
Art Unit: 3991

became the '184 patent. Further, there is a substantial likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not this claim

is patentable. Accordingly, the combination of JP '449, the Admitted State of the Prior

Art and Schad, raises a substantial new question of patentability as to claim 10, which

question has not been decided in previous examination of the '184 patent.


**The request indicates that the Requestor considers the combination of JP**

**'449 and Modern Plastics as raising a substantial new question of patentability for**

**claim 1 of the '184 patent.**

It is agreed that the combination of JP '449 and Modern Plastics raises an SNQ

as to claim 1 of the '184 patent. Pages 60-64 of the request are hereby incorporated by

reference for the explanation of the combination of the teachings of JP '449 and Modern

Plastic regarding a two-shot molding process. These combined teachings were not

present in the prosecution of the application which became the '184 patent. Further,

there is a substantial likelihood that a reasonable examiner would consider these

teachings important in deciding whether or not this claim is patentable. Accordingly, the

combination of JP '449 and Modern Plastics raises a substantial new question of

patentability as to claim 1, which question has not been decided in previous

examination of the '184 patent.

Application/Control Number:                                    Page 8
90/008,976
Art Unit: 3991

     **The request indicates that the Requestor considers the combination of JP**

**'227 and Modern Plastics as raising a substantial new question of patentability for**

**claims 1, 2, 4, and 6-10 of the '184 patent.**

     It is agreed that the combination of JP '227 and Modern Plastics raises an SNQ

as to claims 1, 2, 4 and 6-10 of the '184 patent. Page 65 through the top of page 68 of

the request is hereby incorporated by reference for the explanation of the combination

of teachings of JP '227 and Modern Plastics regarding a two-shot molding process.

These combined teachings were not present in the prosecution of the application which

became the '184 patent. Further, there is a substantial likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not these

claims are patentable. Accordingly, the combination of JP '227 and Modern Plastics

raises a substantial new question of patentability as to claims 1, 2, 4 and 6-10, which

question has not been decided in previous examination of the '184 patent.

     **The request indicates that the Requestor considers the combination of**

**either JP '022 or JP '401 and Promot 100 as raising a substantial new question of**

**patentability for claims 6-8 of the '184 patent.**

     It is agreed that the combination of JP '022 or JP '401 in view of Promot 100

raises an SNQ as to claims 6-8 of the '184 patent. The bottom of page 67 through the

top of page 72 is hereby incorporated by reference for the explanation of the

combination of teachings of JP '022 or JP '401 with Promot 100 regarding a two-shot

molding process. While no date has been supplied for Promot 100, it is noted that

Application/Control Number:                                          Page 9
90/008,976
Art Unit: 3991

during prosecution of the application which became the '184 patent, an IDS was

submitted (6/16/1988) citing Promot 100 and noting that Figures 1 through 4 of Promot

11 illustrate the prior art described in the Background portion of the specification of the

application which became the '184 patent. These combined teachings were not present

in the prosecution of the application which became the '184 patent. Further, there is a

substantial likelihood that a reasonable examiner would consider these teaching

important in deciding whether or not these claims are patentable. Accordingly, the

combination of JP '022 or JP '401 and Promot 100, raises a substantial new question of

patentability as to claims 6-8, which question has not been decided in previous

examination of the '184 patent.


**The request indicates that the Requestor considers the combination of**

**either JP '227, JP '022 or JP '401 with either Blummer or Soreneson as raising a**

**substantial new question of patentability for claim 9 of the '184 patent.**

It is agreed that the combination of either JP '227, JP '022 or JP '401 in view of

either Bummer or Sorensen raises an SNQ as to claim 9 of the '184 patent. The bottom

of page 72 through page 74 of the request is hereby incorporated by reference for the

explanation of the combination of the teachings of any of JP '227, JP '022 or JP '401

and either Blummer or Sorensen regarding the securing of two mold components in a

two-shot molding process. These combined teachings were not present in the

prosecution of the application which became the '184 patent. Further, there is a

substantial likelihood that a reasonable examiner would consider these teachings

Application/Control Number: ·                                    Page 10
90/008,976
Art Unit: 3991

important in deciding whether or not this claim is patentable. Accordingly, the

combination of any of JP '227, JP '022 or JP '401 with either Blummer or Sorensen

raises a substantial new question of patentability as to claim 9, which question has not

been decided in previous examination of the '184 patent.

### *Duty of Disclosure*

The patent owner is reminded of the continuing responsibility under 37 CFR

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving Patent No. 4,935,184 throughout the course of this reexamination

proceeding. The third party requester is also reminded of the ability to similarly apprise

the Office of any such activity or proceeding throughout the course of this reexamination

proceeding. See MPEP §§ 2207, 2282 and 2286.

### *Service of Papers*

After the filing of a request for reexamination by a third party requester, any

document filed by either the patent owner or the third party requester must be served on

the other party (or parties where two or more third party requester proceedings are

merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. See

37 CFR 1.550(f).

### *Waiver of Right to File Patent Owner Statement*

In a reexamination proceeding, Patent Owner may waive the right under 37

C.F.R. 1.530 to file a Patent Owner Statement. The document needs to contain a

Application/Control Number:                                    Page 11
90/008,976
Art Unit: 3991

statement that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent

Owner Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the

request for reexamination was made by a third party requester, see 37 C.F.R 1.550(f).


## Correspondence

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Krisanne Jastrzab whose telephone number is 571-272-

1279. The examiner can normally be reached on Mon.-Thurs. 6:00am-4:30pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Deborah Jones can be reached on 571-272-1535

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number:                                    Page 12
90/008,976
Art Unit: 3991

### Notice Re Patent Owner's Correspondence Address

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.
Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                     (571) 272-7705
Reexamination Facsimile Transmission No.      (571) 273-9900

Please mail any communications to:

Mail Stop *Ex Parte* Reexam
ATTN:  Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450

Application/Control Number:                                    Page 13
90/008,976
Art Unit: 3991

        Alexandria, VA  22313-1450


Please FAX to:
        (571) 273-9900
        Central Reexamination Unit


Please hand-deliver to:
        Customer Service Window
        Randolph Building
        401 Dulany St.
        Alexandria, VA  22314


/Krisanne Jastrzab/                              /Alan Diamond/
Primary Examiner                                 Primary Examiner
Central Reexamination Unit                       Art Unit 3991
Art unit 3991
(571) 272-1279                        JERRY D. JOHNSON
                                      PRIMARY EXAMINER
                                       CRU · AU 3991

# Exhibit C

ORIGINAL

1

2

3

4

5

J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151
michael@kalerlaw.com

E-FILING

FILED

2008 JUN 26 A 11: 53

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Feelaid
S1
14

6

7

8

9

MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150
mak@kramerlawip.com

ADR

10

11

12

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

13

14

15

16

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

C 08  03094

17

18

19

20

21

22

23

24

25

26

JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND
DEVELOPMENT TRUST,

           Plaintiff

   v.

PHILLIPS PLASTICS CORPORATION,
a Wisconsin Corporation; and DOES 1 –
100,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

**COMPLAINT FOR PATENT
INFRINGEMENT**

**REQUEST FOR JURY TRIAL**

27

28

Plaintiff JENS E. SORENSEN, as TRUSTEE OF THE SORENSEN RESEARCH AND DEVELOPMENT TRUST ("SRDT"), for its Complaint for Patent Infringement against Defendants alleges as follows:

## THE PARTIES

1.    SRDT is a California resident, and the trustee of a trust organized according to California law, and owner of all rights to United States Patent No. 4,935,184 (hereinafter "'184 patent").  A true and correct copy of the '184 patent is attached hereto as Exhibit A.

2.    On information and belief, Defendant PHILLIPS PLASTICS CORPORATION ("Phillips") is a corporation having some of its offices located at 547 East Weddell Drive, Suite 5, Sunnyvale, California.  On information and belief, PHILLIPS is, or has been, engaged in the manufacture, import, sale, and/or offer for sale within the United States, including this District, of certain products accused of having been manufactured by a process that infringes the '184 patent, hereinafter "Accused Products".

3.    Defendants DOES 1 – 100 are other persons or entities, presently unidentified, that have also been engaged, directly or indirectly, in the manufacture, import, sale, and/or offer for sale in the United States of Accused Products.

4.    On information and belief, Defendants have acted as agents of one or more of each other during some or all of the times relative to the subject matter of this Complaint.

## JURISDICTION and VENUE

5.    This action arises under the Patent Laws of the United States of America, Title 35, United States Code.  Jurisdiction is founded on Title 28, United States Code §§ 1331, 1332(a), and 1338(a).

2.

Case No. _____

6.     On information and belief, venue in this district is proper under 28 U.S.C. §§ 1391 and 1400(b) because Defendants have committed acts of infringement in this District.

7.     This Court has personal jurisdiction over Defendants because they have manufactured within, imported into, offered for sale, and/or sold Accused Products in this District.

## CLAIM FOR RELIEF

### (Patent Infringement)

8.     SRDT realleges and incorporates herein by reference paragraphs 1 through 7, inclusive, as though fully set forth herein.

9.     The '184 patent entitled "Stabilized Injection Molding When Using a Common Mold Part With Separate Complimentary Mold Parts," was issued on June 19, 1990.

10.     On information and belief, Defendants have, within the past six years and up through and including February 5, 2008, made, imported into, sold or offered for sale within the United States and this District, Accused Products manufactured through processes which incorporate all elements of the '184 patented process.

11.     The Accused Products include all the following specifically identified products:

Craftsman 12' Tape Measure, Part No. 39698;

Craftsman 25' Tape Measure, Part No. 39674;

Craftsman 26' Tape Measure, Part No. 39534;

and all additional of Defendants' products sold under any name which were manufactured utilizing similar processes, including but not limited to, any other product manufactured using the same injection mold as any of the products above, subject to the exclusion set forth in paragraph 12.

3.

Case No. _____

12.     The Accused Products herein expressly excludes those products sold under various names by The Black & Decker Corporation and its subsidiaries which are the subject of a separate lawsuit entitled *Sorensen v. Black & Decker, et al*, Case No. 06CV1572 in the Southern District of California ("Black & Decker Case"). This separate action is required because Defendant Phillips has expressly taken the position in the Black & Decker Case, that non-Black & Decker products manufactured by Defendant Phillips are not included therein, and has refused to provide discovery of non-Black & Decker products on that basis.

13.     Defendants have not obtained a license or any other valid authorization for import, sale, or offer for sale in the United States of products manufactured through use of the '184 patented process.

14.     Defendants have been on constructive notice of the '184 patent since its issuance on June 19, 1990.

15.     Upon information and belief, Defendants have been on actual express notice of the '184 patented process since at least December 5, 1994.

16.     Upon information and belief, the Defendants have engaged in manufacture, import, sale, and/or offer for sale within the United States, including this District, products that have dual-layer external plastic housings.

17.     Upon information and belief, the Accused Products identified herein and as-yet-unidentified Accused Products manufactured through the same or substantially similar process have been manufactured through processes which incorporate all elements of the '184 patented process.

18.     On information and belief, Defendant made, used, imported, sold and/or offered for sale within the United States and this District, during the past six years and prior to February 5, 2008, the Accused Products using the '184 patent process, without authority to do so, in violation of 35 U.S.C. § 271, knowing such to be an infringement of the '184 patent, and in wanton and willful disregard of Plaintiff's '184 patent rights.

Case No. _____

19.    On information and belief, Defendants contributed to infringement of the '184 patent and actively induced others to infringe the '184 patent by virtue of making, importing, selling, using and/or offering for sale within the United States and this District, in violation of 35 U.S.C. § 271, Accused Products manufactured using the '184 patent process in wanton and willful disregard of Plaintiff's '184 patent rights.

20.    On information and belief, the conduct of Defendants in willfully infringing the '184 patent, and contributing to infringement and inducing others to infringe the '184 patent, by the acts alleged hereinabove despite being on both constructive notice and actual notice, was deliberate, thus making this an exceptional case within the meaning of 35 U.S.C. § 285.

21.    On information and belief, Plaintiff has suffered damages by reason of Defendants' infringing conduct alleged hereinabove.  The damages for Defendants' conduct are in an amount that constitutes at least a reasonable royalty for all of Defendants' sales of the Accused Products for the period beginning six years prior to filing of this Complaint and continuing until February 5, 2008.

22.    On information and belief, the reasonable royalty owed to Plaintiff from Defendants is at least eight percent (8%) of gross revenues from sales of the Accused Products from six years prior to filing of this Complaint and continuing until February 5, 2008, and according to proof at trial.

23.    On information and belief, the reasonable royalty owed to SRDT from Defendants should be trebled on account of willful infringement by Defendants, and according to proof at trial.

5.

Case No. _____

# **PRAYER FOR RELIEF**

**WHEREFORE,** SRDT prays that judgment be entered as follows:

a.    Defendants are adjudicated and decreed to have infringed the '184 patent;

b.    Defendants are adjudicated and decreed to have contributed to the infringement of the '184 patent and to have induced others to infringe the '184 patent;

c.    Defendants are ordered to account for damages adequate to compensate Plaintiff for the infringement of '184 patent, their contributory infringement of the '184 patent, and their inducement of infringement of the '184 patent, in the amount of at least eight percent (8%) of gross sales during the infringing time period as a reasonable royalty for all relevant sales of Accused Products currently known or discovered during the course of this lawsuit and according to proof at trial, and such damages are awarded to Plaintiff;

d.    Such damages as are awarded are trebled by the Court pursuant to 35 U.S.C. § 284 by reason of the willful, wanton, and deliberate nature of the infringement;

e.    That this case is decreed an "exceptional case" and Plaintiff is awarded reasonable attorneys' fees by the Court pursuant to 35 U.S.C. § 285;

f.    For interest thereon at the legal rate;

g.    For costs of suit herein incurred;

h.    For such other and further relief as the Court may deem just and proper.

Case No. _____

1

## DEMAND FOR JURY TRIAL

2

3      SRDT respectfully requests that its claims be tried to a jury.

4

5    DATED this Wednesday, June 25, 2008.

6                              JENS ERIK SORENSEN, as Trustee of
                               SORENSEN RESEARCH AND DEVELOPMENT
7                              TRUST, Plaintiff

8

9    _____

10   J. Michael Kaler, Esq.
     Attorney for Plaintiff

11

12

13   _____

14   Melody A. Kramer, Esq.
     Attorney for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7.                                         Case No. _____

# EXHIBIT A

# United States Patent [19]

## Sorensen

[11] Patent Number: 4,935,184

[45] Date of Patent: Jun. 19, 1990

[54] STABILIZED INJECTION MOLDING WHEN USING A COMMON MOLD PART WITH SEPARATE COMPLIMENTARY MOLD PARTS

[75] Inventor: Jens O. Sorensen, Rancho Santa Fe, Calif.

[73] Assignee: Primtec, Rancho Santa Fe, Calif.

[21] Appl. No.: 385,812

[22] Filed: Jul. 27, 1989

### Related U.S. Application Data

[63] Continuation of Ser. No. 152,670, Feb. 5, 1988, abandoned.

[51] Int. Cl.⁵ .................................... B29C 45/16

[52] U.S. Cl. ......................... 264/246; 264/255; 264/328.8; 425/129.1

[58] Field of Search .......... 264/245, 246, 255, 328.1, 264/328.8, 328.11, 328.12; 425/127, 129.1, 130

[56] References Cited

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,543,336 | 12/1970 | Cooper | 264/246 |
| 3,737,272 | 6/1973 | Segmuller | 425/248 |
| 3,832,110 | 8/1974 | Hehl | 425/130 |
| 4,381,272 | 4/1983 | Sorensen | 264/328.8 |
| 4,422,995 | 12/1983 | Schad | 425/129.1 |
| 4,439,256 | 1/1984 | Ziegler | 264/242 |
| 4,508,676 | 4/1985 | Sorensen | 264/328.8 |

#### FOREIGN PATENT DOCUMENTS

17577 1/1972 Australia .

### OTHER PUBLICATIONS

Promat 100-102/102, Nestal.

*Primary Examiner*—Jill L. Heitbrink
*Attorney, Agent, or Firm*—Edward W. Callan

[57]                    ABSTRACT

A process for injection molding plastic products having a closed end and an open end with laminated walls terminating in a rim at the open end. A first common mold part is combined with a first complementary mold part to assemble a first mold cavity in which the first plastic material is injected until it reaches the portion of the first mold cavity that defines the rim of the product. Portions of the first complementary mold part contact portions of the first common mold part to rigidly secure the mold parts in position in relation to each other in order to impede movement of the mold parts in relation to each other during injection of the first plastic material into the first mold cavity. The first plastic material is shaped such that when it is contained after solidification in a second mold cavity it provides one or more stabilizing regions that rigidly secure the first common mold part in position in relation to the second complementary mold part in order to impede movement of such mold parts in relation to each other during the injection of a second plastic material into the second mold cavity. A second plastic material having different characteristics than the first plastic material is injected until it reaches the portion of the second mold cavity that defines the rim of the product to form a laminated wall.

10 Claims, 5 Drawing Sheets



U.S. Patent    Jun. 19, 1990    Sheet 1 of 5    4,935,184



FIG. IA



FIG. IB

FW 003



FIG. 2A

FIG. 2B

FW 004





FW 005

U.S. Patent    Jun. 19, 1990    Sheet 4 of 5    4,935,184

FIG. 4



FIG. 5



FW 006



FIG. 6



FIG. 7

FW 007

1

4,935,184

2

## STABILIZED INJECTION MOLDING WHEN USING A COMMON MOLD PART WITH SEPARATE COMPLIMENTARY MOLD PARTS

This is a continuation of co-pending application Ser. No. 07/152,670 filed on Feb. 5, 1988 now abandoned.

### BACKGROUND OF THE INVENTION

The present invention generally pertains to injection molding of plastic products and is particularly directed to stabilizing the dimensions of mold cavities during the injection steps when using a common mold part and at least two complementary mold parts to assemble separate mold cavities for receiving separate injections of plastic materials to produce a thin-walled, hollow plastic product.

The use of a common mold part with at least two complementary mold parts to provide separate mold cavities for receiving separate injections of plastic materials for producing a hollow plastic product is known. In one known prior art method of cyclic injection molding a hollow plastic product, a first mold cavity is defined by a first common mold part and a first complementary mold part; and a second mold cavity is defined by the first common mold part and a second complementary mold part. The method includes the steps of:

(a) combining the first common mold part with the first complementary mold part to assemble the first mold cavity;

(b) injecting a first plastic material into the first mold cavity;

(c) solidifying the injected first plastic material to form a first plastic material component;

(d) combining the first common mold part with the second complementary mold part to assemble the second mold cavity with the first plastic material component attached to the first common mold part so that when the second mold cavity is assembled the first plastic material component is contained within the second mold cavity;

(e) injecting a second plastic material into the second mold cavity while the first plastic material component is contained therein; and

(f) solidifying the injected second plastic material so as to form a second plastic material component that fuses with the first plastic material component to produce a hollow plastic product.

It also is known to expand upon this method by further using a third mold cavity defined by a second common mold part and the first complementary mold part, and a fourth mold cavity defined by the second common mold part and the second complementary mold part. The method further includes the step of:

(h) during step (d), combining the second common mold part with the first complementary mold part to assemble the third mold cavity;

(i) during step (e), injecting a third plastic material into the third mold cavity;

(j) during step (f), solidifying the injected third plastic material to form a third plastic material component;

(k) during step (a), combining the second common mold part with the second complementary mold part to assemble the fourth mold cavity with the third plastic material attached to the second common mold part so that when the fourth mold cavity is assembled the third plastic material is contained within the fourth mold cavity;

(l) during step (b), injecting the fourth plastic material into the fourth mold cavity while the solidified third plastic material is contained therein; and

(m) during step (c), solidifying the injected fourth plastic material so as to form a fourth plastic material component that fuses with the third plastic material to produce a second said hollow plastic product.

This method has been used for producing hollow plastic products having composite walls of separately injected plastic materials. In performing such method, the first plastic material is injected until it reaches the parting line between the first common mold part and the first complementary mold part; the second plastic material is injected until it reaches the parting line between the first common mold part and the second complementary mold part; the third plastic material is injected until it reaches the parting line between the second common mold part and the first complementary mold part; and the fourth plastic material is injected until it reaches the parting line between the second common mold part and the second complementary mold part.

Typically, all four plastic materials are the same.

### SUMMARY OF THE INVENTION

The present invention provides a method and apparatus for injecting molding hollow, thin-walled plastic products, having a closed end and an open end with laminated walls terminating in a rim at the open end, where relative movement between the common mold part and the complementary mold parts is impeded during injection of the plastic materials.

According to the present invention, the first and second plastic materials have different characteristics, and in the injection molding method described above, the step of solidifying the injected first plastic material to form the first plastic material component (step (c)) includes the step of

(g) shaping the first plastic material component such that when the first plastic material component is so contained in the second mold cavity the first plastic material component provides one or more stabilizing regions that rigidly secure the first common mold part in position in relation to the second complementary mold part in order to impede movement of the first common mold part in relation to the second complementary mold part during the injection of the second plastic material into the second mold cavity, to thereby produce a thin-walled plastic product having controlled dimension in that the wall-thickness dimensions of the second mold cavity are stabilized by the stabilizing regions.

The step of injecting the first plastic material into the first mold cavity (step (b)) includes the step of

(h) injecting the first plastic material until it reaches the portion of the first mold cavity that defines the rim of the product; and

the step of injecting the second plastic material into the second mold cavity (step (e)) includes the step of

(i) injecting the second plastic material until it reaches the portion of the second mold cavity that defines the rim of the product.

When the method of the present invention utilizes two common mold cavities, such as described above, the step of solidifying the injected third plastic material to form the third plastic material component (step (j)) includes the step of shaping the third plastic material component such that when the third plastic material

FW 008

3

4,935,184

4

component is so contained in the fourth mold cavity the solidified third plastic material provides one or more stabilizing regions that rigidly secure the second common mold part in position in relation to the second complementary mold part in order to impede movement of the second common mold part in relation to the second complementary mold part during the injection of the fourth plastic material into the fourth mold cavity, to thereby produce a second thin-walled plastic product having controlled dimensions.

The method of the present invention may also be used for molding a product having a side wall including an approximately longitudinal strip that may be transparent to provide a transparent window in the side wall. This feature is particularly advantageous when it is desired to provide a longitudinal window in the side wall in order to monitor the level of a substance, such as a fluid, contained in the plastic product. In one embodiment, the first plastic material component is shaped to provide at least one stabilizing region that is transverse to a parting line between the first common mold part and the first complementary mold part, whereby the longitudinal strip is defined by the transverse stabilizing region. A transparent window is provided in the side wall by injecting a transparent first plastic material into the first mold cavity. A nontransparent second plastic material is injected into the second mold cavity to provide a nontransparent background for printing in the remainder of the side wall. In an alternative embodiment, the first plastic material component is shaped in such that when the first plastic material component is contained in the second mold cavity, the second mold cavity defines at least one unfilled cavity region that is transverse to a parting line between the first common mold part and the second complementary mold part, whereby the longitudinal strip is defined by the unfilled transverse cavity region. In this embodiment, a transparent window is provided in the side wall by injecting a transparent second plastic material into the second mold cavity; and a nontransparent first plastic material is injected into the first mold cavity to provide a nontransparent background for printing in the remainder of the side wall.

In another aspect of the method of the present invention, the step of shaping the first plastic material component (step g) may further include the step of providing a first complementary mold part that is dimensioned in relation to the first common mold part such that when combined with the first common mold part to assemble the first mold cavity, portions of the first complementary mold part contact portions of the first common mold part to rigidly secure the first common mold part in position in relation to the first complementary mold part in order to impede movement of the first common mold part in relation to the first complementary mold part during the injection of the first plastic material into the first mold cavity.

The present invention further provides apparatus for performing the method of the present invention and hollow, thin-walled plastic products molded according to the method of the present invention.

Additional features of the present invention are described in relation to the description of the preferred embodiments.

BRIEF DESCRIPTION OF THE DRAWING

FIGS. 1A and 1B are sectional views illustrating a first mold cavity assembled by combining a first com-

mon mold part with a first complementary mold part. FIG. 1A is a top sectional view taken along lines A—A in FIG. 1B; and FIG. 1B is a side sectional view taken along lines B—B in FIG. 1A. FIGS. 1A and 1B further show the first plastic material injected into the first mold cavity.

FIGS. 2A and 2B are sectional views illustrating a second mold cavity assembled by combining the first common mold part of FIGS. 1A and 1B with a second complementary mold part. FIG. 2A is a top sectional view taken along lines A—A in FIG. 2B; and FIG. 2B is a side sectional view taken along lines B—B in FIG. 2A. FIGS. 2A and 2B further show the first plastic material component contained in the second mold cavity and the second plastic material injected into the second mold cavity.

FIGS. 3A through 3D illustrate a series of steps in the performance of a preferred embodiment of the method of the present invention.

FIG. 4 illustrates a first plastic material component formed in an alternative embodiment of the method of the present invention.

FIG. 5 is a sectional view illustrating a second mold cavity containing the first plastic material component of FIG. 4. FIG. 5 also is a sectional view illustrating a product molded according to such alternative embodiment of the method of the present invention.

FIG. 6 illustrates a first plastic material component formed in a further alternative embodiment of the method of the present invention.

FIG. 7 is a sectional view illustrating a second mold cavity containing the first plastic material component of FIG. 6. FIG. 7 also provides a sectional view of a product molded according to such further alternative embodiment of the method of the present invention.

DESCRIPTION OF THE PREFERRED
EMBODIMENTS

Referring to FIGS. 1A and 1B the apparatus of a preferred embodiment of the present invention includes a first common mold part 10 and first complementary mold part 12. The first common mold part 10 is combined with the first complementary mold part 12 to assemble a first mold cavity 14. The first complementary mold part 12 is dimensioned in relation to the first common mold part 10 such that when so combined with the first common mold part 10 to assemble the first mold cavity 14, portions 16 of the first complementary mold part 12 contact portions 18 of the first common mold part 10 to rigidly secure the first common mold part 10 in position in relation to the first complementary mold part 12 in order to impede movement of the first common mold part 10 in relation to the first complementary mold part 12 during injection of the first plastic material 20 into the first mold cavity 14. The first plastic material 20 is injected into the mold cavity 14 through a gate 22 and a runner 24 in the first complementary mold part 12.

The injected first plastic material 20 is solidified to form a first plastic material component 20 by cooling the injected first plastic material in the first mold cavity 14, whereby the first plastic material component 20 is shaped in accordance with the dimensions of the first mold cavity 14. In an alternative embodiment, the first plastic material component may be further shaped following removal of the first complementary mold part 12.

FW 009

4,935,184

5

Referring to FIGS. 2A and 2B the apparatus of a preferred embodiment of the present invention includes a second complementary mold part 26. The first common mold part 10 is combined with the second complementary mold part 26 to assemble a second mold cavity 28 with the first plastic material component 20 attached to the first common mold part 10, so that when the second mold cavity 28 is assembled, the first plastic material component 20 is contained within the second mold cavity 28.

The first plastic material component 20 is shaped such that when the first plastic material component 20 is so contained in the second mold cavity 28 the first plastic material component 20 provides one or more stabilizing regions 30 that rigidly secure the first common mold part 10 in position in relation to the second complementary mold part 26 in order to impede movement of the first common mold part 10 in relation to the second complementary mold part 26 during the insertion of a second plastic material 32 into the second mold cavity 28.

The second plastic material 32 is injected into the second mold cavity 28 through a gate 34 and a runner 36 in the second complementary mold part 26 while the first plastic material component 20 is contained in the second mold cavity 28.

The injected second plastic material 32 is solidified by cooling in the second mold cavity 28 so as to form a second plastic material component 32 that fuses with the first plastic material component 20 to produce thin-walled hollow plastic product 38 having controlled dimensions.

A preferred embodiment of a method of cyclic injection molding of hollow, thin-walled plastic products according to the present invention, utilizing two common mold parts and two complementary mold parts to provide four mold cavities is described with reference to FIGS. 3A through 3D.

Referring to FIG. 3A, a second common mold part 40 is combined with the first complementary mold part 12 to assemble a third mold cavity 42; while at the same time the first common mold part 10 is combined with the second complementary mold part 26 to assemble a second mold cavity 28, with the first plastic material component 20 attached to the first common mold part 10, so that when the second mold cavity 28 is assembled, the first plastic material component 20 is contained within the second mold cavity 28. The formation of the first plastic material component 20 is discussed above in relation to FIGS. 1A and 1B.

A third plastic material 44, which may be the same as the first plastic material 20, is injected into the third mold cavity 42 through the gate 22 and the runner system 24 contained in the first complementary mold part 12; while at the same time, the second plastic material 32 is injected into the second mold cavity 28 through the gate 34 and a runner system 36 contained in the second complementary mold part 26.

The injected third plastic material 44 is solidified by cooling in the third mold cavity 42 to form a third plastic material component 44; while at the same time the injected second plastic material 32 is solidified by cooling in the second mold cavity 28 so as to form the second plastic material component 28 that fuses with the first plastic material component 20 to produce the hollow, thin-walled plastic product 38.

Referring to FIG. 3B, the first common mold part 10 and the second common mold part 40 are separated

6

from the second complementary mold part 26 and the first complementary mold part 12 respectively; and the molded hollow, thin-walled plastic product 38 is ejected from first common mold part 10, while the third plastic material component 44 is retained on the third common mold part 40. The positions of the first common mold part 10 and the second common mold part 40 are then interchanged from those shown in FIG. 3B to those shown in FIG. 3C.

Referring to FIG. 3C, the first common mold part 10 is combined with the first complementary mold part 12 to assemble the first mold cavity 14; while at the same time the second common mold part 40 is combined with the second complementary mold part 26 to assemble a fourth mold cavity 46, with the first plastic material component 44 attached to the third common mold part 40, so that when the fourth mold cavity 46 is assembled, the third plastic material component 44 is contained within the fourth mold cavity 46. The formation of the third plastic material component 44 is discussed above in relation to FIG. 3A.

The first plastic material 20, which may be the same as the third plastic material 44, is injected into the first mold cavity 14 through the gate 22 and the runner system 24 contained in the first complementary mold part 12; while at the same time, a fourth plastic material 50, which may be identical to the second plastic material 32, is injected into the fourth mold cavity 46 through the gate 34 and a runner system 36 contained in the second complementary mold part 26.

The injected first plastic material 20 is solidified by cooling in the first mold cavity 14 to form another first plastic material component 20; while at the same time the injected fourth plastic material 50 is solidified by cooling in the fourth mold cavity 46 so as to form the second plastic material component 46 that fuses with the third plastic material component 44 to produce a second hollow, thin-walled plastic product 52.

Referring to FIG. 3D, the first common mold part 10 and the second common mold part 40 are separated from the first complementary mold part 12 and the second complementary mold part 26 respectively; and the second molded hollow, thin-walled plastic product 52 is ejected from common mold part 40, while the first plastic material component 20 is retained on the first common mold part 10. The positions of the first common mold part 10 and the second common mold part 40 are then interchanged from those shown in FIG. 3D to those shown in FIG. 3A, and the cycle is repeated.

As described above, the first plastic material component 20 is shaped such that when the first plastic material component 20 is contained in the second mold cavity 28, the first plastic material component 20 provides one or more stabilizing regions 30 that rigidly secure the first common mold part 10 in relation to the second complementary mold part 26 in order to impede movement of the first common mold part 10 in relation to the second complementary mold part 26 during injection of the second plastic material 32 into the second mold cavity 28;

Likewise, the third plastic material component 44 is shaped such that when the third plastic material component 44 is contained in the fourth mold cavity 46, the third plastic material component 44 provides one or more stabilizing regions that rigidly secure the second common mold part 40 in position in relation to the second complementary mold part 26 in order to impede

FW 010

7

4,935,184

8

movement of the second common mold part 40 in relation to the second complementary mold part 26 during injection of the fourth plastic material 50 into the fourth mold cavity 68.

The method described above with reference to FIGS. 3A through 3D may be used for producing hollow, thin-walled plastic products having laminated walls of different plastic materials. In performing such method, the first plastic material 20 is injected until it reaches a parting line 54 between the first common mold part 10 and the first complementary mold part 12 (FIG. 3C); and the second plastic material 32 is injected until it reaches a parting line 56 between the first common mold part 10 and the second complementary mold part 26 (FIG. 3A). Likewise, the third plastic material 44 is injected until it reaches a parting line 58 between the second common mold part 40 and the first complementary mold part (FIG. 3A); and the fourth plastic material 50 is injected until it reaches a parting line 60 between the second common mold part 40 and the second complementary mold part 26.

Referring to FIGS. 6 and 7, the method of the present invention also may be used for molding a product 62 having a side wall 64 including at least one approximately longitudinal strip that may be transparent to thereby provide a transparent window in the side wall 64.

In one embodiment, the first plastic material component 66 is shaped to provide at least one stabilizing region 68 that is transverse to a parting line 56 (FIG. 3C) between the first common mold part 10 and the first complementary mold part 12, whereby each longitudinal strip is defined by a transverse stabilizing region 68. The stabilizing regions 68 need not extend all the way to the parting line 56. A transparent window is provided in the side wall 64 by injecting a transparent first plastic material into the first mold cavity to provide the first plastic material component 66. A nontransparent second plastic material 72 is injected into the second mold cavity 74 to provide a nontransparent background for printing in the remainder of the side wall 64.

In an alternative embodiment, the first plastic material component 66 is shaped such that when the first plastic material component 66 is contained in the second mold cavity 74, the second mold cavity 74 defines at least one unfilled cavity region 72 that is transverse to a parting line 56 (FIG. 3A) between the first common mold part 10 and the second complementary mold part 26, whereby longitudinal strips may be provided in the unfilled transverse cavity regions 72. The unfilled transverse cavity regions 72 need not extend all the way to the parting line 56. In this embodiment, transparent windows are defined in the side wall 64 by injecting a transparent second plastic material into the second mold cavity 74 to fill the transverse cavity regions 72. Prior thereto, a nontransparent first plastic material is injected into the first mold cavity to form the first plastic material component 66 and thereby provide a nontransparent background for printing in the remainder of the side wall 64.

Referring to FIGS. 6 and 7, in a further preferred embodiment, the first plastic material component 82 that is shaped as shown in FIG. 6 to include a plurality of symmetrically disposed stabilizing regions 84, which extend approximately longitudinally over a portion of the side wall 86 of the molded product 88. The first plastic material component 82 is molded in a first mold cavity in accordance with the teaching of applicant's

U.S. Pat. application No. 7,463, filed Jan. 26, 1987 and in accordance of the above description to the extent that such description is compatible with the teaching of application Ser. No. 7,463. After the first plastic material component 82 is formed in a first mold cavity, which is assembled by combining a first complementary mold part 12 and a first common mold part 10, the first plastic component 82 is retained on the first common mold part 10 while the first common mold part 10 is combined with a second complementary mold part 26 to assemble a second mold cavity 90, as shown in FIG. 7.

Referring to FIG. 7, the first plastic material component 82 is shaped such that when the first plastic material component 82 is contained in the second mold cavity 90, the first plastic material component 82 provides one or more stabilizing regions 84 that rigidly secure the first common mold part 10 in position in relation to the second complementary mold part 26 in order to impede movement of the first common mold part 10 in relation to the second complementary mold part 26 during injection of the second plastic material 92 into the second mold cavity 90.

The injected second plastic material 92 is solidified by cooling in the second mold cavity 90 to form a second plastic material component 92 that fuses with the first plastic material component 82 to produce the hollow, thin-walled, plastic product 88. The side wall 86 of the molded product 88 thus includes two layers of plastic 82, 92. The molded product 88 has controlled dimensions, is generally shaped as shown in FIG. 6, and has a lateral cross section as shown in FIG. 7. The side wall 86 of the molded product thus includes two layers of plastic 82, 92.

The stabilizing regions 84 have a wall thickness equal to the thickness of the side wall 86 and are transverse to the parting line 56 (FIG. 3A) between the first common mold part 10 and the second complementary mold part 26 to thereby provide longitudinal transparent windows 94 in the side wall 86. The stabilizing regions 84 need not extend all the way to the parting line 56. In a preferred embodiment of this product, the other side-wall layer 96 is nontransparent and extends throughout the majority of the side wall 86.

The present invention may be modified from the embodiments illustrated and described above. The common mold parts may be cavity mold parts instead of core mold parts, as illustrated and described herein. In addition, injections of plastic material into any given mold cavity may be made through more than one gate. Also, injections of plastic materials may be made into more than two mold cavities simultaneously, whereby the number of mold cavities included in the mold may be a multiple of the number of separate mold cavities required to produce a single product. For example, when using the method described and illustrated herein for producing a product composed of two plastic material components formed following injection of plastic material into two separate mold cavities, the number of mold cavities included in the mold may be any multiple of two, i.e. 2, 4, 6, etc.

The present invention also can be used to mold products including more than two plastic material components formed following injection of plastic material into more than two separate mold cavities. In an embodiment requiring three separate mold cavities, a third complementary mold part is used, and the fused first and second plastic material components are retained on

4,935,184

9

the first common mold part when the first common
mold part is combined with the third complementary
mold part to assemble the third mold cavity, with the
fused first and second mold parts being shaped to stabi-
lize the common mold in relation to the third comple-
mentary mold part during injection of a third plastic
material into the third mold cavity.

The core-stabilization techniques described in appli-
cant's U.S. Pat. Nos. 4,381,275 and 4,508,676 U.S. Pat.
No. 3,737,272 to Stegmeller; and in Australian Patent
Specification 17,577/70 filed by Ryles and published
Jan. 20, 1972 may be used to stabilize the common mold
part in relation to the first complementary mold part
during the injection of the first plastic material in lieu of
the technique described above with relation to FIGS.
1A and 1B.

The first and second plastic materials may be either
the same material or different materials. It is sometimes
advantageous to use first and second plastic materials
having different physical characteristics. For example,
the present invention is ideally suited for molding a
hollow, thin-walled plastic product in which the side
wall must provide both a moisture barrier and a gas
(such as Oxygen) barrier. To mold such a product, a
plastic material having a desirable moisture-barrier
characteristic is selected as one of the injected plastic
materials; and a plastic material having a desirable gas-
barrier characteristic is selected as the other injected
plastic material.

I claim:

1. A method of cyclic injection molding a thin-walled
hollow, plastic product having a closed end and an open
end with laminated walls terminating in a rim at the
open end, utilizing a first mold cavity and a second
mold cavity, the first mold cavity being defined by a
first common mold part and a first complementary mold
part, and the second mold cavity being defined by the
first common mold part and a second complementary
mold part, the method comprising the steps of

(a) combining the first common mold part with the
first complementary mold part to assemble the first
mold cavity;

(b) injecting a first plastic material into the first mold
cavity;

(c) solidifying the injected first plastic material to
form a first plastic material component;

(d) combining the first common mold part with the
second complementary mold part to assemble the
second mold cavity with the first plastic material
component attached to the first common mold part
so that when the second mold cavity is assembled
the first plastic material component is contained
within the second mold cavity;

(e) injecting a second plastic material having different
characteristics than the first plastic material into
the second mold cavity while the first plastic mate-
rial component is contained therein; and

(f) solidifying the injected second plastic material so
as to form a second plastic material component that
fuses with the first plastic material component to
produce a hollow plastic product;

wherein step (c) comprises the step of

(g) shaping the first plastic material component such
that when the first plastic material component is so
contained in the second mold cavity the first plastic
material component provides one or more stabiliz-
ing regions that rigidly secure the first common
mold part in position in relation to the second com-

10

plementary mold part in order to impede move-
ment of the first common mold part in relation to
the second complementary mold part during step
(e), to thereby produce a thin-walled plastic prod-
uct having controlled dimensions;

wherein step (b) comprises the step of

(h) injecting the first plastic material until it reaches
the portion of the first mold cavity that defines the
rim of the product; and

wherein step (e) comprises the step of

(i) injecting the second plastic material until it reaches
the portion of the second mold cavity that defines
the rim of the product.

2. A method according to claim 1 for molding a prod-
uct having a side wall including an approximately longi-
tudinal strip, wherein step (g) comprises shaping the
first plastic material component to provide at least one
said stabilizing region that is transverse to a parting line
between the first common mold part and the first com-
plementary mold part, whereby said longitudinal strip is
defined by said transverse stabilizing region.

3. A method according to claim 2,

wherein step (b) comprises injecting a said first plastic
material that is transparent, whereby said strip
defines a transparent window in the side wall; and

wherein step (e) comprises injecting a said second
plastic material that is nontransparent.

4. A method according to claim 1 for molding a prod-
uct having a side wall including an approximately longi-
tudinal strip, wherein step (g) comprises shaping the
first plastic material component such that when the first
plastic material component is contained in the second
mold cavity, the second mold cavity defines at least one
unfilled cavity region that is transverse to a parting line
between the first common mold part and the second
complementary mold part, whereby said longitudinal
strip is defined by said unfilled transverse cavity region.

5. A method according to claim 4,

wherein step (b) comprises injecting a said first plastic
material that is nontransparent; and

wherein step (e) comprises injecting a said second
plastic material that is transparent, whereby said
strip defines a transparent window in the side wall.

6. A method according to claim 1, for cyclic injection
molding a plurality of thin-walled, hollow, plastic prod-
ucts, further utilizing a third mold cavity and a fourth
mold cavity, the third mold cavity being defined by a
second common mold part and the first complementary
mold part, and the fourth mold cavity being defined by
the second common mold part and the second comple-
mentary mold part, the method further comprising the
steps of

(h) during step (d), combining the second common
mold part with the first complementary mold part
to assemble the third mold cavity;

(i) during step (e), injecting a third plastic material
into the third mold cavity;

(j) during step (f), solidifying the injected third plastic
material to form a third plastic material compo-
nent;

(k) during step (a), combining the second common
mold part with the second complementary mold
part to assemble the fourth mold cavity with the
third plastic material attached to the second com-
mon mold part so that when the fourth mold cavity
is assembled the third plastic material is contained
within the fourth mold cavity;

FW 012

11

(l) during step (b), injecting the fourth plastic material
into the fourth mold cavity while the solidified
third plastic material is contained therein; and

(m) during step (c), solidifying the injected fourth
plastic material so as to form a fourth plastic mate-
rial component that fuses with the third plastic
material to produce a second hollow plastic prod-
uct;

wherein step (l) comprises the step of

(n) shaping the third plastic material component such
that when the third plastic material component is
so contained in the fourth mold cavity the third
plastic material component provides one or more
stabilizing regions that rigidly secure the second
common mold part in position in relation to the
second complementary mold part in order to im-
pede movement of the second common mold part
in relation to the second complementary mold part,
during step (l), to thereby produce a second thin-
walled plastic product having controlled dimen-
sions.

7. A method according to claim 6, for producing said
products having laminated walls,

wherein step (b) comprises the step of

(o) injecting the first plastic material until it reaches
the parting line between the first common mold
part and the first complementary mold part;

wherein step (c) comprises the step of

(p) injecting the second plastic material until it
reaches the parting line between the first common
mold part and the second complementary mold
part;

12

wherein step (l) comprises the step of

(q) injecting the third plastic material until it reaches
the parting line between the second common mold
part and the first complementary mold part; and

wherein step (l) comprises the step of

(r) injecting the fourth plastic material until it reaches
the parting line between the second common mold
part and the second complementary mold part.

8. A method according to claim 6, wherein the first
plastic material is the same as the third plastic material
and the second plastic material is the same as the fourth
plastic material.

9. A method according to claim 1, wherein step (g)
further comprises providing a said first complementary
mold part that is dimensioned in relation to the first
common mold part such that when so combined with
the first common mold part to assemble the first mold
cavity, portions of the first complementary mold part
contact portions of the first common mold part to rig-
idly secure the first common mold part in position in
relation to the first complementary mold part in order
to impede movement of the first common mold part in
relation to the first complementary mold part during
step (b).

10. A method according to claim 1, further compris-
ing the step of

(j) between steps (c) and (d), separating said first
common mold part with the first plastic material
component attached thereto from said first comple-
mentary mold part without dividing that portion of
said first complementary mold part that defines the
rim of the product.

* * * * *

FW 013

# Exhibit D

1  **J. MICHAEL KALER**, SBN 158296
2  KALER LAW OFFICES
3  9930 Mesa Rim Road, Suite 200
   San Diego, California 92121
4  Telephone (858) 362-3151

5  **MELODY A. KRAMER**, SBN 169984
6  KRAMER LAW OFFICE
   9930 Mesa Rim Road, Suite 1600
7  San Diego, California 92121
8  Telephone (858) 362-3150

9  **PATRICIA SHACKELFORD**, SBN 218647
10 9930 Mesa Rim Road, Suite 450
   San Diego, California 92121
11 Telephone (858) 362-3152

12

13 Attorneys for Plaintiff JENS ERIK SORENSEN,
   as Trustee of SORENSEN RESEARCH AND
14 DEVELOPMENT TRUST

15

16

17                     UNITED STATES DISTRICT COURT

18              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

19 JENS ERIK SORENSEN, as Trustee of  ) Case No.   '06 CV 1572   DMS RBB
20 SORENSEN RESEARCH AND             )
   DEVELOPMENT TRUST,                )  **COMPLAINT FOR PATENT**
21                                   )  **INFRINGEMENT**
22                      Plaintiff    )
                                     )
23        v.                         )
                                     )  REQUEST FOR JURY TRIAL
24 THE BLACK & DECKER               )
   CORPORATION, a Maryland          )
25 corporation,                      )
                                     )
26                                   )
                       Defendant.    )
27                                   )

28

FILED

AUG 0 7 2006

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ORIGINAL

1   Plaintiff JENS E. SORENSEN, as TRUSTEE OF THE SORENSEN

2   RESEARCH AND DEVELOPMENT TRUST ("SRDT"), for its Complaint for

3   Patent Infringement against Defendant THE BLACK & DECKER CORPORATION

4   ("B&D"), allege as follows:

5                          **THE PARTIES**

6       1.    SRDT is a California resident, and the trustee of a trust organized

7   according to California law.

8       2.    Defendant B&D is a corporation organized under the laws of Maryland,

9   having a principal office located at 701 East Joppa Road, Towson, Maryland,

10  engaged in the manufacture, import, sale, and or offer for sale within the United

11  States, including this District, of a wide variety of tools, appliances and other

12  equipment.

13                    **JURISDICTION and VENUE**

14      3.    This action arises under the Patent Laws of the United States of

15  America, Title 35, United States Code.  Jurisdiction is founded on Title 28, United

16  States Code §§ 1331, 1332(a), and 1338(a).

17      4.    On information and belief, venue in this district is proper under 28

18  U.S.C. §§ 1391 and 1400(b) because Defendant B&D has committed acts of

19  infringement and has an extensive network of authorized dealers which sell its

20  products at their regular and established places of business.

21      5.    This Court has personal jurisdiction over Defendant B&D under the

22  long-arm statute of California and U.S. constitutional law because Defendant B&D

23  ships its products into the Southern District of California, offers those products for

24  sale and sells those products in this district, provides advertising in this district

25  targeted to this district's residents, and maintains a network of authorized

26  distribution arrangements with retailers in this district for the purpose of selling

27  B&D products.

28      6.    Ole Sorensen, the inventor of the United States Patent No. 4,935,184

2.

Case No. _____

1  further infringement of the '184 patent, and from further contribution to or

2  inducement of the infringement of the '184 patent;

3       e.     B&D is ordered to account for damages adequate to compensate SRDT

4  for the infringement of '184 patent, their contributory infringement of the '184

5  patent, and their inducement of infringement of the '184 patent, in the amount of at

6  least three hundred sixty million dollars ($360,000,000) as a reasonable royalty for

7  all sales of Accused Products and according to proof at trial, and such damages are

8  awarded to SRDT;

9       f.     Such damages as are awarded are trebled to at least one billion eighty

10 million dollars ($1,080,000,000) by the Court pursuant to 35 U.S.C. § 284 by reason

11 of the willful, wanton, and deliberate nature of the infringement;

12      g.     That this case is decreed an "exceptional case" and SRDT is awarded

13 reasonable attorneys' fees by the Court pursuant to 35 U.S.C. § 285;

14      h.     For interest thereon at the legal rate;

15      i.     For costs of suit herein incurred;

16      j.     For such other and further relief as the Court may deem just and proper.

17 **DEMAND FOR JURY TRIAL**

18     SRDT respectfully requests that its claims be tried to a jury.

19

20 DATED this 7th day of August, 2006.

21

22                JENS ERIK SORENSEN, as Trustee of

                  SORENSEN RESEARCH AND DEVELOPMENT

23                TRUST, Plaintiff

24

25

               J. Michael Kaler, Esq.

26                Melody A. Kramer, Esq.

27                Patricia A. Shackelford, Esq.

               Attorneys for Plaintiff

28

Case No. _____

# Exhibit E

1    J. MICHAEL KALER, SBN 158296
2    9930 Mesa Rim Road, Suite 200
     San Diego, California 92121
3    Telephone (858) 362-3151
4    E-mail: michael@kalerlaw.com

5    MELODY A. KRAMER, SBN 169984
6    9930 Mesa Rim Road, Suite 1600
     San Diego, California 92121
7    Telephone (858) 362-3150
8    E-mail: mak@kramerlawip.com

9    PATRICIA SHACKELFORD, SBN 218647
10   9930 Mesa Rim Road, Suite 450
     San Diego, California 92121
11   Telephone (858) 362-3152

12   Attorneys for Plaintiff JENS ERIK SORENSEN,
13   as Trustee of SORENSEN RESEARCH AND
     DEVELOPMENT TRUST

14
15                  UNITED STATES DISTRICT COURT

16          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

17   JENS ERIK SORENSEN, as Trustee of  )  Case No. 06-cv-1572 BTM (CAB)
18   SORENSEN RESEARCH AND            )
     DEVELOPMENT TRUST,               )  **THIRD AMENDED NOTICE OF**
19                          Plaintiff  )  **RELATED CASES**
                                       )
20       v.                            )
                                       )
21   THE BLACK & DECKER               )
22   CORPORATION; BLACK & DECKER, )
     INC.; BLACK & DECKER (US), INC.;  )
23   PORTER-CABLE CORPORATION;        )
24   VECTOR PRODUCTS, INC.; PHILLIPS)
     PLASTICS CORPORATION; HI-TECH )
25   PLASTICS INC.; B&D HOLDINGS,      )
26   LLC; AND DOES 1 THROUGH 1000,    )
                                       )
27                    Defendants.      )
28   _____)

Pursuant to Local Civil Rule 40.1(e), Plaintiff JENS E. SORENSEN, as TRUSTEE OF THE SORENSEN RESEARCH AND DEVELOPMENT TRUST ("SRDT"), hereby gives THIRD AMENDED notice of cases related to the present case. Specifically, SRD TRUST gives notice of the following related cases that all arise from alleged infringement of United States Patent Number 4,935,184 ("the '184 patent"), whether pending, dismissed, or otherwise terminated:

## JUDGMENT ENTERED

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. First International Digital, Inc., et al*, Case No. 3:07-cv-5525-JSW, filed October 30, 2007 in the United States District Court for the Northern District of California. Judgment of $500,000.00 has been entered.

## PENDING – NOT STAYED

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. Phillips Plastics Corp.*, filed June 26, 2008 in the United States District Court for the District of Northern California. Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation is not recommended at this time.

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. Human Touch LLC, et al*, Case No. 08cv1080, filed June 18, 2008 in the United States District Court for the District of Southern California. Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation is not yet recommended because it has just been filed.

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. Lexar Media, Inc.*, Case No. 5:08-cv-00095-JW, filed January 7, 2008 in the United States District Court for the District of Northern California. Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation is not recommended because a requested stay was already denied and this case is proceeding to be

Case No. 06-cv-1572 BTM CAB

1    litigated.

2        *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

3    *Trust v. Johnson Level & Tool Mfg. Co., Inc.,* Case No. 3:08-cv-0025-BTM-CAB,

4    filed January 4, 2008 in the United States District Court for the District of Southern

5    California. Plaintiff alleges infringement of the '184 patent by Defendants.

6    Consolidation is not recommended because Defendant is in default and a partial

7    settlement has already been reached.

8        *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

9    *Trust v. Ampro Tools Corporation,* Case No. 4:08-cv-00096-CW, filed January 7,

10    2008 in the United States District Court for the District of Northern California.

11    Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation is not

12    recommended because there has already been an entry of default and a default

13    judgment motion is being prepared.

14        *PowerStation LLC, et al v. Sorensen Research and Development Trust,* Case

15    No. 07-cv-04167-RBH, filed December 31, 2007 in the United States District Court

16    for the District of South Carolina. Plaintiff seeks declaratory judgment that the '184

17    patent is invalid and not infringed by them, and also makes an unfair trade practices

18    claim. Consolidation is not recommended yet because a Rule 12 motion for transfer

19    for lack of personal jurisdiction is currently pending.

20        *Big Lots Stores, Inc. v. Sorensen Research and Development Trust,* Case. No.

21    08cv00506, filed May 23, 2008 in the United States District Court for the Southern

22    District of Ohio. Plaintiff seeks declaratory judgment that the '184 patent is invalid

23    and not infringed by them. Consolidation is not recommended yet because no

24    summons and complaint have been served, and this case will be the subject of a Rule

25    12 motion for transfer for lack of personal jurisdiction.

26        *Freshlink Product Development, L.L.C. v. Sorensen Research & Development*

27    *Trust,* Case. No. 08cv05021, filed May 30, 2008 in the USDC for the Southern

28    District of New York. Consolidation is not recommended yet because no summons

Case No. 06-cv-1572 BTM CAB

1    and complaint have been served, and this case will be the subject of a Rule 12

2    motion for transfer for lack of personal jurisdiction.

3        *American Safety Razor Co. v. Sorensen Research & Development Trust*, Civil

4    Case No. 07-CV-00730-HHK, filed April 20, 2007, in the United States District

5    Court for the District of Columbia.  Consolidation is not recommended at this time

6    because no summons and complaint has been served and because there is no personal

7    jurisdiction over Sorensen in this court.

8        *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

9    *Trust v. DMS Holdings, Inc., et al.,* Case No. 08cv559, filed March 25, 2008 in the

10   United States District Court for the District of Southern California. Plaintiff alleges

11   infringement of the '184 patent by Defendants.  Consolidation with most other cases

12   in the District of Southern California was recommended (though this case involves

13   different parties and products) because the presiding judge has indicated a preference

14   for a consolidated claim construction hearing.

15       *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

16   *Trust v. Metabo Corporation, et al.,* Case No. 08cv304, filed February 15, 2008 in

17   the United States District Court for the District of Southern California. Plaintiff

18   alleges infringement of the '184 patent by Defendants.  Consolidation with most

19   other cases in the District of Southern California was recommended (though this case

20   involves different parties and products) because the presiding judge has indicated a

21   preference for a consolidated claim construction hearing.

22       *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

23   *Trust v. Star Asia, U.S.A., LLC, et al.,* Case No. 08cv307, filed February 15, 2008 in

24   the United States District Court for the District of Southern California. Plaintiff

25   alleges infringement of the '184 patent by Defendants.  Consolidation with most

26   other cases in the District of Southern California was recommended (though this case

27   involves different parties and products) because the presiding judge has indicated a

28   preference for a consolidated claim construction hearing.

Case No. 06-cv-1572 BTM CAB

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. Alltrade Tools, LLC., et al.*, Case No. 08cv232, filed February 5, 2008 in the United States District Court for the District of Southern California. Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation with most other cases in the District of Southern California was recommended (though this case involves different parties and products) because the presiding judge has indicated a preference for a consolidated claim construction hearing.

## PENDING - STAYED

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. Kyocera International, Inc., et al.*, Case No. 08cv411, filed March 4, 2008 in the United States District Court for the District of Southern California. Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation with most other cases[1] in the District of Southern California is recommended (though this case involves different parties and products) because the presiding judge has indicated a preference for a consolidated claim construction hearing.

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. Central Purchasing, LLC, et al.*, Case No. 08cv309, filed February 15, 2008 in the United States District Court for the District of Southern California. Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation with most other cases in the District of Southern California is recommended (though this case involves different parties and products) because the presiding judge has indicated a preference for a consolidated claim construction hearing.

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. Logitech, Inc., et al.*, Case No. 08cv308, filed February 15, 2008 in the United States District Court for the District of Southern California. Plaintiff alleges

---

[1] See Motion for Consolidation, denied as premature, for listing of cases Plaintiff has recommended to be consolidated.

1    infringement of the '184 patent by Defendants. Consolidation with most other cases

2    in the District of Southern California is recommended (though this case involves

3    different parties and products) because the presiding judge has indicated a preference

4    for a consolidated claim construction hearing.

5         *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

6    *Trust v. Rally Manufacturing, Inc., et al.*, Case No. 08cv302, filed February 15, 2008

7    in the United States District Court for the District of Southern California. Plaintiff

8    alleges infringement of the '184 patent by Defendants. Consolidation with most

9    other cases in the District of Southern California is recommended (though this case

10    involves different parties and products) because the presiding judge has indicated a

11    preference for a consolidated claim construction hearing.

12         *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

13    *Trust v. Sunbeam Products, Inc., et al.*, Case No. 08cv306, filed February 15, 2008 in

14    the United States District Court for the District of Southern California. Plaintiff

15    alleges infringement of the '184 patent by Defendants. Consolidation with most

16    other cases in the District of Southern California is recommended (though this case

17    involves different parties and products) because the presiding judge has indicated a

18    preference for a consolidated claim construction hearing.

19         *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

20    *Trust v. CTT Tools, Inc., et al.*, Case No. 08cv231, filed February 5, 2008 in the

21    United States District Court for the District of Southern California. Plaintiff alleges

22    infringement of the '184 patent by Defendants. Consolidation with most other cases

23    in the District of Southern California is recommended (though this case involves

24    different parties and products) because the presiding judge has indicated a preference

25    for a consolidated claim construction hearing.

26         *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

27    *Trust v. Global Machinery Company, et al.*, Case No. 08cv233, filed February 5,

28    2008 in the United States District Court for the District of Southern California.

Case No. 06-cv-1572 BTM CAB

1    Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation with

2    most other cases in the District of Southern California is recommended (though this

3    case involves different parties and products) because the presiding judge has

4    indicated a preference for a consolidated claim construction hearing.

5    *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

6    *Trust v. Emissive Energy Corp., et al.*, Case No. 08cv234, filed February 5, 2008 in

7    the United States District Court for the District of Southern California. Plaintiff

8    alleges infringement of the '184 patent by Defendants. Consolidation with most

9    other cases in the District of Southern California is recommended (though this case

10    involves different parties and products) because the presiding judge has indicated a

11    preference for a consolidated claim construction hearing.

12    *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

13    *Trust v. Motorola, Inc., et al.*, Case No. 3:08-cv-0136 LAB RBB, filed January 23,

14    2008 in the United States District Court for the District of Southern California.

15    Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation with

16    most other cases in the District of Southern California is recommended (though this

17    case involves different parties and products) because the presiding judge has

18    indicated a preference for a consolidated claim construction hearing.

19    *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

20    *Trust v. Sanyo North America Corporation, et al.*, Case No. 3:08-cv-0135 DMS

21    POR, filed January 23, 2008 in the United States District Court for the District of

22    Southern California. Plaintiff alleges infringement of the '184 patent by Defendants.

23    Consolidation with most other cases in the District of Southern California is

24    recommended (though this case involves different parties and products) because the

25    presiding judge has indicated a preference for a consolidated claim construction

26    hearing.

27    *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

28    *Trust v. Informatics, inc., et al.*, Case No. 3:08-cv-0134-L NLS, filed January 23,

Case No. 06-cv-1572 BTM CAB

1    2008 in the United States District Court for the District of Southern California.

2    Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation with

3    most other cases in the District of Southern California is recommended (though this

4    case involves different parties and products) because the presiding judge has

5    indicated a preference for a consolidated claim construction hearing.

6        *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

7    *Trust v. Ryobi Technologies, Inc., et al.,* Case No. 3:08-cv-0070-BTM-CAB, filed

8    January 11, 2008 in the United States District Court for the District of Southern

9    California. Plaintiff alleges infringement of the '184 patent by Defendants.

10   Consolidation with most other cases in the District of Southern California is

11   recommended (though this case involves different parties and products) because the

12   presiding judge has indicated a preference for a consolidated claim construction

13   hearing.

14       *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

15   *Trust v. Senco Products, Inc.,* Case No. 3:08-cv-0071-BTM-CAB, filed January 11,

16   2008 in the United States District Court for the District of Southern California.

17   Plaintiff alleges infringement of the '184 patent by Defendants. Consolidation with

18   most other cases in the District of Southern California is recommended (though this

19   case involves different parties and products) because the presiding judge has

20   indicated a preference for a consolidated claim construction hearing.

21       *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*

22   *Trust v. Emerson Electric Co., et al,* Case No. 3:08-cv-0060-BTM-CAB, filed

23   January 10, 2008 in the United States District Court for the District of Southern

24   California. Plaintiff alleges infringement of the '184 patent by Defendants.

25   Consolidation with most other cases in the District of Southern California is

26   recommended (though this case involves different parties and products) because the

27   presiding judge has indicated a preference for a consolidated claim construction

28   hearing.

Case No. 06-cv-1572 BTM CAB

1    *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*
2    *Trust v. Energizer Holdings, Inc., et al*, Case No. 3:07-CV-2321-BTM-CAB, filed
3    December 11, 2007 in the United States District Court for the Southern District of
4    California.    Plaintiff alleges infringement of the '184 patent by Defendants.
5    Consolidation with most other cases in the District of Southern California is
6    recommended (though this case involves different parties and products) because the
7    presiding judge has indicated a preference for a consolidated claim construction
8    hearing.

9    *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*
10    *Trust v. Giant International, Inc., et al*, Case No. 3:07-CV-2121-BTM-CAB, filed
11    November 6, 2007 in the United States District Court for the Southern District of
12    California.    Plaintiff alleges infringement of the '184 patent by Defendants.
13    Consolidation with most other cases in the District of Southern California is
14    recommended (though this case involves different parties and products) because the
15    presiding judge has indicated a preference for a consolidated claim construction
16    hearing.

17    *Jens Erik Sorensen as Trustee of Sorensen Research and Development Trust v.*
18    *Esseplast (USA) NC, Inc., et al*, Case No. 3:07-cv-2277-BTM-CAB, filed December
19    4, 2007 in this District.    Plaintiff alleges infringement of the '184 patent by
20    Defendants.    Consolidation with most other cases in the District of Southern
21    California is recommended (though this case involves different parties and products)
22    because the presiding judge has indicated a preference for a consolidated claim
23    construction hearing.

24    *Jens Erik Sorensen as Trustee of Sorensen Research and Development Trust v.*
25    *Helen of Troy Texas Corporation, et al*, Case No. 3:07-cv-2278-BTM-CAB, filed
26    December 4, 2007 in this District.    Plaintiff alleges infringement of the '184 patent
27    by Defendants.    Consolidation with most other cases in the District of Southern
28    California is recommended (though this case involves different parties and products)

Case No. 06-cv-1572 BTM CAB

1   because the presiding judge has indicated a preference for a consolidated claim
2   construction hearing.

3       *Jens Erik Sorensen as Trustee of the Sorensen Research and Development*
4   *Trust v. Digital Networks North America, Inc., et al*, Case No. 3:07-5568-JSW, filed
5   November 1, 2007 in the United States District Court for the Northern District of
6   California. Plaintiff alleges infringement of the '184 patent by Defendants.
7   Consolidation is not recommended because this related case involves different
8   parties and has different, unrelated products at issue.

9

10                          **SETTLED AND DISMISSED**

11      *Jens Erik Sorensen as Trustee of the Sorensen Research And Development*
12  *Trust v.  Tecnica USA, Inc and Nordica USA, Inc.*, Civil Case No. 06CV1941 B
13  MLS, filed September 18, 2006 in the Southern District of California. The action
14  was settled by the parties, and dismissed.

15      *Jens Erik Sorensen As Trustee of The Sorensen Research And Development*
16  *Trust v.  Head USA Inc.*  Civil Case No.: 06CV1434BTN  CAB, filed July 2006 in
17  the Federal District for the Southern District of California.  The action was settled by
18  the parties, and dismissed.

19      *Head USA Inc. v. Jens Erik Sorensen (As Trustee of The Sorensen Research*
20  *And Development Trust), and Sorensen Research And Development Trust.*  Docket
21  No.: 306CV00983, filed June 2006 in the Federal District of Connecticut. The matter
22  was transferred and consolidated with the *Sorensen Research And Development*
23  *Trust v.  Head USA Inc.* action filed in the Southern District of California, Civil Case
24  No.:  06CV1434BTM  CAB.  The action was later settled by the parties, and
25  dismissed.

26      *Nordica USA Corp. v. Jens Ole Sorensen, Jens Erik Sorensen, and Sorensen*
27  *Research and Development Trust.*  Docket No. 1:06-cv-91-JM filed March 8, 2006 in
28  the Federal District of New Hampshire. The matter was transferred and consolidated

Case No. 06-cv-1572 BTM CAB

with *Jens Erik Sorensen As Trustee of The Sorensen Research And Development Trust v. Tecnica USA, Inc and Nordica USA, Inc.*, Civil Case No. 06CV1941 B MLS, filed in the Southern District of California. The action was later settled by the parties.

*Jens Ole Sorensen, and Jens E. Sorensen, as Trustee Of The Sorensen Research and Development Trust v. DaimlerChrysler AG, and Mercedes-Benz USA, LLC.* Civil No. 03-1763 (HAA) filed in the United States District Court for Northern California and transferred to the United States District Court for New Jersey. This matter has been settled and dismissed.

*In the Matter of Certain Automobile Tail Light Lenses And Products Incorporating Same.* Investigation No. 337-TA-502 filed in the United States International Trade Commission. The matter was remanded after appeal to the Federal Circuit Court of Appeals, then settled and dismissed.

*Jens E. Sorensen, as Trustee Of The Sorensen Research and Development Trust v. Premier Automotive Group, Ford Motor Company, and Jaguar, Ltd.* Case No. 03-cv-01107, filed March 14, 2003 in the Federal Court for the Northern District of California. The matter was settled and dismissed.

*Sorensen et al v. International Trade Commission et al.*, 427 F.3d 1375 (Fed. Cir. 2005). After the Federal Circuit ruled in patentee's favor, the parties settled and dismissed.

**DISMISSED**

*DMS Holdings, Inc. v. Sorensen Research & Development Trust.* Civil Case No.: 07-CV-02690, filed May 11, 2007, in the United States District Court for the Northern District of Illinois. This case has been dismissed. Sorensen refiled against DMS Holdings in the United States District Court for Southern California (see above).

*Lowe's Companies, Inc., et al v. Sorensen Research and Development Trust.*

1     Case No. 05-cv-00234 filed July 29, 2005 in the Federal Court for the Western

2     District of North Carolina. The matter was never served and was dismissed.

3          *Digital Innovations LLC v. Sorensen Research and Development Trust.* Case

4     No. 05-cv-06428, filed November 9, 2005 in the Federal Court for the Northern

5     District of Illinois. The matter was never served and was dismissed.

6          *Big Lots v. Sorensen Research and Development Trust.* Case No. 2:06-cv-

7     1089, filed December 29, 2006 in the Federal Court for the Southern District of

8     Ohio. The matter was never served and was dismissed.

9          *Bon-Aire v. Sorensen Research and Development Trust.* Case No. 07-cv-054-

10    S, filed January 2007 in the Federal Court for the District of Idaho. The matter was

11    never served and was dismissed.

12         *Husqvarna Outdoor Products, Inc. v. Sorensen Research and Development*

13    *Trust.* CIV. NO. CV106-160 in the Federal Court for the Southern District of

14    Georgia on October 30, 2006. The matter was never served and was dismissed.

15    DATED this Friday, June 27, 2008.

16

17                              JENS ERIK SORENSEN, as Trustee of
                                SORENSEN RESEARCH AND DEVELOPMENT
18                              TRUST, Plaintiff

19

20                              /s/ Melody A. Kramer
                                _____
21                              Melody A. Kramer, Esq.
                                J. Michael Kaler
22                              Attorney for Plaintiff

23

24

25

26

27

28

                                                            Case No. 06-cv-1572 BTM CAB
                              12.

# PROOF OF SERVICE

I, Melody A. Kramer declare:  I am and was at the time of this service working within in the County of San Diego, California.  I am over the age of 18 year and not a party to the within action.  My business address is the Kramer Law Office, Inc., 9930 Mesa Rim Road, Suite 1600, San Diego, California, 92121.  I am a member of the State Bar of California and the Bar of this Court.

On June 27, 2008, I served on the parties to this action the following documents:

## THIRD AMENDED NOTICE OF RELATED CASES

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Raymond P. Niro, Jr.<br>Dina Hayes<br>Gregory P. Casimer<br>Robert A. Conley<br>Niro, Scavone, Haller & Niro<br>181 W. Madison St., Ste. 4600<br>Chicago, IL  60602<br>312/236-3137 FAX<br>mirojr@nshn.com<br>hayes@nshn.com<br>casimer@nshn.com<br>rconley@nshn.com | Defendants Black & Decker Corp.; Black & Decker, Inc.; Black & Decker (U.S.), Inc.; Vector Products, Inc.; and B&D Holdings, LLC ("B&D Defendants") | Email |
| Allison Goddard<br>J. Christopher Jaczko<br>Jaczko Goddard LLP<br>4401 Eastgate Mall<br>San Diego, CA  92121<br>agoddard@jaczkogoddard.com<br>cjaczko@jaczkogoddard.com | B&D Defendants | Email |
| Robert L. Binder<br>Foley & Lardner LLP<br>777 East Wisconsin Avenue<br>Milwaukee, WI 53202<br>414/297-4900 FAX<br>rbinder@foley.com | Defendants Hi-Tech & Phillips | Email |
| Richard L. Schwaab<br>Pavan K. Agarwal<br>C. Edward Polk, Jr.<br>Foley & Lardner LLP | Defendants Hi-Tech & Phillips | Email |

13.

| 3000 K Street, N.W. Suite 500 | | |
|---|---|---|
| Washington, DC 20007 | | |
| 202/672-5399 FAX | | |
| rschwaab@foley.com | | |
| pagarwal@foley.com | | |
| epolk@foley.com | | |

☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐ (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.

☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees. The facsimile transmissions were reported as complete and without error.

☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California.

I declare that the foregoing is true and correct, and that this declaration was executed on Friday, June 27, 2008, in San Diego, California.

/s/ Melody A. Kramer

_____
Melody A. Kramer

# Exhibit F

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JENS ERIK SORENSEN, as          )
Trustee of SORENSEN             )
RESEARCH AND DEVELOPMENT        )
TRUST,                          )
                                )
             Plaintiff,         ) Case No. 07cv02278BTM
                                )
                                )
             vs.                )
                                )
HELEN OF TROY TEXAS             )
CORPORATION; OXO                )
INTERNATIONAL, LTD; and         )
DOES 1-100,                     )
                                )
                                )
             Defendants.        )
                                ) San Diego, California
                                )
                                ) February 25, 2008


Status Conference

BEFORE THE HONORABLE BARRY TED MOSKOWITZ
UNITED STATES DISTRICT JUDGE


APPEARANCES:

*For the Plaintiff*:                Kaler Law Offices
                                    J. Michael Kaler
                                    9930 Mesa Rim Road St. 200
                                    San Diego, CA 92121

                                    Kramer Law Office
                                    Melody A. Kramer
                                    9930 Mesa Rim Road, St.1600
                                    San Diego, CA 92121

1 | an answer or motion to dismiss a response, and the default
2 | can be entered, then you have to make a motion to vacate the
3 | default.  If I grant that then you have to file something.
4 |        MR. VON ZEIPEL:  Right.  And I think that is why we
5 | are so surprised that a motion for a default has been filed.  16:22:14
6 |        THE COURT:  There is no motion for a default.
7 |        MR. VON ZEIPEL:  Request for entry of a default.
8 | If the request has been made I suppose that --
9 |        THE COURT:  And then if you answer on behalf of
10 | Helen of Troy Texas Corporation that takes care of that  16:22:15
11 | problem also.
12 |        MR. VON ZEIPEL:  It does.  You are making a
13 | compelling argument.
14 |        THE COURT:  Make sure the court reporter got that.
15 |        MR. VON ZEIPEL:  I think that makes sense.  I would 16:22:15
16 | like to discuss this with the partner in charge and the
17 | client.  I would be making the recommendation that we do
18 | that.  What kind of time extension would it be?
19 |        THE COURT:  Where does the re-examination process
20 | stand at the moment?  16:22:15
21 |        MR. KALER:  Well, your Honor, we are seven months
22 | in and there has been no office action, and I just learned
23 | today, in fact, of a case in Texas that they went to trial
24 | and had a jury verdict for plaintiff 13 months into the
25 | reexamine and there was still no office actions in the PTO.  16:22:16

17

1    I have seen a recent study that says that actual

2  re-exams typically are taking over five years now rather than

3  the two years that the PTO reports.

4    MR. VON ZEIPEL:  I think we cited to the two years

5  time period in our papers.                                    16:22:16

6    THE COURT:  Right, and I think that's what the

7  parties, when I granted the stay, cited.

8    MR. VON ZEIPEL:  I'm sorry, I did not hear that.

9    THE COURT:  When I granted the stay in the other

10  cases before me that's what the parties had cited.           16:22:18

11    MR. VON ZEIPEL:  The Black & Decker case?

12    THE COURT:  Yes.

13    MR. KALER:  The PTO I think says 23 months is

14  typical.  We've seen some patent attorney that did an

15  independent study of recent cases and he says that that has  16:22:18

16  been extended out to over five years in more cases.

17    THE COURT:  Well, my inclination is to grant the

18  stay without prejudice to reconsideration of all the stays

19  granted.  If it turns out that this just is not going to be

20  practicable because it's going to take five years, you know, 16:22:18

21  that's obviously something of concern to the court.

22    Two years is, well, let's say it's long enough.  If

23  it's going to be a lot longer, then the court may reconsider

24  the stay, but it would be for everybody, all at once.

25    So I think the practical solution to the whole       16:22:19

1  thing is if I grant them an extension of time to answer of 60

2  days, and I grant the stay without prejudice and they answer

3  on behalf of Helen of Troy of Texas, and Oxo International,

4  then I think everything is taken care of.

5          MR. VON ZEIPEL:  That sounds good.                16:22:19

6          THE COURT:  Mr. Kaler is about to speak.

7          MR. KALER:  That would certainly be a resolution,

8  not one I'm thrilled with.  Has the court considered the

9  possibility of a partial stay allowing some discovery, that

10  does not address claim construction issues, to preserve      16:22:19

11  evidence in these cases that are newly filed?

12          THE COURT:  I have not considered it, but that is

13  certainly something that would be considered.  No one should

14  be prejudiced by the stay.  It would be unfair to the

15  plaintiff if there is a stay and something happens that they  16:22:19

16  lose evidence.  So that's always an implied exception.

17          The stay is always granted without prejudice.  If

18  that wasn't understood then perhaps it's my fault in not

19  making it clear.

20          MR. KALER:  Would we need to bring a separate        16:22:20

21  motion?

22          THE COURT:  First you would discuss it with the

23  party you would want to take discovery on, and if they didn't

24  agree, then you would then come before me.

25          MR. KALER:  Okay.                                   16:22:20

1    THE COURT:  And I think I would try to do it in a

2    way that the parties would file something very, very brief so

3    they don't take up a lot of attorney time and work, and then

4    I would hear it orally and I would rule on it right there.

5    In other words, you would file something, maybe a    16:22:20

6    page or two, saying we want to get an exception to the stay

7    for the following reasons, we are going to come into court on

8    such and such a date the clerk gives you, and we will flush

9    them out, but here it is in capsule form.

10    MR. KALER:  Thank you, your Honor.    16:22:21

11    THE COURT:  All right?  So that's when I say the

12    stays are granted without prejudice.  Well, does anyone have

13    a problem if we proceed this way?  I know it's not ultimately

14    what you want, but you can't -- isn't there a song, You Can't

15    Always Get What You Want?    16:22:21

16    MR. KALER:  Your Honor, I was actually hoping for

17    summary judgment in our favor this morning, but I'll take it.

18    THE COURT:  Well, we will do an order in that

19    regard.  Is 60 days enough to file an answer?

20    MR. VON ZEIPEL:  I believe so.    16:22:21

21    THE COURT:  And the order will provide that you can

22    file an amended answer 30 days after any re-examination

23    decision.

24    MR. VON ZEIPEL:  Thank you, your Honor.

25    THE COURT:  All right?  So, then that will take    16:22:21

1    care of the -- the answer will be filed.  We will extend the

2    time for filing the answer.  It will grant the stay without

3    prejudice.  And I think that takes care of everything.

4              MR. KALER:  Thank you, your Honor.

5              THE COURT:  And you'll think about -- the parties      16:22:21

6    will think about whether they want to -- one or more wants to

7    seek multidistrict litigation consolidation.  All right?

8              MR. KALER:  Understood.

9              MS. KRAEMER:  All right.

10             THE COURT:  And I think that if there is a request      16:22:22

11   to vacate the stay, to take certain discovery, rather than

12   make you go to a magistrate and then come back, I will do it

13   so you don't have to go through a double process.

14             MR. KALER:  Thank you, your Honor.

15             THE COURT:  I want to save everybody time and          16:22:22

16   effort.  Okay?

17             MR. KALER:  Okay.

18             THE COURT:  Anything else we can do today?

19             MR. VON ZEIPEL:  Nothing on this side, your Honor.

20             THE COURT:  Okay.  And make sure the answer covers     16:22:22

21   the right Texas parties.  And you have to do a new

22   disclosure.

23             It won't affect me since I have no investments, but

24   you have to file that disclosure because the Texas

25   corporation may have -- it may be different ownership           16:22:23

1    interests.

2            MR. VON ZEIPEL:  I will look into that, your Honor.

3            THE COURT:  Okay.  Anything else?  It's been a

4    pleasure talking to you and seeing you.

5            MR. VON ZEIPEL:  Likewise.                    16:22:23

6            MS. KRAEMER:  Thank you.

7            MR. VON ZEIPEL:  Thank you, your Honor.

8            MR. KALER:  Thank you, your Honor.

9            THE COURT:  Mr. Kaler, you had a question.

10           MR. KALER:  Can we infer from the fact that the    16:22:23

11   clerk keeps transferring cases to you that they are not

12   applying the ten-case limit on the low number rule in this

13   case?

14           THE COURT:  No, not exactly, but partially.  The

15   rule is that you have to take the ten related cases, but you  16:22:23

16   don't have to take more unless you consent, so I have to

17   consent to take more than the ten.

18           But in this district judges usually consent if

19   there are a lot of cases with the same -- I mean, they could

20   stand on a local rule and say, no, ten is all I'm taking, but  16:22:24

21   certainly that has never been what I do, and most of my

22   colleagues don't do that either.  They will take all the

23   related cases.

24           MR. KALER:  Okay.  Thank you, your Honor.

25                (This matter was in recess.)

1

2

3                              **CERTIFICATION**

4

5              *I hereby certify that I am a duly appointed,*

6     *qualified and acting official court reporter for the United*

7     *States District Court; that the foregoing is a true and*

8     *correct transcript of the proceedings had in the*

9     *aforementioned cause; that said transcript is a true and*

10    *correct transcription of my stenographic notes; and that the*

11    *format used herein complies with the rules and requirements*

12    *of the United States Judicial Conference.*

13

14    Dated:  February 28, 2008 at San Diego, California

15

16

17

18    _____

19

20    Barbara Harris, Official Reporter

21

22

23

24

25

# Exhibit G

1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    JENS ERIK SORENSEN, as Trustee of          CASE NO. 06cv1572 BTM (CAB)
      SORENSEN RESEARCH AND
12    DEVELOPMENT TRUST,                          **ORDER:**

13                              Plaintiff,        **(1) DENYING PLAINTIFF'S MOTION
                                                  FOR RECONSIDERATION OF**
14                                                **DENIAL OF OBJECTIONS TO
                                                  MAGISTRATE JUDGE'S ORDER OF**
15                                                **APRIL 9, 2007 AS MOOT [Doc.
                                                  #163];**
16          vs.
                                                  **(2) GRANTING DEFENDANTS'**
17                                                **MOTION FOR RECONSIDERATION
                                                  OF THE COURT'S JUNE 20, 2007**
18                                                **ORDER RE BIFURCATION [Doc.
                                                  #171];**
19
                                                  **(3) GRANTING IN PART AND**
20    THE BLACK AND DECKER                        **DENYING IN PART DEFENDANTS'**
      CORPORATION, et al.                         **MOTION TO STAY [Doc. #178];**
21
                              Defendants.         **and**
22
                                                  **(4) DENYING PLAINTIFF'S MOTION**
23                                                **FOR PARTIAL SUMMARY
                                                  JUDGMENT AS PREMATURE [Doc.**
24                                                **#204]**

25    <u>I.</u>      <u>Motion for Reconsideration of Denial of Objections to Magistrate Judge's Order</u>

26              On April 9, 2007, Magistrate Judge Bencivengo issued an order in which she granted

27    in part and denied in part Plaintiff's motion to compel further responses to discovery.  In

28    accordance with 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), Plaintiff filed an

                                           1

1  objection to that ruling, arguing that it was both clearly erroneous and contrary to law. In an
2  order entered June 14, 2007, the Court overruled Plaintiff's objection without prejudice. The
3  Court found that the Magistrate Judge's determinations regarding the Black & Decker
4  Defendants' waiver of the attorney-client privilege, and the applicability of Patent Local Rule
5  2.5(d), were neither clearly erroneous nor contrary to law, on the record before the Court.
6  However, the Court was unable to determine at that time whether, and to what extent, the
7  Black & Decker Defendants ("B&D") intended to rely upon the death of Dennis Dearing to
8  provide the requisite showing of prejudice in support of any laches and/or equitable estoppel
9  defenses. Therefore, Plaintiff was granted leave to serve an interrogatory upon B&D, which
10 stated: "Set forth, in detail, all prejudice to Defendants that resulted from the death of Dennis
11 Dearing in regard to this case." To the extent Plaintiff believed that B&D's response to the
12 interrogatory indicated that this Court's determination regarding waiver of the attorney-client
13 privilege was in error, it was invited to move for reconsideration of the decision at that time.

14        On July 11, 2007, B&D responded to Plaintiff's interrogatory setting forth the prejudice
15 that resulted from the death of its former in-house counsel Dennis Dearing. The prejudice
16 identified included the inability to have Mr. Dearing testify regarding his communications in
17 the mid-1990s pertaining to Mr. Jens Ole Sorensen's claims of infringement of the '184
18 Patent. These communications included discussions directly with Mr. Sorensen and his
19 representatives, as well as with John Schiech, Black & Decker's business manager
20 responsible for making all decisions concerning the matter. B&D also indicated that it was
21 prejudiced because it could not present Mr. Dearing as a witness to defend against Plaintiff's
22 charge of willful infringement.

23        On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous
24 ruling on the basis of the new evidence presented in B&D's interrogatory response. The
25 motion was calendared for hearing, without oral argument, on August 10, 2007. However,
26 while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling
27 in light of B&D's interrogatory response. On August 3, 2007, Judge Bencivengo issued her
28 "Order Following Discovery Conference on July 26, 2007" in which she ruled:

1

2
Since the defendant is affirmatively relying upon the death of Mr. Dearing to support its defense of laches, the plaintiff is entitled to review Mr. Dearing's files that still exist and reflect his personal thoughts and impressions, so plaintiff may respond to defendant's claim of lost evidence. Defendant was therefore ordered to produce any withheld documents reflecting Mr. Dearing's work product on this matter.

3

4

5   [Doc. #177 at ¶ 8.] Judge Bencivengo stayed production of Mr. Dearing's work product for

6   30 days in order to give B&D an opportunity to appeal the order. B&D has just taken that

7   opportunity and filed a motion for reconsideration on September 4, 2007 [Doc. #240]. B&D's

8   motion is calendared for hearing by this Court on November 2, 2007.

9       In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's

10  privileged documents, and the now-pending motion for reconsideration of that order, the

11  Court finds moot Plaintiff's motion for reconsideration of its previous order overruling

12  Plaintiff's objection to Judge Bencivengo's April 9, 2007 order. The Court finds that this

13  entire issue will be addressed, upon a complete and updated record that includes Judge

14  Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B&D's pending

15  motion for reconsideration. Accordingly, Plaintiff's motion is **DENIED** without prejudice as

16  moot.

17

18  **II.    Motion for Reconsideration of Bifurcation**

19      On June 13, 2007, the Court held a hearing on B&D's motion for summary judgment

20  of laches. The Court denied B&D's motion at that hearing and discussion then ensued over

21  the possibility of setting an expedited bench trial on B&D's equitable defenses of laches and

22  estoppel. At B&D's urging, the Court and the parties agreed to schedule this bench trial

23  beginning on December 17, 2007. In a June 20, 2007 written order confirming the Court's

24  decision from the June 13 hearing, the Court explained that the trial of equitable defenses

25  could be bifurcated from the rest of the trial proceedings relating to infringement. [Doc. #147

26  at 2-3.] Citing the Ninth Circuit case of <u>Danjaq LLC v. Sony Corp.</u>, 263 F.3d 942 (9th Cir.

27  2001), the Court explained that, in deciding these equitable defenses, it would need to

28  determine whether there has been any showing of willful infringement on the part of

1    Defendants that would act as a "counterdefense" to laches. The Court invited any party to

2    make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial

3    if they felt that the Court's determination of the willfulness issue presented a problem for any

4    subsequent jury trial proceedings.

5         On July 20, 2007, B&D accepted the Court's invitation and filed a motion for

6    reconsideration of bifurcation. [Doc. #171.] B&D explained that it had not appreciated that

7    the Court itself would need to make a finding on willfulness, without the aid of a jury, in any

8    bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its

9    full rights to a jury determination on willfulness, B&D withdrew its request for an expedited

10   bench trial on its equitable defenses.

11        Plaintiff has opposed B&D's motion for reconsideration arguing that there is no

12   authority establishing any right to a jury trial on willfulness and, to the extent such a right

13   exists, B&D has waived its rights by continually requesting that the Court schedule a short

14   bench trial on laches before proceeding with the rest of the action.

15        The Court finds that the right to a jury trial on willfulness exists in a patent action that

16   will be tried to a jury. See, e.g., Richardson v. Suzuki Motor Co., 886 F.2d 1226, 1250 (Fed.

17   Cir. 1989). Having considered the submissions of the parties and the record of these

18   proceedings, the Court does not find that B&D has knowingly waived its right to a jury trial

19   on willfulness. Moreover, the early bifurcated trial on equitable defenses was scheduled by

20   this Court in an effort to accommodate B&D's request for an early determination of laches,

21   which it argued, if found, would greatly expedite the conclusion of this matter. Having

22   recognized that a laches determination requires that this Court determine, before any jury

23   has considered the question, whether Defendants willfully infringed Plaintiff's patent, B&D

24   has withdrawn its request. The Court sees no reason to push ahead with a bifurcated trial

25   despite B&D's express wishes.

26        The Court's recognition of the practical ramifications of the intertwinement of

27   willfulness in any laches determination was the impetus for the Court's invitation to

28   reconsider in its June 20, 2007 order. Having considered B&D's submission, which was

4

1   based upon the exact issues identified in this Court's own order, the Court hereby **GRANTS**

2   B&D's motion.  The bifurcated bench trial on equitable defenses previously scheduled for

3   December 17, 2007 is hereby **VACATED**, along with all pretrial proceedings associated with

4   it, including the November 26, 2007 pretrial conference.

5

6   **III.    Motion to Stay Litigation Pending Reexamination**

7         On August 3, 2007, all Defendants jointly filed a motion for a stay of these

8   proceedings.  Defendants' motion is based on B&D's pending request for reexamination of

9   Plaintiff's '184 Patent, which was filed with the U.S. Patent and Trademark Office ("PTO") on

10  July 30, 2007.  The request for reexamination challenges, *inter alia*, all 5 claims of the '184

11  Patent that are asserted in the present litigation.  The challenge is based on a number of

12  prior art references, almost all of which were apparently not considered by the PTO in the

13  prosecution of the '184 Patent.

14        Courts have inherent power to stay an action pending conclusion of PTO

15  reexamination proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422,1426-27 (Fed. Cir. 1988).

16  The decision whether to grant or deny a motion to stay proceedings pending PTO

17  reexamination rests within the sound discretion of the court.  See, e.g., Photoflex Products,

18  Inc. v. Circa 3 LLC, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D. Cal.

19  May 24, 2006).  There is a "liberal policy" in favor of granting motions to stay pending the

20  outcome of PTO reexamination proceedings. ASCII Corp. v. STD Entertainment USA, Inc.,

21  844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

22        In determining whether to stay litigation pending reexamination by the PTO, courts

23  generally consider the following factors: (1) the stage of litigation, i.e., whether discovery is

24  almost complete and whether a trial date has been set; (2) whether a stay would cause

25  undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether

26  a stay will simplify the issues in question and trial of the case.  See, e.g., Xerox Corp. v.

27  3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

28        The Court finds that this litigation has not proceeded so far that it would be unjust to

1   stay the action.  Although this action was originally filed about a year ago, and the Court

2   recognizes that substantial amounts of discovery have already occurred, the more relevant

3   inquiry is whether discovery is nearing completion – it is not.[1]  For instance, Magistrate Judge

4   Bencivengo recently granted the parties permission to take an additional 10 depositions per

5   side. [See Doc. #159 at 2.]  No deadline for the completion of fact discovery has even been

6   set.    Moreover, the parties are just beginning to brief the preliminary issue of claim

7   construction and, in accordance with the decision above to vacate the bifurcated bench trial

8   on equitable defenses, no trial date is currently set for any aspect of this case.  In addition,

9   while the Court has already considered two motions for summary judgment, it previously put

10  off consideration of two others until after claim construction, and Plaintiff has just filed a

11  substantial summary judgment motion aimed at piercing Black & Decker's corporate veil.

12  The Court anticipates that further summary judgment motions regarding infringement and

13  patent validity will be filed once claim construction is complete.  Thus, a substantial amount

14  of resources will be employed by all parties and the Court even in advance of any eventual

15  trial.  See, e.g., Broadcast Innovation, L.L.C. v. Charter Communications, Inc., No. 03-cv-

16  2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D. Colo. July 11, 2006) (granting

17  stay, in part, because of significant work remaining on motions for summary judgement, even

18  though trial date was less than three months away).

19      Plaintiff claims Defendants delayed filing their request for reexamination to gain a

20  tactical advantage over it.  He claims that Defendants were aware of the prior art that they

21  reference in their reexamination request over seven months ago, but purposely delayed so

22  that the '184 Patent would expire during the reexamination process, thereby precluding

23  Plaintiff from offering any amendments to the claims.  Defendants respond that there was no

24  intentional delay and that their decision to request reexamination was based, in part, on the

25  Supreme Court decision in KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007),

26  which was only issued at the end of April.  The Court is not convinced that Defendants

27

28      [1] In reaching this determination, the Court has considered the surreply submitted by Plaintiff and, therefore, the pending ex parte request to file a surreply [Doc. #201] is **GRANTED**.

1 employed any improper tactics in filing their request for reexamination. While Plaintiff is

2 rightfully concerned that a reexamination in the twilight of his patent puts him at a distinct

3 disadvantage, he could have prevented this situation by filing suit many years ago, thereby

4 allowing sufficient time for any reexamination to occur before the patent expired.

5 Therefore, Plaintiff's cognizable claims of prejudice if a stay should be entered

6 basically boil down to his inconvenience in delaying final collection of any monetary award

7 of royalties, assuming he ultimately wins. However, as the court recognized in Broadcast,

8 the prejudice factor "is best summarized by one question: *do the Plaintiffs have an adequate*

9 *remedy at law?*" 2006 U.S. Dist. LEXIS 46623, at *32. Just as in Broadcast, the answer

10 here is that clearly Plaintiff does have an adequate remedy. Defendants point out, and

11 Plaintiff has not disputed, that the '184 Patent will expire in February 2008 independent of

12 reexamination. Given that a trial on the merits could not occur prior to that date, Plaintiff

13 would not have been granted any injunctive relief by this Court. Therefore, his claim would

14 be restricted to past monetary damages, which, with the addition of prejudgment interest, are

15 fully capable of compensating Plaintiff. Unfortunately, reexamination can be a drawn out

16 process, resulting in a significant delay in court proceedings. Protracted delay is always a

17 risk inherent in granting a stay, yet courts continue to stay actions pending reexamination.

18 The general prejudice of having to wait for resolution is not a persuasive reason to deny the

19 motion for stay. An average delay for reexamination of approximately 18-23 months is

20 especially inconsequential where Plaintiff himself waited as many as twelve years before

21 bringing the present litigation. (See PTO Reexamination Statistics at Ex. B to Niro Decl.;

22 Doc. #180-3.)

23 In addition, the Federal Circuit has recently confirmed that the PTO would not be

24 bound in its reexamination by the determinations of this Court. In re Trans Texas Holdings

25 Corp., 2006-1599 and 2006-1600, 2007 U.S. App. LEXIS 19909, at *14-19 (Fed. Cir. Aug.

26 22, 2007). Because of this, the Court finds that not only is Plaintiff unlikely to be prejudiced

27 in these proceedings by a stay pending the PTO reexamination, but Defendants would

28 potentially be prejudiced by *failing* to enter a stay. One court has explained this possibility

1  accordingly:

2

3       Not only could the Court and the PTO reach conflicting determinations, but
        one possible scenario could result in irreparable harm to [Defendant]: if this
        Court finds that the [patent] is not invalid and that [Defendant] has infringed
4       it, and orders [Defendant] to pay damages to [Plaintiff] for such infringement,
        then [Defendant] would have no ability to recover those damages if at a later
5       date the PTO determined that the [] patent is invalid.

6  Bausch & Lomb, Inc. v. Alcon Lab., Inc., 914 F. Supp. 951, 952 (W.D.N.Y. 1996). The Court

7  finds such a possibility to be, at a minimum, a highly undesirable outcome.

8       Finally, the Court finds that the stay will result in the simplification of issues in this

9  case. As explained by the Federal Circuit, "[o]ne purpose of the reexamination procedure

10 is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to

11 facilitate trial of that issue by providing the district court with the expert view of the PTO

12 (when a claim survives the reexamination proceeding)." Gould v. Control Laser Corp., 705

13 F.2d 1340, 1342 (Fed. Cir. 1983), cert. denied, 464 U.S. 935 (1983). The Broadcast court,

14 elaborating on this point, explained:

15      Shifting the patent validity issue to the PTO has many advantages, including:

16      1. All prior art presented to the Court will have been first considered by the
        PTO, with its particular expertise.
17
        2. Many discovery problems relating to prior art can be alleviated by the PTO
18      examination.

19      3. In those cases resulting in effective invalidity of the patent, the suit will
        likely be dismissed.
20
        4. The outcome of the reexamination may encourage a settlement without
21      the further use of the Court.

22      5. The record of reexamination would likely be entered at trial, thereby
        reducing the complexity and length of the litigation.
23
        6. Issues, defenses, and evidence will be more easily limited in final pretrial
24      conferences after a reexamination.

25      7. The cost will likely be reduced both for the parties and the Court.

26 2006 U.S. Dist. LEXIS 46623, at *9-10 (quoting Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.,

27 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)).

28      The Court believes that it will benefit from the PTO's evaluation of how the previously

8

06cv1572

1   unconsidered prior art references impact the claims of the patent-in-suit. The PTO's expert

2   evaluation is likely to be of assistance not only as to the issues of validity, but its

3   understanding of the claims is also likely to aid this Court in the preliminary process of claim

4   construction.

5       The Court finds that, especially in this case, the reexamination process has the

6   potential to significantly narrow the issues for trial because of the impending expiration of the

7   '184 Patent. While the parties have argued at length about exactly how this additional

8   variable affects the calculation of the likely outcome of reexamination, the Court need not

9   resolve this dispute to reach the proper conclusion. It is enough to note that when

10   reexamination is requested by a third party, as in this case, all claims are confirmed only 29%

11   of the time. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.) Since

12   no amendments can be offered to an expired patent, there is obviously a significant likelihood

13   that the validity of the claims at issue in this action will be affected by the reexamination

14   process.[2]

15       In addition, the Court expects that the reexamination process will not only aid the

16   Court in these proceedings, but should also redound to the benefit of the parties, both

17   Defendants and Plaintiff. As the Broadcast court explained in its discussion of the possibility

18   of prejudice from entering a stay:

19       If the PTO does not invalidate or otherwise alter the claims of the [] patent,
    the Plaintiffs' legal remedy remains unaffected . . . . Moreover, if the claims

20       are narrowed, both sets of parties will have benefitted by avoiding the
    needless waste of resources before this Court, and again, the Plaintiffs will

21       be able to pursue their claim for money damages at trial. Finally, if the claims
    are strengthened, the Plaintiffs' position will be as well, and their likelihood

22       of monetary damages will increase. See, e.g., Motson, 2005 U.S. Dist.
    LEXIS, 2005 WL 3465664 at *1 ("[I]f the PTO upholds the validity of plaintiff's

23       patent, 'the plaintiff's rights will only be strengthened, as the challenger's
    burden of proof becomes more difficult to sustain.'") (quoting Pegasus Dev.

24       Corp., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at *2).

25

26       [2] Plaintiff has argued that the PTO is unlikely to grant reexamination precisely because
the '184 Patent will expire soon. However, Plaintiff failed to produce any evidence to support

27   this contention. Moreover, even if Plaintiff is correct, and the PTO fails to grant
reexamination (a decision which should issue no later than October 30, 2007), this Court

28   would immediately lift the stay and these proceedings would continue – a relatively
insignificant 2-month delay being all that would result.

06cv1572

1   2006 U.S. Dist. LEXIS 46623, at *32-33.  Accordingly, the Court finds that a stay is

2   appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues

3   before this Court.

4        Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and

5   **DENIED IN PART**.  With the exception of two pending motions, all proceedings are hereby

6   stayed pending the PTO's reexamination of the '184 Patent.  The Court will continue to hear

7   Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation

8   [Doc. #182], which is calendared for hearing on October 12, 2007.  As was discussed above

9   in Section I, the Court will also continue to hear B&D's pending motion for reconsideration

10  of Magistrate Judge Bencivengo's August 3, 2007 order regarding production of Dennis

11  Dearing's attorney work product [Doc. #240], which is calendared for hearing on November

12  2, 2007.  The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the

13  claim construction hearing previously set for November 19, 2007.  All hearing dates will be

14  reset, to the extent appropriate, once the stay of these proceedings has been lifted.

15       Defendants are ordered to file a notice informing the Court of the PTO's decision on

16  the pending application for reexamination within 10 days of receipt of such decision.  If the

17  PTO declines B&D's request to reexamine the '184 Patent, the Court will immediately lift the

18  stay and recalendar all vacated hearing dates.    If, however, the PTO approves

19  reexamination, this stay will remain in place pending some resolution of those proceedings.

20  During the pendency of the reexamination, Defendants will be required to file a notice every

21  6 months apprising the Court of any change in the status of those proceedings.

22

23  **IV.    Motion for Partial Summary Judgment**

24       On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the

25  corporate veils of the Black & Decker Defendants, or in the alternative, holding them to be

26  a single enterprise for purposes of patent infringement liability.  [Doc. #204.]  The motion is

27  presently calendared for hearing on October 26, 2007.  In light of the Court's entry of a stay

28  of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's

1   motion to be premature. Accordingly, the Court hereby **DENIES** Plaintiff's motion without

2   prejudice.[3] As the Court is aware of the substantial volume of Plaintiff's motion, he is invited

3   to refile this motion once the stay has been lifted by simply filing a short notice of motion

4   which incorporates by reference his earlier filing.

5

6   **IT IS SO ORDERED.**

7

8   DATED:  September 10, 2007

9                          *Barry Ted Moskowitz*

10              Honorable Barry Ted Moskowitz
              United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   [3] Plaintiff's pending motion to file confidential documents under seal in support of the
motion for partial summary judgment [Doc. #204-5] is also **DENIED** as moot.

11

# Exhibit H

1
2
3
4
5
6        IN THE UNITED STATES DISTRICT COURT
7
8        FOR THE NORTHERN DISTRICT OF CALIFORNIA
9   JENS ERIK SORENSEN,
10           Plaintiff,                          No. C 07-05568 JSW
11       v.
12   DIGITAL NETWORKS NORTH AMERICA              **ORDER GRANTING**
     INC.; LEGACY SUPPORT SERVICES, LTD.         **DEFENDANT'S MOTION TO**
13   d/b/a S2G; and DOES 1 through 100,          **STAY LITIGATION**
                                                 **PENDING REEXAMINATION**
14           Defendants.                         **OF PATENT-IN-SUIT**
15   _____/
16       Now before the Court is Defendant Digital Networks North America Inc.'s ("DNNA")
17   motion to stay litigation during the pendency of reexamination of United States Patent
18   4,935,184 (the "'184 Patent"). The Court finds that this matter is appropriate for disposition
19   without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for January 18,
20   2008 is HEREBY VACATED. Having considered the parties' pleadings and the relevant legal
21   authority, the Court HEREBY GRANTS DNNA's motion to stay litigation.
22                          **BACKGROUND**
23       In this action, plaintiff Jens Erik Sorensen ("Sorensen") brings a claim for patent
24   infringement of the '184 Patent. Sorensen filed this action on November 1, 2007 and served
25   DNNA on November 12, 2007. On October 11, 2007, before this lawsuit was filed, the Patent
26   and Trademark Office ("PTO") granted a request to reexamine the '184 Patent. (Declaration of
27   Kurt W. Rhode ("Rhode Decl."), Ex. C.) The PTO notified Sorensen that newly submitted prior
28   art resulted in thirteen "substantial questions of patenability" regarding the '184 Patent. (*Id.*)

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Maria DNNA now moves the Court to stay litigation in the above-captioned matter pending the

2    PTO's reexamination of the '184 Patent. The Court shall address additional facts as necessary

3    to its analysis in the remainder of this Order.

4                                    **ANALYSIS**

5

6    **A.    Legal Standards Applicable to a Motion to Stay Proceedings Pending Reexamination.**

7         The patent reexamination statute provides in pertinent part that "[a]ny person at any time

8    may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any

9    prior art cited under the provisions of section 301." 35 U.S.C. § 302. The PTO must

10   "determine whether a substantial new question of patentability affecting any claim of the patent

11   concerned is raised by the request . . . ." 35 U.S.C. § 303(a). The reexamination statute further

12   provides that "[a]ll reexamination proceedings . . . including any appeal to the Board of Patent

13   Appeals and Interferences, will be conducted with special dispatch." 35 U.S.C. § 305.

14        The determination of whether to grant a stay pending the outcome of the PTO's

15   reexamination is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix*

16   *Labs. Inc.*, 70 U.S.P.Q. 2d 1319, 1320 (N.D. Ill. 2004) (citing *Gould v. Control Laser Corp.*,

17   705 F.2d 1340, 1341 (Fed. Cir. 1983)). When ruling on such a stay, courts consider several

18   factors: (1) the stage of the litigation, including whether discovery is or will be almost

19   completed and whether the matter has been marked for trial; (2) whether a stay will unduly

20   prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify

21   the issues in question and streamline the trial, thereby reducing the burden of litigation on the

22   parties and on the court. *Id.*; *Methode Elecs., Inc. v. Infineon Techs. Corp.*, No. 99-21142, 2000

23   U.S. Dist. LEXIS 20689, at *5-6 (N.D. Cal. Aug. 7, 2000). There is a "liberal policy in favor of

24   granting motions to stay proceedings pending the outcome of USPTO reexamination or

25   reissuance proceedings." *ASCII Corp. v. STD Entertainment*, 844 F. Supp. 1378, 1381 (N.D.

26   Cal. 1994).

27

28

**B.    Early Stage of the Litigation Favors a Stay.**

Here, the early stage of this litigation weighs in favor of granting a stay pending

reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q. 2d 2022,

2023 (N.D. Cal. 1995) (holding that the absence of "significant discovery" or "substantial

expense and time . . . invested" in the litigation weighed in favor of staying the litigation); *see

also ASCII Corp.*, 844 F. Supp. at 1381 (granting stay where parties had undertaken little or no

discovery and the case had not yet been set for trial). Here, discovery has not even begun and

DNNA has not yet responded to the complaint. The Court has not yet set any deadlines in this

action regarding discovery, motions, or trial. Therefore, the fact that this case is still in the

early stages and the parties have not yet conducted "significant discovery" or invested

"substantial expense" into the litigation weighs in favor of granting a stay. *See Target

Therapeutics*, 33 U.S.P.Q. 2d at 2023.

**C.    A Stay Will Not Unduly Prejudice Sorensen.**

In determining whether to grant a stay, courts also consider any resulting undue

prejudice on the nonmoving party. *See Methode Elecs.*, 2000 U.S. Dist. LEXIS 20689, at *7.

Granting a stay does not cause the nonmoving party undue prejudice when that party has not

invested substantial expense and time in the litigation. *Id.* The delay inherent to the

reexamination process does not constitute, by itself, undue prejudice. *Pegasus Dev. Corp. v.

DirecTV, Inc.*, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).

Courts also consider evidence of dilatory motives or tactics, such as when a party unduly

delays in seeking reexamination of a patent. *Methode Elecs.*, 2000 U.S. Dist. LEXIS 20689, at

*7. This is not a case where reexamination is sought on the eve of trial or after protracted

discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc.*, 983 F. Supp. 1126, 1128 (S.D. Tex. 1997)

(finding that "courts are inclined to deny a stay when the case is set for trial and the discovery

phase has almost been completed"). Rather, another party filed the request to reexamine the

'184 Patent, and the request was granted even before Sorensen filed the instant lawsuit. DNNA

promptly sought to stay this action pending the reexamination proceedings. The Court finds

that Sorensen has not presented any evidence of dilatory motives or shown that he would be

1    unduly prejudiced or tactically disadvantaged if this Court were to grant a stay.  Although

2    Sorensen presents concerns that his ability to conduct discovery may be impaired by the delay

3    in litigation, the Court finds that DNNA has submitted sufficient evidence to allay such

4    concerns.  Accordingly, the Court finds that a stay will not unduly prejudice Sorensen, and thus,

5    this factor also weighs in favor of granting a stay

6

7    **D.    A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both Parties and the Court.**

8         Because the patent-in-suit is currently being reexamined, the Court finds that this patent

9    infringement action should be stayed during the pendency of the reexamination.  The Court

10   finds that such a stay will simplify the issues and streamline the trial, thereby reducing the

11   burden on, and preserving the resources of both the parties and the Court.

12        Therefore, having considered the factors relevant in determining whether to grant a stay

13   pending reexamination, the Court hereby GRANTS DNNA's motion to stay all proceedings

14   pending reexamination of the '184 Patent.

15                                    **CONCLUSION**

16        For the foregoing reasons, the Court GRANTS DNNA's motion to stay pending

17   reexamination of the '184 Patent.  The proceedings are stayed from the date of this Order until

18   further notice.  The Court HEREBY ORDERS the parties to submit a joint status report

19   regarding the status of the reexamination proceedings every 120 days, or sooner if the PTO

20   issues a final decision with respect to the '184 Patent, until the stay in this case is lifted.

21        **IT IS SO ORDERED.**

22

23   Dated: January 16, 2008

24                                                JEFFREY S. WHITE
                                                 UNITED STATES DISTRICT JUDGE
25

26

27

28

United States District Court
For the Northern District of California

4

# Exhibit I

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Jens Erik Sorensen,                                    NO. C 08-00095 JW

           Plaintiff,                              **ORDER DENYING DEFENDANT'S**
    v.                                                     **MOTION TO STAY**

Lexar Media, Inc.,

           Defendant.
_____/

    Plaintiff Jens Erik Sorensen brings this action as trustee of Sorensen Research and

Development Trust, alleging that Defendant Lexar Media, Inc.'s "Jump Drive" product infringes

U.S. Patent No. 4,935,184 (the "'184 Patent"). The '184 Patent discloses, *inter alia*, a method for

forming injection molded plastic. Before the Court is Defendant's Motion to Stay. (hereafter,

"Motion," Docket Item No. 12.) The Court found the motion appropriate for submission without

oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court DENIES

Defendant's Motion to Stay.

    Defendant moves to stay pending the outcome of a reexamination of the '184 Patent on the

grounds that a stay will conserve judicial resources and avoid prejudice to Defendant. (Motion at 3.)

Plaintiff contends that a stay will result in undue delay in resolving the issues in this case.

(Plaintiff's Opposition to Defendant's Motion to Stay at 5, Docket Item No. 18.)

    A court has broad discretion to stay an action before it, pending resolution of other

proceedings. Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979).

This authority includes the discretion to stay an action pending the outcome of reexamination

**United States District Court**
For the Northern District of California

1   proceedings at the United States Patent and Trademark Office ("PTO"). Ethicon, Inc. v. Quigg, 849

2   F.2d 1422, 1426-27 (Fed. Cir. 1988). However, "[t]he court is not required to stay judicial

3   resolution in view of the reexaminations." Viskase Corp. v. American Nat. Can Co., 261 F.3d 1316,

4   1328 (Fed. Cir. 2001).

5          In this case, Defendant has not made a sufficient showing to warrant a stay. While the '184

6   Patent is in reexamination, the examiner at the PTO has not as of yet cancelled any claims or issued

7   a final office action. (Declaration of Joseph H. Lee in Support of Defendant's Motion to Stay, Ex.

8   C, Docket Item No. 13.) A reexamination may take up to several years to run its course. (Id., Ex. F

9   [PTO *Ex Parte* Reexamination Filing Data, December 31, 2007] at 2.) As of the 2007, the PTO

10  determined that the average pendency of an *ex parte* reexamination is two years. (Id.) Appeals

11  create potential for the process to take even longer. In that time, the Court could make substantial

12  progress in interpreting the patent at issue and otherwise moving the action toward resolution.

13         Accordingly, the Court DENIES Defendant's Motion to Stay at this time. The parties shall

14  attend the case management conference currently set for **June 2, 2008 at 10 a.m.** to discuss a

15  schedule for this case. Pursuant to the Patent Local Rules, the parties shall file a Joint Case

16  Management Statement on or before **May 23, 2008.**

17         In light of this Order, the hearing on the motion presently scheduled for May 5, 2008 is

18  VACATED.

19

20  Dated: April 30, 2008

21                                            JAMES WARE
                                              United States District Judge

22

23

24

25

26

27

28                                     2

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

James Michael Kaler michael@kalerlaw.com
Jared Bobrow jared.bobrow@weil.com
Melody Ann Kramer mak@kramerlawip.com

**Dated:  April 30, 2008**                     Richard W. Wieking, Clerk


                                              By: ___/s/ JW Chambers_____
                                                   **Elizabeth Garcia**
                                                   **Courtroom Deputy**

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit J

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

### _Ex Parte_ Reexamination Filing Data - December 31, 2007

1. Total requests filed since start of ex parte reexam on 07/01/81 . . . . . . . . . . . . . . . . . 9060[1]

   a. By patent owner      3495   39%
   b. By other member of public      5400   59%
   c. By order of Commissioner      165   2%

2. Number of filings by discipline

   a. Chemical Operation      2703   30%
   b. Electrical Operation      3023   33%
   c. Mechanical Operation      3334   37%

3. Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 511 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | 2007 | 643 |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | 2008 | 165 |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4. Number known to be in litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2398   26%

5. Determinations on requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8714

   a. No. granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7998 . . . . . . . . . 92%

      (1) By examiner      7885
      (2) By Director (on petition)      113

   b. No. denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 716 . . . . . . . . . . 8%

      (1) By examiner      681
      (2) Order vacated      35

---

[1]Of the requests received in FY 2008, 23 requests have not yet been accorded a filing date, and preprocessing of 3 requests was terminated for failure to comply with the requirements of 37 CFR 1.510. See Clarification of Filing Date Requirements for _Ex Parte_ and _Inter Partes_ Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

1

Exhibit F-001

Case 3:08-cv-03094-MHP    Document 16-13    Filed 07/23/2008    Page 3 of 3
03/13/2008 12:28 FAX                    OPLA                                    ☒003/004
Case 5:08-cv-00095-JW    Document 13-7    Filed 03/13/2008    Page 3 of 3

6. Total examiner denials (includes denials reversed by Director) . . . . . . . . . . . . . . . . . . 794

    a. Patent owner requester              439       55%
    b. Third party requester               355       45%

7. Overall reexamination pendency (Filing date to certificate issue date)

    a. Average pendency               24.0 (mos.)
    b. Median pendency               18.6 (mos.)

8. Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a. All claims confirmed | 23% | 29% | 12% | 26% |
| b. All claims cancelled | 7% | 12% | 21% | 10% |
| c. Claims changes | 70% | 59% | 67% | 64% |

9. Total ex parte reexamination certificates issued (1981 - present) . . . . . . . . . . . . . . . . 6066

    a. Certificates with all claims confirmed    1556  26%
    b. Certificates with all claims canceled    636  10%
    c. Certificates with claims changes    3874  64%

10. Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a. Certificates - PATENT OWNER REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2607

        (1) All claims confirmed    592  23%
        (2) All claims canceled    194  7%
        (3) Claim changes    1821  70%

    b. Certificates - 3rd PARTY REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3313

        (1) All claims confirmed    946  29%
        (2) All claims canceled    413  12%
        (3) Claim changes    1954  59%

    c. Certificates - COMM'R INITIATED REEXAM . . . . . . . . . . . . . . . . . . . . . . . . . . . 146

        (1) All claims confirmed    18  12%
        (2) All claims canceled    30  21%
        (3) Claim changes    98  67%

Exhibit F-002

# Exhibit K

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.))**

Page 1

**C**Sorensen v. Daimler Chrysler AG
N.D.Cal.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Jens Ole SORENSEN, Plaintiff,
v.
DAIMLER CHRYSLER AG, et al., Defendants
**No. C 02-4752 MMC (EDL).**

April 11, 2003.

ORDER GRANTING DEFENDANTS' MOTION
FOR TRANSFER OF VENUE; VACATING
HEARING

CHESNEY, J.

(Docket No. 33)

**\*1** Before the Court is the motion of defendants
DaimlerChrysler AG ("DCAG") and Mercedes-Benz
USA, LLC ("MBUSA") to transfer the above-titled
action to the District of New Jersey, pursuant to 28
U.S.C. § 1404(a). Plaintiff Jens Ole Sorensen
("Sorensen") has filed opposition, to which
defendants have replied.[FN1] Having considered the
papers submitted in support of and in opposition to
the motion, the Court deems the motion appropriate
for decision on the papers, VACATES the hearing
scheduled for March 28, 2003, and rules as follows.

> FN1. By separate order, filed March 31,
> 2003, the Court has granted Sorensen's
> unopposed motion to join as a plaintiff in
> this action SRD Trust, the entity that
> allegedly obtained from Sorensen all rights
> to the '184 patent after the instant action was
> instituted.

BACKGROUND

Sorensen alleges that he invented a process for
stabilized injection molding and thereafter obtained
U.S. Patent No. 4,935,184 ("the '184 patent").
Sorensen alleges that defendants engage in the
manufacture and sale of automobiles, including
automobiles imported for sale into the United States.

According to Sorensen, defendants' imported
automobiles include "lens assemblies manufactured
using the '184 patent process." (See Compl. ¶ 49 .)
The lens assemblies, which defendants refer to as
"SLK taillights" or "light assemblies," are
manufactured in Germany by non-party Schefenacker
Vision Systems Germany GmbH & Co.
("Schefenacker"). (See Defs.'Mot. Ex. 2 at 2-3.) The
lens assemblies incorporating the lens assemblies are
manufactured in Germany by defendant DCAG, (see
Jung Decl. ¶ 2), and are sold and marketed in the
United States by defendant MBUSA. (See Barnard
Decl., filed February 19, 2003, ¶ 1.)

DISCUSSION

Defendants argue that the District of New Jersey is a
more convenient forum than the Northern District of
California ("Northern District").[FN2]

> FN2. Defendants do not argue that venue is
> improper in the Northern District.

"For the convenience of parties and witnesses, in the
interest of justice, a district court may transfer any
civil action to any other district or division where it
might have been brought."28 U.S.C. § 1404(a). In
order to transfer an action under § 1404(a), a district
court must find "that the district court is one where
the action might have been brought and that the
convenience of parties and witnesses in the interest of
justice favor transfer."SeeHatch v. Reliance Ins. Co.,
758 F.2d 409, 414 (9th Cir.) (internal quotations
omitted), cert. denied,474 U.S. 1021 (1985).

Here, the action "might have been brought" in the
District of New Jersey, as defendant DCAG is an
alien corporation, see28 U.S.C. § 1391(d) (providing
"alien may be sued in any district"), and defendant
MBUSA resides in New Jersey. See28 U.S.C. §
1400(b) (providing action for patent infringement
may be brought in district where defendant resides).

With respect to the issue of convenience, a district
court must "weigh multiple factors in its
determination whether transfer is appropriate in a
particular case."SeeJones v. GNC Franchising, Inc.,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.))

211 F.3d 495, 498 (9th Cir.), *cert. denied,* 531 U.S. 928 (2000). One important factor is the convenience of witnesses. *See id.* at 499 (holding where "more of the relevant witnesses" resided in plaintiff's chosen forum, district court properly weighed that finding against transfer). Indeed, as one district court observed, this factor is "often the most important factor." *See Steelcase Inc. v. Haworth Inc.,* 41 U.S.P.Q.2d 1468, 1470 (C.D.Cal.1996).

*\*2* In their initial disclosures made to Sorensen on January 29, 2003, defendants identify four witnesses employed by MBUSA in New Jersey, whom defendants assert are likely to offer testimony concerning importation, distribution, sales and/or marketing decisions made by MBUSA. (*See* Defs.' Mot. Ex. 1 at 2-3.) Additionally, defendants initially disclosed three witnesses employed by DCAG in Germany, two of whom, defendants assert, are likely to offer testimony concerning DCAG's design and development of the light assemblies, and a third who, according to defendants, is likely to offer testimony concerning DCAG's communications with non-party Schefenacker, the manufacturer of the light assemblies. (*See* Defs.' Mot. Ex. 2 at 2-3.) Defendants also initially disclosed witnesses in Germany who are employed by Schefenacker. (*See* Defs.' Mot. Ex. 2 at 3.) [FN3] Sorensen, in his initial disclosures made to defendants on January 27, 2003, agrees that "officers and/or employees of Defendants and/or their fabricators" are witnesses on such issues as the design and manufacture of the accused products, sales figures, pricing decisions, and defendants' decisions made after being notified of Sorensen's claim of infringement. (*See* Defs.' Mot. Ex. 3 at 2.) Consequently, all parties are in accord that witnesses employed by defendants and Schefenacker,[FN4] all of whom work in either New Jersey or Germany, are potential witnesses in the instant action.

FN3. Defendants identified one Schefenacker employee by name, stating "[t]here may, however, be other Schefenacker employees with greater knowledge of the process used to manufacture the SLK taillights."(*See id.*)

FN4. As noted, according to defendants, the taillights are manufactured by Schefenacker and thereafter incorporated into automobiles manufactured by DCAG. Thus, it appears

Sorensen's reference to "fabricators" would include Schefenacker.

Sorensen, the inventor and a resident of the Cayman Islands, initially disclosed both himself and Paul Brown ("Brown"), an employee of non-party Turn-Key-Tech, LLC ("Turn-Key"),[FN5] a company located in the Southern District of California, as potential witnesses. (*See* Defs.' Mot. Ex. 3 at 1.) According to Sorensen, he and Brown are witnesses as to the patented technology and identification of accused products. (*See* Defs.' Mot. Ex. 3 at 2.) Defendants agree that both Sorensen and Brown are likely to be called as witnesses at trial. (*See* Defs.' Mot. Ex. 1 at 3:18-20; Defs.' Reply at 10:18-20.)

FN5. According to Brown, Turn-Key, prior to April 2002, owned "all substantive rights to use, sub-license, and enforce the '184 patent" and, in April 2002, assigned its rights back to Sorensen. (*See* Brown Decl. ¶¶ 4, 11.)

In his opposition, Sorensen additionally identifies as witnesses Jens Erik Sorensen, Trustee of SRD Trust, (*see* Jens Erik Sorensen Decl. ¶ 1), and John Tang-Pedersen ("Tang-Pedersen"), Turn-Key's Plant Engineer. (*See* Tang-Pedersen Decl. ¶ 2.) Jens Erik Sorensen states he is likely to testify as to his efforts to license the '184 patent, (*see* Jens Erik Sorensen Decl. ¶ 6); Tang-Pedersen states he is likely to testify as to the chain of custody of automobile lamp lenses currently in Turn-Key's warehouse located in the Southern District of California. (*See* Tang-Pedersen Decl. ¶¶ 2-3; Brown Decl. ¶ 2.) Defendants argue the materiality of such testimony is questionable in light of the fact that Sorensen did not disclose either of those witnesses in his initial disclosures, thus indicating that as of January 27, 2003, Sorensen was not of the opinion that Jens Erik Sorensen and Tang-Pedersen were "likely to have discoverable information." *See* Fed.R.Civ.P. 26(a)(1) (providing party making initial disclosures "must" disclose name of "each individual likely to have discoverable information"). Sorensen has not had an opportunity to explain why he omitted Jens Erik Sorensen and Tang-Pedersen from plaintiff's initial disclosures. In any event, there is no showing that either individual resides in the Northern District. Jens Erik Pedersen works in the Southern District of California [FN6] and Tang-Pedersen, as noted, works for a company in that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.))

district as well.

> FN6. Jens Erik Sorensen is President and General Manager of Intuii, a company located in the Southern District of California. (*See* Jens Erik Sorensen Decl. ¶ 4; Savidge Decl. ¶ 3.)

**\*3** In sum, no potential witness resides in or near the Northern District of California. All such witnesses reside and/or work in New Jersey, Germany, the Cayman Islands, or the Southern District of California, with a sizeable majority residing a significant distance from the Northern District.[FN7]Thus, if the action remains in this forum, all witnesses will be required to travel significant distances to attend trial. Even Brown, who resides in the Southern District of California, will be required to travel hundreds of miles to the Northern District.[FN8]By contrast, if the action is transferred to the District of New Jersey, the four potential witnesses working in New Jersey will not be required to travel any significant distance, and those witnesses traveling from Germany will face a considerably shorter trip. On balance, this factor weighs in favor of transfer.

> FN7. The convenience of witnesses employed by parties is not as important a factor as the convenience of non-party witnesses. *SeeHollyanne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307 n. 2 (Fed.Cir.1999). Here, however, almost all witnesses are employed by the parties and to the extent they are not, they are closely aligned with a party. For example, Brown will testify as an expert for plaintiffs. (*See* Brown Decl. ¶ 15.)

> FN8. If Jens Erik Sorensen and Tang-Pedersen testify at trial, they would be required to travel a similar distance to the Northern District.

In *Jones,* the Ninth Circuit identified eight additional factors that a district court should consider. "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the

differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."*Seeid.* at 498-99.The Court addresses these factors in turn.

At the outset, the Court notes that because the action does not involve an agreement, the first factor identified in *Jones* is not applicable and, as the action arises solely under federal law, the second factor likewise is inapplicable to the instant action.

Turning to the third factor enumerated in Jones, although "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum ... the presumption applies with less force when the plaintiff or real parties in interest are foreign."*SeePiper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1982). As Sorensen is a resident of the Cayman Islands, (*see* Compl. ¶ 1), Sorensen's choice of the Northern District is entitled to little deference. Although Sorensen asserts that the additional plaintiff, SRD Trust, is a "California trust," he does not contend that SRD Trust resides in the Northern District. To the extent any evidence as to residency has been submitted, that evidence strongly suggests that SRD Trust resides in the Southern District of California because, as noted above, Jens E. Sorensen, Trustee of SRD Trust, is employed in the Southern District of California.

Moreover, even where a plaintiff has chosen a forum close to his place of residence, district courts have applied a "general rule" that, in actions based on a claim of patent infringement, a plaintiff's choice of forum is accorded little deference where the central facts of the lawsuit occur outside the plaintiff's chosen forum. *See,e.g.,S.C. Johnson & Son, Inc. v. Gillette Co.,* 571 F.Supp. 1185, 1187-88 (N.D.Ill.1983). In such circumstances, "the preferred forum is that which is the center of the accused activity."*Seeid.*The "center of the accused activity" is the forum where the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product. *Seeid.* at 1188 (holding preferred forum was district in which defendant conducted "all development, testing, research, and production" and made "virtually all marketing and sales decisions" concerning accused product); *seealsoSaint-Gobain Calmar, Inc. v. Nat'l Products Corp.,* 230 F.Supp.2d

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.))**

655, 660 (E.D.Pa.2002) (holding plaintiff's choice of forum entitled to less deference where "center of gravity of the alleged infringement" occurred in another forum where defendant assembled and shipped accused device). Here, the center of the accused activity is Germany, where all design and manufacturing decisions were made, or New Jersey, where all marketing and sales decisions were made. *See* Jung Decl. ¶ 2; Barnard Decl., filed February 19, 2003, ¶ 5; *see* *L.G. Electronics Inc. v. First Int'l Computer, Inc.,* 138 F.Supp.2d 574, 590 (D.N.J.2001) (holding "center of gravity of the allegedly infringing activity" in Taiwan or California where one defendant manufactured accused device in Taiwan and second defendant make marketing and sales decisions in California). Consequently, Sorensen's choice of the Northern District is entitled to little, if any, deference.

**\*4** Next, there is no showing that either Sorensen or SRD Trust have any contacts with either the Northern District or New Jersey. MBUSA, a subsidiary of DCAG, has contacts with both the Northern District and New Jersey. Although MBUSA markets automobiles throughout the United States, (*see* Barnard Decl., filed February 19, 2003, ¶¶ 2-3), and maintains a regional office in the Northern District, (*see* Barnard Decl., filed March 14, 2003, ¶ 4), MBUSA's principal place of business, where it employs 800 people, is in New Jersey. (*See* Barnard Decl., filed February 19, 2003, ¶¶ 1, 4, 5.) Moreover, as noted, the New Jersey headquarters is the place where MBUSA makes all marketing and sales decisions concerning the accused products. (*See* *id.* ¶ 5.) Accordingly, the fourth *Jones* factor weighs in favor of transfer.

As to contacts relating to the plaintiff's cause of action, both parties' contacts with the Northern District appear to relate to the instant claims only to the extent that infringing products may have been sold in the Northern District. Those contacts, however, are likely to exist in every district in the United States, including the District of New Jersey. By contrast, as discussed above, one of the centers of the accused activity is New Jersey. Accordingly, the fifth *Jones* factor weighs in favor of transfer.

As to the costs of litigation, defendants argue that because those MBUSA employees who are potential witnesses work in New Jersey and the DCAG

employees who are potential witnesses reside in Germany, defendants' costs will increase if such witnesses must travel to California instead of New Jersey. Sorensen argues that it would be a burden to bring witnesses and evidence to New Jersey. In short, defendants argue that transfer will lower their costs, while Sorensen argues that transfer will increase his costs. No party, however, shows that its costs will significantly differ depending on whether the instant matter is heard in the Northern District or the District of New Jersey. Accordingly, the sixth factor weighs in favor of neither party.

With respect to the seventh of the factors enumerated in *Jones,* the parties' ability to compel attendance of unwilling non-party witnesses, defendants identify witnesses employed by non-party Schefenacker, while Sorensen has identified witnesses associated with non-party Turn-Key. Neither party, however, asserts that any non-party witness is unwilling to travel to either the Northern District or New Jersey. Accordingly, the seventh *Jones* factor weighs in favor of neither party.

As to the final *Jones* factor, defendants assert that documents likely to be used as evidence are located in MBUSA's records in New Jersey and DCAG's records in Germany. Sorensen asserts that Turn-Key maintains a warehouse in the Southern District of California, which facility contains "samples" of automobile lenses that have been analyzed "for possible infringement," (*see* Brown Decl. ¶ 2, 10), and that such samples likely will be offered as evidence. No party identifies any potentially relevant documents or tangible items located in the Northern District. Assuming the above-referenced evidence would have to be transported a considerable distance for trial or other purposes, there is no showing that moving such material to either the Northern District or New Jersey would hamper or otherwise affect the accessibility of such evidence. Accordingly, the eighth *Jones* factor weighs in favor of neither party.

**\*5** In sum, the most probative of the factors discussed above weigh in favor of transferring the instant complaint to the District of New Jersey and the remaining factors weigh in favor of neither party. Significantly, no factor weighs in favor of retention of the action in the Northern District given that neither Sorensen nor SRD Trust resides in the Northern District, that no potential witness resides in

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.))

the Northern District, and that no party has identified any potential evidence located in the Northern District. Accordingly, the Court finds that transfer of the instant action to the District of New Jersey is appropriate.

## CONCLUSION

For the reasons stated above, defendants' motion for transfer of venue to the District of New Jersey is hereby GRANTED.

The Clerk of the Court shall transfer the above-titled action to the District of New Jersey.

This order closes Docket No. 33.

IT IS SO ORDERED.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 11, 2003, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

James Michael Kaler

Law Offices of J. Michael Kaler

9930 Mesa Rim Road, Suite 200

San Diego, CA 92121

Peter B. Ackerman

Crowell & Moring LLP

3 Park Plaza, 20th Floor

Irvine, CA 92614-8505

Kent A. Gardiner

Donald D. Evenson

David M. Schnorrenberg

Paul Alp

Crowell & Moring LLP

1001 Pennsylvania Avenue, N.W.

Washington, D.C. 20002

N.D.Cal.,2003.
Sorensen v. Daimler Chrysler AG
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit L

PROTO

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:06-cv-01572-BTM-CAB

Sorensen v. Black & Decker Corp
Assigned to: Judge Barry Ted Moskowitz
Referred to: Magistrate Judge Cathy Ann Bencivengo
Demand: $0
Related Cases: 3:08-cv-00134-BTM-CAB
                3:08-cv-00070-BTM-CAB
                3:08-cv-00071-BTM-CAB
                3:08-cv-00135-BTM-CAB
                3:08-cv-00232-BTM-CAB
                3:08-cv-00136-BTM-CAB
                3:08-cv-00307-BTM-CAB
                3:08-cv-00304-BTM-CAB
Cause: 35:271 Patent Infringement

Date Filed: 08/07/2006
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

## Plaintiff

**Jens Erik Sorensen**
*as Trustee of Sorensen Research and
Development Trust*

represented by **James Michael Kaler**
Law Offices of James M Kaler
9930 Mesa Rim Road
Suite 200
San Diego, CA 92121
(858)362-3151
Fax: (858)824-9073
Email: michael@kalerlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melody A Kramer**
Kramer Law Office
9930 Mesa Rim Road
Suite 1600
San Diego, CA 92121
(858)362-3150
Fax: (858)225-0874
Email: mak@kramerlawip.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia A Shackelford**
9930 Mesa Rim Road

Suite 450
San Diego, CA 92121
(858)362-3152
Email: pashackelford@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The Black & Decker Corporation**
*a Maryland corporation*

represented by **Dina M Hayes**
Niro Scavone Haller and Niro
181 West Madison
Suite 4600
Chicago, IL 60602
(312)236-0733
Email: hayes@nshn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory P Casimer**
Niro Scavone Haller and Niro
181 West Madison Street
Suite 4600
Chicago, IL 60602
(312)236-0733
Fax: (312)236-3137
Email: casimer@nshn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Christopher Jaczko**
Jaczko Goddard
4401 Eastgate Mall
San Diego, CA 92121
(858)550-6150
Fax: (858)225-3500
Email: cjaczko@jaczkogoddard.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth S Klein**
Foley and Lardner LLP
402 West Broadway
Suite 2100
San Diego, CA 92101-3542
(619)234-6655
Fax: (619)234-3510
Email: kklein@cwsl.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Raymond P Niro, Jr**
Niro Scavone Haller & Niro
181 West Madison Street
Suite 4600
Chicago, IL 60602
(312)236-0733
Email: rnirojr@nshn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allison H Goddard**
Jaczko Goddard
4401 Eastgate Mall
San Diego, CA 92121
(858)550-6150
Fax: (858)225-3500
Email: agoddard@jaczkogoddard.com
*ATTORNEY TO BE NOTICED*

**Defendant**
**B&D HOLDINGS, LLC**                     represented by   **Kenneth S Klein**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Raymond P Niro, Jr**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**
**BLACK & DECKER, INC.**                  represented by   **Kenneth S Klein**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Raymond P Niro, Jr**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Allison H Goddard**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**
**DOES 1 THROUGH 1000**

**Defendant**

**HI-TECH PLASTICS INC.**                    represented by **Kenneth S Klein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert L Binder**
Foley & Lardner LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
(414) 297-5525
Email: rbinder@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Phillips Plastics Corporation**           represented by **Kenneth S Klein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert L Binder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PORTER-CABLE CORPORATION**                 represented by **Raymond P Niro, Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**VECTOR PRODUCTS, INC.**                    represented by **Raymond P Niro, Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Black & Decker (U.S.) Inc**                represented by **Allison H Goddard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth S Klein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Raymond P Niro, Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**HI-TECH PLASTICS INC.**                    represented by **Kenneth S Klein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert L Binder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Jens Erik Sorensen**                       represented by **James Michael Kaler**
*as Trustee of Sorensen Research and*         (See above for address)
*Development Trust*                           *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Phillips Plastics Corporation**            represented by **Kenneth S Klein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert L Binder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Jens Erik Sorensen**                       represented by **James Michael Kaler**
*as Trustee of Sorensen Research and*         (See above for address)
*Development Trust*                           *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/07/2006 | 1 | Complaint Filed; (referred to Magistrate Judge Ruben B. Brooks); Receipt No/Amt of Fee: #127955/$350 (cag) (Entered: 08/09/2006) |
| | | |

| | | |
|---|---|---|
| 08/08/2006 | 2 | Summons issued as to Black & Decker Corp (cag) (Entered: 08/09/2006) |
| 08/21/2006 | 3 | Return of Service of summons and cmp executed upon defendant Black & Decker Corp on 8/10/06 by mail (cag) (Entered: 08/22/2006) |
| 08/21/2006 | 4 | Return of Service of summons and cmp executed upon defendant Black & Decker Corp on 8/18/06 by mail (cag) (Entered: 08/22/2006) |
| 08/22/2006 | 5 | Notice by Jens Erik Sorensen of related cases: 06cv1434 BEN(CAB) and cases in other dists (low number order prepared) (cag) (Entered: 08/28/2006) |
| 08/31/2006 | 6 | Report of Clerk and Order of Transfer pursuant to Low Number Rule. Case transferred to Judge Barry T. Moskowitz and referred to Magistrate Judge Cathy A. Bencivengo (cag) (Entered: 08/31/2006) |
| 09/11/2006 | 7 | ANSWER to Complaint with Jury Demand by The Black & Decker Corporation.(cag) (Entered: 09/13/2006) |
| 09/13/2006 | 8 | Notice and ORDER: Early Neutral Evaluation set for 11/13/2006 02:00 PM in Courtroom E before Magistrate Judge Cathy Ann Bencivengo.. Signed by Judge Cathy Ann Bencivengo on 9/13/06. (av1, ) (Entered: 09/14/2006) |
| 09/18/2006 | 9 | MOTION to Strike *Answer* by Jens Erik Sorensen. Responses due by 10/20/2006 (Kaler, James) (Entered: 09/18/2006) |
| 09/19/2006 | 10 | CERTIFICATE OF SERVICE by Jens Erik Sorensen re 9 MOTION to Strike *Answer* (Kaler, James) (Entered: 09/19/2006) |
| 09/20/2006 | 11 | NOTICE by Jens Erik Sorensen *2d Amended Notice of related cases* (Kaler, James) (Entered: 09/20/2006) |
| 09/25/2006 | 14 | PRO HAC VICE APPOINTED: Dina M Hayes appearing for Defendant The Black & Decker Corporation (cag) (Entered: 09/27/2006) |
| 09/25/2006 | 15 | PRO HAC VICE APPOINTED: Raymond P Niro appearing for Defendant The Black & Decker Corporation (cag) (Entered: 09/27/2006) |
| 09/26/2006 | 12 | MOTION for Joinder *and File First Amended Complaint* by Jens Erik Sorensen. (Attachments: # 1 First Amended Complaint)(Kaler, James) (Entered: 09/26/2006) |
| 09/26/2006 | | STRUCK FROM RECORD PER ORDER OF 2/27/07 DOCUMENT 64 . AMENDED COMPLAINT *FOR PATENT INFRINGEMENT* against all defendants, filed by Jens Erik Sorensen.(Kaler, James) Modified on 2/27/2007 text (vet, ). (Entered: 09/26/2006) |
| 09/29/2006 | 16 | AMENDED ANSWER to *Plaintiff Jens Erik Sorensen's Complaint* by The Black & Decker Corporation. (Goddard, Allison) (Entered: 09/29/2006) |
| 09/29/2006 | 17 | NOTICE by Jens Erik Sorensen *of NEWLY DISCOVERED PRODUCTS ACCUSED OF PATENT INFRINGEMENT IN THIS ACTION* (Kaler, James) (Entered: 09/29/2006) |
| 10/02/2006 | 18 | MOTION for Summary Judgment *of Non-Infringement* by The Black & Decker Corporation. Responses due by 10/20/2006 (Attachments: # 1 Memo of Points and Authorities # 2 Statement of Facts # 3 Declaration # 4 Declaration # 5 # 6 # 7)(Goddard, Allison) (Entered: 10/02/2006) |
| 10/12/2006 | 19 | RESPONSE in Opposition re 9 MOTION to Strike *Answer* filed by The Black & Decker |

| | | |
|---|---|---|
| | | Corporation. (Attachments: # 1 Exhibit A - Amended Answer)(Goddard, Allison) (Entered: 10/12/2006) |
| 10/12/2006 | 20 | RESPONSE in Opposition re 12 MOTION for Joinder *and File First Amended Complaint* filed by The Black & Decker Corporation. (Attachments: # 1 Declaration Raymond Niro# 2 Declaration William Bruner)(Goddard, Allison) (Entered: 10/12/2006) |
| 10/17/2006 | 21 | REPLY to Response to Motion re 9 MOTION to Strike *Answer Aknowledging that Amended Answer Renders Motion Moot* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 10/17/2006) |
| 10/20/2006 | 22 | RESPONSE in Opposition re 18 MOTION for Summary Judgment *of Non-Infringement* filed by Jens Erik Sorensen. (Attachments: # 1 Statement of Facts Opposition to Separate Statement# 2 Evidentiary Objections to Bruner Declaration# 3 Declaration of Melody A. Kramer# 4 Request for Judicial Notice # 5 Exhibit A - T to Request for Judicial Notice) (Kramer, Melody) (Entered: 10/20/2006) |
| 10/20/2006 | 23 | NOTICE by Jens Erik Sorensen *Request for Electronic Notice* (Kramer, Melody) (Entered: 10/20/2006) |
| 10/23/2006 | 24 | CERTIFICATE OF SERVICE by Jens Erik Sorensen re 23 Notice (Other) *Request for Electronic Notice* (Kramer, Melody) (Entered: 10/23/2006) |
| 10/26/2006 | 25 | REPLY to Response to Motion re 12 MOTION for Joinder *and File First Amended Complaint* filed by Jens Erik Sorensen. (Attachments: # 1 Declaration of Melody A. Kramer# 2 Request for Judicial Notice # 3 Exhibit A-I to Request for Judicial Notice# 4 Evidentiary Objection to Bruner Declaration# 5 Evidentiary Objectionto Niro Declaration) (Kramer, Melody) (Entered: 10/26/2006) |
| 10/31/2006 | 26 | NOTICE by Jens Erik Sorensen *Supplemental NOTICE OF NEWLY DISCOVERED PRODUCTS ACCUSED OF PATENT INFRINGEMENT* (Kaler, James) (Entered: 10/31/2006) |
| 11/01/2006 | 27 | MOTION FOR PRESUMPTION THAT THE ACCUSED PROCESSES INFRINGE THE '184 PATENT PURSUANT TO 35 U.S.C. ? 295 by Jens Erik Sorensen. Responses due by 12/22/2006 (Kaler, James) Modified on 11/3/2006 to include text that reflects attatchment (vet, ). (Entered: 11/01/2006) |
| 11/01/2006 | 28 | DOCKETED AS MOTION BY MISTAKE - MOTION for Partial Summary Judgment *MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRESUMPTION THAT THE ACCUSED PROCESSES INFRINGE THE ?184 PATENT PURSUANT TO 35 U.S.C. ? 295* by Jens Erik Sorensen. Responses due by 12/22/2006 (Kaler, James) Modified on 11/3/2006 Document is in support of MOTION document 27 (vet, ). (Entered: 11/01/2006) |
| 11/01/2006 | 29 | AFFIDAVIT in Support re 27 MOTION for Partial Summary Judgment *MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRESUMPTION THAT THE ACCUSED PROCESSES INFRINGE THE ?184 PATENT PURSUANT TO 35 U.S.C. ? 295 OF PAUL BROWN* filed by Jens Erik Sorensen. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G)(Kaler, James) Modified on 11/3/2006 to reflect motion document number(vet, ). (Entered: 11/01/2006) |
| 11/01/2006 | 30 | AFFIDAVIT in Support re 27 MOTION for Partial Summary Judgment *MEMORANDUM* |

| | | |
|---|---|---|
| | | *OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRESUMPTION THAT THE ACCUSED PROCESSES INFRINGE THE ?184 PATENT PURSUANT TO 35 U.S.C. ? 295 OF J. MICHAEL KALER* filed by Jens Erik Sorensen. (Kaler, James) Modified on 11/3/2006 to reflect motion document number(vet, ). (Entered: 11/01/2006) |
| 11/03/2006 | 31 | RESPONSE in Support re 18 MOTION for Summary Judgment *of Non-Infringement Supplemental Brief* filed by The Black & Decker Corporation. (Attachments: # 1 Exhibit Exs. A & B to Supplemental Brief# 2 Declaration Goddard Declaration)(Goddard, Allison) (Entered: 11/03/2006) |
| 11/06/2006 | 32 | JOINT REPORT of Rule 26(f) Planning Meeting. (Kaler, James) Modified on 11/7/2006 to include text (vet, ). (Entered: 11/06/2006) |
| 11/07/2006 | 34 | PRO HAC VICE APPOINTED: Robert A Conley appearing for Defendant The Black & Decker Corporation (jpp, ) (Entered: 11/09/2006) |
| 11/08/2006 | 33 | MOTION for Partial Summary Judgment *Infringement as to Subject Tools* by Jens Erik Sorensen. Responses due by 1/5/2007 (Attachments: # 1 Memo of Points and Authorities # 2 Statement of Facts # 3 Declaration of Paul Brown# 4 Declaration Jens Erik Sorensen# 5 Declaration Melody A. Kramer# 6 Request for Judicial Notice)(Kramer, Melody) (Entered: 11/08/2006) |
| 11/10/2006 | 35 | MOTION Exclusion of Evidence under Rule 37 by Jens Erik Sorensen. (Attachments: # 1 Memo of Points and Authorities in support of motion under Rule 37# 2 Declaration in support of Rule 37 motion# 3 Exhibit A)(Kaler, James) Modified on 12/20/2006 to terminate motion hearing per chambers(vet, ). (Entered: 11/10/2006) |
| 11/13/2006 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Early Neutral Evaluation Conference held on 11/13/2006. The case did not settle. An order setting claim construction dates will follow. (ma) (Entered: 11/14/2006) |
| 11/16/2006 | 36 | NOTICE by Jens Erik Sorensen re 27 MOTION for Partial Summary Judgment *FOR PRESUMPTION THAT THE ACCUSED PROCESSES INFRINGE THE ?184 PATENT PURSUANT TO 35 U.S.C. ? 295 Hearing Continued to January 19, 2007* (Kaler, James) (Entered: 11/16/2006) |
| 11/17/2006 | 37 | Case management conf order regulating discovery and other pretrial proceedings. ENE was held 11/13/06.Claim construction Hearing set for 5/21/2007 09:00 AM in Courtroom 15 before Judge Barry Ted Moskowitz. Mandatory Settlement Conference set for 5/7/2007 10:00 AM before Magistrate Judge Cathy Ann Bencivengo.. Signed by Judge Cathy Ann Bencivengo on 11/17/06. (av1, ) (Entered: 11/17/2006) |
| 11/21/2006 | 38 | PRO HAC VICE APPOINTED: Gregory P Casimer appearing for Defendant The Black & Decker Corporation (av1, ) (Entered: 11/21/2006) |
| 11/22/2006 | 39 | NOTICE by Jens Erik Sorensen *Second Supplemental Notice of Newly Discovered Products Accused of Patent Infringement* (Kaler, James) (Entered: 11/22/2006) |
| 12/05/2006 | 40 | MOTION to Continue *January 19, 2007 Hearing Date* by The Black & Decker Corporation. (Attachments: # 1 Memo of Points and Authorities # 2 Declaration Raymond Niro Jr.# 3 Notice of Lodgment)(Goddard, Allison) (Entered: 12/05/2006) |
| 12/06/2006 | 41 | ORDER terminating motion hearing on 40 MOTION to Continue January 19, 2007 Hearing Date filed by The Black & Decker Corporation. Defendant's request to continue does not |

| | | |
|---|---|---|
| | | require a formal motion hearing on notice. The Court will consider Defendant's request an ex parte application and Plaintiff is directed to file any response to this application by December 15, 2006. The Court will issue an order shortly thereafter. Signed by Judge Barry Ted Moskowitz on 12/06/06. (jhp, ) (Entered: 12/06/2006) |
| 12/07/2006 | 42 | Joint MOTION for Protective Order by The Black & Decker Corporation. (Attachments: # 1 Exhibit Proposed Protective Order)(Goddard, Allison) (Entered: 12/07/2006) |
| 12/12/2006 | 43 | ORDER granting 42 Motion for Protective Order . Signed by Judge Cathy Ann Bencivengo on 12/12/06. (vet, ) (Entered: 12/13/2006) |
| 12/13/2006 | 44 | MOTION to Substitute Party *Phillips Plastics Corporation and Hi-Tech Plastics for DOES 1 and 2, RESPECTIVELY* by Jens Erik Sorensen. (Attachments: # 1 Memo of Points and Authorities in support of motion to substitute parties# 2 Declaration of Melody Kramer in support of motion to substitute parties)(Kaler, James) (Entered: 12/13/2006) |
| 12/15/2006 | 45 | RESPONSE in Opposition re 40 MOTION to Continue *January 19, 2007 Hearing Date* filed by Jens Erik Sorensen. (Kramer, Melody) (Entered: 12/15/2006) |
| 12/20/2006 | 46 | NOTICE by Jens Erik Sorensen re 35 MOTION Exclusion of Evidence under Rule 37 *Acknowledgement that Motion has been Mooted by Corrective Action of Defendant* (Kaler, James) (Entered: 12/20/2006) |
| 12/29/2006 | 47 | ORDER GRANTING defendant's motion to continue hearing dates on plaintiff's pending motions for partial summary judgment doc. 40 . ORDER DENYING plaintiff's 27 Motion for Presumption that the Accused Processes Infringe the '184 Patent, denying plaintiff's 33 Motion for Summary Determination of Infringement as to Subject Tools as premature. Pending 1/19/07 hearing dates on these motions is hereby vacated. Signed by Judge Barry Ted Moskowitz on 12/29/06. (vet, ) (Entered: 12/29/2006) |
| 01/03/2007 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery conference set for **January 5, 2007**, at **1:30 p.m.** The conference shall be telephonic, with attorneys only. Plaintiff's counsel shall coordinate and initiate the conference call. Any response Defendant has to Plaintiff's letter brief shall be submitted directly to chambers by **January 4, 2007**. (ma) (Entered: 01/03/2007) |
| 01/05/2007 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery conference held on 1/5/2007. Order to follow. (ma) (Entered: 01/05/2007) |
| 01/05/2007 | 48 | NOTICE by Jens Erik Sorensen *of Restructuring of Plaintiff* (Kaler, James) (Entered: 01/05/2007) |
| 01/08/2007 | 49 | ORDER Following 1/5/07 Discovery Conference. Signed by Judge Cathy Ann Bencivengo on 1/8/07. (vet, ) (Entered: 01/08/2007) |
| 01/12/2007 | 50 | ORDER RE: Discovery of Assignments and License Agreements entered by Plaintiff re: '184 Patent. Signed by Judge Cathy Ann Bencivengo on 1/11/07. (vet, ) (Entered: 01/12/2007) |
| 01/15/2007 | 51 | NOTICE by Jens Erik Sorensen *of Lodging of* (Attachments: # 1 Memo of Points and Authorities Expedited Motion to Compel Subpoena# 2 Notice Notice of hearing on expedited motion to compel subpoena# 3 Notice Withdrawal of Motion to Compel Subpoenas)(Kaler, James) (Entered: 01/15/2007) |
| | | |

| 01/17/2007 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: A discovery conference shall be held on **January 22, 2007**, at **1:30 p.m.** to discuss discovery disputes that Plaintiff and Defendant have brought to the Court's attention. Letter briefs shall be submitted directly to chambers on or before **January 17, 2006**. Reply letter briefs shall be submitted directly to chambers on or before **January 19, 2007**. Counsel are requested to keep discussion of the issues as brief as possible. (ma) (Entered: 01/17/2007) |
|---|---|---|
| 01/19/2007 | <u>52</u> | RESPONSE in Opposition re <u>44</u> MOTION to Substitute Party *Phillips Plastics Corporation and Hi-Tech Plastics for DOES 1 and 2, RESPECTIVELY* filed by The Black & Decker Corporation. (Niro, Raymond) (Entered: 01/19/2007) |
| 01/22/2007 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery conference held on 1/22/2007. Order to follow. (ma) (Entered: 01/25/2007) |
| 01/24/2007 | <u>53</u> | REPLY to Response to Motion re <u>12</u> MOTION for Joinder *and File First Amended Complaint*, <u>44</u> MOTION to Substitute Party *Phillips Plastics Corporation and Hi-Tech Plastics for DOES 1 and 2, RESPECTIVELY* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 01/24/2007) |
| 01/26/2007 | <u>54</u> | ORDER Granting In Part and Denying In Part Defendant's Motion to Compel. Signed by Magistrate Judge Cathy Ann Bencivengo on 1/26/07. (vet, ) (Entered: 01/29/2007) |
| 01/29/2007 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: A discovery conference shall be held on **February 8, 2007**, at **1:30 p.m.** The conference shall be telephonic, with attorneys only. Counsel shall coordinate and initiate the conference call. (ma) (Entered: 01/29/2007) |
| 02/02/2007 | <u>55</u> | MOTION for Summary Judgment *of Laches* by The Black & Decker Corporation. (Attachments: # <u>1</u> Notice of Motion & Motion# <u>2</u> Notice Request for Oral Argument# <u>3</u> Memo of Points and Authorities # <u>4</u> Statement of Facts # <u>5</u> Declaration Schiech# <u>6</u> Declaration Niro-Exhibits# <u>7</u> Exhibit 1# <u>8</u> Exhibit 2# <u>9</u> Exhibit 3# <u>10</u> Exhibit 4# <u>11</u> Exhibit 5-highlighted# <u>12</u> Exhibit 6-highlighted# <u>13</u> Exhibit 7# <u>14</u> Exhibit 8# <u>15</u> Exhibit 9# <u>16</u> Exhibit 10# <u>17</u> Exhibit 11# <u>18</u> Exhibit 12# <u>19</u> Exhibit 13# <u>20</u> Exhibit 14-highlighted# <u>21</u> Exhibit 15-highlighted# <u>22</u> Exhibit 16# <u>23</u> Exhibit 17# <u>24</u> Exhibit 18# <u>25</u> Exhibit 19# <u>26</u> Exhibit 20# <u>27</u> Exhibit 21# <u>28</u> Exhibit 22# <u>29</u> Proof of Service)(Niro, Raymond) (Entered: 02/02/2007) |
| 02/06/2007 | <u>56</u> | MOTION to Expedite *Motion for Continuance of briefing and hearing of MSJ re laches* by Jens Erik Sorensen. (Attachments: # <u>1</u> Notice Ex Parte Application for expedited motion for continuance# <u>2</u> Declaration of J. Michael Kaler in support of motion for continuance# <u>3</u> Exhibit A)(Kaler, James) Modified on 2/7/2007 text(vet, ). (Entered: 02/06/2007) |
| 02/08/2007 | <u>62</u> | ORDER setting briefing schedule and hearing on plaintiff's <u>56</u> Motion for Continuance. Signed by Judge Barry Ted Moskowitz on 02/08/07. (agp) Modified on 2/9/2007 to correct docket text (agp). (Entered: 02/09/2007) |
| 02/08/2007 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery conference held on 2/8/2007. Order to follow. (ma) (Entered: 02/20/2007) |
| 02/27/2007 | <u>63</u> | RESPONSE in Opposition re <u>56</u> MOTION to Expedite *Motion for Continuance of briefing and hearing of MSJ re laches* filed by The Black & Decker Corporation. (Attachments: # <u>1</u> Declaration Raymond P. Niro, Jr.# <u>2</u> Exhibit 1# <u>3</u> Exhibit 2# <u>4</u> Exhibit 3# <u>5</u> Exhibit 4# <u>6</u> Exhibit 5# <u>7</u> Exhibit 6# <u>8</u> Exhibit 7)(Niro, Raymond) (Entered: 02/27/2007) |

| 02/27/2007 | 64 | ORDER denying as moot Plaintiff's 9 Motion to Strike, granting Plaintiff's 12 Motion for Joinder, denying without prejudice Defendants 18 Motion for Summary Judgment, denying as moot Plaintiff's 44 Motion to Substitute Party. Also, the First Amended Complaint filed on 9/26/06 [doc. #13] shall be struck as prematurely filed. Signed by Judge Barry Ted Moskowitz on 2/23/07. (vet, ) (Entered: 02/27/2007) |
|---|---|---|
| 03/05/2007 | 65 | NOTICE of Hearing: Motion Hearing set for 3/6/2007 02:00 PM in Courtroom 15 before Judge Barry Ted Moskowitz. This notice is to change the time of the hrg.(saa, ) (Entered: 03/05/2007) |
| 03/05/2007 | 66 | NOTICE of entry of Order 59 . (vet, ) (Entered: 03/05/2007) |
| 03/06/2007 | 67 | Minute Entry for proceedings held before Judge Barry Ted Moskowitz : Discovery Hearing held on 3/6/2007. Discovery Hearing set for 5/29/2007 03:00 PM in Courtroom 15 before Judge Barry Ted Moskowitz. Court stays claim construction. Court to do order.(Court Reporter B. Harris).(Plaintiff Attorney James Kaler/Melody Kramer).(Defendant Attorney Raymond Niro/Allison Goddard). (saa, ) (Entered: 03/07/2007) |
| 03/08/2007 | 68 | ORDER RE: (1) Plaintiff's motion for a continuance of hearing date and associated briefing schedule on defendant's motion for summary judgment of laches doc. # 56 , (2) Substantive grounds for defendant's motion for summary judgment of laches, and (3) Claim construction schedule and hearing date . Signed by Judge Barry Ted Moskowitz on 3/8/07. (vet, ) (Entered: 03/09/2007) |
| 03/09/2007 | 69 | AMENDED COMPLAINT *for Patent Infringement* against all defendants, filed by Jens Erik Sorensen. (Attachments: # 1 Exhibit Subject '184 patent)(Kaler, James) (Entered: 03/09/2007) |
| 03/12/2007 | 70 | Set/Reset Hearings: Discovery Hearing set for 3/20/2007 02:00 PM in Courtroom 15 before Judge Barry Ted Moskowitz. Short-form/letter brief to be filed by Plaintiff 3/15; response brief to be filed by Defendant 3/19. Signed by Judge Barry Ted Moskowitz on 3/12/07. (jhp) (Entered: 03/12/2007) |
| 03/14/2007 | 71 | Summons Issued as to The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., DOES 1 THROUGH 1000, HI-TECH PLASTICS INC., Phillips Plastics Corporation, PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (jxj) (Entered: 03/15/2007) |
| 03/15/2007 | 72 | MOTION to Compel *further laches discovery* by Jens Erik Sorensen. (Attachments: # 1 Exhibit in support)(Kramer, Melody) (Entered: 03/15/2007) |
| 03/19/2007 | 73 | MOTION to Seal Document 72 MOTION to Compel *further laches discovery (Unredacted Motion and Exhibit B)* by Jens Erik Sorensen. (Kramer, Melody) (Entered: 03/19/2007) |
| 03/19/2007 | 74 | RESPONSE in Opposition re 72 MOTION to Compel *further laches discovery* filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Niro, Raymond) (Entered: 03/19/2007) |
| 03/19/2007 | 75 | Declaration of Raymond P. Niro, Jr. in support of Black & Decker's Memorandum in Opposition re 72 MOTION to Compel *further laches discovery* filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit |

| | | 6)(Niro, Raymond) Modified on 3/20/2007 text(vet, ). (Entered: 03/19/2007) |
|---|---|---|
| 03/20/2007 | 76 | Minute Entry for proceedings held before Judge Barry Ted Moskowitz : Motion Hearing held on 3/20/2007 re 72 DENIED - MOTION to Compel further laches discovery filed by Jens Erik Sorensen,, 73 DENIED - MOTION to Seal Documents (Court Reporter B. Harris).(Plaintiff Attorney James Kaler & Melody Kramer).(Defendant Attorney Raymond Niro & Allison Goddard). (saa, ) (Entered: 03/20/2007) |
| 03/21/2007 | 77 | Notice of Filing: Redacted Version of previously filed doc. 72 Motion to Compel further laches discovery by Jens Erik Sorensen. (Attachments: # 1 Exhibit Exhibit B)(Kaler, James) Modified on 7/20/2007 - edited text (vet, ). (Entered: 03/21/2007) |
| 03/27/2007 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery Hearing set for 3/28/2007 02:00 PM. The conference shall be telephonic, with attorneys only. Defendant's counsel shall coordinate and initiate the conference call. (ma) (Entered: 03/27/2007) |
| 03/28/2007 | 78 | NOTICE Withdrawing Reliance on Death of Witness as Ground for Claiming Evidentiary Prejudice by The Black & Decker Corporation pursuant to Court order doc. 68 Order, Set Hearings, Terminate Hearings, 55 MOTION for Summary Judgment *of Laches* (Attachments: # 1 Memo of Points and Authorities Docket 55 REVISED (strikeout)# 2 Statement of Facts Docket 55 REVISED (strikeout)# 3 Declaration Docket 55 Schiech REVISED (strikeout)# 4 Proof of Service)(Niro, Raymond) Modified on 4/3/2007 text (vet, ). (Entered: 03/28/2007) |
| 03/28/2007 | 79 | NOTICE by Jens Erik Sorensen, The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc re 69 Amended Complaint. *Stipulation Regarding Due Date for Black & Decker Defendants to Answer or Otherwise Plead in Response to Amended Complaint* (Niro, Raymond) (Entered: 03/28/2007) |
| 03/28/2007 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery conference held on 3/28/2007. Order to follow. (ma) (Entered: 04/06/2007) |
| 04/09/2007 | 80 | ORDER following 2/8/07 discovery conference, granting in part and denying in part Plaintiff's motion to compel. Signed by Judge Cathy Ann Bencivengo on 4/9/07. (vet, ) (Entered: 04/10/2007) |
| 04/09/2007 | 81 | ORDER following 3/28/07 discovery conference, granting in part and denying in part Defendant's motion to compel. Signed by Judge Cathy Ann Bencivengo on 4/9/07. (vet, ) (Entered: 04/10/2007) |
| 04/16/2007 | 82 | ANSWER to Amended Complaint *and Affirmative Defenses* by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. t/w Jury Demand(Niro, Raymond) Modified on 4/18/2007 text (vet, ). (Entered: 04/16/2007) |
| 04/16/2007 | 83 | *Hi-Tech Plastics Inc.'s* ANSWER to Amended Complaint *Affirmative Defenses*, COUNTERCLAIM s against Jens Erik Sorensen by HI-TECH PLASTICS INC. t/w Jury Demand(Klein, Kenneth) Modified on 4/18/2007 text(vet, ). (Entered: 04/16/2007) |
| 04/18/2007 | 84 | CERTIFICATE OF SERVICE by HI-TECH PLASTICS INC., HI-TECH PLASTICS INC. re 83 Answer to Amended Complaint, Counterclaim (Klein, Kenneth) (Entered: 04/18/2007) |

| 04/19/2007 | 85 | ANSWER to Amended Complaint, Affimative Defenses and COUNTERCLAIM against Jens Erik Sorensen t/w Jury Demand by Phillips Plastics Corporation.(Klein, Kenneth) Modified on 4/20/2007 text (vet, ). (Entered: 04/19/2007) |
|---|---|---|
| 04/23/2007 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Due to a pending motion for summary judgment and the Markman hearing having been vacated, the Mandatory Settlement Conference ("MSC") currently scheduled for May 7, 2007 shall be VACATED. Counsel shall jointly contact chambers within 5 days of the Markman hearing being reset to propose a new date for the MSC. (ma) (Entered: 04/23/2007) |
| 04/23/2007 | 86 | PRO HAC VICE APPOINTED: Robert L Binder appearing for Defendants HI-TECH PLASTICS INC., Phillips Plastics Corporation: local counsel Kenneth S. Klein. (mjj, ) (mam). (Entered: 04/23/2007) |
| 04/23/2007 | 87 | OBJECTION by Jens Erik Sorensen re 80 Order (Attachments: # 1 Declaration of Melody A. Kramer in Support)(Kramer, Melody) (Entered: 04/23/2007) |
| 04/24/2007 | 88 | OBJECTION by Jens Erik Sorensen re 80 Order, 87 Objection *AMENDED to add TOC/TOA* (Kramer, Melody) (Entered: 04/24/2007) |
| 04/30/2007 | 89 | AMENDED DOCUMENT by Jens Erik Sorensen. Amendment to 87 Objection *(amended POS only)*. (Kramer, Melody) (Entered: 04/30/2007) |
| 04/30/2007 | 90 | AMENDED DOCUMENT by Jens Erik Sorensen. Amendment to 88 Objection *(amended POS only)*. (Kramer, Melody) (Entered: 04/30/2007) |
| 04/30/2007 | 91 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Telephonic discovery conference set for **May 7, 2007**, at **10:30 a.m.** Counsel for Plaintiff shall coordinate and initiate the conference call. Each party shall submit directly to chambers a letter brief, outlining the issues to be discussed, on **April 30, 2007**. Response letter briefs shall be submitted on **May 3, 2007**. (ma) (Entered: 04/30/2007) |
| 05/01/2007 | 92 | NOTICE by Jens Erik Sorensen *WITHDRAWING CERTAIN PRODUCTS FROM THE LIST OF ACCUSED PRODUCTS WITHOUT PREJUDICE IN THIS ACTION* (Kaler, James) (Entered: 05/01/2007) |
| 05/04/2007 | 93 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Telephonic status conference set for **May 7, 2007**, at **11:30 a.m.** Counsel in *Sorensen v. Tecnica USA Corp.*, 06cv1941-BTM (CAB) will also be on the call, so that the Court can discuss a joint claim construction briefing schedule for both cases. Plaintiff's counsel will coordinate the call. (ma) (Entered: 05/04/2007) |
| 05/04/2007 | 94 | RESPONSE in Opposition re 55 MOTION for Summary Judgment *of Laches* filed by Jens Erik Sorensen. (Attachments: # 1 Evidentiary Objections# 2 Declaration of Paul Brown re Opposition to Summary Judgment of Laches# 3 Declaration of Don Erickson re MSJ of Laches# 4 Declaration of Ole Sorensen re MSJ of Laches# 5 Request for Judicial Notice re Opposition to MSJ re laches)(Kaler, James) (Entered: 05/04/2007) |
| 05/04/2007 | 95 | RESPONSE in Opposition re 55 MOTION for Summary Judgment *of Laches Plaintiff's Separate Statement of Facts* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 05/04/2007) |
| 05/04/2007 | 96 | AFFIDAVIT - Declaration of Melody Kramer, in Opposition re 55 MOTION for Summary Judgment *of Laches*, filed by Jens Erik Sorensen. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# |

| | | |
|---|---|---|
| | | <u>3</u> Exhibit 3 thru 5# <u>4</u> Exhibit 7)(Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | <u>97</u> | RESPONSE in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches Notice Lodging Cases* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 05/04/2007) |
| 05/04/2007 | <u>98</u> | AFFIDAVIT - Exhibit, in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches, Exhibit 8A to Melody Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | <u>99</u> | AFFIDAVIT - Exhibit, in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches, Exhibit 8B to Melody Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | <u>100</u> | AFFIDAVIT - Exhibits, in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches, Exhibits to Declaration of Melody Kramer* filed by Jens Erik Sorensen. (Attachments: # <u>1</u> Exhibit 11 to Kramer Declaration# <u>2</u> Exhibit 14 to Kramer Declaration# <u>3</u> Exhibit 16 to Kramer Declaration# <u>4</u> Exhibit 17 to Kramer Declaration# <u>5</u> Exhibit 19 to Kramer Declaration)(Kaler, James) Modified text to reflect documents, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | <u>101</u> | AFFIDAVIT - Exhibit, in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches, Exhibits to Melody Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) Modified text to relfect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | <u>102</u> | AFFIDAVIT - Exhibit, in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches, Exhibits to Melody Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) Modified text to relfect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | <u>103</u> | AFFIDAVIT - Exhibit, in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches, Exhibit 21 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | <u>104</u> | AFFIDAVIT - Exhibits, in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches, Exhibits to Kramer Declaration* filed by Jens Erik Sorensen. (Attachments: # <u>1</u> Exhibit 24 to Kramer Declaration# <u>2</u> Exhibit 25 to Kramer Declaration# <u>3</u> Exhibit 26 to Kramer Declaration# <u>4</u> Exhibit 27 to Kramer Declaration# <u>5</u> Exhibit 28 to Kramer Declaration# <u>6</u> Exhibit 29 to Kramer Declaration)(Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | <u>105</u> | AFFIDAVIT - Exhibit, in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches, Exhibit 30A to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | <u>106</u> | AFFIDAVIT - Exhibit, in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches, Exhibit 30B to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | <u>107</u> | AFFIDAVIT - Exhibits, in Opposition re <u>55</u> MOTION for Summary Judgment *of Laches, exhibits to Kramer Declaration* filed by Jens Erik Sorensen. (Attachments: # <u>1</u> Exhibit 33 to Kramer Declaration# <u>2</u> Exhibit 35 to Kramer Declaration# <u>3</u> Exhibit 36 to Kramer Declaration)(Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |

| 05/04/2007 | 108 | AFFIDAVIT - Exhibits, in Opposition re 55 MOTION for Summary Judgment *of Laches*, *exhibits to Kramer declaration* filed by Jens Erik Sorensen. (Attachments: # 1 Exhibit 38to Kramer Declaration# 2 Exhibit 39to Kramer Declaration)(Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| --- | --- | --- |
| 05/04/2007 | 109 | AFFIDAVIT - Exhibits, in Opposition re 55 MOTION for Summary Judgment *of Laches*, *exhibits to Kramer declaration* filed by Jens Erik Sorensen. (Attachments: # 1 Exhibit 43 to kramer declaration# 2 Exhibit 45 to kramer declaration# 3 Exhibit 47# 4 Exhibit 48)(Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/04/2007 | 110 | AFFIDAVIT - Exhibits, in Opposition re 55 MOTION for Summary Judgment *of Laches*, *Exhibits to Kramer Declaration* filed by Jens Erik Sorensen. (Attachments: # 1 Exhibit 51# 2 Exhibit 52# 3 Exhibit 53# 4 Exhibit 54# 5 Exhibit 55)(Kaler, James) Modified text to reflect document, on 5/9/2007 (jcj). (Entered: 05/04/2007) |
| 05/07/2007 | 111 | *Reply* ANSWER to Counterclaim *of Hi-Tech Plastics, Inc.* by Jens Erik Sorensen(as Trustee of Sorensen Research and Development Trust).(Kaler, James) (Entered: 05/07/2007) |
| 05/07/2007 | 112 | *Reply* ANSWER to Counterclaim *of Phillips Plastics Corporation* by Jens Erik Sorensen(as Trustee of Sorensen Research and Development Trust).(Kaler, James) (Entered: 05/07/2007) |
| 05/07/2007 | 113 | ORDER Setting Hearing and Briefing Schedule on Plaintiff's Objection to Magistrate Judge's Order [Doc. #88] . Signed by Judge Barry Ted Moskowitz on 5/7/07. (vet, ) (Entered: 05/08/2007) |
| 05/08/2007 | 114 | MOTION for Leave to File *Documents Under Seal* by Jens Erik Sorensen. (Attachments: # 1 Proposed Order(attached by mistake)(Kramer, Melody) Modified on 5/9/2007 text(vet, ). (Entered: 05/08/2007) |
| 05/08/2007 | 115 | ORDER Directing Defendants to Respond to Plaintiff's Motion to File Documents Under Seal [Doc. # 114]. Signed by Judge Barry Ted Moskowitz on 5/8/07. (vet, ) (Entered: 05/08/2007) |
| 05/08/2007 |  | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery Hearing held on 5/8/2007. Order to follow. (ma) (Entered: 05/09/2007) |
| 05/08/2007 |  | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Status Conference held on 5/8/2007. (ma) (Entered: 05/09/2007) |
| 05/09/2007 | 116 | Joint MOTION for Protective Order by HI-TECH PLASTICS INC., Phillips Plastics Corporation. (Binder, Robert) (Entered: 05/09/2007) |
| 05/09/2007 | 117 | NOTICE of Proofs of Service for Opposition to Motion for Summary Judgment on Laches by Jens Erik Sorensen re 102 Affidavit in Opposition to Motion, 108 Affidavit in Opposition to Motion,, 110 Affidavit in Opposition to Motion,, 105 Affidavit in Opposition to Motion, 103 Affidavit in Opposition to Motion, 104 Affidavit in Opposition to Motion,, 97 Response in Opposition to Motion, 101 Affidavit in Opposition to Motion, 96 Affidavit in Opposition to Motion,, 95 Response in Opposition to Motion, 107 Affidavit in Opposition to Motion,, 109 Affidavit in Opposition to Motion,, 99 Affidavit in Opposition to Motion, 106 Affidavit in Opposition to Motion, 94 Response in Opposition to Motion,, 100 Affidavit in Opposition to Motion,, 98 Affidavit in Opposition to Motion *PROOF OF SERVICE* (Kramer, Melody) Modified on 5/10/2007 text(vet, ). (Entered: 05/09/2007) |

| | | |
|---|---|---|
| 05/09/2007 | <u>118</u> | NOTICE: Proof of Service by Jens Erik Sorensen re <u>114</u> MOTION for Leave to File *Documents Under Seal PROOF OF SERVICE* (Kramer, Melody) Modified on 5/10/2007 text(vet, ). (Entered: 05/09/2007) |
| 05/09/2007 | <u>119</u> | Discrepancy Order by Magistrate Judge Cathy Ann Bencivengo accepting document: Joint Motion for Protective Order from Defendant HI-TECH PLASTICS INC.; non-compliance with local rule, Includes a proposed order or requires judge's signature. Signed by Magistrate Judge Cathy Ann Bencivengo on 5/9/07. (vet, ) (Entered: 05/09/2007) |
| 05/09/2007 | <u>120</u> | ORDER Following 5/7/07 Discovery Conference . Signed by Magistrate Judge Cathy Ann Bencivengo on 5/9/07. (vet, ) (Entered: 05/09/2007) |
| 05/10/2007 | <u>121</u> | ORDER to Add Defendants Phillips Plastics Corporation and Hi-Tech Plastics Inc. as Parties to the Protective Order Dated December 12, 2006. Granting <u>116</u> Motion for Protective Order . Signed by Magistrate Judge Cathy Ann Bencivengo on 5/10/07. (vet, ) (Entered: 05/11/2007) |
| 05/17/2007 | <u>122</u> | REPLY re <u>87</u> Objection *Opposition to Plaintiff's Objections to Magistrate Judge's Order* filed by Black & Decker (U.S.) Inc. (Attachments: # <u>1</u> Exhibit A-D)(Goddard, Allison) (Entered: 05/17/2007) |
| 05/18/2007 | <u>123</u> | RESPONSE to Motion re <u>114</u> MOTION for Leave to File *Documents Under Seal* filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Niro, Raymond) (Entered: 05/18/2007) |
| 05/18/2007 | <u>124</u> | REPLY to Response to Motion re <u>55</u> MOTION for Summary Judgment *of Laches* filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Niro, Raymond) (Entered: 05/18/2007) |
| 05/18/2007 | <u>125</u> | AFFIDAVIT of Raymond P. Niro, Jr. in Support re <u>55</u> MOTION for Summary Judgment *of Laches Reply Brief* filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Attachments: # <u>1</u> Exhibit 24# <u>2</u> Exhibit 25# <u>3</u> Exhibit 26# <u>4</u> Exhibit 27# <u>5</u> Exhibit 28# <u>6</u> Exhibit 29# <u>7</u> Exhibit 30# <u>8</u> Exhibit 31# <u>9</u> Exhibit 32) (Niro, Raymond) Modified on 5/21/2007 text(vet, ). (Entered: 05/18/2007) |
| 05/18/2007 | <u>126</u> | REPLY to Plaintiff's Response to Black & Decker's Separate Statement of Undisputed Material filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Niro, Raymond) Modified on 5/21/2007 text(vet, ). (Entered: 05/18/2007) |
| 05/18/2007 | <u>127</u> | Response to Plaintiff's Evidentiary Objections to Declaration of John Schiech in support of Black & Decker's Motion for Summary Judgment of Laches <u>55</u> filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Niro, Raymond) Modified on 5/21/2007 text(vet, ). (Entered: 05/18/2007) |
| 05/18/2007 | <u>128</u> | RESPONSE to Motion re <u>114</u> MOTION for Leave to File *Documents Under Seal Joinder to Black & Decker's Response* filed by HI-TECH PLASTICS INC., Phillips Plastics Corporation, HI-TECH PLASTICS INC., Phillips Plastics Corporation. (Klein, Kenneth) |

| | | |
|---|---|---|
| | | (Entered: 05/18/2007) |
| 05/21/2007 | <u>129</u> | ORDER granting in part and denying in part <u>114</u> Plaintiff's Motion for Leave to File Documents Under Seal: Plaintiff's motion to file documents under seal in GRANTED with respect to exhibits 40 and 46. Plaintiff's motion is DENIED as it pertains to all other documents. Plaintiff is directed to file unredacted copies of all relevant portions of supporting documents previously marked confidential, other than exhibits 40 and 46, within 7 days of entry of this order. Signed by Judge Barry Ted Moskowitz on 5/21/2007. (mjj, ) (mam). (Entered: 05/21/2007) |
| 05/22/2007 | <u>131</u> | AMENDED DOCUMENT by Jens Erik Sorensen. Response to Black & Decker Corporation's Separate Statement of Undisputed Material Facts in support of plaintiff's opposition to motion for summary judgment on laches. Amendment to <u>94</u> Response in Opposition to Motion, <u>95</u> Response in Opposition to Motion *Unredacted Opp Sep Stmt*. (Kramer, Melody) Modified on 5/23/2007 text(vet, ). (Entered: 05/22/2007) |
| 05/22/2007 | <u>132</u> | AMENDED DOCUMENT by Jens Erik Sorensen. Plaintiff's Evidentiary Objections to Declaration of John W. Schiech in support of Black & Decker's motion for summary judgment of laches. Amendment to <u>94</u> Response in Opposition to Motion, *Unredacted Evidentiary Objection*. (Kramer, Melody) Modified on 5/23/2007 text(vet, ). (Entered: 05/22/2007) |
| 05/22/2007 | <u>133</u> | AMENDED DOCUMENT by Jens Erik Sorensen. Notice of filing of exhibits to declaration of Melody A. Kramer in support of plaintiff's opposition to motion for summary judgment on laches. Amendment to <u>96</u> Affidavit in Opposition to Motion,, <u>94</u> Response in Opposition to Motion, *Unredacted Exhibits to Kramer Declaration*. (Attachments: # <u>1</u> Exhibit 6# <u>2</u> Exhibit 12# <u>3</u> Exhibit 13# <u>4</u> Exhibit 15# <u>5</u> Exhibit 41# <u>6</u> Exhibit 44)(Kramer, Melody) Modified on 5/23/2007 text(vet, ). (Entered: 05/22/2007) |
| 05/23/2007 | <u>134</u> | REPLY to Response to Motion re <u>55</u> MOTION for Summary Judgment *of Laches CORRECTED (p. 8)* filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Niro, Raymond) (Entered: 05/23/2007) |
| 05/23/2007 | <u>135</u> | OBJECTION by Jens Erik Sorensen re <u>120</u> Order (Attachments: # <u>1</u> Exhibit A-L# <u>2</u> Declaration of J. Michael Kaler, Esq.)(Kramer, Melody) (Entered: 05/23/2007) |
| 05/23/2007 | <u>136</u> | MOTION for Leave to File *Exhibit Under Seal in support of Objection (document 135)* by Jens Erik Sorensen. (Kramer, Melody) Modified on 5/24/2007 text(vet, ). (Entered: 05/23/2007) |
| 05/24/2007 | <u>137</u> | Ex Parte MOTION Leave to Bring Technical Equipment into Courtroom by BLACK & DECKER, INC.. (Goddard, Allison) (Entered: 05/24/2007) |
| 05/24/2007 | 138 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: At the request of the parties, a discovery conference shall be held on **June 11, 2007**, at **11:00 a.m.** The conference shall be telephonic, with attorneys only. Plaintiff's counsel shall coordinate and initiate the conference call. Plaintiff shall submit a letter brief outlining the issues to be discussed at the conference on or before **May 30, 2007**. Defendant shall submit a reply letter brief on or before **June 5, 2007**. (ma) (Entered: 05/24/2007) |
| 05/25/2007 | 139 | ORDER Resetting Hearing on Motion <u>55</u> MOTION for Summary Judgment of Laches : Motion Hearing reset for 6/13/2007 03:00 PM in Courtroom 15 before Judge Barry Ted |

| | | Moskowitz. Signed by Judge Barry Ted Moskowitz on 5/25/07. (jhp) (Entered: 05/25/2007) |
|---|---|---|
| 05/30/2007 | 140 | ORDER granting 137 Ex Parte Application to bring technical equipment into courtroom . Signed by Judge Barry Ted Moskowitz on 5/26/07. (vet, ) (Entered: 05/30/2007) |
| 06/01/2007 | 141 | ORDER Regarding Defendant's Third Set of Requests for Admissions. Signed by Magistrate Judge Cathy Ann Bencivengo on 6/1/07. (vet, ) (Entered: 06/01/2007) |
| 06/11/2007 | | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery conference held on 6/11/2007. Order to follow. (ma) (Entered: 06/27/2007) |
| 06/13/2007 | 142 | Minute Entryfor proceedings held before Judge Barry Ted Moskowitz : Motion Hearing held on 6/13/2007 re 55 MOTION for Summary Judgment *of Laches* filed by The Black & Decker Corporation, DENIED (Court Reporter B. Harris).(Plaintiff Attorney James M. Kaler, Melody A Karmer, Patricia A. Shackelford).(Defendant Attorney Raymond P Niro, Kina M Hayes). (saa) (Entered: 06/13/2007) |
| 06/14/2007 | 143 | ORDER Overruling Plaintiff's 88 Objection to Magistrate Judge's Order. The Court finds this matter suitable for deteremination without oral argument, and hereby Affirms the decision of the Magistrate Judge without prejudice. Plaintiff is granted leave to serve an interrogatory upon Defendants. Defendants shall provide a response within 20 days of receipt of Plaintiff's interrogatory. Signed by Judge Barry Ted Moskowitz on 06/13/07. (jcj) (Entered: 06/14/2007) |
| 06/15/2007 | 145 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery conference held on 6/15/2007. Parties to submit joint motion to amend the protective order. (ma) (Entered: 06/19/2007) |
| 06/18/2007 | 144 | Joint MOTION for Order *Re Demonstrative Exhibit Used at Summary Judgment Hearing* by BLACK & DECKER, INC.. (Goddard, Allison) (bar, ). (Entered: 06/18/2007) |
| 06/20/2007 | 146 | NOTICE by Jens Erik Sorensen *(Second Notice Withdrawing Certain Accused Products)* (Kramer, Melody) (Entered: 06/20/2007) |
| 06/20/2007 | 147 | ORDER: (1) Denying Defendants' Motion for Summary Judgement of Laches; (2) Setting Bench Trial and Pretrial Schedule on Defendants' Claims of Laches and Equitable Estoppel; and (3) Setting Claim Construction Hearing. Claim Construction Hearing set for 10/31/2007 09:00 AM in Courtroom 15 before Judge Barry Ted Moskowitz. Signed by Judge Barry Ted Moskowitz on 6/20/07. (vet, ) (Entered: 06/21/2007) |
| 06/20/2007 | 148 | ORDER granting Plaintiff's 136 Motion for Leave to File Documents Under Seal. Plaintiff is permitted to file the Declaration of J. Michael Kaler Re License Formula and Calculations as an Exhibit I to Plaintiff's Objection to Magistrate Judge's Order (Docket #120) filed May 9, 2007. Signed by Judge Barry Ted Moskowitz on 6/20/07. (vet, ) (Entered: 06/21/2007) |
| 06/25/2007 | 150 | ORDER granting Joint 144 Motion Re Production of Demonstrative Exhibit used at Hearing on Motion for Summary Judgment. Signed by Magistrate Judge Cathy Ann Bencivengo on 6/25/07. (vet) (Entered: 06/25/2007) |
| 06/27/2007 | 151 | REVISED Case Management Conference Order Regulating Discovery and other Pretrial Proceedings. Claim Construction Hearing set for 10/31/2007 10:00 AM in Courtroom 15 before Judge Barry Ted Moskowitz. Signed by Magistrate Judge Cathy Ann Bencivengo on 6/27/07. (vet) (Entered: 06/28/2007) |

| 06/28/2007 | 152 | ORDER Following 6/11/07 Discovery Conference. Signed by Magistrate Judge Cathy Ann Bencivengo on 6/28/07. (vet) (Entered: 06/28/2007) |
|---|---|---|
| 06/29/2007 | 153 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: A status conference shall be held on **July 5, 2007,** at **2:00 p.m.** to discuss the scheduling order issued on 6/27/07 151 . The conference shall be telephonic, with attorneys only. Counsel in *Sorensen v. Tecnica USA Corp.*, 06cv1941-BTM (CAB) will also be on the call. Plaintiff's counsel shall coordinate and initiate the conference call. Any issues regarding the scheduling order that counsel wish to discuss with the Court shall be set out in a letter brief, submitted directly to chambers on or before **July 2, 2007**. (ma) (Entered: 06/29/2007) |
| 06/29/2007 | 154 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: At the request of the parties, a discovery conference shall be held on **July 5, 2007,** at **2:30 p.m.,** immediately following the status conference. Counsel shall submit a letter brief outlining the issues to be discussed at the discovery conference on or before **July 2, 2007**. Reply letter briefs shall be submitted on **July 3, 2007**. Letter briefs shall be submitted directly to chambers, and not faxed or emailed. (ma) (Entered: 06/29/2007) |
| 06/29/2007 | 155 | DECLARATION re 135 Objection -- *Declaration in Opposition to Plaintiff's Objections to Magistrate-Judge's 5/9/07 Order* by Defendants The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Proof of Service)(Niro, Raymond) (Entered: 06/29/2007) |
| 06/29/2007 | 156 | NOTICE of Conventional Filing by Black & Decker (U.S.) Inc re 135 Objection *Motion to File Opposition to Objections Under Seal* (Attachments: # 1 Proof of Service Motion for Leave to File Documents Under Seal)(Goddard, Allison) (Entered: 06/29/2007) |
| 06/29/2007 | | MOTION for leave to file documents under seal. Previously filed as 156 Notice of Conventional Filing by BLACK & DECKER, INC. (vet) (Entered: 07/02/2007) |
| 06/29/2007 | 157 | NOTICE: Black & Decker's Motion for leave to file documents under seal. Previously filed 156 . (vet) (Entered: 07/03/2007) |
| 07/02/2007 | 158 | ORDER Resetting Consolidated Claim Construction Hearing.Claim Construction Hearing set for 11/19/2007 10:00 AM in Courtroom 15 before Judge Barry Ted Moskowitz. Signed by Judge Barry Ted Moskowitz on 7/2/07. (vet) (Entered: 07/03/2007) |
| 07/05/2007 | 172 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Status Conference held on 7/5/2007. Counsel had no objections to the consolidated claim construction schedule. (ma) (Entered: 07/24/2007) |
| 07/05/2007 | 173 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery conference held on 7/5/2007. Order issued. (ma) (Entered: 07/24/2007) |
| 07/06/2007 | 159 | ORDER Following 7/5/07 Discovery Conference. Telephonic Discovery Conference set for 7/26/2007 12:00 PM before Magistrate Judge Cathy Ann Bencivengo. Signed by Magistrate Judge Cathy Ann Bencivengo on 7/6/07. (vet) (Entered: 07/06/2007) |
| 07/06/2007 | 160 | REPLY re 135 Objection, 156 Notice of Conventional Filing, 155 Declaration, filed by Jens Erik Sorensen. (Kramer, Melody) Additional attachment(s) added on 10/4/2007 - pursuant to court order doc. 254 , the redacted public version .pdf is added, original document is filed under seal (vet, ). (Entered: 07/06/2007) |

| 07/06/2007 | 161 | MOTION to File Confidential Reply Under Seal re 160 Reply by Jens Erik Sorensen. (Kramer, Melody) (Entered: 07/06/2007) |
|---|---|---|
| 07/09/2007 | 162 | NOTICE by Jens Erik Sorensen *of Newly Discovered Accused Products* (Kaler, James) (Entered: 07/09/2007) |
| 07/12/2007 | 163 | MOTION for Reconsideration re 143 Order, *re Black & Decker privilege waiver* by Jens Erik Sorensen. (Attachments: # 1 Memo of Points and Authorities # 2 Exhibit A and B# 3 Declaration C and D)(Kramer, Melody) (Entered: 07/12/2007) |
| 07/12/2007 | 164 | ORDER granting Black & Decker's 156 Motion for leave to file document under seal. Signed by Judge Barry Ted Moskowitz on 7/12/07. (vet) (Entered: 07/12/2007) |
| 07/12/2007 | 165 | ORDER granting Plaintiff's 161 Motion for leave to file documents under seal. Signed by Judge Barry Ted Moskowitz on 7/12/07. (vet) (Entered: 07/12/2007) |
| 07/13/2007 | 170 | MINUTE ORDER Objection to the Magistrate Judge's ruling (135) is submitted. (tml) (Entered: 07/13/2007) |
| 07/20/2007 | 171 | MOTION for Reconsideration re 147 Order, Set Hearings,, *re bifurcation* by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Niro, Raymond) (Entered: 07/20/2007) |
| 07/26/2007 | 174 | RESPONSE in Opposition re 163 MOTION for Reconsideration of Denial of Objections to Magistrate Judge's 4/9/07 Order filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Niro, Raymond) Modified on 7/27/2007 - edited text (vet, ). (Entered: 07/26/2007) |
| 07/31/2007 | 175 | MOTION for Default Judgment as to *Defendants Porter Cable Corporation and Vector Corporation; Memorandum of Points and Authorities in support of 176 Motion for Default Judgment* by Jens Erik Sorensen. (Kaler, James) Modified on 8/2/2007 - edited text (vet, ). (Entered: 07/31/2007) |
| 08/01/2007 | 176 | NOTICE by Jens Erik Sorensen re 175 MOTION for Default Judgment as to *Defendants Porter Cable Corporation and Vector Corporation* (Attachments: # 1 Declaration of Michael Kaler in support of Motion for Default# 2 Exhibit Exhibit A to Declaration in support of Motion for Default)(Kaler, James) (Entered: 08/01/2007) |
| 08/03/2007 | 177 | ORDER following Discovery Conference on 07/26/07. Signed by Judge Cathy Ann Bencivengo on 08/03/07. (jpp) (Entered: 08/03/2007) |
| 08/03/2007 | 178 | Joint MOTION to Stay *the Litigation Pending the Outcome of Reexamination Proceedings* by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., HI-TECH PLASTICS INC., Phillips Plastics Corporation, PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Attachments: # 1 Memo of Points and Authorities)(Niro, Raymond) Modified on 8/6/2007 to correct attorneys docket text (agp). (Entered: 08/03/2007)* |
| 08/03/2007 | 179 | NOTICE by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., HI-TECH PLASTICS INC., Phillips Plastics Corporation, PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc re 178 Joint MOTION to Stay *Pending Reexamination Lodging of Authorities Cited in* |

| | | |
|---|---|---|
| | | *Support of Motion* (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 # 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 # 9 Exhibit 9)(Niro, Raymond) (Entered: 08/03/2007) |
| 08/03/2007 | 180 | DECLARATION re 178 Joint MOTION to Stay *Pending Reexamination* by Defendants The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., HI-TECH PLASTICS INC., Phillips Plastics Corporation, PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Niro, Raymond) (Entered: 08/03/2007) |
| 08/03/2007 | 181 | REPLY to Response to Motion re 163 MOTION for Reconsideration re 143 Order, *re Black & Decker privilege waiver* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/03/2007) |
| 08/06/2007 | 182 | Amended MOTION for Default Judgment as to *Porter-Cable Corporation* by Jens Erik Sorensen. (Attachments: # 1 Memo of Points and Authorities # 2 Declaration of J. Michael Kaler)(Kramer, Melody) (Entered: 08/06/2007) |
| 08/08/2007 | 183 | Joint MOTION to Amend/Correct 151 Order, Set Hearings, Terminate Hearings,,, *(to Modify the Revised Case Management Conference Order of 6-27-07)* by Jens Erik Sorensen, The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., HI-TECH PLASTICS INC., Phillips Plastics Corporation, PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Casimer, Gregory) (Entered: 08/08/2007) |
| 08/08/2007 | 184 | ORDER granting Agreed Joint 183 Motion to Modify the Revised Case Management Conference Order of June 27, 2007. Signed by Magistrate Judge Cathy Ann Bencivengo on 8/8/07. (vet) Additional attachment(s) added on 8/9/2007 (vet, ). (Entered: 08/09/2007) |
| 08/08/2007 | 185 | NOTICE of Correction re 184 Order on Motion to Amend/Correct. Correct document is attached. (vet) (Entered: 08/09/2007) |
| 08/10/2007 | 186 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery Hearing held on 8/10/2007. Order to follow.(Plaintiff Attorney Melody Kramer).(Defendant Attorney Alison Goddard; Dina Hayes; Robert Binder). (om) (Entered: 08/13/2007) |
| 08/10/2007 | 190 | Minute ORDER submitting 163 Motion for Reconsideration (tml) (Entered: 08/14/2007) |
| 08/13/2007 | 187 | RESPONSE in Opposition re 171 MOTION for Reconsideration re 147 Order, Set Hearings,, *re bifurcation* filed by Jens Erik Sorensen. (Attachments: # 1 Request for Judicial Notice Exhibits in Opposition to Motion to reconsider)(Kaler, James) (Entered: 08/13/2007) |
| 08/13/2007 | 188 | AMENDED DOCUMENT by Jens Erik Sorensen. Amendment to 187 Response in Opposition to Motion, *Corrected Proof of Service.* (Kramer, Melody) (Entered: 08/13/2007) |
| 08/13/2007 | 189 | ORDER Following 8-10-07 Discovery Conference. Signed by Magistrate Judge Cathy Ann Bencivengo on 8/13/07. (vet) (Entered: 08/14/2007) |
| 08/17/2007 | 191 | RESPONSE in Opposition re 178 Joint MOTION to Stay *Pending Reexamination* filed by Jens Erik Sorensen. (Attachments: # 1 Declaration J. Michael Kaler# 2 Exhibit A thru K (F reserved)# 3 Exhibit L thru Q# 4 Notice of Lodging)(Kramer, Melody) Modified on 8/20/07 - Atty notified that s/ signature should match with atty whose login is used for e-filing. (mdc) (Entered: 08/17/2007) |

| 08/20/2007 | <u>192</u> | REPLY Memorandum in support of its Motion re <u>171</u> MOTION for Reconsideration of the Court's June 20, 2007 Order re bifurcation filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Attachments: # <u>1</u> Exhibit)(Niro, Raymond) Modified on 8/22/2007 - edited text (vet, ). (Entered: 08/20/2007) |
|---|---|---|
| 08/22/2007 | <u>193</u> | JOINT CLAIM CONSTRUCTION CHART by Jens Erik Sorensen. (Attachments: # <u>1</u> Exhibit Exhibit A)(Kaler, James) (Entered: 08/22/2007) |
| 08/22/2007 | <u>194</u> | JOINT CLAIM CONSTRUCTION WORKSHEET by Jens Erik Sorensen. (Attachments: # <u>1</u> Exhibit Exhibit A)(Kaler, James) (Entered: 08/22/2007) |
| 08/22/2007 | <u>195</u> | JOINT HEARING STATEMENT by Jens Erik Sorensen. (Kaler, James) (Entered: 08/22/2007) |
| 08/23/2007 | <u>196</u> | Proof of Service of Summons and First Amended Complaint on Newly Added Parties by Jens Erik Sorensen re <u>69</u> Amended Complaint (Attachments: # <u>1</u> Declaration of Service with Signature# <u>2</u> Exhibit Cover letter with service)(Kaler, James) Modified on 8/24/2007 - edited text (vet, ). (Entered: 08/23/2007) |
| 08/23/2007 | <u>197</u> | REPLY to Response to Motion re <u>178</u> Joint MOTION to Stay *Pending Reexamination* filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., HI-TECH PLASTICS INC., Phillips Plastics Corporation, PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Attachments: # <u>1</u> Exhibit C)(Niro, Raymond) (Entered: 08/23/2007) |
| 08/24/2007 | 198 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery Hearing held on 8/24/2007. Order to follow.(Plaintiff Attorney Melody Kramer; Michael Kaler).(Defendant Attorney Dina Hayes. (om) (Entered: 08/27/2007) |
| 08/27/2007 | <u>199</u> | NOTICE of Request for oral argument with regards to defendants' joint motion to stay the litigation pending the outcome of the reexamination proceedings (docket #178) by Jens Erik Sorensen (Kaler, James) Modified on 8/28/2007 - edited text (vet, ). (Entered: 08/27/2007) |
| 08/27/2007 | <u>200</u> | ORDER: (1) Overruling Plaintiff's Objection to Magistrate Judge's Order Filed May 9, 2007 [Doc. #135]; and (2) Granting in Part Plaintiff's Request for Supplemental Protective Order. Signed by Judge Barry Ted Moskowitz on 8/27/07. (vet) (Entered: 08/27/2007) |
| 08/27/2007 | 202 | MINUTE ORDER submitting <u>171</u> Motion for Reconsideration (tml) (Entered: 08/28/2007) |
| 08/28/2007 | <u>201</u> | Plaintiff's Ex Parte Request for leave to file Surreply to Defendants' Joint Reply to Opposition to Defendants' Joint Motion for Stay (Docket #107) (Attachments: # <u>1</u> Surreply# <u>2</u> Declaration of Michael Kaler for Surreply# <u>3</u> Exhibit A# <u>4</u> Exhibit B# <u>5</u> Exhibit C# <u>6</u> Exhibit D# <u>7</u> Exhibit E# <u>8</u> Exhibit F# <u>9</u> Exhibit G# <u>10</u> Exhibit H# <u>11</u> Exhibit I# <u>12</u> Exhibit J# <u>13</u> Exhibit K# <u>14</u> Exhibit L# <u>15</u> Exhibit M)(Kaler, James) Modified on 8/29/2007 edited text; not filed as a motion, atty contacted (vet, ). (Entered: 08/28/2007) |
| 08/28/2007 | | Ex Parte Motion for Leave to File Surreply to Defendants' Joint Reply to Opposition to Defendants' Joint Motion for Stay(Docket #197) by Jens Erik Sorensen.(previously filed as doc. <u>201</u> (vet) (Entered: 08/29/2007) |
| 08/29/2007 | 203 | ORDER re <u>199</u> Notice filed by Jens Erik Sorensen. The Court, having considered Plaintiff's request for oral argument on Defendants' pending Motion to Stay, hereby sets this matter for a brief oral argument on Friday, August 31, 2007 at 11:45am. Argument shall be limited |

| | | to 10 minutes a side for both Plaintiff and Defendants. All parties and counsel are welcome to appear telephonically. Signed by Judge Barry Ted Moskowitz on 8/29/07. (jhp) (Entered: 08/29/2007) |
|---|---|---|
| 08/30/2007 | 204 | MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils* by Jens Erik Sorensen. (Attachments: # Request for Judicial Notice re partial summary # Motion to file documents under seal # 3 Exhibit 20 (4) Redacted public version of Memorandum of Points and Authorities # Redacted Public Version of Separate Statement of Undisputed Material Facts # 6 Redacted Public Version of the Declaration of Melody Kramer)(Kaler, James) Additional attachment(s) added on 10/4/2007 - pursuant to court order doc. 254 , the redacted public version .pdf is added, original document is filed under seal (vet, ). (Entered: 08/30/2007) |
| 08/30/2007 | 205 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit A to Request for Judicial Notice* filed by Jens Erik Sorensen. (Attachments: # 1 Exhibit B to Request for Judicial Notice# 2 Exhibit C to Request for Judicial Notice# 3 Exhibit D to Request for Judicial Notice# 4 Exhibit E to Request for Judicial Notice# 5 Exhibit F to Request for Judicial Notice# 6 Exhibit G to Request for Judicial Notice# 7 Exhibit H to Request for Judicial Notice)(Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 206 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 21 to Kramer Declaration* filed by Jens Erik Sorensen. (Attachments: # 1 Exhibit 41 & 42 to Kramer Declaration# 2 Exhibit 44 to Kramer Declaration# 3 Exhibit 45 to Kramer Declaration# 4 Exhibit 51 to Kramer Declaration# 5 Exhibit 52 to Kramer Declaration# 6 Exhibit 53 to Kramer Declaration# 7 Exhibit 54) (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 207 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 55* filed by Jens Erik Sorensen. (Attachments: # 1 Exhibit 59 to Kramer Declaration# 2 Exhibit 60 to Kramer Declaration# 3 Exhibit 62 to Kramer Declaration# 4 Exhibit 63 to Kramer Declaration# 5 Exhibit 64 to Kramer Declaration# 6 Exhibit 65 to Kramer Declaration# 7 Exhibit 66 to Kramer Declaration# 8 Exhibit 68 to Kramer Declaration# 9 Exhibit 69 to Kramer Declaration# 10 Exhibit 70 to Kramer Declaration# 11 Exhibit 73 to Kramer Declaration# 12 Exhibit 74 to Kramer Declaration# 13 Exhibit 75 to Kramer Declaration# 14 Exhibit 78 to Kramer Declaration# 15 Exhibit 80 to Kramer Declaration# 16 Exhibit 81 to Kramer Declaration# 17 Exhibit 82 to Kramer Declaration# 18 Exhibit 83 to Kramer Declaration)(Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 208 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 1 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 209 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 2 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 210 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 3 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 211 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 4 to Kramer Declaration* filed by Jens Erik Sorensen. |

| | | (Kaler, James) (Entered: 08/30/2007) |
|---|---|---|
| 08/30/2007 | 212 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 5 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 213 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 6 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 214 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 7A to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 215 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils exhibit 7B to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 216 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 7C* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 217 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 8A* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 218 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 8B to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 219 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 8C to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 220 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 8D to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 221 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 9 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 222 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 10 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 223 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 11 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 224 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 12 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 225 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black &* |

| | | |
|---|---|---|
| | | *Decker's Corporate Veils Exhibit 13 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 226 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 14 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 227 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 15 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 228 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 16 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 229 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 17 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 230 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 18 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 231 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 19 to Kramer Declaration* filed by Jens Erik Sorensen. (Kaler, James) (Entered: 08/30/2007) |
| 08/30/2007 | 232 | ORDER Following Discovery Conference on August 23, 2007. Signed by Magistrate Judge Cathy Ann Bencivengo on 8/30/07. (vet) (Entered: 08/31/2007) |
| 08/31/2007 | 233 | Minute Order. Proceedings held before Judge Barry Ted Moskowitz :Motion Hearing held on 8/31/2007. submitting 178 Motion to Stay; re 178 Joint MOTION to Stay *Pending Reexamination* filed by B&D HOLDINGS, LLC, VECTOR PRODUCTS, INC., BLACK & DECKER, INC., Phillips Plastics Corporation, The Black & Decker Corporation, Black & Decker (U.S.) Inc, HI-TECH PLASTICS INC., PORTER-CABLE CORPORATION. (Court Reporter Melinda Setterman.)(Plaintiff Attorney James Kaler, Patricia Shackelford). (Defendant Attorney Robert Binder, Raymond Niro). (tml) (Entered: 08/31/2007) |
| 08/31/2007 | 234 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 61* filed by Jens Erik Sorensen. (Kramer, Melody) (Entered: 08/31/2007) |
| 08/31/2007 | 235 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 33* filed by Jens Erik Sorensen. (Kramer, Melody) (Entered: 08/31/2007) |
| 08/31/2007 | 236 | AFFIDAVIT in Support re 204 MOTION for Partial Summary Judgment *Piercing Black & Decker's Corporate Veils Exhibit 32* filed by Jens Erik Sorensen. (Kramer, Melody) (Entered: 08/31/2007) |
| 09/04/2007 | 237 | Document Stricken, as to 241 Discrepancy Order by Judge Cathy Ann Bencivengo rejecting document. Modified on 9/5/2007 (jcj). (Entered: 09/04/2007) |
| 09/04/2007 | 238 | Document Stricken, as to 241 Discrepancy Order by Judge Cathy Ann Bencivengo |

| | | rejecting document. Modified on 9/5/2007 (jcj). (Entered: 09/04/2007) |
|---|---|---|
| 09/04/2007 | 239 | Minute Entry: Telephonic Discovery Hearing re Plaintiff's motion to compel depositions and production of documents set for **September 4, 2007**, at **1:30 p.m.** before Magistrate Judge Cathy Ann Bencivengo. Plaintiff's counsel initiates the call.(Plaintiff Attorney Melody Kramer).(Defendant Attorney Robert Binder). (om) (Entered: 09/04/2007) |
| 09/04/2007 | 240 | MOTION for Reconsideration re 177 Order by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., PORTER-CABLE CORPORATION, VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Hayes, Dina) (Entered: 09/04/2007) |
| 09/04/2007 | 242 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery Hearing held on 9/4/2007.(Plaintiff Attorney Melody Kramer).(Defendant Attorney Robert Binder). (om) (Entered: 09/07/2007) |
| 09/05/2007 | 241 | Discrepancy Order by Judge Cathy Ann Bencivengo rejecting document: 237 Motion for Protective Order; 238 Supporting declaration, from Defendants The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., HI-TECH PLASTICS INC., Phillips Plastics Corporation, Black & Decker (U.S.) Inc. Non-compliance with local rule Other: Letter briefs re discovery issues must be submitted directly to the chambers unless instructed otherwise by the Court. The documents are Ordered Stricken from the record. Signed by Judge Cathy Ann Bencivengo on 09/04/07. (jcj) (Entered: 09/05/2007) |
| 09/10/2007 | 243 | ORDER (1) Denying as Moot Plaintiff's 163 Motion for Reconsideration of Denial of Objections to Magistrate Judge's 04/09/07 Order; (2) Granting Defendants' 171 Motion for Reconsideration of the Court's 06/20/07 Order Re Bifurcation; (3) Granting in Part and Denying in Part Defendants' 178 Motion to Stay; (4) Denying as Premature Plaintiff's 204 Motion for Partial Summary Judgment. The 11/26/07 Final Pretrial Conference and the 12/17/07 Bench Trial are hereby Vacated. All scheduled discovery hearings, and the 11/19/07 Claim Construction Hearing, are hereby Vacated. All hearing dates will be reset. Signed by Judge Barry Ted Moskowitz on 9/10/07. (jhp) Modified text on 9/11/2007 (jcj). (Entered: 09/10/2007) |
| 09/11/2007 | 244 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Discovery Hearing held on 9/07/2007. Order to follow.(Plaintiff Attorney Melody Kramer).(Defendant Attorney Robert Binder). (om) (Entered: 09/11/2007) |
| 09/12/2007 | 245 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Telephonic Status Conference re current state of discovery set for **September 21, 2007**, at **2:00 p.m.** before Magistrate Judge Cathy Ann Bencivengo. (Plaintiff Attorney Melody Kramer).(Defendant Attorney Dina Hayes). (om) (Entered: 09/12/2007) |
| 09/21/2007 | 246 | Certificate of Service re 175 MOTION for Default Judgment as to *Defendants Porter Cable Corporation and Vector Corporation Certificate of Delivery* filed by Jens Erik Sorensen. (Kaler, James) Contacted atty via email re: event selection. Modified on 9/26/2007 to edit text (leh). (Entered: 09/21/2007) |
| 09/21/2007 | 247 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Status Conference re state of pre-stay discovery held on 9/21/2007.(Plaintiff Attorney Michael Kaler). (Defendant Attorney Dina Hayes). (om) (Entered: 09/24/2007) |
| 09/28/2007 | 248 | RESPONSE in Opposition re 182 Amended MOTION for Default Judgment as to *Porter-* |

| | | |
|---|---|---|
| | | *Cable Corporation. Black & Decker (U.S.) Inc.'s Opposition to Plaintiff's Motion for Default Judgment Under Fed.R.Civ.P. 55* filed by Black & Decker (U.S.) Inc. (Hayes, Dina) (vet, ). (Entered: 09/28/2007) |
| 09/28/2007 | 249 | DECLARATION of Dina M. Hayes in Support of Black & Decker (U.S.) Inc.'s Opposition to Plaintiff's Motion for Default Judgment Under Fed.R.Civ.P. 55 by Defendant Black & Decker (U.S.) Inc. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I)(Hayes, Dina) Modified on 10/2/2007 - text (vet, ). (Entered: 09/28/2007) |
| 10/05/2007 | 255 | REPLY Brief in support re 182 Amended MOTION for Default Judgment filed by Jens Erik Sorensen. (Attachments: # 1 Declaration of Melody Kramer in support of motion for default)(Kaler, James) Modified on 10/10/2007 - edited text (vet, ). (Entered: 10/05/2007) |
| 10/12/2007 | 256 | MINUTE ORDER submitting 182 Motion for Default Judgment (tml) (Entered: 10/12/2007) |
| 10/17/2007 | 257 | CERTIFICATE of Counsel *of Compliance with 10/3/07 Order of Magistrate Judge Bencivengo* by Raymond P Niro, Jr on behalf of The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc (Niro, Raymond) (vet, ). (Entered: 10/17/2007) |
| 10/17/2007 | 258 | NOTICE of Order Granting Request for Reexamination of U.S. Patent No. 4,935,184 by Black & Decker (Attachments: # 1 Exhibit A-PTO Order granting reexamination)(Niro, Raymond) Modified on 10/17/2007 - edited text (vet, ). (Entered: 10/17/2007) |
| 10/19/2007 | 259 | RESPONSE in Opposition re 240 MOTION for Reconsideration re 177 Order *to produce Dearing documents* filed by Jens Erik Sorensen. (Attachments: # 1 Notice of Lodging of Transcript)(Kramer, Melody) (Entered: 10/19/2007) |
| 10/25/2007 | 260 | REPLY to Response to Motion re 240 MOTION for Reconsideration re 177 Order filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Attachments: # 1 Declaration # 2 Exhibit 1# 3 Exhibit 2# 4 Exhibit 3)(Niro, Raymond) (kmm). (Entered: 10/25/2007) |
| 11/02/2007 | 261 | MINUTE ORDER submitting 240 Motion for Reconsideration (tml) (Entered: 11/02/2007) |
| 11/19/2007 | 262 | ORDER denying 182 Motion for Default Judgment. Signed by Judge Barry Ted Moskowitz on 11/19/07 (vet)(mam). (Entered: 11/19/2007) |
| 12/12/2007 | 263 | ORDER denying 240 Motion for Reconsideration of Magistrate Judge's Order. Signed by Judge Barry Ted Moskowitz on 12/12/07. (vet) (Entered: 12/12/2007) |
| 03/21/2008 | 264 | MOTION Exception to Stay for Preservation of Evidence re 243 Order by Jens Erik Sorensen. (Attachments: # 1 Memo of Points and Authorities # 2 Declaration of Melody A. Kramer)(Kramer, Melody) Modified on 3/25/2008 - edited text (vet, ). (Entered: 03/21/2008) |
| 03/21/2008 | 265 | MOTION to File Documents Under Seal in support of 264 MOTION for Exception to Stay for Preservation of Evidence by Jens Erik Sorensen. (Kramer, Melody) Modified on 3/25/2008 - edited text, attorney e-mailed regarding missing memo of points and authorities. (vet, ). (Entered: 03/21/2008) |
| 03/24/2008 | 266 | MOTION Request for Oral Argument re 264 MOTION Exception to Stay by Jens Erik |

| | | Sorensen. (Kramer, Melody) Modified on 3/25/2008 - edited text, atty e-mailed re missing memo of ps and as (vet, ). (Entered: 03/24/2008) |
|---|---|---|
| 04/09/2008 | 267 | MOTION to Consolidate Cases by Jens Erik Sorensen. (Attachments: # 1 Memo of Points and Authorities)(Kramer, Melody) (mjj, ) (Entered: 04/09/2008) |
| 04/11/2008 | 268 | STATUS REPORT *of Reexamination Proceedings for U.S. Patent No. 4,935,184* by Black & Decker (U.S.) Inc. (Niro, Raymond) (vet). (Entered: 04/11/2008) |
| 04/25/2008 | 269 | RESPONSE in Opposition re 264 MOTION Exception to Stay re 243 Order on Motion for Reconsideration filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Niro, Raymond) Modified on 4/25/2008 - to clarify text (vet). (Entered: 04/25/2008) |
| 04/25/2008 | 270 | AFFIDAVIT in Opposition re 264 MOTION Exception to Stay re 243 Order on Motion for Reconsideration filed by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 8, # 8 Exhibit 9)(Niro, Raymond) (vet). (Entered: 04/25/2008) |
| 04/25/2008 | 271 | MOTION for Leave to File *Documents Under Seal* by The Black & Decker Corporation, B&D HOLDINGS, LLC, BLACK & DECKER, INC., VECTOR PRODUCTS, INC., Black & Decker (U.S.) Inc. (Niro, Raymond) (vet). (Entered: 04/25/2008) |
| 04/30/2008 | 272 | RESPONSE to Motion re 267 MOTION to Consolidate Cases filed by HI-TECH PLASTICS INC., Phillips Plastics Corporation. (Soby, Katherine) (vet). (Entered: 04/30/2008) |
| 05/02/2008 | 273 | REPLY to Response to Motion re 264 MOTION Exception to Stay re 243 Order on Motion for Reconsideration,, Order on Motion to Stay, Order on Motion for Leave to File, Order on Motion for Partial Summary Judgment, filed by Jens Erik Sorensen. (Kramer, Melody) (vet). (Entered: 05/02/2008) |
| 05/05/2008 | 274 | ORDER denying 267 Motion to Consolidate Cases. Signed by Judge Barry Ted Moskowitz on 5/5/08. (vet) (Entered: 05/05/2008) |
| 05/07/2008 | 275 | NOTICE of Hearing on Motion re 266 MOTION Request for Oral Argument, 264 MOTION Exception to Stay, 265 MOTION to File Documents Under Seal, 271 MOTION for Leave to File *Documents Under Seal. Motion Hearing set for 5/13/2008 09:30 AM in Courtroom 15 before Judge Barry Ted Moskowitz. If counsel has a conflict with the date and time set by the court please contact chambers to reschedule. (vet) (Entered: 05/07/2008)* |
| 06/03/2008 | 276 | NOTICE Regarding Exhibit Attachment by Black & Decker (U.S.) Inc re 264 MOTION Exception to Stay re 243 Order on Motion for Reconsideration, Order on Motion to Stay, Order on Motion for Leave to File, Order on Motion for Partial Summary Judgment (Goddard, Allison) (jpp). (Entered: 06/03/2008) |
| 06/03/2008 | 277 | ORDER Granting in part and Denying in part 264 Motion for Exception to Stay; Granting in part and Denying in part 265 271 Motions to File Documents Under Seal; Granting 266 Motion for Oral Argument. Signed by Judge Barry Ted Moskowitz on 6/3/2008. (mjj) (Entered: 06/03/2008) |
| 06/03/2008 | 278 | Minute Entry for proceedings held before Judge Barry Ted Moskowitz:Motion Hearing |

| | | held on 6/3/2008. Court to prepare written order.(Court Reporter Barbara Harris).(Plaintiff Attorney James Michael Kaler/Melody Kramer).(Defendant Attorney Raymond Niro/Allison Goddard).(tml) (Entered: 06/03/2008) |
|---|---|---|
| 06/19/2008 | <u>281</u> | MOTION for Protective Order *re Deposition of Charles Fenton* by Black & Decker (U.S.) Inc. (Attachments: # <u>1</u> Notice of Motion for Protective Order, # <u>2</u> Memo of Points and Authorities, # <u>3</u> Exhibits 1-8, # <u>4</u> Notice Certificate of Compliance with Civ LR 26.1.a)(Goddard, Allison) Modified on 6/23/2008 - clarify text, atty e-mailed re exhibit format (vet). (Entered: 06/19/2008) |
| 06/27/2008 | <u>282</u> | NOTICE by Jens Erik Sorensen *3d Amended Notice of Related Cases* (Kramer, Melody) (vet). (Entered: 06/27/2008) |

# Exhibit M

1  J. MICHAEL KALER, SBN 158296
   9930 Mesa Rim Road, Suite 200
2  San Diego, California 92121
3  Telephone (858) 362-3151
   E-mail: michael@kalerlaw.com
4
   MELODY A. KRAMER, SBN 169984
5  9930 Mesa Rim Road, Suite 1600
   San Diego, California 92121
6  Telephone (858) 362-3150
7  E-mail: mak@kramerlawip.com

8  PATRICIA SHACKELFORD, SBN 218647
   9930 Mesa Rim Road, Suite 450
9  San Diego, California 92121
   Telephone (858) 362-3152
10
11 Attorneys for Plaintiff JENS ERIK SORENSEN,
   as Trustee of SORENSEN RESEARCH AND
12 DEVELOPMENT TRUST

13             **UNITED STATES DISTRICT COURT**

14         **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

15

16 JENS ERIK SORENSEN, as Trustee of      ) Case No. 06-cv-1572 BTM (CAB)
   SORENSEN RESEARCH AND                  )
17 DEVELOPMENT TRUST,                     ) **DECLARATION OF J. MICHAEL KALER**
                                          ) **IN SUPPORT OF PLAINTIFF'S**
18                          Plaintiff     ) **OPPOSITION TO DEFENDANTS' JOINT**
                                          ) **MOTION FOR STAY PENDING**
19          v.                            ) **OUTCOME OF REEXAMINATION**
                                          ) **PROCEEDINGS**
20 THE BLACK & DECKER CORPORATION;        )
   BLACK & DECKER, INC.; BLACK &          )
21 DECKER (US), INC.; PORTER-CABLE        )
   CORPORATION; VECTOR PRODUCTS, INC.;)   Date: August 31, 2007
22 PHILLIPS PLASTICS CORPORATION; HI-     ) Time: 11:00 a.m.
   TECH PLASTICS INC.; B&D HOLDINGS,      ) Courtroom 15, Fifth Floor
23 LLC; AND DOES 1 THROUGH 1000,          ) Hon. Barry Ted Moskowitz
                                          )
24          Defendants.                   )
                                          )
25                                        )
                                          )
26 _____      )

27

28

1    I, J. MICHAEL KALER, declare:

2    1.    I am not a party to the present action.  I am over the age of eighteen.  I

3    have personal knowledge of the facts contained within the following paragraphs, and

4    could and would competently testify thereto if called as a witness in a court of law.

5    2.    At all times relevant herein I have been an attorney for Defendant

6    Sorensen Research and Development Trust ("SRDT"), Plaintiff in the above-

7    captioned matter.

8    3.    This Declaration is being submitted in conjunction with Plaintiff's

9    Opposition to Defendants' Joint Motion for Stay.

10    4.    Exhibit A attached hereto is a true and correct copy of the following

11    magazine article -- The Power of Patent ReExams: An underused weapon in the

12    accused infringer's arsenal," *The Patent Lawyer,* May 2004, Daniel McDonald,

13    partner with Merchant & Gould, former outside counsel for Defendant Phillips

14    Plastics.

15    5.    Exhibit B attached hereto is a true and correct copy of the Docket Sheet

16    for the above-captioned case.

17    6.    Exhibit C attached hereto is a true and correct copy of an infringement

18    notice letter sent by Plaintiff's counsel to Black & Decker in 2004.

19    7.    Exhibit D attached hereto is a true and correct copy of a prior

20    infringement notice letter sent by the '184 patent holder to "DeWalt Industrial Tool

21    Company" in December 1994.

22    8.    Exhibit E attached hereto is a true and correct copy of a letter from the

23    Black & Decker Defendants' counsel shortly after the filing of this lawsuit

24    contending that The Black & Decker Corporation was not the responsible party for

25    infringement.

26    9.    [RESERVED].

27    10.    Plaintiff's motion for joinder of additional parties and proposed First

28    Amended Complaint was filed on September 26, 2006, and named the newly added

1   Defendants Black & Decker, Inc.; Black & Decker (US), Inc.; Porter-Cable

2   Corporation; Vector Products, Inc. And Does 1 Through 1000. Exhibit G attached

3   hereto are true and correct copies of cover letters sent to Phillips and Hi-Tech with

4   copies of the complaint and the proposed first amended complaint served on March

5   22, 2007 by Plaintiff's counsel.

6        11.    The Proposed First Amended Complaint was first served on Defendants

7   Phillips and Hi-Tech prior to January 10, 2007. After discussions about Phillips

8   obligations pursuant to Plaintiff's notice of plant inspections (served October 18,

9   2006) and subsequent subpoena to compel such inspections, Plaintiff inspected the

10   Phillips Plastics manufacturing facility in Eau Claire, Wisconsin on January 19,

11   2007. Plaintiff Exhibit H attached hereto is a true and correct copy of the subpoena

12   and subsequent motion to compel that had to be filed with the United States District

13   Court in Wisconsin in order to complete the inspection.

14        12.    The Hi-Tech Plastics manufacturing facility in Mission, Texas was

15   inspected by Plaintiff on March 13, 2007 in compliance with an inspection subpoena

16   served prior to them being added as a Defendant, and a Rule 30(b)(6) deposition of

17   Hi-Tech was conducted immediately thereafter.

18        13.    Black & Decker's Reynosa, Mexico manufacturing facility was

19   inspected by Plaintiff on March 15, 2007.

20        14.    Exhibits I and J attached hereto are true and correct copies of Initial

21   Disclosures exchanged between Plaintiff and BDC on December 13, 2006.

22        15.    Plaintiff witnesses Paul Brown and Ole Sorensen were deposed by BDC

23   in December 2006. A second deposition of Ole Sorensen was also conducted on

24   March 7, 2007. The deposition of Jens Erik Sorensen has been noticed twice, but

25   postponed or taken off calendar by BDC both times.

26        16.    Exhibit K attached hereto is a true and correct copy of a deposition

27   notice by BDC for Plaintiff's in-house counsel, Chris Kuczynski. Magistrate Judge

28

3.

1    Bencivengo determined that Defendants had not made sufficient showing to justify

2    taking the deposition of Plaintiff's counsel.

3        17.   BDC also independently contacted and obtained statements from two

4    attorneys of former '184 patent holder's, Ed Callan and Don Erickson.  Further,

5    BDC has subpoenaed records from at least five non-parties.

6        18.   BDC has also served 758 requests for admission, 90 requests for

7    production of documents, and 30 interrogatories.  BDC has sought and received all

8    of Plaintiff's '184 patent licenses, and have sought to obtain all of Plaintiff's

9    licensing negotiation communications and correspondence with potential licenses

10    (this is under review by the Court).

11        19.   BDC has received more than 12,000 pages of document production

12    from Plaintiff, as well as five DVDs containing photos and videos of the three plant

13    inspections conducted by Plaintiff.

14        20.   All of the defendants have received copies of all deposition transcripts,

15    discovery responses, and document production.

16        21.   Plaintiff has served 890 requests for admissions (180 have been

17    withdrawn), 178 requests for production, and 58 interrogatories on BDC.  Additional

18    written discovery requests have also been propounded on other Black & Decker

19    defendants, Phillips, and Hi-Tech.  Plaintiff has conducted 13 depositions and

20    inspected three manufacturing plants, located in Wisconsin, Texas, and Mexico.

21        22.   Expert depositions on claim construction for both Plaintiff's and

22    Defendants' claim construction experts are set to commence on September 10, 2007.

23        23.   At least eight discovery conferences have been conducted with

24    Magistrate Judge Bencivengo dealing with contested discovery issues by both sides.

25    A heated dispute has been ongoing for many months regarding the documents of the

26    late in-house counsel for all of the Black & Decker defendants, Dennis Dearing.

27        24.   A motion for reconsideration is currently pending before this Court on

28    whether Black & Decker waived attorney-client and work product privilege with

4.

1    respect to the Dearing documents by claiming Mr. Dearing's pre-litigation death as

2    evidentiary prejudice in support of their laches defense and by apparently having

3    witnesses put into evidence declarations of facts for which the source appears to be

4    Mr. Dearing, while refusing to testify as to the source.

5        25.    Defendants Phillips and Hi-Tech also rely on Mr. Dearing's death to

6    support their laches claims.  Exhibit L attached hereto are true and correct copies of

7    Phillips and Hi-Tech's discovery responses setting forth their laches and equitable

8    estoppel case.

9        26.    Exhibit M attached hereto is a true and correct redacted copy of

10   Defendants' request to Magistrate Judge Bencivengo to (1) suspend discovery as to

11   Porter-Cable and Vector accused products (see page 4); and (2) preclude Plaintiff

12   from propounding any further discovery on any Black & Decker entities other than

13   Black & Decker (U.S.) Inc., heard on July 5, 2007 (see page 6).  Both requests were

14   denied orally and at Docket #159.

15       27.    Exhibit N attached hereto is a true and correct copy of the July 23rd ex

16   parte motion for protective orders filed on behalf of Porter-Cable Corporation[1] and

17   Vector Products, Inc., demanding that Plaintiff be required to inspect manufacturing

18   facilities before conducting any other discovery.  This motion was filed even though

19   Black & Decker had refused up to that time, to identify exactly where Porter-Cable

20   products are manufactured.   Plaintiff served requests to make plant inspections in

21   2006, followed by actual inspections of facilities designated by Black & Decker,

22   which proved to not manufacture the Porter-Cable products.  As to Vector products,

23   they have been identified as being manufactured at several third-party supplier

24   locations in China, none of which can be accessed by Plaintiff.

---

[1] Porter-Cable is a defendant that B&D claims no longer exists.

Case No. 06-cv-1572 BTM CAB

28. On July 26, 2007, Magistrate Judge Bencivengo ordered Black & Decker to turn over the much-disputed "Dennis Dearing documents" which Black & Decker contended were privileged, (see subsequent written order at Docket # 177).

29. On July 30, 2007, only four days after Magistrate Judge Bencivengo communicated her oral order to Black & Decker to turn over the Dearing documents, the subject Petition for Reexamination was filed.

30. Defendant BDC served its Preliminary Invalidity Contentions on February 2, 2007 and Amended Preliminary Invalidity Contentions on March 5, 2007(see Exhibit O).

31. All parties exchanged Proposed Claim Constructions and Extrinsic Evidence (two times each for Plaintiff and Defendant BDC). The Proposed Claim Constructions and Extrinsic Evidence were first exchanged on February 16, 2007 and Responsive Claim Constructions exchanged on March 2, 2007. A second round of exchanges was done on July 25 and August 8, 2007. A Joint Claim Chart and related documents are due on August 22, 2007.

32. The newly added defendants have not yet served Initial Disclosures, but were advised by Magistrate Judge Bencivengo on July 26th that their initial disclosures were long overdue.

33. The newly added Defendants have served few discovery requests thus far, but there have been no prohibitions to them conducting discovery on any issue. Moreover, in view of the comprehensive discovery served by BDC prior to the other Defendants appearing in the case, there has been little purpose to the newly added Defendants propounding discovery.

34. Defendants' assertion that no ENE conference has been held with the new defendants is true, but irrelevant, as Magistrate Judge Bencivengo has advised the parties that the Court does not conduct ENE conferences with parties added subsequent to the one ENE.

Case No. 06-cv-1572 BTM CAB

1      35.    As of this date, Plaintiff has not yet received any indication from the

2    USPTO as to whether the petitioned reexamination will be conducted.

3      36.    Exhibit P attached hereto is a true and correct copy of two letters dated

4    June 6, 1995 and June 16, 1995 from Dennis Dearing, counsel for Black & Decker,

5    to Don Erickson of Primtec with regard to the '184 patent.  The two letters identify

6    various documentary prior art that Black & Decker was asserting invalidated the

7    '184 patent claims.  Included on the June 16 letter is the translation of Japanese

8    patent 60-119520 asserted by Black & Decker in its petition for reexamination.

9      37.    Exhibit Q attached hereto is a true and correct copy of L.R. 26.1(B)

10    Certificate of Compliance and Declaration of Robert A. Conley, part of a proposed

11    motion to amend Black & Decker's preliminary infringement contentions.  Mr.

12    Conley's declaration states in paragraph 4 that German Patent Publication 1 850 999

13    was produced by Black & Decker to Plaintiff in discovery in January 2007.

14      38.    With the exception of the two patents discussed in paragraphs 36 and

15    37, hereinabove, all other prior art cited by Black & Decker in its petition for

16    reexamination were cited in the DaimlerChrysler litigation in 2003, and were

17    identified to Black & Decker in Plaintiff's discovery responses no later than

18    December 2006.  Ergo, Black & Decker had possession of all of the prior art cited in

19    its petition for reexamination no later than January 2006, some seven months prior to

20    the filing of its petition for reexamination.

21

22      SWORN TO under penalty of perjury of the laws of the State of California

23    and the United States, this 17th day of August, 2007.

24

25      /s/ J. MICHAEL KALER

26

27      J. MICHAEL KALER, Esq.
      Attorney for Plaintiff

28

Case No. 06-cv-1572 BTM CAB

# Exhibit N

1          UNITED STATES DISTRICT COURT

2       FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

———————————————————————

4                                    )

 JENS ERIK SORENSEN, as Trustee of  )

5  SORENSEN RESEARCH AND             )

 DEVELOPMENT TRUST,                  )

6                                    )

7          Plaintiff,                )

                                     )

 vs.                                 )  Case No.

8                                    )   06cv1572 BTM (CAB)

 THE BLACK & DECKER CORPORATION,     )

9                                    )

           Defendant.               )

10 ———————————————————————)

11

12

13       DEPOSITION OF JENS OLE SORENSEN

14       VOLUME I, PAGES 1 THROUGH 141

15          SAN DIEGO, CALIFORNIA

16           DECEMBER 20, 2006

17

18

19

20 REPORTED BY JUDY M. REIERSEN, CSR NO. 7505

21

22

23

24

25

2

1        UNITED STATES DISTRICT COURT
2    FOR THE SOUTHERN DISTRICT OF CALIFORNIA
3

4    _____
                              )
     JENS ERIK SORENSEN, as Trustee of )
5    SORENSEN RESEARCH AND            )
     DEVELOPMENT TRUST,               )
6                                     )
           Plaintiff,                 )
7                                     )
     vs.                              )  Case No.
8                                     )  06cv1572 BTM (CAB)
     THE BLACK & DECKER CORPORATION,  )
9                                     )
           Defendant.                 )
10   _____      )
11
12
13
14
15        DEPOSITION OF JENS OLE SORENSEN,
16    taken by the Defendant, commencing at 9:38 a.m. on
17    Wednesday, December 20, 2006, at 4401 Eastgate Mall,
18    San Diego, California, before Judy M. Reiersen, Certified
19    Shorthand Reporter, in and for the State of California.
20
21
22
23
24
25

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

---

3

1    APPEARANCES:
2
     For the Plaintiff:
3
        KRAMER LAW OFFICE
4       BY: MELODY A. KRAMER, ESQ.
        9930 Mesa Rim Road, Suite 1600
5       San Diego, CA  92121
        (619) 993-0874
6
          - and -
7
        JAMES MICHAEL KALER
8       ATTORNEY AT LAW
        9930 Mesa Rim Road, Suite 200
9       San Diego, CA  92121-2910
        (858) 362-3151
10
11   For the Defendant:
12      NIRO, SCAVONE, HALLER & NIRO
        BY: RAYMOND P. NIRO, JR., ESQ.
13         - and -
           ROBERT A. CONLEY, ESQ.
14      181 West Madison, Suite 4600
        Chicago, Illinois  60602-4515
15      (312) 236-0733
16
     Videotape Operator:
17
        Peterson Reporting, Video & Litigation Services
18      Abel Sibrel, Videographer
        530 B Street, Suite 350
19      San Diego, CA  92101
        (800) 649-6353
20
21
22
23
24
25

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

---

4

1            I N D E X
2
3    WITNESS: Jens Ole Sorensen
4
     EXAMINATION                          PAGE
5
6    By Mr. Niro                           7
7
            E X H I B I T S
8
9    FOR DEFENDANT                        MARKED
10   19    Plaintiff's response to        41
           Defendant's second set of
11         interrogatories, Nos. 8-25,
           15 pages
12
13
14   QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER
15
        PAGE   LINE
16
        12     3
17
        17     3
18
        22     10
19
        27     9
20
        35     4
21
        37     21
22
        38     7
23
        38     20
24
        39     9
25
        40     4

        40     19

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

---

5

1    QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER (continued)
2
        PAGE   LINE
3
        48     14
4
        49     7
5
        51     12
6
        51     20
7
        52     16
8
        55     19
9
        56     7
10
        57     20
11
        67     10
12
        85     23
13
        103    7
14
        103    18
15
        104    2
16
        105    5
17
        113    6
18
        118    20
19
        127    13
20
        127    24
21
        130    9
22
        131    4
23
24         * * *
25

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

6

1    THE VIDEOGRAPHER: Good morning. The time on
2  the record is 9:38 a.m. Today's dated December 20, 2006.
3    My name is Abel Sibrel of Peterson Reporting.
4  Video & Litigation Services.
5    The court reporter today is Judy Reiersen of
6  Peterson Reporting, located at 530 B Street, Suite 350,
7  San Diego, California 92101.
8    This begins the videotaped deposition of
9  Jens Ole Sorensen, testifying in the matter of
10  Jens Erik Sorensen versus The Black & Decker Corporation,
11  in the United States District Court, Southern District of
12  California, Case No. 06cv1572 BTM (CAB), taken at 41 --
13  4401 Eastgate Mall, San Diego.
14    The video and audio recordings will take place
15  at all times during this deposition unless all counsel
16  agree to go off the record.
17    The beginning and end of each videotape will be
18  announced.
19    Will counsel please identify yourselves and
20  state whom you represent?
21    MR. NIRO: Raymond Niro, Jr., on behalf of Black
22  & Decker.
23    MR. CONLEY: Robert Conley on behalf of Black &
24  Decker.
25    MS. KRAMER: Melody Kramer on behalf of

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

7

1  Mr. Sorensen.
2    MR. KALER: Michael Kaler on behalf of
3  Mr. Sorensen.
4    MS. KRAMER: And just so we have on the
5  record --
6    MR. KALER: And the Sorensen Research and
7  Development Trust, the party and the plaintiff in the
8  action.
9    MS. KRAMER: Sorry. I'm also representing the
10  plaintiff.
11    Just a matter of housekeeping. Mr. Sorensen has
12  a medical condition that will require relatively frequent
13  breaks, every hour or two, but he'll let me know when he
14  needs a break.
15    THE VIDEOGRAPHER: Thank you.
16    The court reporter may now swear in the witness.
17    (Witness sworn.)
18
19    JENS OLE SORENSEN.
20  having been first duly sworn, testified as follows:
21
22    EXAMINATION
23  BY MR. NIRO:
24    Q  Could you state your full name for the record?
25    A  Morning, Mr. Niro. Yes, I can do that.

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

8

1  Jens Ole Sorensen.
2    Q  And is it true that you're often referred to as
3  Ole or Ole Sorensen to distinguish you from your son?
4    A  That's correct.
5    Q  Now, if you need a break at any time during this
6  deposition, just let me know and we'll accommodate you,
7  whether it's a half hour or 20 minutes, 15 minutes.
8  Whatever you need, just let me know. Okay?
9    A  Thank you very much.
10    Q  You're represented at this deposition by
11  Melody Kramer and Michael Kaler?
12    A  That's correct.
13    Q  They're representing you as an individual; is
14  that correct?
15    A  Yes.
16    Q  And yesterday, December 19, 2006, you attended
17  the deposition of Paul Brown as the party representative
18  of Plaintiff, correct?
19    A  Yes.
20    Q  You are the party representative of Plaintiff in
21  this action; is that right?
22    A  I don't know those legal expressions. You'd
23  have to ask my counsel for that.
24    MS. KRAMER: For purposes of this deposition, he
25  is responding to a deposition notice that listed him not

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

9

1  in any particular capacity but just Mr. Sorensen, and he
2  is appearing pursuant to that deposition notice.
3  BY MR. NIRO:
4    Q  Well, you understand yesterday you were
5  designated as the party representative of Plaintiff,
6  correct?
7    A  I do understand that, yes.
8    Q  And you attended a court hearing in this case as
9  a party representative of Plaintiff, correct?
10    A  I understand that.
11    Q  Is that correct?
12    A  Yesterday? Yes, I understand.
13    Q  No, you also attended a court hearing on
14  November 13, 2006, the early neutral evaluation
15  conference, as a party representative of the Plaintiff,
16  correct?
17    A  Yes.
18    Q  Is it true that you were also the party
19  representative of the plaintiff at a settlement meeting
20  between Plaintiff and Black & Decker in July of 2006? Do
21  you recall that?
22    A  I don't remember the exact dates, but whenever
23  I've been present, it's because I was a party
24  representative.
25    Q  You recall being the party representative for

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

10

1  Plaintiff at a settlement meeting with Black & Decker
2  before this lawsuit was filed; is that right?
3     A  I believe so. My son asked me to attend various
4  meetings, and I have done so.
5     Q  Who is your son?
6     A  Jens Erik Sorensen.
7     Q  And Jens Erik Sorensen designated you as the
8  party representative for the plaintiff in this action; is
9  that right?
10    A  Yes.
11    Q  Did Jens Erik Sorensen attend either the
12  settlement meeting with Black & Decker, the court
13  hearings in this case, or the deposition yesterday?
14       MS. KRAMER: Objection --
15       THE WITNESS: No, he didn't.
16       MS. KRAMER: -- relevance, but you can answer
17  the question.
18       THE WITNESS: He did not.
19  BY MR. NIRO:
20    Q  What qualifications do you have to be the party
21  representative for the plaintiff in this action?
22       MS. KRAMER: Objection. That's irrelevant and
23  attorney-client privileged, and he's not repre -- he's
24  not appearing as a party representative today. He's
25  appearing as a noticed witness for deposition, a fact

11

1  witness.
2       THE WITNESS: I have a fair amount of knowledge
3  of the history of the patent. I'm the inventor of the
4  patent. I -- that's mainly -- my main -- I don't know
5  what you going to ask me actually. You asked me to come
6  so -- I don't know what qualifications you're looking
7  for.
8  BY MR. NIRO:
9     Q  Do you feel like you're qualified to be the
10  party representative for the plaintiff in this action?
11       MS. KRAMER: Objection; form of question.
12  There's not a matter of qualification for being a party
13  representative. There's a request by the party to be a
14  party representative and that's all that's necessary. So
15  it's vague and ambiguous as to qualifications to be a
16  party representative.
17       THE WITNESS: If I don't qualify, you have to
18  ask somebody else. That's all I can tell you.
19  BY MR. NIRO:
20    Q  Is there anything that you're aware of which
21  would make you unqualified to be the party
22  representative?
23       MS. KRAMER: Objection; vague and ambiguous,
24  again, as to qualification. There's no required
25  qualifications to be a party representative.

12

1       THE WITNESS: No.
2  BY MR. NIRO:
3     Q  Now, at least when you attended the court
4  hearing in this case last month as the party
5  representative of the plaintiff, you had full settlement
6  authority on behalf of the plaintiff; is that correct?
7       MS. KRAMER: Objection; attorney-client
8  privilege. Don't answer the question.
9       THE WITNESS: I'm not answering the question.
10  BY MR. NIRO:
11    Q  Did you understand the hearing in November
12  before this court required a party or party
13  representative with full settlement authority to be
14  present at the conference? Were you aware of that?
15    A  Yes.
16    Q  And were you a party representative of Plaintiff
17  with full settlement authority at that conference?
18       MS. KRAMER: My client was in full compliance
19  with that order, Mr. Niro.
20  BY MR. NIRO:
21    Q  Is that --
22       MS. KRAMER: He can answer the question.
23       THE WITNESS: Yes.
24       MS. KRAMER: But --
25  / / /

13

1  BY MR. NIRO:
2     Q  The answer's yes?
3     A  Yes.
4       MS. KRAMER: Improper line of questioning.
5  BY MR. NIRO:
6     Q  And so you make the decisions on behalf of the
7  plaintiff in terms of settlement or licensing terms; is
8  that correct?
9       MS. KRAMER: Objection; mischaracterizes the
10  witness' testimony; however, you can answer.
11       THE WITNESS: I basically don't make any
12  decisions at all, but if I get a special agreement to --
13  to -- if I get a special instruction from my son to
14  decide something, which is very, very rare, then I do
15  that.
16  BY MR. NIRO:
17    Q  So from time to time you are given authority to
18  make decisions on behalf of the plaintiff in this matter
19  such as full settlement authority last month at a
20  conference before the court; is that right?
21    A  Can happen, rarely, yes.
22    Q  Do you agree that you and Paul Brown are
23  critical witnesses in this case?
24       MS. KRAMER: Objection; seeks a legal
25  conclusion. You can answer to your lay ability.

14

1    THE WITNESS: I don't know about critical. I
2  think we're very well-suited witnesses.
3  BY MR. NIRO:
4    Q  You and Paul Brown are the key witnesses for the
5  plaintiff in this action?
6    MS. KRAMER: Same objection. You can respond.
7  it not being a legal opinion.
8    THE WITNESS: Well, I think it's --
9  BY MR. NIRO:
10   Q  Yes or no?
11   A  -- it's a reasonable choice. Okay? That's what
12  I believe. It's a reasonable choice.
13   I don't understand your legal question.
14   Q  Are there any witnesses to your knowledge that
15  are more important or critical for the plaintiff in this
16  action than you and Paul Brown?
17    MS. KRAMER: Objection; seeks a legal
18  conclusion.
19  BY MR. NIRO:
20   Q  You can answer, sir.
21   A  I can't think of any.
22   Q  When were you born?
23   A  May 11, '39.
24   Q  And you were born in Denmark; is that correct?
25   A  Yes.

15

1    Q  And you've lived in Denmark, Canada, Barbados,
2  the Cayman Islands, and now the U.S.; is that correct?
3    A  And many other places, yes.
4    Q  Where else have you lived?
5    A  Switzerland, Spain. Right now, I can't think of
6  any more.
7    Q  Where is your primary residence currently?
8    MS. KRAMER: Objection. Residential address is
9  not relevant here.
10  BY MR. NIRO:
11   Q  You can answer.
12   A  California.
13   Q  Do you have other residence besides California?
14   A  No.
15   Q  Are you a United States citizen?
16   A  No.
17   Q  Do you have a Social Security number?
18   A  Yes.
19    MS. KRAMER: Objection. Well, you can answer
20  that, but not the number.
21  BY MR. NIRO:
22   Q  How long have you lived in the United States?
23   A  I have --
24    MS. KRAMER: Objection; vague as to time frame.
25    THE WITNESS: I have lived in the United States

16

1  on more than one occasion. This last occasion, I came to
2  the United States in January of 2003.
3  BY MR. NIRO:
4    Q  And you lived in the United States for a period
5  of time before that?
6    A  Yes.
7    Q  What was that time period that you lived in the
8  U.S.?
9    A  Well, "lived" means a lot of things. It depends
10  on what kind of residence you are talking about, but
11  basically I've been present in the United States since --
12  off and on, since '78, and left in '95.
13   Q  So you were present in the U.S. for a while and
14  you went to the Cayman Islands and eventually back to the
15  United States; is that right?
16   A  That is correct.
17   Q  And what is your Social Security number, sir?
18    MS. KRAMER: Objection; personal privacy rights.
19    THE WITNESS: I don't remember it. I don't -- I
20  didn't bring it. So --
21  BY MR. NIRO:
22   Q  You don't know what your Social Security number
23  is?
24   A  That's correct.
25    MS. KRAMER: I would instruct him not to provide

17

1  it if he had.
2  BY MR. NIRO:
3    Q  Do you pay state or federal income taxes?
4    MS. KRAMER: Objection; privileged. Instruct
5  the witness not to answer.
6    You know better.
7  BY MR. NIRO:
8    Q  You refuse to answer that question?
9    A  Yes.
10   Q  Are you presently employed, sir?
11   A  I'm a consultant to various companies.
12   Q  So you are presently employed as a consultant to
13  various companies; is that right?
14   A  I should say vary -- yeah, company and trusts.
15   Q  You are currently employed as a consultant to
16  various companies and trusts; is that fair?
17   A  You could say that, yeah.
18   Q  And how long have you been employed in that
19  capacity?
20    MS. KRAMER: Objection; compound.
21    THE WITNESS: Well, it varies. Depends on which
22  company or trust we are talking about.
23  BY MR. NIRO:
24   Q  Why don't you list the various companies and
25  trusts by whom you're employed currently.

62

BY MR. NIRO:

2    Q  We can take them one by one.

3    MS. KRAMER: Mr. Niro, he has said that he will

4  take them one by one.

5  BY MR. NIRO:

6    Q  Go ahead. Take them one by one.

7    MS. KRAMER: Pose them one by one.

8    No, he's not doing a narrative. Ask your

9  questions.

10    THE WITNESS: If you ask me one at a time, I

11  will consider answering your questions.

12  BY MR. NIRO:

13    Q  Well, why don't you take each one of the

14  transfers that are identified in Defendant's Exhibit 19

15  and provide us with the rationale or explanation for

16  each.

17    MS. KRAMER: Objection; relevance.

18    THE WITNESS: Okay. Are you asking for the

19  period after issuance of the patent in 1990? Is that

20  what you're asking?

21  BY MR. NIRO:

22    Q  Can you answer, sir?

23    A  I'm sure I can, but I asked is it after 1990 are

24  you asking.

25    Q  Does the Defendant's Exhibit 19 reflect any --

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

---

63

1  okay. Well, from July 27, 1989, is that the first

2  conveyance that's reflected in Defendant's Exhibit 19?

3    A  I think the paper would speak for itself.

4    Q  Well, can you provide any explanation for the

5  transfers and conveyances beginning with the first one

6  reflected in Defendant's Exhibit 19?

7    MS. KRAMER: Same objection. Relevance,

8  attorney-client communications, if it involves that.

9    THE WITNESS: Okay. I had an agreement with

10  Primtec to transfer my inventions in injection molding to

11  Primtec. So an assignment was made at the time of the

12  filing of the application in -- whenever that was.

13    Then in '95, I changed my residence and left the

14  United States, and at that time Primtec was discontinued

15  and I took over the assets of Primtec.

16    In November of 1997, it was discovered that

17  there was widespread infringement on 268 patent, and that

18  and other patents were licensed to Turn-Key.

19    Then in -- I think it was -- yeah, 2002.

20  Paul Brown felt that he could not live up to the -- he

21  was so busy with lawsuits on the 268 that he -- he could

22  not live up to the -- to the agreement and said that he

23  just couldn't handle the 184. He had recently found some

24  infringement on the 184 and basically said, "You can --

25  you have to take it back."

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

---

64

1    And about a year later, I believe, it was

2  transferred to -- it was -- I believe it was sold to SRD

3  Trust at that time, about a year later.

4  BY MR. NIRO:

5    Q  Do you work out of your house or do you have an

6  office that you go to?

7    A  Sort of -- you could call it work out of my

8  house, but I do receive phone calls and faxes --

9    Q  You also have --

10    A  -- at my house.

11    Q  -- an office that you go to to do your

12  consulting work?

13    A  I don't have much of an office.

14    Q  Where is the office?

15    A  The only office I have, and I wouldn't call it

16  an office, is one I have at home.

17    Q  Do you ever go to the offices of Turn-Key to do

18  consulting work?

19    A  Yes.

20    Q  How frequently?

21    A  Depends what period of time. While I was living

22  abroad, only every two or three months. Now, sometimes

23  several times a week, sometimes may take weeks in

24  between.

25    Q  And where is the Sorensen Research and

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

---

65

1  Development Trust located?

2    A  It's located at the same building as Turn-Key.

3    Q  And that's also the same building where your

4  attorneys are located: is that right?

5    MS. KRAMER: Objection, "your attorneys," but

6  you may answer as to the ones you've already identified.

7    THE WITNESS: Some of the attorneys, yes.

8  BY MR. NIRO:

9    Q  The attorneys that are representing the

10  plaintiff in this case and representing you at your

11  deposition are located in the same building as SRD Trust

12  and Turn-Key: is that right?

13    A  Yes.

14    Q  And that building is across the street from

15  where Primtec used to have its offices; is that right?

16    A  Yes.

17    Q  And Intuii LLC, is also located at the same

18  building as SRD Trust and Turn-Key and the attorneys; is

19  that right?

20    A  Yes.

21    Q  How often would you say you go to those offices

22  as part of your consulting work for Intuii, SRD Trust or

23  Turn-Key?

24    A  I usually take a full round when I'm there.

25    Q  Sometimes several times a week?

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

66

1  A  Can happen.
2  Q  Currently, is that about how often you go?
3  A  That was answered already.
4  Q  Is that a yes or a no?
5     MS. KRAMER: He answered the question already.
6     THE WITNESS: That's no answer. You already
7  asked. Just a minute ago you asked.
8  BY MR. NIRO:
9  Q  Currently, how frequently do you travel to the
10 offices and make the rounds with your attorneys, SRD
11 Trust, Turn-Key, and Intuii?
12    MS. KRAMER: Objection as to attorney-client
13 privilege. The rest I believe he already answered, but
14 you can repeat it.
15    THE WITNESS: I believe I said that could be
16 several times a week or it could be weeks between, and I
17 usually take the full round to all those offices when I'm
18 there.
19 BY MR. NIRO:
20 Q  Do you have an office in that building, too?
21 A  No, I don't.
22 Q  How many times in the past week have you gone to
23 those offices of SRD Trust, Turn-Key, Intuii, and your
24 attorneys --
25    MS. KRAMER: Objection.

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

67

1  BY MR. NIRO:
2  Q  -- which is all the same place?
3     MS. KRAMER: Objection to the extent that it
4  includes attorney-client meetings.
5     THE WITNESS: And what does "in the past week"
6  mean? Is that last seven days?
7  BY MR. NIRO:
8  Q  Yes.
9  A  At one time.
10 Q  Did you go there to prepare for your deposition
11 today?
12    MS. KRAMER: Objection; seeks attorney-client
13 communications, and that you don't have to answer.
14 BY MR. NIRO:
15 Q  I'm not asking for any communications. I'm
16 simply asking whether you went to the offices of
17 9930 Mesa Rim Road.
18    MS. KRAMER: That's not what you asked, and you
19 are asking for whether communications happened, to the
20 extent it includes attorney-client communications.
21    THE WITNESS: Yeah, I believe I just told you I
22 was there one time in the last seven days.
23 BY MR. NIRO:
24 Q  What day?
25    MS. KRAMER: Objection; relevance, but --

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

68

1     THE WITNESS: Monday.
2  BY MR. NIRO:
3  Q  And was that in connection with preparing for
4  this deposition today?
5     MS. KRAMER: Objection; seeks attorney-client
6  communications to the extent he had any meetings with
7  attorneys.
8     THE WITNESS: I can tell you I went to the
9  offices of Turn-Key and had discussions with Paul Brown
10 on technical things.
11 BY MR. NIRO:
12 Q  Technical things revolving around this
13 litigation; is that right?
14 A  No.
15    MS. KRAMER: Again, objection to the extent it's
16 attorney-client communications, and I'm sorry I'm doing
17 extra objections for you there, but I want to make sure
18 you're aware of those rights.
19 BY MR. NIRO:
20 Q  Now, I think you said in November of 1997 you
21 discovered widespread infringement of the 268 patent; is
22 that correct?
23 A  Okay. Yeah, you probably notice I slow down
24 when you talk about these dates because I don't have it
25 in my mind as these dates. I have to refer back to the

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

69

1  papers.
2     So you're saying in 1990 -- what was the date?
3  Q  In November of 1997 I believe you stated that --
4  A  Yes.
5  Q  -- you discovered widespread infringement of the
6  268 patent; is that right?
7  A  Yes.
8  Q  And you understand that the 268 patent has been
9  found invalid?
10 A  No, I don't understand that.
11 Q  Did you testify in the trial with Koito in the
12 Southern District of California?
13 A  You asked that question already.
14 Q  Did you attend that trial?
15 A  Yes, I did.
16 Q  And what was the jury verdict relating to the
17 validity of the 268 patent?
18 A  The jury verdict was invalidity and
19 non-infringement.
20 Q  Okay. The jury found that your 268 patent was
21 invalid and not infringed, correct?
22 A  Yes.
23 Q  So you spent the time from November '97 through
24 2002 asserting an invalid and non-infringed patent; is
25 that right?

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

94

1  THE WITNESS: I was here yesterday. I never
2  heard him say anything about 15 minutes. He may have,
3  but I didn't hear it.
4  BY MR. NIRO:
5  Q  Do you have any reason to dispute the fact that
6  Paul Brown can make an infringement determination with
7  respect to Black & Decker's products within 15 to
8  30 minutes?
9  MS. KRAMER: Objection; again, misstates
10  Paul Brown's testimony. With that clarification -- well,
11  it's misstating his testimony.
12  THE WITNESS: Well, my personal opinion is it
13  takes much longer, but if Paul Brown tells -- he -- he
14  may be very fast. I don't know.
15  I mean, take me a lot longer than that to go
16  out, and -- I mean, anybody can think that going in your
17  car, going out to some Home Depot or somewhere, and go
18  through all kinds of product, take it back home, cut it
19  up into little pieces, unpack it -- just unpacking it
20  takes maybe five or 10 minutes, and it -- I don't know.
21  Maybe he can do it in 15 minutes. I don't know. Maybe
22  he can. I can't say that --
23  BY MR. NIRO:
24  Q  And Paul Brown was just too busy from 1996
25  through 2004 to take 15 minutes and walk into a

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

95

1  Home Depot and look at a Black & Decker product, is that
2  your testimony?
3  MS. KRAMER: Objection; argumentative, misstates
4  Paul Brown's testimony and misstates Mr. Sorensen's
5  testimony.
6  THE WITNESS: Well, I know that Paul Brown found
7  a little time immediately before he gave me back the
8  patent, and he did look around a few shops and he did
9  find infringement on 184, and that's the first time he
10  could find any, and he had really -- he didn't have any
11  reason to believe that there was any infringement. So,
12  you know, he just lived up to his obligation of the
13  contract.
14  BY MR. NIRO:
15  Q  Okay. And that was in May 2002 that you had
16  that conversation with Paul Brown; is that right?
17  MS. KRAMER: Objection; misstates his testimony.
18  THE WITNESS: Well, whenever you come up with
19  these dates, I'm going to need some time to investigate.
20  I -- I just don't have this recorded in accordance to
21  date. I have it recorded after this event or before the
22  other event, you know.
23  So, I mean, you're saying in 2002? Well, let me
24  answer you in a different way, the way I -- it's in my
25  mind. Okay?

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

96

1  He -- a few months before he gave me back the
2  patent, he went out and looked for product. I don't
3  think he had -- I can't speak for Paul Brown, but -- I
4  mean, so he found -- he saw some infringement and
5  informed me that there was infringement. I don't
6  remember what it was or whether I even knew about what it
7  was.
8  So -- so he said, "I -- I can't take -- I can't
9  live up to my obligations with this -- this patent and
10  you going to have to take it back."
11  MS. KRAMER: I think we're -- are you done with
12  your answer? I think we're about at the end of the tape
13  and we should break for lunch.
14  THE VIDEOGRAPHER: This ends Videotape No. 1 in
15  the deposition of Jens Ole Sorensen. Today's date is
16  December 20, 2006. The time is 11:52 a.m. Off the
17  record.
18  (Discussion off the record.)
19  MR. NIRO: We're prepared to continue unless the
20  witness needs to take a break.
21  MS. KRAMER: We --
22  MR. KALER: He's probably about due for a blood
23  sugar break anyway, and it's noon.
24  MS. KRAMER: As am I.
25  MR. KALER: In civilized countries, that's when

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

97

1  we eat lunch.
2  THE WITNESS: I think we've gone one hour,
3  haven't we?
4  MR. NIRO: I don't think so, but again, anytime
5  you need a break, you let me know. If you feel like you
6  need a break, we can take one.
7  THE WITNESS: I think I'd like to have a break
8  about once every hour.
9  MR. NIRO: Okay. When would you like to start
10  back up?
11  THE WITNESS: Whenever you're ready. Yeah,
12  whenever you're ready.
13  MS. KRAMER: 1:15.
14  MR. NIRO: Off the record.
15
16  -- Lunch Recess --
17
18  THE VIDEOGRAPHER: This begins Videotape No. 2
19  in the deposition of Jens Ole Sorensen. Today's dated
20  December 20, 2006. The time is 1:23 p.m. On the record.
21  BY MR. NIRO:
22  Q  Mr. Sorensen, have you ever made any product in
23  accordance with Claim 1 of the 184 patent in your entire
24  life?
25  A  No.

PETERSON REPORTING, VIDEO & LITIGATION SERVICES

98

1    Q    And have any of your companies or trusts or
2    other entities in which you're involved ever made any
3    product in accordance with Claim 1 of the 184 patent?
4        MS. KRAMER: Objection; vague and compound in
5    its scope.
6        THE WITNESS: No.
7    BY MR. NIRO:
8    Q    The answer was no?
9    A    Right.
10   Q    And how many U.S. patents have you been the
11   named inventor on did you say?
12   A    I believe it's over 100.
13   Q    Are you also the inventor on over 100 foreign
14   patents?
15   A    I believe so.
16   Q    Does Black & Decker infringe any of your other
17   patents besides the 184?
18       MS. KRAMER: Objection; vague --
19   BY MR. NIRO:
20   Q    In your opinion?
21       MS. KRAMER: -- ambiguous and overbroad, seeks
22   attorney --
23       THE WITNESS: Don't know.
24       MS. KRAMER: -- attorney-client privilege and
25   work product privilege.

100

1    A    Well, not a one. I must have designed at least
2    20 of them, or more.
3    Q    What is a flower pot?
4    A    It's a container for flowers.
5    Q    Do you consider a flower pot to be power tool?
6    A    No, but that was a product that came -- was made
7    by the power tool.
8        Oh, I see what you're saying, power tool. Okay.
9    We have a misunderstanding here.
10   Q    That's fine. That's fair enough.
11   A    Okay.
12   Q    You understand that you are accusing Black &
13   Decker and DeWalt power tools of infringing your 184
14   patent in this case, correct?
15       MS. KRAMER: Objection; misstates the evidence.
16   It is not Mr. Ole Sorensen that is the plaintiff here.
17   BY MR. NIRO:
18   Q    Is that correct?
19   A    Okay. I have designed molds that are usual --
20   often called power tools. Okay? And so we have a
21   misunderstanding.
22   Q    You have designed molds that were used to make
23   flower pots, correct?
24   A    That is correct.
25   Q    You have not designed molds that make power

99

1    BY MR. NIRO:
2    Q    Can you name any?
3    A    I'm sorry. Okay.
4    Q    Can you name any of your other patents which you
5    believe are infringed by any Black & Decker products?
6        MS. KRAMER: Objection. You have my objections.
7    You don't have to respond.
8        THE WITNESS: I can't -- I mean, you're -- I
9    can't possibly answer that question I just told you.
10   BY MR. NIRO:
11   Q    Have you ever designed a power tool in your
12   life, sir?
13   A    Yes.
14   Q    When?
15   A    When I was the president of OS Plastics.
16   Q    What is OS Plastics?
17   A    It's a Danish company.
18   Q    And what was the power tool that you supposedly
19   designed?
20       MS. KRAMER: Objection; argumentative.
21       THE WITNESS: Why do you say "supposedly"?
22   BY MR. NIRO:
23   Q    Well, what was it?
24   A    A flower pot.
25   Q    A flower pot?

101

1    tools such as the Black & Decker and DeWalt products that
2    are at issue in this case, correct?
3    A    Correct.
4    Q    And you've never designed an actual power tool
5    such as the Black & Decker and DeWalt products that are
6    at issue in this case, correct?
7    A    That's correct.
8    Q    And you don't have any patents on drills or bits
9    or gears or motors or batteries or the other components
10   of the Black & Decker products at issue, correct?
11       MS. KRAMER: Objection; compound, but you can
12   answer, if you can.
13       THE WITNESS: I usually make inventions that
14   deals with processes, and any -- processes that cover
15   some of the objects that you talked about could -- I
16   could possibly have invented, some processes that were
17   used to make what you're talking about, but specifically,
18   to those products that you were talking about, no.
19       THE VIDEOGRAPHER: Off the record. The time is
20   1:29 p.m.
21       (Pause.)
22       THE VIDEOGRAPHER: Back on the record. The time
23   is 1:30 p.m.
24   BY MR. NIRO:
25   Q    Now, the work that you did with OS Plastics

# Exhibit O

1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   JENS ERIK SORENSEN,                    CASE NO. 06CV1572 BTM (CAB)
                                                     NO. 07CV2121
12                            Plaintiff,           NO. 07CV2277
              vs.                                  NO. 07CV2278
13                                                  NO. 07CV2321
14   BLACK & DECKER, ET. AL.,
                                            ORDER DENYING MOTION TO
15                            Defendant.    CONSOLIDATE
16   and related cases.
17
           Given the stay pending patent reexamination issued in the above cases, the Court
18
     DENIES Plaintiff's motion to consolidate as premature.
19
     IT IS SO ORDERED.
20
     DATED:  May 5, 2008
21
22                                    _Barry Ted Moskowitz_
23                                    Honorable Barry Ted Moskowitz
                                      United States District Judge
24
25
26
27
28

                                     1

# Exhibit P

Westlaw.

H.R. REP. 96-1307(I)                                                                                         Page 1

H.R. REP. 96-1307(I), H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980 U.S.C.C.A.N. 6460, 1980 WL 12929 (Leg.Hist.)

**(Cite as: H.R. REP. 96-1307(I), 1980 U.S.C.C.A.N. 6460)**

P.L. 96-517, PATENT AND TRADEMARK LAWS
SEE PAGE 94 STAT. 3015
HOUSE REPORT (JUDICIARY COMMITTEE) NO. 96-1307(I), SEPT. 9,
1980 (TO ACCOMPANY H.R. 6933)
HOUSE REPORT (GOVERNMENT OPERATIONS COMMITTEE)
NO. 96-1307(II), SEPT. 23, 1980 (TO ACCOMPANY H.R. 6933)
CONG. RECORD VOL. 126 (1980)
DATES OF CONSIDERATION AND PASSAGE
HOUSE NOVEMBER 17, 21, 1980
SENATE NOVEMBER 20, 1980
NO SENATE REPORT WAS SUBMITTED WITH THIS LEGISLATION.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED MATERIAL. EACH COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

HOUSE REPORT NO. 96-1307(I)
SEPT. 9, 1980

*1 **6460 THE COMMITTEE ON THE JUDICIARY TO WHOM WAS REFERRED THE BILL (H.R. 6933) ENTITLED: 'TO AMEND THE PATENT AND TRADEMARK LAWS', HAVING CONSIDERED THE SAME, REPORT FAVORABLY THEREON WITH AMENDMENTS AND RECOMMEND THAT THE BILL AS AMENDED DO PASS.

\*    \*    \*    \*

STATEMENT
THE NEED FOR THE LEGISLATION

MANY ANALYSTS OF THE U.S. ECONOMY HAVE WARNED THAT THE ROOTS OF THE CURRENT RECESSION LIE IN A LONGER TERM ECONOMIC MALAISE WHICH ARISES OUT OF A FAILURE OF AMERICAN INDUSTRY TO KEEP PACE WITH THE INCREASED PRODUCTIVITY OF FOREIGN COMPETITORS. [FN1]

ACCORDING TO THE COMMITTEE FOR ECONOMIC DEVELOPMENT, 'THE SLOWING OF PRODUCTIVITY IMPROVEMENT DURING THE PAST FEW YEARS PARALLELS THE DISCOURAGING DECLINE IN THE RATE OF INVESTMENT IN PLANT AND EQUIPMENT.' [FN2] THE RATE OF INVESTMENT AS A PROPORTION OF GNP HAS AVERAGED ABOUT ONE HALF THE RATE FOR FRANCE AND GERMANY AND ABOUT ONE THIRD THE RATE FOR JAPAN. FURTHER, THE SITUATION DOES NOT *2 APPEAR TO BE IMPROVING. THERE HAS BEEN AN ESPECIALLY SIGNIFICANT DECLINE IN TOTAL U.S. EXPENDITURES FOR RESEARCH AND DEVELOPMENT, AS **6461 MEASURED IN CONSTANT DOLLARS SINCE 1970. [FN3] SINCE THE PRIMARY MEANS OF IMPROVING PRODUCTIVITY LIES IN THE CREATION OF NEW TECHNOLOGIES, THE DECLINE IN EXPENDITURES FOR RESEARCH AND DEVELOPMENT IS ESPECIALLY SIGNIFICANT TO THE HEALTH OF THE OVERALL ECONOMY.

TESTIMONY PRESENTED TO THE SUBCOMMITTEE ON COURTS, CIVIL LIBERTIES AND THE ADMINISTRATION OF JUSTICE ALSO INDICATES THAT THE FEDERAL GOVERNMENT IS BEARING AN EVER INCREASING SHARE OF THE BURDEN OF FINANCING BASIC RESEARCH AND DEVELOPMENT. [FN4] THIS MEANS THAT THE EFFECTIVE COMMERCIALIZATION OF GOVERNMENT FINANCED RESEARCH IS BECOMING AN EVER MORE IMPORTANT ISSUE FOR THOSE WHO ARE

**Exhibit 9 - Page 39**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 96-1307(I), H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980 U.S.C.C.A.N. 6460, 1980 WL
12929 (Leg.Hist.)
(Cite as: H.R. REP. 96-1307(I), 1980 U.S.C.C.A.N. 6460)

CONCERNED WITH INDUSTRIAL INNOVATION. THE PATENT POLICIES GOVERNING THE UTILIZ-
ATION OF GOVERNMENT FUNDED RESEARCH WILL BECOME EVEN MORE IMPORTANT WHEN
THE RESEARCH EXPECTED TO FLOW OUT OF RECENT CONGRESSIONAL ENACTMENTS SUCH AS
THE ENERGY SECURITY ACT OF 1980 [FN5] BEGINS TO PRODUCE USABLE NEW TECHNOLOGIES.
IT IS HIGHLY LIKELY THAT THE FUEL WHICH POWERS OUR AUTOMOBILES AND THE BOILERS
WHICH HEAT OUR HOMES WILL OWE PART OF THEIR CHEMICAL COMPOSITION OR MECHANIC-
AL OPERATION TO PATENTED RESEARCH DEVELOPED IN PART BY GOVERNMENT FUNDS. AT
THE PRESENT TIME U.S. COMPANIES DESIRING TO USE GOVERNMENT FUNDED RESEARCH TO
DEVELOP NEW PRODUCTS AND PROCESSES MUST CONFRONT A BEWILDERING ARRAY OF 26
DIFFERENT SETS OF AGENCY REGULATIONS GOVERNING THEIR RIGHTS TO USE SUCH RE-
SEARCH. THIS BUREAUCRATIC CONFUSION DISCOURAGES EFFICIENT USE OF TAXPAYER FIN-
ANCED RESEARCH AND DEVELOPMENT.

HISTORY OF THE BILL

THE CRISIS IN U.S. PRODUCTIVITY AND THE GOVERNMENTAL ROLE IN IT HAS NOT GONE UN-
NOTICED, HOWEVER. IN MAY OF 1978 THE PRESIDENT CALLED FOR A MAJOR POLICY REVIEW
OF INDUSTRIAL INNOVATION AS THE KEY TO INCREASED PRODUCTIVITY IN THE UNITED
STATES. THIS WHITE HOUSE CALL TO ACTION RESULTED IN THE CREATION OF AN ADVISORY
COMMITTEE OF MORE THAN 150 SENIOR REPRESENTATIVES FROM THE INDUSTRIAL, PUBLIC
INTEREST, LABOR, SCIENTIFIC, AND ACADEMIC COMMUNITIES. THE WORK OF THE ADVISORY
COMMITTEE WAS OVERSEEN BY A CABINET LEVEL COORDINATING COMMITTEE CHAIRED BY
THE SECRETARY OF COMMERCE. THE COMMITTEE STUDIED ALL THE AREAS IN WHICH FEDER-
AL GOVERNMENT POLICY IMPACTS ON PRODUCTIVITY AND INNOVATION IN THE PRIVATE
SECTOR. THESE FIELDS OF INQUIRY INCLUDED: ECONOMIC AND TRADE POLICY; ENVIRON-
MENTAL, HEALTH AND SAFETY REGULATIONS; ANTI-TRUST ENFORCEMENT; FEDERAL PRO-
CUREMENT POLICIES, AND FEDERAL PATENT AND INFORMATION POLICIES.

WHEN THE ADVISORY COMMITTEE ISSUED ITS 300 PAGE REPORT LAST YEAR, A KEY SEGMENT
CONTAINED RECOMMENDATIONS ON GOVERNMENT PATENT POLICY. THESE RECOMMENDA-
TIONS, IN TURN, WERE RECEIVED BY THE PRESIDENT, AND FORMED THE BASIS OF A MAJOR
LEGISLATIVE PROPOSAL WHICH WAS CONVEYED TO THE CONGRESS. SPECIAL EMPHASIS WAS
PLACED ON THE ROLE OF THE PATENT SYSTEM AND THE PATENT POLICY REGARDING GOV-
ERNMENT FUNDED RESEARCH IN PROMOTING INDUSTRIAL INNOVATION. THESE PATENT RE-
LATED RECOMMENDATIONS WERE FORWARDED TO THE COMMITTEE*3 **6462 ON THE JUDI-
CIARY AND ARE EMBODIED IN H.R. 6933 AND H.R. 3806.

H.R. 6933 HAS THREE MAJOR THRUSTS. FIRST, IT STRENGTHENS INVESTOR CONFIDENCE IN THE
CERTAINTY OF PATENT RIGHTS BY CREATING A SYSTEM OF ADMINISTRATIVE REEXAMINA-
TION OF DOUBTFUL PATENTS. SECONDLY, IT STRENGTHENS THE FINANCIAL RESOURCES OF
THE PATENT OFFICE TO PROVIDE FAST AND ACCURATE PROCESSING OF PATENT APPLICA-
TIONS BY REVISING THE FEE STRUCTURE OF THE OFFICE. FINALLY, THE EXISTING MELANGE
OF 26 DIFFERENT AGENCY POLICIES ON VESTING OF PATENT RIGHTS IN GOVERNMENT FUN-
DED RESEARCH IS REPLACED BY A SINGLE, UNIFORM NATIONAL POLICY DESIGNED TO CUT
DOWN ON BUREAUCRACY AND ENCOURAGE PRIVATE INDUSTRY TO UTILIZE GOVERNMENT
FUNDED INVENTIONS THROUGH THE COMMITMENT OF THE RISK CAPITAL NECESSARY TO DE-
VELOP SUCH INVENTIONS TO THE POINT OF COMMERCIAL APPLICATION.

H.R. 3806 EMBODIES ANOTHER RECOMMENDATION OF THE ADVISORY COMMITTEE AND THE
PRESIDENT. IT GRANTS JURISDICTION OVER APPEALS IN PATENT CASES TO A SINGLE COURT
OF APPEALS-- ENDING THE CURRENT LEGAL CONFUSION CREATED BY 11 DIFFERENT APPEL-

**Exhibit 9 - Page 40**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 96-1307(I), H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980 U.S.C.C.A.N. 6460, 1980 WL 12929 (Leg.Hist.)
**(Cite as: H.R. REP. 96-1307(I), 1980 U.S.C.C.A.N. 6460)**

LATE FORUMS, ALL GENERATING DIFFERENT INTERPRETATIONS OF THE PATENT LAW. THE NEW COURT WILL DO A GREAT DEAL TO IMPROVE INVESTORS' CONFIDENCE IN PATENTED TECHNOLOGY.

IN ADDITION TO THE THREE BROAD AREAS ALREADY OUTLINED, H.R. 6933 ADDRESSES THE SPECIAL NEEDS OF UNIVERSITIES AND SMALL BUSINESSES WHEN THEY ATTEMPT TO DEAL WITH PATENT ISSUES ARISING OUT OF GOVERNMENT CONTRACTS. BOTH OF THESE GROUPS LACK THE RESOURCES TO COPE WITH THE BEWILDERING REGULATORY AND BUREAUCRATIC PROBLEMS ASSOCIATED WITH TRANSFER OF PATENT RIGHTS PURSUANT TO GOVERNMENT CONTRACTS; AND THE UNIVERSITY SECTOR IN PARTICULAR IS AN IMPORTANT LINK TO THE PRIVATE SECTOR.

THE SUBCOMMITTEE ON COURTS, CIVIL LIBERTIES AND THE ADMINISTRATION OF JUSTICE HELD SEVEN DAYS OF HEARINGS ON H.R. 6933 AND RELATED PATENT LAW PROPOSALS. IN ALL, OVER THIRTY WITNESSES FROM GOVERNMENT, THE PRIVATE BAR, INDUSTRY, EDUCATION, SMALL BUSINESS, AND THE JUDICIARY OFFERED TESTIMONY ON THE VARIOUS LEGISLATIVE PROPOSALS BEFORE THE SUBCOMMITTEE. HEARINGS WERE FOLLOWED BY FOUR DAYS OF MARKUP, DURING WHICH H.R. 3806, CREATING A NEW COURT OF APPEALS FOR THE FEDERAL CIRCUIT, H.R. 6933, CONTAINING REFORMS IN PATENT POLICY AND PROCEDURES, AND H.R. 6934, CLARIFYING THE LAW OF COPYRIGHT OF COMPUTER PROGRAMS, WERE REPORTED FAVORABLY. EACH BILL WAS REPORTED UNANIMOUSLY. THE UNANIMOUS VOTES, PARTICULARLY ON H.R. 6933, WERE CAST ONLY AFTER CAREFUL EXAMINATION OF THE LEGISLATION IN LIGHT OF THE CRITICISMS MADE DURING THE HEARINGS AND AFTER CONSULTATION WITH MEMBERS OF THE COMMITTEE ON SCIENCE AND TECHNOLOGY, WHICH SHARES JURISDICTIONAL INTEREST. DURING THE COURSE OF MARKUP H.R. 6933 WAS AMENDED SUBSTANTIALLY TO RESPOND TO CRITICISMS RAISED DURING THE HEARING.

SUMMARY OF THE BILL

H.R. 6933, AS AMENDED, ADDRESSES FOUR MAJOR ISSUES. SECTION 1 PROVIDES FOR A SYSTEM OF ADMINISTRATIVE REEXAMINATION OF PATENTS WITHIN THE PATENT OFFICE. THIS NEW PROCEDURE WILL PERMIT ANY PARTY TO PETITION THE PATENT OFFICE TO REVIEW THE EFFICACY OF A PATENT, SUBSEQUENT TO ITS ISSUANCE, ON THE BASIS OF NEW INFORMATION ABOUT PREEXISTING TECHNOLOGY WHICH MAY HAVE ESCAPED REVIEW AT THE TIME OF THE INITIAL EXAMINATION OF THE PATENT APPLICATION. REEXAMINATION *4 WILL PERMIT EFFICIENT RESOLUTION OF QUESTIONS ABOUT THE VALIDITY OF ISSUED PATENTS WITHOUT RECOURSE TO EXPENSIVE AND LENGTHY INFRINGEMENT LITIGATION. THIS, IN TURN, WILL PROMOTE INDUSTRIAL INNOVATION BY ASSURING THE KIND OF CERTAINTY ABOUT PATENT VALIDITY WHICH IS A NECESSARY INGREDIENT OF SOUND INVESTMENT DECISIONS.

THE COST INCURRED IN DEFENSIVE PATENT LITIGATION SOMETIMES REACHES $250,000 FOR EACH PARTY, AN IMPOSSIBLE BURDEN FOR MANY SMALLER FIRMS. THE RESULT IS A CHILLING EFFECT ON THOSE BUSINESSES AND INDEPENDENT INVENTORS WHO HAVE REPEATEDLY DEMONSTRATED THEIR ABILITY TO SUCCESSFULLY INNOVATE AND DEVELOP NEW PRODUCTS. A NEW PATENT REEXAMINATION PROCEDURE IS NEEDED TO PERMIT THE OWNER OF A PATENT TO HAVE THE VALIDITY OF HIS PATENT TESTED IN THE PATENT OFFICE WHERE THE MOST EXPERT OPINIONS EXIST AND AT A MUCH REDUCED COST. PATENT OFFICE REEXAMINATION WILL GREATLY REDUCE, IF NOT END, THE THREAT OF LEGAL COSTS BEING USED TO 'BLACKMAIL' SUCH HOLDERS INTO ALLOWING PATENT INFRINGEMENTS OR BEING FORCED TO LICENSE THEIR PATENTS FOR NOMINAL FEES.

THE REEXAMINATION OF ISSUED PATENTS COULD BE CONDUCTED WITH A FRACTION OF THE

**Exhibit 9 - Page 41**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 4

H.R. REP. 96-1307(I), H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980 U.S.C.C.A.N. 6460, 1980 WL 12929 (Leg.Hist.)

**(Cite as: H.R. REP. 96-1307(I), 1980 U.S.C.C.A.N. 6460)**

TIME AND COST OF FORMAL LEGAL PROCEEDINGS AND WOULD HELP RESTORE CONFIDENCE IN THE EFFECTIVENESS OF OUR PATENT SYSTEM.

THE BILL DOES NOT PROVIDE FOR A STAY OF COURT PROCEEDINGS. IT IS BELIEVED BY THE COMMITTEE THAT STAY PROVISIONS ARE UNNECESSARY IN THAT SUCH POWER ALREADY RESIDES WITH THE COURT TO PREVENT COSTLY PRETRIAL MANEUVERING WHICH **ATTEMPTS TO CIRCUMVENT** THE **REEXAMINATION PROCEDURE**. IT IS ANTICIPATED THAT THESE MEASURES PROVIDE A USEFUL AND NECESSARY ALTERNATIVE FOR CHALLENGERS AND FOR PATENT OWNERS TO TEST THE VALIDITY OF UNITED STATES PATENTS IN AN EFFICIENT AND RELATIVELY INEXPENSIVE MANNER.

SECTIONS 2 THROUGH 5 OF H.R. 6933 PROVIDE FOR A NEW FEE STRUCTURE FOR THE PATENT OFFICE. AT THE PRESENT TIME PATENT EXAMINATION FEES ARE ESTABLISHED BY STATUE, LAST REVISED IN 1967. WHEN ENACTED, THE PRESENT FEE STRUCTURE PROVIDED REVENUES WHICH MET 67 PERCENT OF THE COSTS OF OPERATING THE PATENT OFFICE. INFLATION HAS NOW REDUCED THE IMPACT OF THOSE FEES TO THE POINT WHERE THEY GENERATE ONLY 27 PERCENT OF THE FUNDING NECESSARY TO THE OPERATION OF THE OFFICE.

AT THE PRESENT TIME PATENT FEES AVERAGE ABOUT $239 PER APPLICATION. [FN6]

H.R. 6933 WOULD ENTIRELY REVISE THE FEE STRUCTURE. IT GRANTS THE COMMISSIONER THE POWER TO ESTABLISH FEES. AS INTRODUCED, THE BILL PROVIDED THAT THE FEE LEVEL WOULD BE REVISED YEARLY TO GENERATE 60 PERCENT OF THE REVENUE NEEDED TO OPERATE THE OFFICE. HOWEVER, THE SUBCOMMITTEE AMENDED THE BILL TO REDUCE THAT LEVEL TO 50 PERCENT. THIS WAS IN RESPONSE PARTICULARLY TO CRITICISM FROM SMALL BUSINESS AND INDIVIDUAL INVENTORS THAT THE FEES WOULD PLACE TOO GREAT A BURDEN ON THOSE GROUPS.

IN ORDER FURTHER TO SOFTEN THE IMPACT ON SMALL BUSINESS AND IND VIDUAL INVENTORS, THE FEES ARE TO BE PAID IN FOUR INSTALLMENTS OVER THE LIFE OF THE PATENT. THIS SYSTEM, KNOWN AS MAINTENANCE FEES, IS IN USE IN MOST ADVANCED INDUSTRIAL NATIONS AND HAS THE ADVANTAGE OF DEFERRING PAYMENT UNTIL THE INVENTION BEGINS TO RETURN REVENUE TO THE INVENTOR.

*5 **6464 SHOULD THE INVENTION PROVE TO HAVE NO COMMERCIAL VALUE, THE INVENTOR HAS THE OPTION OF PERMITTING THE PATENT TO LAPSE, THUS AVOIDING ALL FURTHER FEES.

SECTION 6 OF H.R. 6933 PROVIDES FOR A UNIFORM POLICY GOVERNING THE DISPOSITION OF PATENT RIGHTS IN GOVERNMENT FUNDED RESEARCH. THIS WOULD REPLACE THE 26 DIFFERENT AGENCY POLICIES NOW IN EFFECT. THERE ARE TWO PATENT POLICIES PROVIDED IN THIS SECTION. NON-PROFIT RESEARCH INSTITUTIONS AND SMALL BUSINESSES ARE GIVEN PREFERENTIAL TREATMENT. THE LEGISLATION ESTABLISHES A PRESUMPTION THAT OWNERSHIP OF ALL PATENT RIGHTS IN GOVERNMENT FUNDED RESEARCH WILL VEST IN ANY CONTRACTOR WHO IS A NON-PROFIT RESEARCH INSTITUTION OR A SMALL BUSINESS. THIS PORTION OF H.R. 6933 SUBSTANTIALLY INCORPORATES LEGISLATION SEPARATELY INTRODUCED, H.R. 2414 (S. 414), ENTITLED THE UNIVERSITY, SMALL BUSINESS PATENT POLICY ACT.

LARGE BUSINESSES ARE GOVERNED BY A SEPARATE POLICY. THEY RECEIVE EXCLUSIVE LICENSES FOR SPECIFIC USES THEY INTEND TO COMMERCIALIZE. AS WITH SMALL BUSINESS AND UNIVERSITIES, HERE TOO THE PRESUMPTION LIES WITH THE GRANTING OF EXCLUSIVE RIGHTS TO THE CONTRACTOR.

CRITICS OF THE BILL TESTIFIED THAT IT WOULD BE IMPOSSIBLE FOR A CONTRACTOR TO DETERMINE IN GOOD FAITH HIS ABILITY TO COMMERCIALIZE IN A PARTICULAR FIELD OF USE AT THE TIME OF DISCLOSURE OF THE INVENTION.

**Exhibit 9 - Page 42**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 96-1307(I), H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980 U.S.C.C.A.N. 6460, 1980 WL 12929 (Leg.Hist.)
(Cite as: H.R. REP. 96-1307(I), 1980 U.S.C.C.A.N. 6460)

AS A RESULT AND FOR THE PURPOSES OF FOREIGN PATENT RIGHTS, THE SUBCOMMITTEE AP-PROVED AN AMENDMENT WHICH GRANTS TEMPORARY TITLE TO A CONTRACTOR FOR UP TO FOUR AND ONE HALF YEARS BEFORE REQUIRING HIM TO SPECIFY HIS FIELDS OF USE. THIS PROVIDES FOR MORE FLEXIBILITY FOR THE CONTRACTOR WHILE AT THE SAME TIME PRO-TECTING THE TAXPAYING PUBLIC BECAUSE:

1. THE GOVERNMENT, NOT THE CONTRACTOR, WILL OBTAIN OWNERSHIP OF PATENT RIGHTS TO CONTRACT INVENTIONS.

2. THE GOVERNMENT WILL PERMIT CONTRACTORS TO OBTAIN EXCLUSIVE LICENSES BUT ONLY FOR FIELDS OF USE IN WHICH THEY INTEND TO COMMERCIALIZE A PATENTED INVEN-TION.

3. THE GOVERNMENT HAS THE RIGHT TO DENY THE TRANSFER OF EXCLUSIVE RIGHTS FOR ANY FIELD OF USE WITHIN 90 DAYS OF THE CONTRACTOR'S DISCLOSURE OF A FIELD OR FIELDS OF USE HE INTENDS TO COMMERCIALIZE.

4. PUBLIC INTEREST ANTITRUST AND NATIONAL SECURITY STANDARDS ARE TO BE APPLIED BY THE GOVERNMENT IN MAKING SUCH DETERMINATION WHETHER TO DENY AN EXCLUSIVE LICENSE.

FROM A CONTRACTOR POINT OF VIEW, THE AMENDMENT OFFERS MANY OF THE ADVANTAGES OF PATENT OWNERSHIP, INCLUDING FULL TITLE ABROAD AND THE RIGHT TO SUBLICENSE DO-MESTICALLY.

FROM AN INNOVATION POINT OF VIEW, THE REQUIREMENT THAT EXCLUSIVE LICENSES BE LIMITED TO SPECIFIED FIELDS OF USE THAT THE CONTRACTOR INTENDS TO COMMERCIALIZE SHOULD PREVENT SITTING ON TECHNOLOGY, AND SPUR INNOVATION.

SOME CONTRACTORS, PARTICULARLY IN THE DEFENSE AREA, WILL LOSE SOME RIGHTS WHICH THEY PRESENTLY RECEIVE THROUGH FULL WAIVER. HOWEVER, THE OVERWHELMING NUMBER OF CONTRACTORS WILL RECEIVE FASTER, MORE EFFICIENT TREATMENT UNDER THESE PROVISIONS. FOR EXAMPLE, DELAYS IN ACTING ON PATENT RIGHT WAIVER REQUESTS, WHICH NOW TAKE ON THE AVERAGE A YEAR AND A HALF IN AGENCIES LIKE THE DEPART-MENT OF ENERGY, WILL BE ELIMINATED. CONTRACTORS WILL KNOW THEIR RIGHTS WITH CERTAINTY WITHIN 90 DAYS OF IDENTIFYING A SPECIFIC FIELD OF USE UNDER A PATENT TO A GOVERNMENT FINANCED INVENTION.

*6 **6465 IN DEVELOPING THE AMENDMENT TO THIS SECTION, IT SHOULD BE NOTED THAT THE SUBCOMMITTEE WORKED CLOSELY WITH THE SCIENCE AND TECHNOLOGY COMMITTEE, AND IT IS PARTICULARLY GRATEFUL TO MEMBERS OF THAT COMMITTEE FOR THEIR CONTRIBU-TIONS.

FINALLY, SECTIONS 9 AND 10 OF THE BILL, AS REPORTED BY THE SUBCOMMITTEE, REFLECT AMENDMENTS WHICH ARE DESIGNED TO RESPOND TO THE CRITICISM OF WITNESSES WHO AR-GUED BOTH THAT THE PATENT OFFICE OUGHT TO BE INDEPENDENT OF THE DEPARTMENT OF COMMERCE AND THAT THE PRESENT SEARCH FILES OF THE OFFICE FAIL TO EFFECTIVELY UTILIZE MODERN COMPUTER TECHNOLOGY.

SECTION-BY-SECTION ANALYSIS
REEXAMINATION

SECTION 1 OF THE BILL WOULD ADD SEVEN NEW SECTIONS TO THE PATENT LAWS TO ESTAB-LISH A PATENT REEXAMINATION SYSTEM. THESE SEVEN NEW SECTIONS WOULD CONSTITUTE CHAPTER 30 OF TITLE 35 OF THE UNITED STATES CODE.

SECTION 301. CITATION OF PRIOR ART

**Exhibit 9 - Page 43**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1  NANCY J. GEENEN, CA BAR NO. 135968, NGEENEN@FOLEY.COM
   KIMBERLY K. DODD, CA BAR NO. 235109, KDODD@FOLEY.COM
2  **FOLEY & LARDNER LLP**
   ONE MARITIME PLAZA, SIXTH FLOOR
   SAN FRANCISCO, CA 94111-3404
3  TELEPHONE:    415.434-4484
   FACSIMILE:    415.434-4507

4  ROBERT L. BINDER (TO BE ADMITTED *PRO HAC VICE*), RBINDER@FOLEY.COM
   **FOLEY & LARDNER LLP**
5  777 EAST WISCONSIN AVENUE
   MILWAUKEE, WI 53202
   TELEPHONE (414) 271-2400
6  FACSIMILE (414) 297-4900

7  PAVAN K. AGARWAL (TO BE ADMITTED *PRO HAC VICE*), PAGARWAL@FOLEY.COM
   **FOLEY & LARDNER LLP**
   3000 K STREET, N.W., SUITE 500
8  WASHINGTON, D.C. 20007-5143
   TELEPHONE: (202) 672-5300
   FACSIMILE: (202) 672-5399
9
   Attorneys for Defendant/Counterclaim Plaintiff **Phillips Plastics Corporation**
10

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13

14  JENS ERIK SORENSEN, as Trustee of        Case No: 08-CV-03094-MHP
    SORENSEN RESEARCH AND
    DEVELOPMENT TRUST                         **DECLARATION OF JOHN CONLIN
15                                            IN SUPPORT OF ALTERNATIVE
                                             MOTIONS TO TRANSFER UNDER
                Plaintiff,                    28 U.S.C. § 1404(a) OR TO STAY
16                                            PENDING PATENT OFFICE
        vs.                                  REEXAMINATION**
17
    PHILLIPS PLASTICS CORPORATION, a         DATE:        SEPTEMBER 8, 2008
18  Wisconsin Corporation; and DOES 1        TIME:        2:00 P.M.
    THROUGH 100,
19
                Defendants.
20  ─────────────────────────────
    PHILLIPS PLASTICS CORPORATION,
21
                Counterclaim Plaintiff,
22
        vs.
23
    JENS ERIK SORENSEN, as Trustee of
24  SORENSEN RESEARCH AND
    DEVELOPMENT TRUST,
25
                Counterclaim Defendant.
26

27

28

MILW_7438602.1

I, John Conlin, declare and state as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.    I reside at 206 N. Holly avenue, Elk Mound, WI.  I am currently employed by Phillips Plastics Corporation ("Phillips") as an account manager.  I have been employed by Phillips since June 1987.

2.    My job responsibilities as an account manager at Phillips include account management responsibilities for key customers.

3.    Phillips is a Wisconsin corporation with its principal place of business in Phillips, Wisconsin.  It has several other manufacturing and research facilities in Wisconsin.  Overall it employs approximately 1,700 persons.  Phillips "multi-shot" facility, where two-part injected molding products like the Black & Decker drill housing and the Craftsman tape measure housing are manufactured, is located in Eau Claire, Wisconsin.

4.    Phillips maintains a small design facility in Sunnyvale, California near San Jose, which has employed two or three persons over the last few years.  That facility designs primarily medical products.  Phillips also employs two salesmen in Northern California, one in Nevada City (Randy Kirkham) and the other in Healdsburg (Zach Hayman).  Neither the design facility nor the salespersons would have had any involvement with the Craftsman project in either design, manufacturing, or sales. Phillips has no other facilities or employees in Northern California.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of July, 2008.

_____

John Conlin

1

NANCY J. GEENEN, CA BAR NO. 135968, NGEENEN@FOLEY.COM
KIMBERLY K. DODD, CA BAR NO. 235109, KDODD@FOLEY.COM
**FOLEY & LARDNER LLP**
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3404
TELEPHONE:    415.434-4484
FACSIMILE:    415.434-4507

ROBERT L. BINDER (TO BE ADMITTED *PRO HAC VICE*), RBINDER@FOLEY.COM
**FOLEY & LARDNER LLP**
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202
TELEPHONE (414) 271-2400
FACSIMILE (414) 297-4900

PAVAN K. AGARWAL (TO BE ADMITTED *PRO HAC VICE*), PAGARWAL@FOLEY.COM
**FOLEY & LARDNER LLP**
3000 K STREET, N.W., SUITE 500
WASHINGTON, D.C. 20007-5143
TELEPHONE: (202) 672-5300
FACSIMILE: (202) 672-5399

Attorneys for Defendant/Counterclaim Plaintiff **Phillips Plastics Corporation**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST<br><br>Plaintiff,<br><br>vs.<br><br>PHILLIPS PLASTICS CORPORATION, a Wisconsin Corporation; and DOES 1 THROUGH 100,<br><br>Defendants.<br><br>―――――――――――――<br><br>PHILLIPS PLASTICS CORPORATION,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Counterclaim Defendant. | Case No: 08-CV-03094-MHP<br><br>**DECLARATION OF JESS NORRIS JOHNSON IN SUPPORT OF ALTERNATIVE MOTIONS TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR TO STAY PENDING PATENT OFFICE REEXAMINATION**<br><br>DATE:    SEPTEMBER 8, 2008<br>TIME:    2:00 P.M. |

MILW_7438978.1

I, Jess Norris Johnson, declare and state as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.     I reside at 3423 Darryl Lane, Eau Claire, WI 54703. I am a tooling engineer employed by Phillips Plastics Corporation at its Eau Claire, WI facility where "multi-shot" injection molded plastic parts are manufactured, including the Craftsman tape measure housing and the Black & Decker drill housing. I have been employed by Phillips Plastics at this location for nineteen years, and I have been responsible for the Craftsman tape measure housing tooling throughout the time our company has been manufacturing the housings.

2.     We manufactured the Craftsman housings from about 1998 through 2006, producing over 10 million sets of parts. We have not manufactured Craftsman housings since 2006.

3.     These housings were made under contract with the Evans Rule Company, Inc., which was subsequently purchased by the L.S. Starrett Company. The housings were manufactured in our Eau Claire facility and then shipped to Evans in North Charleston, SC or Starrett in Mount Airy, North Carolina. I am not aware of any shipments of this product to California. (Evans or Sterrett assembled the final product, which was sold to Sears and, so far as I know, sold at its stores throughout the country.)

4.     Our California-based sales person and the employees at our California design facility had no involvement with this project. The sales person involved in this project is based in Minneapolis.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of July, 2008.

_____

Jess Johnson

1

DECLARATION OF JESS NORRIS JOHNSON
CASE NO. 08-03094-MHP

MILW_7395883.1

1  NANCY J. GEENEN, CA BAR NO. 135968, NGEENEN@FOLEY.COM
   KIMBERLY K. DODD, CA BAR NO. 235109, KDODD@FOLEY.COM
   **FOLEY & LARDNER LLP**
2  ONE MARITIME PLAZA, SIXTH FLOOR
   SAN FRANCISCO, CA 94111-3404
3  TELEPHONE:    415.434-4484
   FACSIMILE:    415.434-4507

4  ROBERT L. BINDER (TO BE ADMITTED *PRO HAC VICE*), RBINDER@FOLEY.COM
   **FOLEY & LARDNER LLP**
5  777 EAST WISCONSIN AVENUE
   MILWAUKEE, WI 53202
   TELEPHONE (414) 271-2400
6  FACSIMILE (414) 297-4900

7  PAVAN K. AGARWAL (TO BE ADMITTED *PRO HAC VICE*), PAGARWAL@FOLEY.COM
   **FOLEY & LARDNER LLP**
8  3000 K STREET, N.W., SUITE 500
   WASHINGTON, D.C. 20007-5143
   TELEPHONE: (202) 672-5300
9  FACSIMILE: (202) 672-5399

10 Attorneys for Defendant/Counterclaim Plaintiff **Phillips Plastics Corporation**

11                **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13

14 | JENS ERIK SORENSEN, as Trustee of | Case No: 08-CV-03094-MHP |

JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND
DEVELOPMENT TRUST

            Plaintiff,

     vs.

PHILLIPS PLASTICS CORPORATION, a
Wisconsin Corporation; and DOES 1
THROUGH 100,

            Defendants.

_____

PHILLIPS PLASTICS CORPORATION,

            Counterclaim Plaintiff,

     vs.

JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND
DEVELOPMENT TRUST,

            Counterclaim Defendant.

Case No: 08-CV-03094-MHP

**[PROPOSED] ORDER GRANTING
MOTION TO TRANSFER TO THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF CALIFORNIA**

DATE:      SEPTEMBER 8, 2008
TIME:      2:00 P.M.

1    Defendant and Counterclaim Plaintiff Phillips Plastics Corporation ("Phillips") has

2  filed a motion to transfer this action to the United States District Court for the Southern

3  District of California, or, alternatively, to stay this action pending the conclusion of the

4  Patent Office's reexamination of the '184 patent.

5    After considering the papers relating to Phillips alternative motions, and finding

6  good cause therefore,

7    IT IS HEREBY ORDERED that Phillips' motion to transfer is GRANTED.  This

8  action shall be transferred to the Southern District of California.

9

10  Dated:  _____          _____

11                                                          The Honorable Marilyn Hall Patel
                                                            United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28