J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151
michael@kalerlaw.com

MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150
mak@kramerlawip.com

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>                              Plaintiff<br>    v.<br><br>PHILLIPS PLASTICS CORPORATION, a Wisconsin Corporation; and DOES 1 – 100,<br><br>                              Defendants. | Case No. 08-CV-3094 MHP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR TO STAY PENDING PATENT OFFICE REEXAMINATION**<br><br>Judge:  Hon. Marilyn H. Patel<br>Courtroom 15, 18th Floor<br>Date:  September 8, 2008<br>Time:  2:00 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................ii

SUMMARY OF OPPOSITION ............................................................................ 1

FACTUAL SUMMARY ...................................................................................... 1

ARGUMENT ....................................................................................................... 7

I.    TRANSFER IS NOT WARRANTED IN THIS CASE. ................................ 7

    A.  Plaintiff's Choice of Forum is Strongly Preferred. ....................................7
    B.  Forum (and Judge) Shopping by Defendant Weighs Against Transfer ...... 10

II.  PHILLIPS SEEKS TRANSFER TO A CONVENIENT JUDGE, NOT A
CONVENIENT FORUM.  ................................................................................. 13

III. REEXAMINATION PROCEEDINGS OF THE '184 PATENT NEITHER
MANDATE NOR JUSTIFY STAY OF THIS CASE.  ........................................ 14

    A. A stay would unduly prejudice and tactically disadvantage the nonmoving
       party – Plaintiff. ........................................................................................ 15
    B. A stay would not simplify the issues in question or trial. ........................... 17
    C. The USPTO's grant of a request for reexamination is not probative of
       unpatentability, nor does it establish likelihood of patent invalidity ........... 18

CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Acoustical Design, Inc. v. Control Elecs. Co.,* 932 F.2d 939, 942, 18 USPQ2d 1707, 1710 (Fed.Cir.) .................................................................................17

*Arete Power, Inc. v. Beacon Power Corp.,* 2008 WL 508477, at *2 (N.D.Cal. Feb. 22, 2008) ..........................................................................................7

*ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F. Supp. 1378, 1380 (N.D.Cal. 1994) ................................................................................................15

*Betts v. Atwood Equity Cooperative Exchange, Inc.,* 1990 WL 92495 (D.Kan. 1990) ............................................................................................13

*Blackboard, Inc. v. Desire2Learn, Inc.* Civil Action No. 9:06-CV-155 (E.D. Texas 2008) ...........................................................................................18

*Crosely Corp. v. Hazeltine Corp.,* 122 F.2d 925, 930 (3rd Cir. 1941)....................11

*Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986) ..................................................................................................8

*Ferens v. John Deere Co.,* 494 U.S. 516, 523 (1990) ............................................11

*Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.* 2007 WL 1655625 (N.D. Cal. 2007) ...................................................................14

*Greater Yellowstone Coalition v. Bosworth,* 180 F.Supp.2d 124, 129 (D.D.C. 2001) .............................................................................................11

*Gulf Oil Corp. v. Gilbert,* 330 U.S.501, 508 (1947)................................................8

*Hernandez v. City of El Monte,* 138 F.3d 393, 399 (9th Cir. 1998) ..........................13

*Hoechst Celanese Corp. v. BP Chemical Ltd.,* 78 F.3d 1575 (C.A.Fed. Tex. 1996)................................................................................................17

*Iragorri v. United Technologies Corp.,* 274 F.3d 65, 75 (2nd Cir. 2001); .................10

*Jenkins v. Cowen,* 1987 WL 14601(D.D.C. July 17, 1987) ......................................10

*Kansas Pub. Emp. Retirement Sys. v. Reimer & Koger Assocs., Inc.,* 61 F.3d 608, 6113 (1995) ....................................................................................10

*KLA-Tencor Corp. v. Nanometrics, Inc.,* 2006 WL 708661, at *2 (N.D.Cal. Mar. 16, 2006)...................................................................................15

*Knox v. McGinnis,* 1990 WL 103277, *1 (N.D.Ill. 1990)........................................13

*MercExchange, L.L.C. v. eBay, Inc.,* 500 F.Supp.2d 556, 562, 83 U.S.P.Q.2d 1688 (E.D.Va. Jul 27, 2007)..................................................................18

*Murray v. Sevier,* 1992 WL 75212 (D.Kan. 1992) ..................................................13

*NTP, Inc. v. Research in Motion, Ltd.,* 397 F.Supp.2d 785, 787 (E.D.Va.2005)..................................................................................................18

*Pain v. United Technologies Corp.,* 637 F.2d 775, 783 (D.C. Cir. 1980) ...........................................................................................................10

*Piper Aircraft v. Reyno,* 454 U.S. 235, 241 (1981) ...............................................8

*Ricoh Co. v. Aeroflex Inc.,* 2006 WL 3708069, at *2 (N.D.Cal. Dec. 14, 2006)................................................................................................15

*Soverain Software LLC v. Amazon.Com, Inc,* 356 F.Supp.2d 660, 662 (E.D.Tex. 2005) ..............................................................................................14

*Span-Eng Assocs. v. Weidner*, 771 F.2d 464, 470 (10th Cir.1985) ........................... 13

*Storage Technology Corp. v. Cisco Systems Inc.*, 329 F.3d 823, 836
(Fed. Cir. 2003) ................................................................................................. 7

*Sun Pharmaceutical Indus., Ltd. v. Eli Lilly & Co.*, 2008 WL 1902111,
at *4 (E.D. Mich. Apr. 30, 2008) ...................................................................... 11

*United States v. Cinemark USA, Inc.*, 66 F. Supp.2d 881, 889
(N.D.Ohio 1999) ................................................................................................ 11

*United States v. Mavroules*, 798 F.Supp. 61 (D.Mass.1992) ................................... 13

*Williams Advanced Materials, Inc. v. Target Technology Company,
LLC*, 2007 WL 2245886 (W.D.N.Y.) ................................................................ 13

<u>Statutes</u>

28 U.S.C. § 1404(a) ..................................................................................................... 1

35 U.S.C. § 302 ......................................................................................................... 17

35 U.S.C. § 303 .................................................................................................... 5, 17

35 U.S.C. § 304 ........................................................................................................... 5

37 CFR 1.535 .............................................................................................................. 5

*MPEP* § 2240 ............................................................................................................. 4

*MPEP* § 2242 ............................................................................................................. 5

*MPEP* § 2263 ............................................................................................................. 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SUMMARY OF OPPOSITION

Defendant Phillips Plastics, Inc. ("Phillips") is seeking transfer to a convenient judge, not a convenient forum. Rather than asking for transfer to the Western District of Wisconsin where its home office is located, Phillips is asking for transfer to the Southern District of California where it has no meaningful connections, but where it is reasonably assured that the case will be assigned to Judge Moskowitz who will stay the case.

Failing to meet the criteria for transfer of a case under 28 U.S.C. § 1404(a), this case should remain in this Court.

Phillips's alternative request for stay of this case should be denied pending completion of patent reexaminations because the reexamination filing has already been pending for more than one year without the first substantive step having occurred (issuance of a first office action), and average patent reexaminations are likely to extend for more than seven years, an entirely unreasonable length of time.

Thus, this Court should follow the lead of its fellow court in the *Sorensen v. Lexar Media, Inc.* case in denying stay, and proceeding with this lawsuit.

### FACTUAL SUMMARY

*Other action between these parties*

Phillips Plastics Corporation ("Phillips") was added as a co-defendant in a patent infringement case by Sorensen against Black & Decker Corporation and certain of its subsidiaries ("Black & Decker case") in the Southern District of California[1] because of Phillips's role as a manufacturer of the accused products in that case. *Kramer Decl.* ¶ 4.

Phillips asserted that the Black & Decker case cannot involve any non-Black & Decker products that Phillips manufactured, and refused to produce any discovery related to production of non-Black & Decker products. See Complaint (Docket #1, ¶

---

[1] *Sorensen v. Black & Decker, et al*, Case No. 06CV1572 BTM (CAB) in the Southern District of California.

12) and corresponding Answer (Docket #10, ¶ 12). *Kramer Decl.* ¶ 6. Acknowledging Phillips' insistence on a separate lawsuit for the non-Black & Decker products, this suit was filed. *Kramer Decl.* ¶ 7.

Judge Moskowitz, the presiding judge in the Black & Decker case, has not conducted any proceedings that require construction of the '184 patent. The only proceedings before Judge Moskowitz thus far have been procedural and discovery issues. No claim construction hearing has been conducted, and none is presently scheduled. Further, Judge Moskowitz has stayed the Black & Decker case and every other case involving the '184 patent case currently pending in the Southern District for which a hearing on the issue has occurred. In short, nothing relating to Phillips is happening in San Diego. *Kramer Decl.* ¶ 8.

*Plaintiff's choice of forum*

This suit was filed in Northern California because it was one of several districts that had both a basis for jurisdiction and venue. *Kramer Decl.* ¶ 9. In particular, Defendant Phillips maintains a design office located in Sunnyvale, in addition to manufacturing a wide variety of products that are sold in the Northern District. *Kramer Decl.* ¶ 11, Exhibit A. Further, the venue is convenient to Plaintiff because it is a short plane ride from San Diego, and Plaintiff has several other lawsuits pending in Northern California on the same patent. *Kramer Decl.* ¶ 10.

In the last year, Plaintiff has filed five infringement cases on the '184 patent in the Northern District, each based upon the existence of a defendant's office being located within the district. This case is no different. *Kramer Decl.* ¶ 12.

*Defendant's choice of forum*

Phillips has no offices, witnesses, documents, or evidence located in San Diego. A single name and address shows up on the Phillips website as a contact

1   person in San Diego, however that address is a residence.  *Kramer Decl.* ¶ 13,

2   Exhibit B.    By contrast, Phillips has multiple offices and facilities in Wisconsin

3   according to its website.  *Kramer Decl.* ¶ 14.

4       Phillips' multi-shot injection molding facility is located in Eau Claire,

5   Wisconsin (a printout of this information from Phillips' website is attached as

6   Exhibit C), is located within the jurisdiction of the Western District of Wisconsin.

7   *Kramer Decl.* ¶ 15.

8       The Western District of Wisconsin is becoming well known within intellectual

9   property legal circles as a patent-holder friendly rocket docket (i.e. jurors a

10  predisposed favorably to patent holders, and cases progress to trial quickly).  *Kramer*

11  *Decl.* ¶ 16, Exhibit D.

12

13  *'184 patent unchallenged for almost 20 years*

14      U.S. Patent No. 4,935,184 was issued by the United States Patent and

15  Trademark Office ("USPTO") on June 19, 1990 after 28 months of running the

16  gauntlet of the vetting process set forth by U.S. patent laws.  No requests for

17  reexamination of the patent were made with the USPTO for almost 20 years while

18  the patent holder was issuing licenses to use the patented technology.  *Kramer Decl.*

19  ¶ 17.

20      Only when Plaintiff filed a $1.44 billion lawsuit to enforce its '184 patent

21  rights against infringement by Black & Decker and subsequently added some of

22  Black & Decker's suppliers, including Phillips, did those defendants file requests for

23  reexamination of the patent.  Even those requests were not filed until after a year or

24  more of litigation and a claim construction hearing was then imminent.  *Kramer*

25  *Decl.* ¶ 18.

26

27  *How ex parte reexamination requests work*

28      *Ex parte* reexamination requests to the USPTO are a procedure whereby

1    anyone, even anonymously, can assert that there are problems with a patent. Matters

2    that can be raised via this procedure are limited to patents and other published prior

3    art, and do not cover all types of validity challenges that can be made by an alleged

4    infringer in an infringement lawsuit. *Kramer Decl.* ¶ 19. The results of an *ex parte*

5    reexamination request are not binding on the requestor.

6         According to the USPTO's most recent report, 92% of all reexamination

7    requests are granted. However, only 11% of such requests result in cancellation of

8    all claims in a patent. *Kramer Decl.* ¶ 20.

9         The USPTO's reported percentages are systematically biased due to the huge

10   volume of uncompleted *ex parte* reexaminations. The *ex parte* reexamination

11   process has been available since 1981 (27 years), yet approximately 25% of all such

12   reexaminations remain unresolved. *Kramer Decl.* ¶ 21. A closer look at the data

13   shows that since 1981, the USPTO has granted 8329 requests, but only 678

14   reexaminations have resulted in cancellation of all claims (item no. 9.b.), which

15   equals only eight percent (8%) of all granted reexaminations. *Kramer Decl.* ¶ 22.

16        Unfortunately, the request review process uses the loaded term "substantial

17   question of patentability" as the measure of whether a request will be accepted for

18   review. While the ordinary meaning of the words incorrectly suggests a high

19   likelihood that there has been a factual determination that there is some problem with

20   the validity of the patent, the term of art does not have that meaning. Instead, the

21   USPTO's Manual for Patent Examination Procedure ("MPEP") specifically states

22   that "<u>no *prima facie* case of unpatentability need be found to grant an order for</u>

23   <u>reexamination. . . .</u>" *MPEP* § 2240 (emphasis added) (reference copy attached to

24   *Kramer Decl.* at Exhibit F).

25        "Substantial question of patentability" for purposes of acceptance of a

26   reexamination request means that a patent examiner would find the cited reference

27   "important" to review; it does not mean a *prima facie* case of invalidity, nor a

28   substantial probability that the patent will be invalidated.

1
2
3
4
5
6
7
8
9

> For "a substantial new question of patentability" to be present, it is only necessary that: (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be <u>important</u> in deciding whether or not the claim is patentable; and (B) the same question of patentability as to the claim has not been decided by the Office [previously]. . . . It is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim . . . .

10      *MPEP* § 2242 (emphasis in original) (reference copy attached to *Kramer Decl.*

11  at Exhibit G).

12

13  *Anticipated length of reexaminations*

14      The process of an *ex parte* reexamination through issuance of a certification

15  (marking completion of the process) has no overall time limitation.   The only

16  deadlines within the process are as follows:

17      1.   From the filing of the request, the USPTO has three months to

18  determine whether it will grant or deny the request for reexamination.  35 U.S.C. §

19  303.

20      2.   From the issuance of an order granting a request for reexamination, the

21  patent holder has two months for file an (optional) Patent Owner Statement.   35

22  U.S.C. § 304.

23      3.   If a Patent Owner Statement is filed, the original requestor has two

24  months to file a Requestor Reply.  37 CFR 1.535.

25      At this point in the process, the reexamination request is turned over to a

26  patent examiner for issuance of a First Office Action.  There is no deadline for this to

27  happen.  After the issuance of a First Office Action, the patent holder has 2 months

28  to respond.  *MPEP* § 2263.

1    There may be additional rounds of exchange between office actions and patent

2    holder responses.  After an eventual Notice of Final Action is issued, the patentee

3    can appeal any adverse decision to the Board of Patent Appeals ("BPAI"), and can

4    appeal an adverse ruling from the BPAI to the Federal Circuit Court of Appeals.  The

5    entire process can often take many years. *Kramer Decl.* ¶ 25, and Exhibit H.

6    Although the USPTO claims the average pendency of *ex parte* reexaminations

7    to be 24.3 months (see Exhibit E to *Kramer Decl.*, item no. 7.a.), there is substantial

8    evidence to demonstrate that the USPTO's averages do not reflect current reality.

9    *Kramer Decl.* ¶ 26.

10    Harold Wegner, well-known law professor and partner at Foley & Lardner

11    (counsel for Defendant Phillips) is an outspoken critic of the USPTO's claims as to

12    the average length of patent reexaminations. He has been reported in the San Diego

13    Intellectual Property Lawyers Association journal as stating that "today the average

14    ex parte reexamination takes about 5 years (vs. the PTO's claim that it takes 2 years).

15    If an appeal to the CAFC is involved, that extends the period to 7.7 years." *Kramer*

16    *Decl.* ¶ 27, Exhibit I.

17    More recently, Professor Wegner published a blistering email letter to

18    intellectual property colleagues calling into question the PTO's pendency claims

19    again, pointing to research showing average pendency of 7.7 years, and also loss of

20    commercial criticality within three years. *Kramer Decl.* ¶ 28, Exhibit J.

21    

22    *Progress of pending reexaminations*

23    Black & Decker filed the first ever *ex parte* request for reexamination of the

24    '184 patent on July 30, 2007 and immediately thereafter filed a motion for stay on

25    the basis of the request.  At the time of filing, Black & Decker was facing a claim

26    construction hearing in November, and had also suffered an adverse discovery ruling

27    ordering Black & Decker to turn over work product documents from its prior in-

28    house counsel, Mr. Dearing (Docket #177, ¶ 8, hearing on July 26, 2007).  Stay was

6.

1    granted.  *Kramer Decl.* ¶ 30.  Phillips filed a second *ex parte* request for

2    reexamination of the '184 patent on December 21, 2007.  *Kramer Decl.* ¶ 31.

3         Plaintiff has complied with its filing requirements with the USPTO in the

4    reexamination, however, no First Office Action has yet issued on either

5    reexamination request.  More than a year has passed since the first filing. *Kramer*

6    *Decl.* ¶ 32.

7

8                                    **ARGUMENT**

9         Transfer of this case pursuant to 28 U.S.C. § 1404(a) is not warranted because

10   the moving party has not met the burden for transfer, and because the requested

11   transfer was for the improper purpose of obtaining a convenient judge, not a

12   convenient forum.

13

14   **I.      TRANSFER IS NOT WARRANTED IN THIS CASE.**

15           A.      Plaintiff's Choice of Forum is Strongly Preferred.

16         The Federal Circuit applies the law of the regional circuit when considering a

17   motion to transfer.  *Storage Technology Corp. v. Cisco Systems Inc.*, 329 F.3d 823,

18   836 (Fed. Cir. 2003), therefore Ninth Circuit law is controlling.

19         In the Ninth Circuit, a district court considering a transfer motion must

20   consider each of the issues listed in Section 1404(a):  (1) the convenience of the

21   parties; (2) the convenience of the witnesses; and (3) the interests of justice.  *Arete*

22   *Power, Inc. v. Beacon Power Corp.*, 2008 WL 508477, at *2 (N.D.Cal. Feb. 22,

23   2008).  In essence, the court must balance the preference accorded plaintiff's choice

24   of forum with the burden on the defendant of litigating in an inconvenient forum.

25   *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

26         "The defendant must make a strong showing of inconvenience to warrant

27   upsetting the plaintiff's choice of forum."  *Id.*

28         As part of its inquiry, a district court should consider both the private and

1    public factors affecting the convenience of the forum. *Decker Coal,* 805 F.2d at 843.

2    Private factors include: the relative ease of access to sources of proof; the availability

3    of compulsory process for attendance of unwilling; and the cost of obtaining the

4    attendance of willing, witnesses; the possibility of a view of the premises, if

5    appropriate to the action; and all other practical problems that make trial of a case

6    easy, expeditious and inexpensive. *Decker Coal,* 805 F.2d at 843 (quoting *Gulf Oil*

7    *Corp. v. Gilbert*, 330 U.S.501, 508 (1947)).

8        Public factors include: the administrative difficulties flowing from court

9    congestion; the local interest in having localized controversies decided at home; the

10   interest in having the trial of a diversity case in a forum that is at home with the law

11   that must govern the action; the avoidance of unnecessary problems in conflict of

12   laws, or in the application of foreign law; and the unfairness of burdening citizens in

13   an unrelated forum with jury duty. *Decker Coal,* 805 F.2d at 843 (quoting *Piper*

14   *Aircraft v. Reyno*, 454 U.S. 235, 241 (1981)).

15       Defendant Phillips has not demonstrated any inconvenience to it associated

16   with the Plaintiff's choice of forum.[2]   Phillips has not identified any of its relevant

17   witnesses, documents, facilities, or other evidence being located in Southern

18   California.

19       By contrast, Phillips has multiple offices and facilities in Wisconsin according

20   to its website. *Kramer Decl.* ¶ 28.  Phillips' multi-shot injection molding facility is

21   located in Eau Claire, Wisconsin (a printout of this information from Phillips'

22   website is attached as Exhibit J), is located within the jurisdiction of the Western

23   District of Wisconsin. *Kramer Decl.* ¶ 29.

24

25

26           [2] To the extent that Phillips seems to be arguing that Southern California would be

27   more convenient to Plaintiff Sorensen, that cannot form a basis for transfer.  Plaintiff has
     already evaluated the convenience of its chosen forum and factored that into its choice of

28   forum.  Phillips has no standing to second-guess Sorensen's convenience.

The Western District of Wisconsin is becoming known within intellectual property legal circles as a patent-holder friendly rocket docket (i.e. jurors a predisposed favorably to patent holders, and cases progress to trial quickly). *Kramer Decl.* ¶ 30. Phillips reluctance to ask for transfer to its home district would seem to be a most flagrant case of forum shopping, and running from the Western District of Wisconsin's reputation as a plaintiff friendly forum.

All three of the declarations offered in support of this motion are from residents of Wisconsin. According to Mr. Conlin and Mr. Johnson, the Craftsman tape measures were manufactured in Wisconsin, delivered to companies in North and South Carolina, and then presumably sold throughout the country. *Conlin Decl.* ¶ 3; *Johnson Decl.* ¶ 1. Such a description does nothing to establish "convenience" in Southern California.

Having already made it clear that Phillips does not consider any non-Black & Decker products as part of the same lawsuit as Black & Decker products, the only *convenience* to Phillips in transferring this case to Southern California would be the apparent high likelihood that the case would then be stayed.

The Northern District of California is conveniently close to San Diego with numerous daily flights between San Diego and San Francisco. Further, San Francisco, being one of the major centers of commerce in the United States, is well served by various means of transportation. Several infringement suits regarding the '184 patent have been filed in the Northern District of California.

Phillips's reliance on the *Sorensen v. DaimlerChrysler* case is misplaced because the defendant therein, sought to transfer venue to the forum of its home offices. By contrast, Phillips seeks a transfer to a location even further from its Wisconsin home offices than the forum where it currently resides, a location where it has even less presence than the Northern District.

The Court in *Arete Power*, 2008 WL 508477, at *4, made the observation that plaintiff's choice of forum is given considerable weight, and especially if plaintiff's

1    choice is its home forum.    Though the *Arete* Court accorded somewhat less weight

2    to a plaintiff's choice of forum when the plaintiff did not reside there, the Court still

3    refused to strip plaintiff's choice of forum.

4          Plaintiff's choice of forum is entitled to considerable weight and, in light of

5    the absence of any demonstration that Northern California is any more inconvenient

6    to Defendant than Southern California, it should not be disturbed.

7

8          B.    Forum (and Judge) Shopping by Defendant Weighs Against Transfer

9          "The doctrine of *forum non conveniens* is a limited one and is not designed to

10   permit forum shopping by defendants." *Jenkins v. Cowen*, 1987 WL 14601, at * 3

11   (D.D.C. July 17, 1987) (citing *Pain v. United Technologies Corp.*, 637 F.2d 775, 783

12   (D.C. Cir. 1980).

13
              Courts should be mindful that, just as plaintiffs sometimes choose a
14            forum for forum-shopping reasons, **defendants also may move for**
              **dismissal under the doctrine of *forum non conveniens* not because of**
15            **genuine concern with convenience but because of similar forum-**
              **shopping reasons.**    District courts should therefore arm themselves
16            with an appropriate degree of skepticism in assessing whether the
17            defendant has demonstrated genuine inconvenience and a clear
              preferability of the foreign forum."
18

19
     *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 75 (2nd Cir. 2001); *see also*
20
     *Kansas Pub. Emp. Retirement Sys. v. Reimer & Koger Assocs., Inc.*, 61 F.3d 608,
21
22   6113 (1995) (Section 1404(a) "made forum shopping by defendants a more common

23   problem").

24            **The rationale for giving a plaintiff's choice of forum "substantial**
25            **weight"-as opposed to equal or little weight-**is that, unlike defendant
              forum shopping, plaintiff forum shopping is not an evil to be avoided,
26            but rather is an inherent part of our federal court network. A plaintiff
              may have available numerous places of equal convenience to bring his
27            or her suit, and has every right to file in the forum that is most
              geographically convenient or that has most favorable law. The fact that
28

Case No. 08-CV-3094 MHP

> the plaintiffs have some flexibility to shop for law or location encourages them to use the judicial system for their disputes. Having chosen a forum, a plaintiff would lose any advantage if the defendant were able-by scarcely overcoming the plaintiff's choice-to pull the well-placed procedural rug from under the plaintiff's feet.

*Sun Pharmaceutical Indus., Ltd. v. Eli Lilly & Co.*, 2008 WL 1902111, at \*4 (E.D. Mich. Apr. 30, 2008) (quoting *United States v. Cinemark USA, Inc.*, 66 F. Supp.2d 881, 889 (N.D.Ohio 1999) (emphasis added).

 "[P]ublic–interest considerations that weigh against a transfer include the possibility that the defendants are forum shopping."  *Greater Yellowstone Coalition v. Bosworth*, 180 F.Supp.2d 124, 129 (D.D.C. 2001).

"[T]he defendants' request to transfer this case to a specific judge is suspect.... The plausible possibility that the defendants are using Section 1404(a) as a means of forum shopping weighs against granting the defendants' motion." *Greater Yellowstone Coalition*, 180 F.Supp.2d at 129.  "[Section] 1404(a) should not create or multiply opportunities for forum shopping." *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990).   "No party has a vested right to have his cause tried by one judge rather than by another of equal jurisdiction.  Certainly, the defendant cannot be heard to complain that the suit has been brought in the district of its domicile rather than in the district where the plaintiff is located." *Crosely Corp. v. Hazeltine Corp.,* 122 F.2d 925, 930 (3rd Cir. 1941).

Defendant Phillips is engaging in improper forum shopping for the purposes of choosing a particular judge and obtaining maximum delay of resolution of the disputes between the parties.

On April 19, 2007, Phillips filed a counterclaim for declaratory relief against Sorensen in Southern California (Black & Decker case, Docket #85), yet asserted that it considered the case limited to only Black & Decker products, and refused discovery as to any other products.  As that case approached a claim construction hearing, Black & Decker and Phillips each filed reexamination requests and obtained

1   a stay.   Phillips' own law firm is intimately aware of the fact that *ex parte*

2   reexaminations can stretch out for many years, and thus use of a reexamination

3   request as a basis for stay of litigation is a loophole now used by many accused

4   infringers to obtain long delays in patent cases.

5           Phillips has affirmatively acquiesced to the jurisdiction and forum propriety of

6   the Northern District by filing a counterclaim in this court.   Despite this

7   acknowledgement of proper venue, Phillips seeks the optimum chance of more

8   delay, a transfer to Southern California where Phillips anticipates that the Court that

9   has stayed all '184 patent cases in that district will also stay this one.

10          Phillips's principal place of business is Wisconsin, not the Southern District of

11  California.   Yet Phillips does not ask that this case be transferred to Wisconsin,

12  where the majority of Phillips manufacturing facilities and employees reside.   Why?

13  Because Phillips' home forum, the Western District of Wisconsin, has already earned

14  a reputation as a new plaintiff friendly "Rocket Docket" for patent litigation. *See*

15  *Kramer Decl.* ¶ 16.

16          Transferring this case to the Southern District of California will not facilitate

17  the interests of justice in a speedy trial.   Rather, Phillips believes that a transfer of

18  venue to Judge Moskowitz will ensure a stay, providing the delay that it seeks.

19          Three different judges in different districts have ruled on motions to stay

20  infringement litigation on the '184 patent pending reexamination.   Judge Ware in

21  San Jose denied a stay request in the '184 patent case before him.   Judge Moskowitz

22  in San Diego has granted stays on '184 patent infringement cases, as did Judge

23  White in San Francisco.   Phillips vigorously opposed an administrative finding that

24  this case was related to Judge Ware's case (the one that is actually progressing to

25  resolution), but eagerly seeks transfer to Judge Moskowitz.

26          Because it is clear that Defendant is not only forum shopping, and judge

27  shopping, the request for transfer should be denied.

28

Case No. 08-CV-3094 MHP

## II.    PHILLIPS SEEKS TRANSFER TO A CONVENIENT JUDGE, NOT A CONVENIENT FORUM.

"The purpose of § 1404(a) is not to allow judge-shopping by litigants." *Williams Advanced Materials, Inc. v. Target Technology Company, LLC,* 2007 WL 2245886 (W.D.N.Y.); *Betts v. Atwood Equity Cooperative Exchange, Inc.*, 1990 WL 92495 (D.Kan. 1990).  In the *Williams Advanced* case, the court went on to say

> While the motion is being made under the pretense that it is more convenient for the moving parties, the true motivation behind it is "judge-shopping." This is clear the from the fact that California is *not* more convenient for [the moving parties], yet all of them have joined in the motion to transfer citing convenience as the motivation.

*Williams Advanced*, at 6.

Judge shopping clearly constitutes "conduct which abuses the judicial process."  *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998).

"[A] court faced with judge-shopping has the authority to act to preserve the integrity and control of its docket. *See Span-Eng Assocs. v. Weidner,* 771 F.2d 464, 470 (10th Cir.1985). Moreover, '[i]t is particularly important for a district utilizing a random selection process to jealously guard the integrity of the system from potential abuse which attempts to circumvent the process.' *Murray v. Sevier,* 1992 WL 75212 (D.Kan. 1992), (*citing Knox v. McGinnis,* 1990 WL 103277, *1 (N.D.Ill. 1990)). By engaging in judge-shopping, parties contravene the very purpose of random assignment, which is to 'prevent judge-shopping by any party, thereby enhancing public confidence in the assignment process.' *United States v. Mavroules,* 798 F.Supp. 61 (D.Mass.1992)."

Phillips has acknowledged in its moving papers that it knows that Judge Moskowitz is handling all '184 patent cases in the Southern District, and knows that Judge Moskowitz has expressed an intention to stay all '184 patent cases until he decides to lift stay in all such cases, and has gone so far as to *sua sponte* issue OSC's why such cases should not be stayed in instances where the defendants did not

Case No. 08-CV-3094 MHP

1    immediately move for stay. In short, Phillips is requesting a transfer to the Southern

2    District that it knows will result in assignment to a specific judge that Phillips is

3    confident will immediately grant the stay Phillips seeks.  That is the most obvious

4    naked form of judge shopping.

5         Although Phillips accuses Sorensen of forum shopping, Sorensen has never

6    filed '184 patent cases in any Federal District court other than Northern and Southern

7    Districts of California.  Out of seven such cases since 2002, this is only the second

8    motion for transfer of the '184 patent case under § 1404.  In the other case, *Sorensen*

9    *v. DaimlerChrysler*, 2003 WL 1888866 (N.D.Cal., April 11, 2003), the defendants

10   requested transfer to the location of its home offices, not to a known judge whose

11   actions it could predict.  Phillips is requesting transfer to the district where it has no

12   office, no facilities, and no witnesses.

13

14   **III.  REEXAMINATION PROCEEDINGS OF THE '184 PATENT NEITHER MANDATE NOR JUSTIFY STAY OF THIS CASE.**

15        "A court is under no obligation to delay its own proceedings by yielding to

16   ongoing PTO patent reexaminations, regardless of their relevancy to infringement

17   claims which the court must analyze." *Fresenius Medical Care Holdings, Inc. v.*

18   *Baxter International, Inc.* 2007 WL 1655625 (N.D. Cal. 2007).

19        "There is no *per se* rule that patent cases should be stayed pending

20   reexaminations, because such a rule **'**would invite parties to unilaterally derail'

21   litigation."  *Soverain Software LLC v. Amazon.Com, Inc,* 356 F.Supp.2d 660, 662

22   (E.D.Tex.2005), quoted in *Fresenius, supra.*

23        When determining the appropriateness of a stay pending reexamination, courts

24   consider three factors: "(1) whether a stay would unduly prejudice or present a clear

25   tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the

26   issues in question and trial of the case; and (3) whether discovery is complete and

27   whether a trial date has been set.  *Ricoh Co. v. Aeroflex Inc.*, 2006 WL 3708069, at

28

1    *2 (N.D.Cal. Dec. 14, 2006) (quoting *ASCII Corp. v. STD Entertainment USA, Inc.*,

2    844 F. Supp. 1378, 1380 (N.D.Cal. 1994)); *see also Jain*, 2005 WL 2397041, at *1;

3    *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *2 (N.D.Cal. Mar. 16,

4    2006).  Consideration of these factors weighs heavily against stay.

6        A.    A stay would unduly prejudice and tactically disadvantage the
              nonmoving party – Plaintiff.

7        A stay would unduly prejudice and present a clear tactical disadvantage to the

8    nonmoving party – Plaintiff – because it is unlikely that the pending reexaminations

9    will conclude in a reasonable time and because Plaintiff is likely to lose evidence in

10   the interim.

11       Although the USPTO publishes statistics that the typical length of an *ex parte*

12   reexamination is 24.3 months, such statistics are not an accurate prediction of the

13   length of first reexaminations filed in recent years.

14       Well-known intellectual property attorney and law professor, Harold Wegner,

15   (a partner at Foley & Lardner, attorneys for defendants herein), has been reported in

16   the San Diego Intellectual Property Lawyers Association journal as stating that

17   "today the average ex parte reexamination takes about 5 years (vs. the PTO's claim

18   that it takes 2 years).  If an appeal to the CAFC is involved, that extends the period to

19   7.7 years." *Kramer Decl.* ¶ 27.

20       There is an additional bias in both the USPTO's averages, in that it excludes

21   consideration of the large fraction of reexaminations (approximately one quarter)

22   that are not yet concluded, which implicitly includes those that take the longest to

23   complete.  *Kramer Decl.* ¶ 21.

24       As of July 30, 2008, the reexamination has already been ongoing for one full

25   year from its filing ***and the USPTO has not yet issued even a First Office Action,***

26   the first substantive action by the USPTO after granting a request for reexamination.

27   *Kramer Decl.* ¶¶ 25, 32.  As described in the Factual Summary, the issuance of a

1    First Office Action is followed by rounds of actions and responses by the patent

2    holder, followed by the ability to appeal to the Board of Patent Appeals, and then

3    appeal to the Federal Circuit Court of Appeals.  All of these actions run their course

4    before the issuance of a reexamination certificate.

5        With the current typical delay to complete reexaminations read together with

6    the fact that the '184 patent reexamination having already passed one year with no

7    action taken by the USPTO, it seems exceedingly unlikely that this reexamination

8    can be completed within any reasonable time.

9

10        **B.**    <u>A stay would not simplify the issues in question or trial</u>.

11        A stay would not simplify the issues in question or trial of this case for several

12    reasons.  First, collateral estoppel does not attach to Phillips; Phillips can re-raise

13    every issue from the reexamination before this Court.  Second, a number of validity

14    challenges that Phillips has raised will not be addressed by the USPTO under any

15    circumstances, specifically, the USPTO will only consider published prior art, and

16    Phillips has asserted physical products on sale as prior art.  Third, Phillips and its co-

17    defendants in the Black & Decker case have already demonstrated the tactical use of

18    reexamination requests to delay litigation.  Although both companies knew about the

19    patent and Plaintiff for over a decade, they waited until extensive litigation and just

20    before expiration of the patent to file two reexamination requests, staggered by five

21    months, to maximize delay.

22        Two reexaminations are currently pending, and there is no legal prohibition to

23    additional ones being filed.  "Any person at any time may file a request for

24    reexamination by the [USPTO] of any claim of a patent on the basis of any prior art

25    cited under the provisions of section 301 of this title." 35 U.S.C. § 302.  If a second

26    *ex parte* reexamination is ordered while a prior *ex parte* reexamination proceeding is

27    pending, the two reexaminations may be merged.  *See* MPEP 2283(c) (37 CFR

28    1.565).

C.      The USPTO's Grant Of A Request For Reexamination Is Not Probative Of Unpatentability, Nor Does It Establish Any Likelihood Of Patent Invalidity.

[T]he grant by the examiner of a request for reexamination is not probative of unpatentability. The grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met (*i.e.,* that a "substantial new question of patentability" has been raised, 35 U.S.C. § 303), does not establish a likelihood of patent invalidity.[FN2] *See Acoustical Design, Inc. v. Control Elecs. Co.,* 932 F.2d 939, 942, 18 USPQ2d 1707, 1710 (Fed.Cir.) ("initial rejection by the Patent and Trademark Office of original claims that later were confirmed on reexamination hardly justifies a good faith belief in the invalidity of the claims"), *cert. denied,* 502 U.S. 863, 112 S.Ct. 185, 116 L.Ed.2d 146 (1991).

> FN2. The Annual Report of the Patent and Trademark Office for 1994 states that 89% of the reexamination requests were granted that year, but only 5.6% of the reexamined patents were completely rejected with no claims remaining after reexamination.

*Hoechst Celanese Corp. v. BP Chemical Ltd.*, 78 F.3d 1575 (C.A.Fed. Tex. 1996).

It is very easy to get the USPTO to reexamine a patent.  The USPTO's "*Ex Parte* Reexamination Filing Data – June 30, 2008" report reveals that currently 92% of *ex parte* reexamination requests are granted, while only 11% of reexaminations result in cancellation of all claims. Instead, with the acceptance rate of ex parte reexaminations having now climbed to 92%, little is required beyond properly filling out the paperwork, and citing to at least one piece of prior art that was not referenced in the file wrapper.  *Kramer Decl.* ¶ 20, Exhibit E.

On April 30, 2008, a request to stay another '184 patent litigation was denied as follows:

> While the '184 Patent is in reexamination, the examiner at the PTO has not as of yet cancelled any claims or issued a final office action.

1
2
3
4
5

> [cite omitted]  A reexamination may take up to several years to run its course. [cite omitted].   As of the 2007 (*sic*), the PTO determined that the average pendency of an *ex parte* reexamination is two years. (*Id.*) Appeals create potential for the process to take even longer. In that time, the Court could make substantial progress in interpreting the patent at issue and otherwise moving the action toward resolution.

6
7

*Sorensen v. Lexar Media, Inc.*, Case No. 08CV00095, (N.D.Cal, April 30, 2008), Docket #27, p. 2:5-13.

8
9

Other courts have refused to stay litigation based upon unfounded speculation that the patent would soon be invalidated.

10
11
12
13

> [A]ny attempt at suggesting a likely time frame and outcome of the PTO reexamination process is merely speculation. This Court cannot and will not grant [the requesting party] the extraordinary remedy of delaying these proceedings any further than they already have been based on conjecture.

14
15
16
17
18
19
20

*NTP, Inc. v. Research in Motion, Ltd.,* 397 F.Supp.2d 785, 787 (E.D.Va.2005) (emphasis added).  See also *Blackboard, Inc. v. Desire2Learn, Inc.* Civil Action No. 9:06-CV-155 (E.D. Texas, 2008) which recently proceeded to a plaintiff's verdict despite e*x parte* and *inter partes* reexaminations that had been ordered 13 months previous in which no office actions had yet been issued.  Other cases have reaffirmed that district courts are not obligated to issue stays, including *MercExchange, L.L.C. v. eBay, Inc.*, 500 F.Supp.2d 556, 562, 83 U.S.P.Q.2d 1688 (E.D.Va. Jul 27, 2007).

21
22
23
24

Substantial progress can and should be made in this case as well during the pendency of the '184 reexaminations.  Nothing is before the Court that impairs the validity or enforceability of the '184 patent.   Stay of this case would thus be inappropriate.

25

**CONCLUSION**

26
27
28

Defendant Phillips is not making a good faith attempt to have the action transferred to a venue where it is more convenient, close to witnesses, or otherwise comes within the proper range of section 1404(a).  Rather, Phillips seeks only to

18.

1  obtain a stay of the litigation, either by judge shopping to a Court with a known

2  proclivity for staying '184 patent cases, or in the alternative, asking this Court to stay

3  the action.

4  The obvious judge shopping of Phillips to a district, which is not where

5  Phillips's offices are located is sufficient reason to deny the request for transfer.

6  Further, no sound basis has been provided to this Court for the grant of the

7  alternative relief sought of staying the present action. The USPTO's reexamination

8  is unlikely to be completed within any reasonable time frame, the delay will cause

9  fading of memories and other loss of evidence, and Defendant will not even be

10  bound by an adverse ruling in the USPTO. Thus, this motion should be denied as to

11  each form of relief sought as the present venue is proper and convenient, and

12  jurisdiction is acknowledged by all parties.

13  However, if the Court for some reason determines that a transfer is

14  appropriate, the only rational location to transfer this matter under section 1404(a) is

15  to moving party's home district, the Western District of Wisconsin.

16

17  RESPECTFULLY SUBMITTED this Monday, August 18, 2008.

18

19  JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND DEVELOPMENT

20  TRUST, Plaintiff

21  /s/ J. Michael Kaler

22

23  J. Michael Kaler, Esq.
Melody A. Kramer, Esq.

24  Attorneys for Plaintiff

25

26

27

28

19.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# PROOF OF SERVICE

I, J. Michael Kaler, declare:  I am and was at the time of this service working within in the County of San Diego, California.  I am over the age of 18 year and not a party to the within action. My business address is the Kaler Law Offices, 9930 Mesa Rim Road, Suite 200, San Diego, California, 92121.

On Monday, August 18, 2008, I served the following documents:

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR TO STAY PENDING PATENT OFFICE REEXAMINATION

DECLARATION OF MELODY A. KRAMER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR TO STAY PENDING PATENT OFFICE REEXAMINATION

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Robert L. Binder<br>Foley & Lardner LLP<br>777 East Wisconsin Avenue<br>Milwaukee, WI 53202<br>414/297-4900 FAX<br>rbinder@foley.com | Phillips Plastics Corp. | Email - Pleadings Filed with the Court via ECF |
| Nancy J. Geenen<br>Kimberley K. Dodd<br>Foley & Lardner LLP<br>One Maritime Plaza, Sixth Floor<br>San Francisco, CA  94111-3404<br>ngeenen@foley.com<br>kdodd@foley.com | Phillips Plastics Corp. | Email - Pleadings Filed with the Court via ECF |

☐  (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐  (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.

☐  (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees.  The facsimile transmissions were reported as complete and without error.

☐

Case No. 08-CV-3094 MHP

1    (Email) I emailed a true copy of the foregoing documents to an email address represented to be the
2    correct email address for the above noted addressee.

3    [X] (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed
        this document via the CM/ECF system for the United States District Court for the
4        Southern District of California.

5    [ ] (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address
        represented to be the correct mail address for the above noted addressee.
6

7        I declare that the foregoing is true and correct, and that this declaration was executed on

8    Monday, August 18, 2008, in San Diego, California.

9

10                                                    /s/ J. Michael Kaler

11                                                    J. Michael Kaler

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   J. MICHAEL KALER, SBN 158296
2   KALER LAW OFFICES
3   9930 Mesa Rim Road, Suite 200
    San Diego, California 92121
4   Telephone (858) 362-3151
    michael@kalerlaw.com
5
6   MELODY A. KRAMER, SBN 169984
    KRAMER LAW OFFICE, INC.
7   9930 Mesa Rim Road, Suite 1600
    San Diego, California 92121
8   Telephone (858) 362-3150
9   mak@kramerlawip.com

10  Attorneys for Plaintiff JENS ERIK SORENSEN,
    as Trustee of SORENSEN RESEARCH AND
11  DEVELOPMENT TRUST

12

13              UNITED STATES DISTRICT COURT

14         FOR THE NORTHERN DISTRICT OF CALIFORNIA

15              SAN FRANCISCO DIVISION

16

17  JENS ERIK SORENSEN, as Trustee of      ) Case No. 08-CV-3094 MHP
    SORENSEN RESEARCH AND                   )
18  DEVELOPMENT TRUST,                      )
                                            ) **DECLARATION OF MELODY A.**
19                                          ) **KRAMER IN SUPPORT OF**
                                            ) **PLAINTIFF'S OPPOSITION TO**
20                      Plaintiff            ) **DEFENDANT'S MOTION TO**
                                            ) **TRANSFER UNDER 28 U.S.C. §**
21       v.                                 ) **1404(a) OR TO STAY PENDING**
22  PHILLIPS PLASTICS CORPORATION, )        **PATENT OFFICE**
    a Wisconsin Corporation; and DOES 1 –  ) **REEXAMINATION**
23  100,                                    )
                                            )
24                      Defendants.         ) Judge:  Hon. Marilyn H. Patel
25                                          ) Courtroom 15, 18th Floor
                                            ) Date:  September 8, 2008
26                                          ) Time:  2:00 p.m.
27  _____ )

28

1    I, MELODY A. KRAMER, declare:

2    1.    I am not a party to the present action.  I am over the age of eighteen.  I

3    have personal knowledge of the facts contained within the following paragraphs, and

4    could and would competently testify thereto if called as a witness in a court of law.

5    2.    At all times relevant herein I have been an attorney for Defendant

6    Sorensen Research and Development Trust ("SRDT"), Plaintiff in the above-

7    captioned matter.

8    3.    This Declaration is being submitted in conjunction with Plaintiff's

9    Opposition to Defendant's Motion To Transfer Under 28 U.S.C. § 1404(A) Or To

10   Stay Pending Patent Office Reexamination.

11   4.  Phillips Plastics Corporation ("Phillips") was added as a co-defendant in a

12   patent infringement case by Sorensen against Black & Decker Corporation and

13   certain of its subsidiaries ("Black & Decker case") in the Southern District of

14   California (*Sorensen v. Black & Decker, et al*, Case No. 06CV1572 BTM (CAB)).

15   5.    Black & Decker and Phillips have a joint defense agreement relating to

16   that case.

17   6.    In the Black & Decker case, Phillips asserted and insisted that the Black

18   & Decker case cannot involve any non-Black & Decker products that Phillips may

19   have manufactured, and refused to produce any discovery related to production of

20   non-Black & Decker products.  See Complaint (Docket #1, ¶ 12) and corresponding

21   Answer (Docket #10, ¶ 12).

22   7.    Acknowledging Phillips' insistence on a separate lawsuit for the non-

23   Black & Decker products, this suit was filed.

24   8.    Judge Moskowitz, the presiding judge in the Black & Decker case, has

25   not conducted any proceedings that require construction of the '184 patent.  The only

26   proceedings before Judge Moskowitz thus far have been procedural and discovery

27   issues.  No claim construction hearing has been conducted, and none is presently

28   scheduled.  In short, nothing relating to Phillips is happening in San Diego.

9. This suit was filed in Northern California because it was one of several districts that had both a basis for jurisdiction and venue.

10. The venue is convenient to Plaintiff because it is a short plane ride from San Diego, and Plaintiff has several other lawsuits pending in Northern California on the same patent.

11. Phillips has an actual office in Sunnyvale, California, located within the San Jose Division of the Northern District where this case was filed. The address reference from Phillips's website, Google map, and Google street view, of the address are attached as Exhibit A.

12. In the last year, Plaintiff has filed five infringement cases on the '184 patent in the Northern District, each based upon the existence of a defendant's office being located within the district. This case is no different.

13. Phillips apparently has no offices, witnesses, documents, or evidence located in San Diego. A single representative name and address shows up on the Phillips website as a contact person in San Diego, however the address is a residence. The address reference from Phillips's website, Google map, and Google street view, of the address are attached as Exhibit B.

14. Phillips has multiple offices and facilities in Wisconsin according to its website, including its corporate headquarters and most of its manufacturing facilities.

15. Phillips' multi-shot injection molding facility (which is directly relevant to this case) is located in Eau Claire, Wisconsin (a printout of this information from Phillips's website is attached as Exhibit C), is located within the jurisdiction of the Western District of Wisconsin.

16. The Western District of Wisconsin is reputed within intellectual property legal circles as a patent-holder friendly rocket docket (i.e. jurors are predisposed favorably to patent holders, and cases progress to trial quickly). Copies of recent articles commenting on this reputation are attached hereto as Exhibit D.

2.

17.    U.S. Patent No. 4,935,184 was issued by the United States Patent and Trademark Office ("USPTO") on June 19, 1990 after 28 months of running the gauntlet of the vetting process set forth by U.S. patent laws.   No requests for reexamination of the patent were made with the USPTO for almost 20 years while the patent holder was issuing licenses to use the patented technology.

18.    Only when Plaintiff filed a $1.44 billion lawsuit to enforce its '184 patent rights against infringement by Black & Decker and subsequently added some of Black & Decker's suppliers, including Phillips, did those defendants file requests for reexamination of the patent.  Even those requests were not filed until after a year of litigation and a claim construction hearing was then imminent.

19.    *Ex parte* reexamination requests to the USPTO are a procedure whereby anyone, even anonymously, can assert that there are problems with a patent.  Matters that can be raised via this procedure are limited to patents and other published prior art, and do not cover all types of validity challenges that can be made by an alleged infringer in an infringement lawsuit.

20.    According to the USPTO's most recent report, 92% of all reexamination requests are granted.  However, only 11% of such requests result in cancellation of all claims in a patent.  The June 2008 USPTO Report is attached hereto as Exhibit E.

21.    Those percentages are systematically biased due, in part, to the huge volume of uncompleted *ex parte* reexaminations.   The *ex parte* reexamination process has been available since 1981 (27 years), yet approximately 25% of all such reexaminations are still undetermined.   The USPTO calculations exclude consideration of the large fraction of reexaminations that are not yet concluded, which implicitly includes those that take the longest to complete

22.    A closer look at the data shows that since 1981, the USPTO has granted 8329 requests (Exhibit E, item 5.a.), but only 678 reexaminations have resulted in cancellation of all claims (item no. 9.b.), which equals only eight percent (8%) of all granted reexaminations.

Case No. 08-CV-3094 MHP

23.    A reference copy of MPEP § 2240 is attached hereto as Exhibit F.

24.    A reference copy of MPEP § 2242 is attached hereto as Exhibit G.

25.    The process of an *ex parte* reexamination through issuance of a certification (marking completion of the process) has no overall time limitation.  The only deadlines within the process are as follows:

   a.    From the filing of the request, the USPTO has three months to determine whether it will grant or deny the request for reexamination. 35 U.S.C. § 303.

   b.    From the issuance of an order granting a request for reexamination, the patent holder has two months for file an (optional) Patent Owner Statement.  35 U.S.C. § 304.

   c.    If a Patent Owner Statement is filed, the original requestor has two months to file a Requestor Reply.  37 CFR 1.535.

At this point in the process, the reexamination request is turned over to a patent examiner for issuance of a First Office Action.  There is no deadline for this to happen.  After the issuance of a First Office Action, the patent holder has 2 months to respond.  *MPEP* 2263 (a reference copy of MPEP § 2263 is attached hereto as Exhibit F).  There may be additional rounds of exchange between office actions and patent holder responses.  After an eventual Notice of Final Action is issued, the patentee can appeal any adverse decision to the Board of Patent Appeals ("BPAI"), and can appeal an adverse ruling from the BPAI to the Federal Circuit Court of Appeals.  The entire process can often take many years.

26.    Although the USPTO claims the average pendency of *ex parte* reexaminations to be 24.3 months (see Exhibit E, item no. 7.a.), there is substantial evidence to the contrary.

27.    Harold Wegner, well-known law professor and partner at Foley & Lardner (counsel for Defendant Phillips) has been an outspoken critic of the USPTO's claims as to the average length of patent reexaminations. He has been

4.

1   reported in the San Diego Intellectual Property Lawyers Association journal as

2   stating that "today the average ex parte reexamination takes about 5 years (vs. the

3   PTO's claim that it takes 2 years).  If an appeal to the CAFC is involved, that extends

4   the period to 7.7 years."  A true and correct copy of the SDIPLA journal relevant

5   pages is attached as Exhibit I.

6        28.    More recently, Professor Wegner published a withering email letter to

7   intellectual property colleagues directly challenging the PTO's pendency claims

8   again, pointing to research showing average pendency of 7.7 years, and also loss of

9   commercial criticality within three years.  A true and correct copy of the relevant

10  portions of this email is attached hereto as Exhibit J.

11       29.    SRDT has conducted its own research and found over 90 completed

12  reexaminations that took in excess of seven years to complete.  Further, SRDT found

13  many other reexaminations for which no certificate has yet issued after many years

14  in the reexamination process.    Exhibit K attached hereto is a non-comprehensive list

15  of these reexaminations.

16       30.    Black & Decker filed the first ever *ex parte* request for reexamination of

17  the '184 patent on July 30, 2007 and immediately thereafter filed a motion for stay

18  on the basis of the request.  At the time of filing, Black & Decker was facing a claim

19  construction hearing in November, and had also suffered an adverse discovery ruling

20  ordering Black & Decker to turn over work product documents from its prior in-

21  house counsel, Mr. Dearing (Docket #177, ¶ 8, hearing on July 26, 2007).  Stay was

22  granted.

23       31.    Five months later, Phillips filed a second *ex parte* request for

24  reexamination of the '184 patent on December 21, 2007.

25       32.    Plaintiff has complied with its filing requirements with the USPTO in

26  the reexaminations, however, no First Office Action has yet issued on either

27  reexamination request.  More than a year has passed since the first filing.

28       33.    A reference copy of MPEP 2283(c) is attached hereto as Exhibit L.

34.    A reference copy of the order denying stay in *Sorensen v. Lexar Media, Inc.*, Case No. 08CV00095, (N.D.Cal, April 30, 2008) is attached hereto as Exhibit M.

I declare under penalty of perjury under the laws of the United States of America that the foregoing paragraphs are true and correct to the best of my own personal knowledge.

DATED this Monday, August 18, 2008.

/s/ Melody A. Kramer
Melody A. Kramer, Esq.

# EXHIBIT A



Total Solutions From Design Through Distribution

**Home      Capabilities      Markets      Corporate Overview      Case Studies      Careers      Contact      RFQ      Search:**

Contact:
For more information about Phillips services please complete the email form below. If you would like to contact Phillips by telephone or U.S. mail, please use the following information:

**Opportunity Development**
**1201 Hanley Road**
**Hudson, Wisconsin 54016**
**877.508.0252**
**715.381.3291 fax**
Send e-mail
Submit a Request
The fields marked with (*) are required. All other fields are optional.

| | |
|---|---|
| How did you hear about us?* | Choose |
| If Other, Specify | |
| Name (First)* | |
| M.I. | |
| Name (Last)* | |
| Title | |
| Company Name | |
| Address* | |
| Address 2 | |
| City* | |
| State/Providence* | Choose |
| Postal Code* | |
| Country | Choose |
| Phone* | |
| Extention | |
| Email | |
| Number of Employees | Choose |
| Market Segment | Choose |
| What do you manufacture? | |

☐ Phillips Design Through Distribution Guide

☐ Phillips Plastics Company Overview

To receive the corresponding design guide/market specific literature piece, check the appropriate box (es).

☐ Automotive Market Piece

☐ Consumer Market Piece

☐ Defense Market Piece

☐ Medical Market Piece

**Corporate Locations**

Below are the Phillips Plastics corporate and manufacturing locations

Choose a Facility

**Design Development Center – Hudson**
1201 Hanley Road
Hudson, WI 54016
p 715.386.4320
f 715.386.4326

Located 28.5 miles from the Minneapolis/St. Paul airport, Design Development Center – Hudson is approximately two miles south of Interstate Highway 94.

Click here to download a PDF map for this location.

**Design Development Center – Sunnyvale**
574 Weddell Drive
Suite 5
Sunnyvale, CA 94089-2111
p 408.548.4100
f 408.548.4119

Located approximately five miles from the San Jose International Airport, Design Development Center – Sunnyvale is just off Highway 101.

Click here to download a PDF map for this location.

**Facility Info**

Below are the Phillips Plastics representatives serving your area.

Choose a state

Exhibit A - 1



Address **574 E Weddell Dr**
**Sunnyvale, CA 94089**





Exhibit A - 2



Address **574 E Weddell Dr**
**Sunnyvale, CA 94089**





Exhibit A - 3

# EXHIBIT B



Total Solutions From Design Through Distribution

**Home**    **Capabilities**    **Markets**    **Corporate Overview**    **Case Studies**    **Careers**    **Contact**    **RFQ**    **Search:**

Contact:

For more information about Phillips services please complete the email form below. If you would like to contact Phillips by telephone or U.S. mail, please use the following information:

**Opportunity Development**
**1201 Hanley Road**
**Hudson, Wisconsin 54016**
**877.508.0252**
**715.381.3291 fax**
Send e-mail

Submit a Request
The fields marked with (*) are required. All other fields are optional.

How did you hear about us?*    Choose

If Other, Specify

Name (First)*

M.I.

Name (Last)*

Title

Company Name

Address*

Address 2

City*

State/Providence*    Choose

Postal Code*

Country    Choose

Phone*

Extention

Email

Number of Employees    Choose

Market Segment    Choose

What do you manufacture?

To receive the corresponding design guide/market specific literature piece, check the appropriate box (es).

☐ Phillips Design Through Distribution Guide
☐ Phillips Plastics Company Overview
☐ Automotive Market Piece
☐ Consumer Market Piece
☐ Defense Market Piece
☐ Medical Market Piece

**Corporate Locations**

Below are the Phillips Plastics corporate and manufacturing locations

Choose a Facility

**Facility Info**

Below are the Phillips Plastics representatives serving your area.

Choose a state

**California**

**Dennis Ackmann**
**(Central and Southern Region - CA)**
630-D Ivywood Lane
Simi Valley, CA 93065
p. 805.577.0135
f. 805.577.0136

**Milt Halsted**
**(Orange County – CA, Riverside County – CA, San Bernardino County – CA, San Diego County – Medical Markets)**
27203 Paseo Lomita
San Juan Capistrano, CA 92675
p. 949.493.1446
f. 949.496.8826

**Jon Kern**
**(San Diego County - CA, Imperial County - CA, , Riverside County – CA, San Bernardino County – CA, Baja Peninsula – Mexico, Medical Markets Only)**

2854 Dove Street
San Diego, CA 92103
p. 619.291.8914
f. 619.291.8972

**Randy Kirkham**
**(Northern Region - CA)**
15548 Lake Vera Road
Nevada City, CA 95959
p. 530.470.8810
f. 530.470.8809

**Zach Hayman**
**(Northern Region - CA)**
406 University Street
Healdsburg, CA 95448
p. 707.433.4132
f. 707.433.4513

Exhibit B - 1

Address **2854 Dove St**
**San Diego, CA 92103**



©2008 Google - Map data ©2008 NAVTEQ™ - Terms of Use

Exhibit B - 2



Address **2854 Dove St**
**San Diego, CA 92103**





© 2008 Google

Exhibit B - 3

# EXHIBIT C



Total Solutions From Design Through Distribution

Home     Capabilities     Markets     Corporate Overview     Case Studies     Careers     Contact     RFQ     Search:

**Contact:**

For more information about Phillips services please complete the email form below. If you would like to contact Phillips by telephone or U.S. mail, please use the following information:

**Opportunity Development**
**1201 Hanley Road**
**Hudson, Wisconsin 54016**
**877.508.0252**
**715.381.3291 fax**
Send e-mail
Submit a Request
The fields marked with (*) are required. All other fields are optional.

| | |
|---|---|
| How did you hear about us?* | Choose |
| If Other, Specify | |
| Name (First)* | |
| M.I. | |
| Name (Last)* | |
| Title | |
| Company Name | |
| Address* | |
| Address 2 | |
| City* | |
| State/Providence* | Choose |
| Postal Code* | |
| Country | Choose |
| Phone* | |
| Extention | |
| Email | |
| Number of Employees | Choose |
| Market Segment | Choose |
| What do you manufacture? | |

To receive the corresponding design guide/market specific literature piece, check the appropriate box (es).

☐ Phillips Design Through Distribution Guide

☐ Phillips Plastics Company Overview

☐ Automotive Market Piece

☐ Consumer Market Piece

☐ Defense Market Piece

☐ Medical Market Piece

**Corporate Locations**

Below are the Phillips Plastics corporate and manufacturing locations

Choose a Facility

**Multi-Shot**
1233 International Drive
Eau Claire, WI 54701
p 715.831.3400
f 715.831.3490

Multi-Shot is approximately one mile north of Interstate Highway 94 on International Drive.

Click here to download a PDF map for this location.

**Facility Info**

Below are the Phillips Plastics representatives serving your area.

Choose a state

Exhibit C - 1

# EXHIBIT D

Law.com Home    Newswire    LawJobs    CLE Center    LawCatalog    Our Sites    Advertise



Search Top Stories: [         ] GO          Register for Legal Newswire | Legal Blogs | Newsletters | XML Feeds

## New Patent Rocket Docket Rises in Wisconsin

Sheri Qualters
The National Law Journal
March 21, 2008

Printer-friendly    Email this Article    Reprints & Permissions

Patent attorneys are hailing the Western District of Wisconsin as the nation's newest so-called rocket docket, characterized by speedy trials and a jury pool friendly to patent holders.

Patent case filings are climbing in the district based in Madison, including cases involving companies headquartered outside the area. Lawyers say they're attracted by the district's educated jury pool, which reflects the work force and populace connected to the University of Wisconsin and the thriving local high-technology sector.

Although lawyers say rulings on summary judgment motions are more common in the court than in other popular patent forums such as the eastern districts of Texas and Virginia, lawyers representing patent plaintiffs say they're not afraid to take their chances in the district when they've got a solid case.

As of March 14, 10 patent cases were filed in the district, compared with 50 in 2007, 25 in 2006, 20 in 2005 and 33 in 2004, according to clerk Theresa M. Owens.

Plaintiffs have a high win rate in the district, said Mike Modl, a partner at Madison's Axley Brynelson, whose work as local counsel for outside patent lawsuit filers has climbed steadily over the past five years.

Modl cited PricewaterhouseCoopers International Ltd.'s recent report on patent litigation, which placed the district seventh when it comes to trial success rates, with patent holders winning 66.7 percent of the time between 1995 and 2007. The study placed the district first for its summary judgment success rate, with patent holders prevailing in 36.4 percent of cases.

The study, which was based on case filing data in several databases, noted that the district's median time to trial of 0.91 years between 1995 to 2007 placed it second behind the Eastern District of Virginia, which had a median time of 0.88 years.

In the PricewaterhouseCoopers standings, Wisconsin's Western District ranked fifth for overall success rates for plaintiffs between 1995 and 2007.

"If you're a patent holder, the Western District [of Wisconsin] is a great place to be," Modl said.

Modl said he's been local counsel on nearly a dozen cases in the district during the past 12 months, which is more than he's handled in that capacity in any year. Modl is currently serving as local counsel in a patent infringement case filed by Canadian soap manufacturer DEB Worldwide Healthcare Inc., which claims that alcohol-based foaming hand sanitizer made by cleaning chemical company Betco Corp. in Toledo, Ohio, infringes on one of its patents. *DEB Worldwide Healthcare v. Betco Corp.*, No. 3:08-cv-00052 (W.D. Wis.).

DEB Worldwide's lead attorney on the case, Rick McCaulley Jr., an intellectual property litigation partner in Sidley Austin's Chicago office, said that "[s]peed was certainly one of the factors that weighed heavily in our decision." DEB Worldwide filed the case in January and a trial is scheduled for February 2009.

Betco's lawyers at Toledo intellectual property boutique Emch, Schaffer, Schaub & Porcello, who have asked the court to transfer the case to the Northern District of Ohio, declined to comment.

McCaulley noted that DEB Worldwide's ultimate parent company is in the United Kingdom, and that both companies do "significant business" in Wisconsin.

Foley & Lardner has made its clients aware of the district's speed and "encouraged them to file there," said Jeff Simmons, an intellectual property litigation partner in the firm's Madison office.

One of Foley's current patent infringement cases is for General Electric Co. and several subsidiaries, which sued miniature ultrasonic

### Top Stories From Law.com

**Legal Technology**
Remote Testimony Faces a New Hurdle

**In-House Counsel**
GC Enjoys Magical Work at Scholastic

**Small Firm Business**
Opposition Kills Self-Help Center for Pro Se Filers

— — — ADVERTISEMENT — — —



Ads by Google

## Hague Service Convention

Serve Int'l Defendants Fast. $350 32 years Experience 800-232-8854

www.hagueservice.net

imaging device maker SonoSite Inc. of Bothell, Wash., over its ultrasound systems. *General Electric Co. v. SonoSite Inc.*, No. 3:07-cv-00273 (W.D. Wis.).

The short trial cycle is attractive to general counsels, who are typically tied to corporate budgeting cycles, Simmons said.

"They can plan out expenses, get it all booked and out of the way in one year," Simmons said.

Although it offers speedy trials, Wisconsin's Western District is far more likely to rule on summary judgment motions than the Eastern District of Texas, which can be risky for plaintiffs, said Bruce W. Slayden II, an intellectual property partner in the Austin, Texas, office of Houston's Baker Botts.

Slayden is representing an inventor and the estate of a second inventor in a case against Flexible Foam Products Inc., a Spencerville, Ohio, company that manufactures open cell polyurethane foam, used in furniture cushions and other products. *Carson v. Flexible Foam Products Inc.*, No. 3:08-cv-00095 (W.D. Wis.).

Slayden's clients are based outside of Wisconsin, but Flexible Foam has a manufacturing plant within Wisconsin's Western District, so the venue is appropriate, he said. His clients want a speedy trial and the possibility of a summary judgment "didn't run us away" from Wisconsin, he said.

Time to trial and the risk of a summary judgment are competing concerns but a strong case tips the balance toward the district with a rapid docket, said Ron E. Shulman, an intellectual property litigation partner at Wilson Sonsini Goodrich & Rosati in Palo Alto, Calif.

"If you have a good case and the concern is getting to trial, not withstanding the high summary judgment rate you might choose Wisconsin," Shulman said.

Shulman is currently representing patent holders in two patent infringement cases filed in Wisconsin's Western District by two nonlocal companies in October. *Eppendorf A.G. v. Bio-Rad Laboratories Inc.*, No. 3:07-cv-00623; *SanDisk Corp. v. Phison Electronics Corp.*, No. 3:07-cv-00605 (W.D. Wis.).

Although the district is "historically very quick to trial," the court's future pace is uncertain because of an injury to Judge John C. Shabaz this year, said Shulman. The judge has been out since Feb. 1 for rotator cuff surgery. The court is awaiting a date for his return.

The district has two regular judges and a full-time magistrate judge, which is a judge appointed by a district court judge for an eight- or four-year term.

When he learned about Shabaz's injury, Shulman voluntarily dismissed a case he filed in January in order to refile it in another district. *Nuance Communications Inc. v. Abbyy Software House*, No. 3:08-cv-00042 (W.D. Wis.)

On March 11, Chief U.S. District Court Judge Barbara B. Crabb issued an order assigning 50 percent of all civil cases except for a few categories to the magistrate while Shabaz rehabilitates.

Simmons said any problem might be short-lived because Shabaz announced in October that he plans to take senior status, which involves a reduced workload, on or before January 2009. "If he stays on the bench and stays active [after that], it could make the court even faster," he said. "Then they'd have three judges."

Subscribe to The National Law Journal



About Incisive Media | About Law.com | Customer Support | Privacy Policy | Terms & Conditions

Copyright 2008 ALM Properties, Inc. All rights reserved.



Reproduction permitted for personal use only. For reprints and reprint permission, contact reprints@wistechnology.com.

IP LAW

# "Rocket docket" speeds patent infringement suits

**Gina Carter**
March 14, 2007

As Wisconsin develops a national reputation for its emerging biotech industry, it's also developing another reputation: as a high-speed launch pad for intellectual property (IP) lawsuits.

Intellectual property and science, particularly biotechnology, go hand-in-hand. In the highly competitive science and technology community, patents, copyrights, and trade secret protection are essential tools used to protect discoveries and innovation. The science surrounding stem cells is a classic example, where landmark patents are held by the Wisconsin Alumni Research Foundation, an early and experienced player in the biotech and IP arenas.

In Wisconsin, a combination of savvy jurists and a university community with a penchant for incubating biotech start ups has nurtured the federal court in Madison to become a nationally known "rocket docket" for IP litigation, complete with brand-name litigants. Names such as Apple Computer, Google, and Microsoft are commonplace in the U.S. District Court for the Western District of Wisconsin.

**Warp-speed justice**

How fast is fast? In the world of IP litigation, lawsuits generally take years. Lawsuits launched from Madison's rocket docket progress at light speed by comparison, often settling in a few months or going to trial within about a year.

The federal court in Madison, led by judges John Shabaz and Barbara Crabb, is a no-nonsense, do-business example of judicial efficiency. Trial conferences often start as early as 6:30 a.m. in Shabaz's courtroom and 7:30 a.m. in Crabb's. Participants who appear before either judge would do well to eat hearty breakfasts. Mornings are long, with lunch breaks often postponed, some as late as 2:30 p.m.

Never slaves to the 9 to 5 hours kept in some courts, Shabaz and Crabb abhor delays. Neither has a problem keeping attorneys - or jurors - until late into the night in the interest of judicial efficiency.

The accelerated pace of federal litigation in Madison frequently surprises defendants, who are under the gun to mount a catch-up defense from the moment a lawsuit is filed. Plaintiffs, on the other hand, have the built-in advantages of having as much time as needed to prepare their case before the court sets an aggressive schedule, as well as the advantage of surprise. Once a lawsuit is filed, the countdown to trial begins, a process that is far shorter in Madison than in other courts.

Nationally, patent infringement cases typically take two to three years. Patent cases filed in Madison have an average resolution time of six months, four days!

Trial dates in this court are firm. Discovery - an area often plagued by disputes and delays - must proceed quickly if the parties are to properly prepare for trial. Legal life on the rocket docket moves at warp speed, with few exceptions even for emergencies.

In one instance, a hearing continued while paramedics rushed to the courtroom to attend to a defendant who was suffering a mini-stroke. The judge later explained the proceedings continued because the conference was expected to last only 60 to 90 seconds, and the parties should not be "inconvenienced."

**Not really "homers"**

The court is also favorable to plaintiffs trying to enforce their patents. In a recent survey of federal IP cases, PricewaterhouseCoopers examined 2,300 cases in federal courts around the country, then confirmed what successful IP attorneys already know: the Western District of Wisconsin is most favorable to plaintiffs, who have an overall "win rate" of 63 percent, which soars to 91 percent in cases that proceed past summary judgment.

Nationwide, plaintiffs win only 35 percent overall and 61 percent after summary judgment, making i easy to see why plaintiffs appear to be flocking to Madison.

Among the most recent plaintiffs hoping the Western District will prove fertile ground: Silicon Graphics. The company recently filed suit against ATI Technologies, alleging the popular maker of computer graphics chips infringed a computer graphics patent SGI has been licensing to ATI's competitors.

SGI filed suit just days after coming out of Chapter 11 bankruptcy protection. The complaint seeks unspecified damages and a trial by jury.

Although the court may be favored by plaintiffs, not every plaintiff wins, even when the company is home-grown. A case must have merit. The court recently ruled two Google products (AdSense and AutoLink) do not infringe on patents held by Madison-based HyperPhrase Technologies, LLC. In a 25 page ruling, Judge Shabaz wrote the AutoLink software "performs a completely different function in different way to achieve a different result." He was less kind to the claims against AdSense, calling them "nonsense."

A similar suit brought by HyperPhrase against Microsoft relating to the Office XP software suite was dismissed by Judge Crabb in 2003. In a summary judgment ruling, the judge found there was no infringement because the Smart Tags in Office XP do not operate in the same way as inventions claimed by HyperPhrase.

Speed and toughness in the court is combined with deep judicial knowledge for the highly technical matters at hand, both scientific and legal. With 103 patent cases filed between 2000 and 2004 - not quite half the total number of IP cases filed in that period - both judges are experts on intellectual property, further speeding their efficiency.

The court is likely to continue attracting attention from innovative, IP-centric companies. As the volume of new science and technology grows exponentially, more IP challenges will occur, increasing the demand for more and faster litigation venues.

**Turtle dockets**

Two other federal courts, the Eastern Districts of Texas and Virginia, have similar reputations as fast-track jurisdictions, but even the three combined cannot provide a venue for all comers. The

remainder of the federal court system is woefully behind where docket speed is concerned, and would do well to look to the Western District of Wisconsin for lessons in efficiency.

For that matter, so might the rest of the judicial landscape, in matters both civil and criminal. The wheels of justice grind slowly in many courts, but not in Madison, as any observer of a patent suit ir the rocket docket well knows.

**Previous IP Law articles**

• Joe Goode and Jonathan Fritz: eBay decision changes balance of power in patent disputes

• Gina Carter: Intellectual Property: Are you an "infringer?"

• Gina Carter: IP infringement - avoiding liability for officers & directors

**Related articles**

• JT Packard exec resigns after settling copyright disputes

• Wisconsin judge dismisses patent suit vs. Google

• Deborah Wilcox: The press vs. Google: Copyright cases to watch

• Joe Boucher: Starting a tech business? Step 1 is minding the intellectual property

• With patents, Wisconsin court gaining reputation as a "rocket docket"

• Kristine Strodthoff: Who owns what invention in the workplace?

Gina Carter is the chair of the Intellectual Property Litigation practice at the Wisconsin law firm of Whyte Hirschboeck Dudeck and is resident in the firm's Madison office. She can be reached at gcarter@whdlaw.com.

The opinions expressed herein or statements made in the above column are solely those of the author, and do not necessarily reflect the views of Wisconsin Technology Network, LLC.

WTN accepts no legal liability or responsibility for any claims made or opinions expressed herein.

Comment Policy: WTN News accepts comments that are on-topic and do not contain advertisements, profanity or personal attacks. Comments represent the views of the individuals who post them and do not necessarily represent the views of WTN Media or our partners, advertisers, or sources.

WTN Media cannot accept liability for the content of comments posted here or verify their accuracy. If you believe this comment section is being abused, contact edit@wistechnology.com.

Contact Us   Privacy Policy   Terms & Conditions

© 2002-2008 WTN Media. All rights reserved. Server colocation and services provided by SupraNet Communications.

Disclaimer: Wisconsin Technology Network, LLC, and its agents used their best efforts in collecting and preparing the information published herein. However, Wisconsin Technology Network, LLC, does not assume, and hereby disclaims, any and all liability for any loss or damage caused by errors or omissions, whether such errors or omissions resulted from negligence, accident, or other causes.

Exhibit D - 6

**EXHIBIT E**



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

*Ex Parte* Reexamination Filing Data  -  June 30, 2008

1.  Total requests filed since start of *ex partes* reexam on 07/01/81 ................................ 9382[1]

|   |   |   |   |
|---|---|---|---|
| | a. | By patent owner | 3540 | 38% |
| | b. | By other member of public | 5677 | 60% |
| | c. | By order of Commissioner | 165 | 2% |

2.  Number of filings by discipline

|   |   |   |   |
|---|---|---|---|
| | a. | Chemical Operation | 2763 | 29% |
| | b. | Electrical Operation | 3173 | 34% |
| | c. | Mechanical Operation | 3296 | 35% |
| | d. | Design Patents | 150 | 2% |

3.  Annual  Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 511 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | 2007 | 633 |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | 2008 | 487 YTD |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4.  Number known to be in litigation…………..…..………......................2533….…..........27%

5.  Decisions on requests ...................................................................................................... 9080

    a.  No. granted………………………………………….….8329…..………….…...92%

        (1)  By examiner                8216
        (2)  By Director (on petition)   113

    b.  No. denied …………………………………………………….751……………..…8%

        (1)  By examiner       716
        (2)  Reexam vacated    35

---

[1]Of the requests received in FY 2008, 17 requests have not yet been accorded a filing date, and preprocessing of 13 requests was terminated for failure to comply with the requirements of 37 CFR 1.510.  See Clarification of Filing Date Requirements for *Ex Parte* and *Inter Partes* Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

6.   Total examiner denials (includes denials reserved by Director)………….........................829

    a.   Patent owner requester                      441      53%
    b.   Third party requester                       388      47%

7.   Overall reexamination pendency (Filing date to certificate issue date)

    a.   Average  pendency                  24.3 (mos.)
    b.   Median pendency                    18.9 (mos.)

8.   Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.   All claims confirmed | 23% | 28% | 12% | 25% |
| b.   All claims cancelled | 7% | 13% | 21% | 11% |
| c.   Claims changes | 70% | 59% | 67% | 64% |

9.   Total ex parte reexamination certificates issued (1981 – present) ……………………..6278

| | | |
|---|---|---|
| a.   Certificates with all claims confirmed | 1595 | 25% |
| b.   Certificates with all claims canceled | 678 | 11% |
| c.   Certificates with claims changes | 4005 | 64% |

10.   Reexam claim analysis – requester is patent owner or 3rd party; or Comm'r initiated.

    a.   Certificates – PATENT OWNER REQUESTER …………………………….....2667

| | | |
|---|---|---|
| (1)  All claims confirmed | 603 | 23% |
| (2)  All claims canceled | 204 | 7% |
| (3)  Claim changes | 1860 | 70% |

    b.   Certificates – 3rd PARTY REQUESTER …………………………………………..3464

| | | |
|---|---|---|
| (1)  All claims confirmed | 974 | 28% |
| (2)  All claims canceled | 443 | 13% |
| (3)  Claim changes | 2047 | 59% |

    c.   Certificates – COMM'R INITIATED REEXAM ……………….…………....147

| | | |
|---|---|---|
| (1)  All claims confirmed | 18 | 12% |
| (2)  All claims canceled | 31 | 21% |
| (3)  Claim changes | 98 | 67% |

**EXHIBIT F**



**United States Patent and Trademark Office**

**PATENTS**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | *e*Business | eBiz alerts | News | Help

**Patents** > **Search Collections** > **MPEP** > 2240 Decision on Request [R-5] - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

Go to **MPEP - Table of Contents**

**browse before**

# 2240 Decision on Request [R-5] - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

## 2240 Decision on Request [R-5]

### 35 U.S.C. 303 Determination of issue by Director.

(a) Within three months following the filing of a request for reexamination under the provisions of **section 302** of this title, the Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications. On his own initiative, and any time, the Director may determine whether a substantial new question of patentability is raised by patents and publications discovered by him or cited under the provisions of **section 301** of this title. The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.

(b) A record of the Director's determination under subsection (a) of this section will be placed in the official file of the patent, and a copy promptly will be given or mailed to the owner of record of the patent and to the person requesting reexamination, if any.

(c) A determination by the Director pursuant to subsection (a) of this section that no substantial new question of patentability has been raised will be final and nonappealable. Upon such a determination, the Director may refund a portion of the reexamination fee required under **section 302** of this title.

---

### 37 CFR 1.515 Determination of the request for ex parte reexamination.

(a) Within three months following the filing date of a request for an *ex parte* reexamination, an examiner will consider the request and determine whether or not a substantial new question of patentability affecting any claim of the patent is raised by the request and the prior art cited therein, with or without consideration of other patents or printed publications. The examiner's determination will be based on the claims in effect at the time of the determination, will become a part of the official file

of the patent, and will be mailed to the patent owner at the address as provided for in § **1.33(c)** and to the person requesting reexamination.

(b) Where no substantial new question of patentability has been found, a refund of a portion of the fee for requesting *ex parte* reexamination will be made to the requester in accordance with § **1.26(c)**.

(c) The requester may seek review by a petition to the Director under § **1.181** within one month of the mailing date of the examiner's determination refusing *ex parte* reexamination. Any such petition must comply with § **1.181(b)**. If no petition is timely filed or if the decision on petition affirms that no substantial new question of patentability has been raised, the determination shall be final and nonappealable.

---

Before making a determination on the request for reexamination, the examiner must request a litigation computer search by the Scientific and Technical Information Center (STIC) to check if the patent has been, or is, involved in litigation. The "Litigation Review" box on the reexamination IFW file jacket form should be completed to indicate that the review was conducted and the results thereof. A copy of the STIC search and the reexamination file jacket form are scanned into the IFW reexamination file history. In the rare instance where the record of the reexamination proceeding or the STIC search indicates that additional information is desirable, guidance as to making an additional litigation search may be obtained from the library of the Office of the Solicitor. If the patent is or was involved in litigation, and a paper referring to the court proceeding has been filed, reference to the paper by number should be made in the "Litigation Review" box on the reexamination IFW file jacket form as, for example, "litigation; see paper filed 7-14-2005. If a litigation records search is already noted on the file, the examiner need not repeat or update it.

If litigation has concluded or is taking place in the patent on which a request for reexamination has been filed, the request must be promptly brought to the attention of the \*\*>Central Reexamination Unit (CRU)< Special Program Examiner, who should review the decision on the request and any examiner's action to ensure that it conforms to the current Office litigation policy and guidelines. See **MPEP § 2286**.

**35 U.S.C. 303** requires that within 3 months following the filing of a request for reexamination, the Director of the USPTO will determine whether or not the request raises a "substantial new question of patentability" affecting any claim of the patent of which reexamination is desired. See also **MPEP § 2241**. Such a determination may be made with or without consideration of other patents or printed publications in addition to those cited in the request. No input from the patent owner is considered prior to the determination, unless the patent owner filed the request. See *Patlex Corp. v. Mossinghoff*, 771 F.2d 480, 226 USPQ 985 (Fed. Cir. 1985).

The patent claims in effect at the time of the determination will be the basis for deciding whether a substantial new question of patentability has been raised. **37 CFR 1.515(a)**. Amendments which (1) have been presented with the request if by the patent owner, (2) have been filed in a pending reexamination proceeding in

Exhibit F - 2

which the certificate has not been issued, or (3) have been submitted in a reissue application on which no reissue patent has been issued, will not be considered or commented upon when deciding requests.

The decision on the request for reexamination has as its object either the granting or denial of an order for reexamination. This decision is based on whether or not "a substantial new question of patentability" is found. A final determination as to unpatentability of the claims is not made in the decision; this determination will be made during the examination stage of the reexamination proceedings. Accordingly, no *prima facie* case of unpatentability need be found to grant an order for reexamination. If a decision to deny an order for reexamination is made, the requester may seek review by a petition under CFR 1.181. See 37 CFR 1.515(c).

**>It is only necessary to establish that a substantial new question of patentability exists as to one of the patent claims in order to grant reexamination. The Office's determination in both the order for reexamination and the examination stage of the reexamination will generally be limited solely to a review of the claim(s) for which reexamination was requested. If the requester was interested in having all of the claims reexamined, requester had the opportunity to include them in its request for reexamination. However, if the requester chose not to do so, those claim(s) for which reexamination was not requested will generally not be reexamined by the Office. It is further noted that 35 U.S.C. **302** requires that "[t]he request must set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested." If the requester fails to apply the art to certain claims, then the requester is not statutorily entitled to reexamination of such claims. If a request fails to set forth the pertinency and manner of applying the cited art to any claim for which reexamination is requested as required by 37 CFR **1.510**(b), that claim will generally not be reexamined. The decision to reexamine any claim for which reexamination has not been requested lies within the sole discretion of the Office, to be exercised based on the individual facts and situation of each individual case. If the Office chooses to reexamine any claim for which reexamination has not been requested, it is permitted to do so. In addition, the Office may always initiate a reexamination on its own initiative of the non-requested claim (35 U.S.C. **303**(a)). See *Sony Computer Entertainment America Inc. v. Dudas*, 2006 WL 1472462 (E.D. Va 2006).

One instance where reexamination was carried out only for the claims requested occurred in reexamination control numbers 95/000,093 and 95/000,094, where reexamination was requested for patent claims which were being litigated, but not for claims which were not being litigated. In that instance, the entirety of the reexamination was limited to the claims which were being litigated, for which reexamination was requested. The Office's authority to carry out reexamination only for the claims for which reexamination was requested in reexamination control numbers 95/000,093 and 95/000,094 was confirmed by the court in *Sony*, *supra*. See also MPEP § **2242** for the situation where there was a prior final federal court decision as to the invalidity/unenforceability of some of the claims, as another example of non-examination of some of the patent claims in a reexamination proceeding.

The decision on the request for reexamination should discuss all of the patent

claims requested for reexaminaton. The examiner should limit the discussion of those claims in the order for reexamination as to whether a substantial new question of patentability has been raised. The examiner SHOULD NOT reject claims in the order for reexamination. Rather, any rejection of the claims will be made in the first Office action (on the patentability of the claims) that is issued after the expiration of the time for submitting any patent owner statement and requester reply that follow the examiner's order.<

The examiner should indicate, insofar as possible, his or her initial position on all the issues identified in the request or by the requester so that comment thereon may be received in the patent owner's statement and in the requester's reply. **

The Director of the USPTO has the authority to order reexamination only **>for a request< which raise a substantial new question of patentability. The substantial new question of patentability requirement protects patentees from having to respond to, or participate in unjustified reexaminations. *Patlex Corp. v. Mossinghoff*, 771 F.2d 480, 226 USPQ 985 (Fed. Cir. 1985).

## I.    REQUEST FOR REEXAMINATION OF THE PATENT AFTER REISSUE OF THE PATENT

Where a request for reexamination is filed on a patent after a reissue patent for that patent has already issued, reexamination will be denied, because the patent on which the request for reexamination is based has been surrendered. Should reexamination of the reissued patent be desired, a new request for reexamination, including and based on the specification and the claims of the reissue patent, must be filed. Where the reissue patent issues after the filing of a request for reexamination, see MPEP § **2285**.

## II.    SECOND OR SUBSEQUENT REQUEST FILED DURING REEXAMINATION

If a second or subsequent request for *ex parte* reexamination is filed (by any party) while a first *ex parte* reexamination is pending, the presence of a substantial new question of patentability depends on the prior art (patents and printed publications) cited by the second or subsequent requester. If the requester includes in the second or subsequent request prior art which raised a substantial new question in the pending reexamination, reexamination should be ordered only if the prior art cited raises a substantial new question of patentability which is different *>from< that raised in the pending reexamination proceeding. If the prior art cited raises the same substantial new question of patentability as that raised in the pending reexamination proceedings, the second or subsequent request should be denied.

>Where the request raises a different substantial new question of patentability as to some patent claims, but not as to others, the request would be granted in part; see the order issued in reexamination control number 90/007,843 and 90/007,844.<

The second or subsequent request for reexamination may raise a substantial new question of patentability with respect to any new or amended claim which has been proposed under **37 CFR 1.530(d)** in the first (or prior) pending reexamination proceeding. The substantial new question may be directed to any proposed new or

amended claim in the pending reexamination, to permit examination of the entire patent package. It would be a waste of resources to prevent addressing the proposed new or amended claims, by requiring parties to wait until the certificate issues for the proposed new or amended claims, and only then to file a new reexamination request challenging the claims as revised via the certificate. This also prevents a patent owner from simply amending all the claims in some nominal fashion to preclude a subsequent reexamination request during the pendency of the reexamination proceeding. In *>certain< situations, <u>after</u> a grant of a second or subsequent request for *ex parte* reexamination, where (A) the patent owner files a petition under **37 CFR 1.182** as part of the statement or as the statement, and (B) it appears clear that the second or subsequent request was filed for purposes of harassment of the patent owner, if the petition is granted, prosecution on the second or subsequent reexamination would be suspended. Merger of such a second or subsequent request with the already pending reexamination proceeding (s) would unduly prolong the conclusion of the pending reexamination and be inconsistent with the requirement that reexamination proceeding be conducted with special dispatch. If the second or subsequent requester does not include the prior art which raised a substantial new question of patentability in the pending reexamination, reexamination may or may not be ordered depending on whether the different prior art raises a substantial new question of patentability. The second or subsequent request should be determined on its own merits without reference to the pending reexamination.

For cases in which a first *ex parte* reexamination is pending at the time a second or subsequent request for *ex parte* reexamination is to be decided, see **MPEP § 2283**.

For cases in which either the first or subsequent request for reexamination, or both, is/are an *inter partes* reexamination proceeding, see MPEP § **2640** and § **2686.01**.

**browse after**

---

**KEY**: 🔄=online business system   💲=fees   📇=forms   🎯=help   ⚖️=laws/regulations   🔖=definition (glossary)

---

The **Inventors Assistance Center** *is available to help you on patent matters.Send questions about USPTO programs and services to the* **USPTO Contact Center (UCC).** *You can suggest USPTO webpages or material you would like featured in this section by E-mail to the* **webmaster@uspto.gov**. *While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

---

Last Modified: 12/05/2006 09:38:09

Go to **MPEP - Table of Contents**

# EXHIBIT G



**United States Patent and Trademark Office**

**PATENTS**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | *e*Business | *e*Biz alerts | News | Help

**Patents** > **Search Collections** > **MPEP** > 2242 Criteria for Deciding Request [R-5] - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

Go to **MPEP - Table of Contents**

**browse before**

# 2242 Criteria for Deciding Request [R-5] - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

## 2242 Criteria for Deciding Request [R-5]

### I.   SUBSTANTIAL NEW QUESTION OF PATENTABILITY

The presence or absence of "a substantial new question of patentability" determines whether or not reexamination is ordered. The meaning and scope of the term "a substantial new question of patentability" is not defined in the statute and must be developed to some extent on a case-by-case basis, using the case law to provide guidance as will be discussed in this section.

If the prior art patents and printed publications raise a substantial question of patentability of at least one claim of the patent, then a substantial <u>new</u> question of patentability is present, unless the same question of patentability has already been decided by (A) a final holding of invalidity, after all appeals, or (B) by the Office in a previous examination or pending reexamination of the patent. A "previous examination" of the patent is: (A) the original examination of the application which matured into the patent; (B) the examination of the patent in a reissue application that has resulted in a reissue of the patent; or (C) the examination of the patent in an earlier >pending or< concluded reexamination. The answer to the question of whether a "substantial new question of patentability" exists, and therefore whether reexamination may be had, is decided by the Director of the USPTO, and, as **35 U.S.C. 303** provides, that determination is final, i.e., not subject to appeal on the merits of the decision. See *In re Etter*, 756 F.2d 852, 225 USPQ 1 (Fed. Cir. 1985). But see *Heinl v. Godici*, 143 F.Supp.2d 593, 596-98 (E.D.Va. 2001) (35 U.S.C. 303 addresses only USPTO decisions to <u>deny</u> a request for reexamination and does not bar review of >*ultra vires*< USPTO decisions to <u>grant</u> reexamination requests. However, a decision to grant a reexamination request is not a final agency decision and is not ordinarily subject to judicial review.).

A prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable. If the prior art patents and/or publications would be considered important, then the examiner should find "a substantial new question of patentability" unless the same question of patentability has already been decided

Exhibit G - 1

as to the claim in a final holding of invalidity by the Federal court system or by the Office in a previous examination. For example, the same question of patentability may have already been decided by the Office where the examiner finds the additional (newly provided) prior art patents or printed publications are merely cumulative to similar prior art already fully considered by the Office in a previous examination of the claim.

For "a substantial new question of patentability" to be present, it is only necessary that: (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be _important_ in deciding whether or not the claim is patentable; and (B) the same question of patentability as to the claim has not been decided by the Office in a previous examination or pending reexamination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim. It is not necessary that a "_prima facie_" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications. As to the importance of the difference between "a substantial new question of patentability" and a "_prima facie_" case of unpatentability see generally _In re Etter,_ 756 F.2d 852, 857 n.5, 225 USPQ 1, 4 n.5 (Fed. Cir. 1985).

Where a request for reexamination of a patent is made before the conclusion of an earlier filed reexamination proceeding pending (ongoing) for that patent, the substantial new question of patentability may be raised with respect to any new or amended claim which has been proposed under 37 CFR **1.530**(d) in the pending reexamination proceeding. The substantial new question may be directed to any proposed new or amended claim in the pending reexamination, to permit examination of the entire patent package. It would be a waste of resources to prevent addressing the proposed new or amended claims, by requiring parties to wait until the certificate issues for the proposed new or amended claims, and only then to file a new reexamination request challenging the claims as revised via the certificate. This also prevents a patent owner from simply amending all the claims in some nominal fashion to preclude a subsequent reexamination request during the pendency of the reexamination proceeding.

**II.   POLICY IN SPECIFIC SITUATIONS**

In order to further clarify the meaning of "a substantial new question of patentability" certain situations are outlined below which, if present, should be considered when making a decision as to whether or not "a substantial new question of patentability" is present.

**A.   Prior Favorable Decisions by the U.S. Patent and Trademark Office (Office) on the Same or Substantially Identical Prior Art in Relation to the Same Patent.**

A "substantial new question of patentability" is _not_ raised by prior art presented in a reexamination request if the Office has previously considered (in an earlier

examination of the patent) the same question of patentability as to a patent claim favorable to the patent owner based on the same prior art patents or printed publications. *In re Recreative Technologies*, 83 F.3d 1394, 38 USPQ2d 1776 (Fed. Cir. 1996).

In deciding whether to grant a request for reexamination of a patent, the examiner should check the patent's file history to ascertain whether any of the prior art now advanced by requester was previously cited/considered in an earlier * Office examination of the patent (e.g., in the examination of the application for the patent>, or in a concluded or pending reexamination proceeding<). For the sake of expediency, such art is referred to as "old art" throughout, since the term "old art" was coined by the Federal Circuit in its decision of *In re Hiniker*, 150 F.3d 1362,1365-66, 47 USPQ2d 1523, 1526 (Fed. Cir. 1998).

In a decision to order reexamination made on or after November 2, 2002, reliance on old art does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. See Public Law 107-273, 116 Stat. 1758, 1899-1906 (2002), which expanded the scope of what qualifies for a substantial new question of patentability upon which a reexamination may be based. Determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation presented in the request.

When it is determined that a SNQ based solely on old art is raised, form paragraph **22.01.01** should be included in the order for reexamination.

**>

### ¶ 22.01.01 Criteria for Applying "Old Art" as Sole Basis for Reexamination

The above **[1]** is based solely on patents and/or printed publications already cited/considered in an earlier concluded examination of the patent being reexamined. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. **303(a)** and **312(a)**:

"The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, there exists a SNQ based solely on **[2]**. A discussion of the specifics now follows:

**[3]**

**Examiner Note**

1. In bracket 1, insert "substantial new question of patentability" if the present form paragraph is used in an order granting reexamination (or a TC or CRU Director's decision on petition of the denial of reexamination). If this form paragraph is used in an Office action, insert "ground of rejection".

2. In bracket 2, insert the old art that is being applied as the sole basis of the SNQ. For example, "the patent to Schor" or "the patent to Schor when taken with the Jones publication" or "the combination of the patent to Schor and the Smith publication" could be inserted. Where more than one SNQ is presented based solely on old art, the examiner would insert all such bases for SNQ.

3. In bracket 3, for each basis identified in bracket 2, explain how and why that fact situation applies in the proceeding being acted on. The explanation could be for example that the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation presented in the request. See *Ex parte Chicago Rawhide Mfg. Co.*, 223 USPQ 351 (Bd. Pat. App. & Inter. 1984).

4. This form paragraph is only used the first time the "already cited/considered" art is applied, and is not repeated for the same art in subsequent Office actions.

<

See MPEP § **2258.01** for a discussion of the use of "old art" in the examination stage of an ordered reexamination (as a basis for rejecting the patent claims).

**B.    Prior Adverse Decisions by the Office on the Same or Substantially Identical Prior Art in the Same Patent.**

A prior decision adverse to the patentability of a claim of a patent by the Office based upon prior art patents or printed publications would usually mean that "a substantially new question of patentability" is present. Such an adverse decision by the Office could, for example, arise from a reissue application which was abandoned after rejection of the claim and without disclaiming the patent claim.

**C.    Prior Adverse Reissue Application Final Decision by the Director of the USPTO or the Board of Patent Appeals and Interferences Based Upon Grounds Other Than Patents or Printed Publications.**

Any prior adverse final decision by the Director of the USPTO or the Board of Patent Appeals and Interferences, on an application seeking to reissue the same patent on which reexamination is requested will be considered by the examiner when determining whether or not a "substantial new question of patentability" is

present. To the extent that such prior adverse final decision was based upon grounds other than patents or printed publications, the prior adverse final decision will not be a basis for determining whether or not a "substantial new question of patentability" is present.

**D.   Prior Favorable or Adverse Decisions on the Same or Substantially Identical Prior Art Patents or Printed Publications in Other Cases not Involving the Patent.**

While the Office would consider decisions involving substantially identical patents or printed publications in determining whether a "substantial new question of patentability" is raised, the weight to be given such decisions will depend upon the circumstances.

**III.   POLICY WHERE A FEDERAL COURT DECISION HAS BEEN ISSUED ON THE PATENT**

**A.   Final Holding of Validity by the Courts.**

When the initial question as to whether the prior art raises a substantial new question of patentability as to a patent claim is under consideration, the existence of a final court decision of claim *validity* in view of the same or different prior art does not necessarily mean that no new question is present, because of the different standards of proof employed by the Federal District Courts and the Office. While the Office may accord deference to factual findings made by the district court, the determination of whether a substantial new question of patentability exists will be made independently of the court's decision on validity, because it is not controlling on the Office.

**B.   Nonfinal Holding of Invalidity or Unenforceability by the Courts.**

A *nonfinal* holding of claim *invalidity* or unenforceability will not be controlling on the question of whether a substantial new question of patentability is present.

**C.   Final Holding of Invalidity or Unenforceability by the Courts.**

A *final* holding of claim *invalidity* or unenforceability, after all appeals, is controlling on the Office. In such cases, a substantial new question of patentability would *not* be present as to the claims finally held invalid or unenforceable.

As to *A. - C.* above, see *Ethicon v. Quigg*, 849 F.2d 1422, 7 USPQ2d 1152 (Fed. Cir. 1988).

Any situations requiring clarification should be brought to the attention of the Office of Patent Legal Administration.

**browse after**

---

**KEY**: 🖱=online business system  💲=fees  📑=forms  🐥=help  ⚖=laws/regulations  🔍=definition (glossary)

*The **Inventors Assistance Center** is available to help you on patent matters. Send questions about USPTO programs and services to the **USPTO Contact Center (UCC)**. You can suggest USPTO webpages or material you would like featured on this section by E-mail to the **webmaster@uspto.gov**. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

| **.HOME** | **SITE INDEX** | **SEARCH** | **_e_BUSINESS** | **HELP** | **PRIVACY POLICY**

Last Modified: 12/05/2006 09:38:09

Go to **MPEP - Table of Contents**

# EXHIBIT I



Volume 11, Issue 10

February 2008

# SDIPLA News



### SDIPLA FEBRUARY 7, 2008, 6:00 P.M. DINNER MEETING
#### FEATURING HAROLD C. WEGNER, ESQ.
#### D.C. OFFICE OF FOLEY & LARDNER
#### "PATENT REFORM IN CONGRESS" AND OTHER TOPICS
#### SHERATON HOTEL LA JOLLA

Mr. Wegner will discuss Patent Reform in Congress, the PTO and the Courts: Senate "Cloture" and Necessary Compromises; and Judicial Challenges, Supreme Court Quanta "patent exhaustion"; and Kubin post-KSR biotechnology obviousness, and other challenges.

Mr. Wegner is a partner at the D.C. office of Foley & Lardner while continuing his teaching affiliation with the George Washington University Law School, where he was director of the Intellectual Property Program and professor of law. Mr. Wegner regularly operates in Japan, working with the firm's Intellectual Property Department.  Mr. Wegner crafts strategies for multinational patent enforcement and management based on current intelligence on global intellectual property law and practice as well as cutting edge understanding of trends in patent case law.

Mr. Wegner was honored recently with the American Intellectual Property Law Association's President's Award for Outstanding Achievement for his long time efforts in mentoring and in advancing diversity within the legal profession and the AIPLA.  Mr. Wegner holds degrees from Northwestern University (B.A.) and the Georgetown University Law Center (J.D.)

IN THIS ISSUE:
TABLE OF CONTENTS

Professional Profile:                 1

Internet Sightings                    2
Dinner Reservation Form               4
Employment                            5
Announcement                          8

Membership Renewal Form               9

### February 7, 2008 — Sheraton Hotel La Jolla:

**Date/Time/Location:**

February 7, 2008
6:00 p.m.—8:30 p.m.

Sheraton Hotel La Jolla

3299 Holiday Court, La Jolla

**NOTES:**

Complimentary parking

**Directions:**
From I-5 S to La Jolla Village Drive;

Turn left, left on Villa La Jolla, left on Holiday Court

From I-5 N to La Jolla Village Drive;

Turn right, left on Villa La Jolla, left on Holiday Court

Exhibit I - 1

Volume 11, Issue 10                                                                February 2008

*Internet Sightings*
by Jim Hawes (cont. p. 3)

**SDIPLA**
**Board of Directors**

**President**
Robert W. Prince
ACADIA Pharmaceuticals, Inc.
rprince@acadia-pharm.com

**Vice President**
Boris Zelkind
Knobbe Martens Olson & Bear LLP
619 235-8550
boris.zelkind@kmob.com

**Secretary**
Jessica S. Mitchell
Neil Dymott
619 238-2255
jmitchell@neildymott.com

**Treasurer**
John E. Peterson
John.e.peterson.ph.d@gmail.com

**Immediate Past President**
Thomas E. Coverstone
858 336-8620
patpend@sbcglobal.net

**Newsletter Editor**
Jessica S. Mitchell

**Webmaster**
Sarah Burrows

This column highlights some of the more notable recent internet notices, newsletters and blogs dealing with IP prosecution issues. It is a distillation of the submitted IS column. The full IS column, with compilations of some of the sources such as Hal Wegner's newsletter, should be up and available at www.internetsightings.com shortly.

**Hal Wegner's newsletter** – a lot of great stuff – Contact: hwegner@foley.com

• The 1/5/08 email states that today the average ex parte reexamination takes about 5 years (vs. the PTO's claim that it takes 2 years). If an appeal to the CAFC is involved, that extends the period to 7.7 years.
• Hal's 1/6/08 posting stresses the importance of a patent-savvy next President, and that now is the time to work towards that goal.
• The 1/7/08 newsletter attaches the CAFC's en banc order in the Egyptian Goddess design patent case, and lists the issues to be briefed.
• The 1/13/08 posting discusses the Commonwealth Scientific appeal to the CAFC from grant of an injunction; will address eBay inj. standards.
• Hal's 1/15/08 email reports the Baldwin Graphic decision of the CAFC and its discussion of "a," "the" and "said."
• The 1/22/08 posting discusses prospects for passage of the patent reform bill, which if it happens will happen in February according to the IPO.
• The 1/24/08 email reports that Senator Leahy has the votes to pass patent reform legislation in February. The AIPLA seems to be ignoring it.



The SDIPLA thanks our Sponsors for the monthly meetings:

**Knobbe Martens Olson & Bear LLP**
**www.kmob.com**

**Paul, Hastings, Janofsky & Walker LLP**
**www.paulhastings.com**

**Townsend and Townsend and Crew LLP**
**www.townsend.com**

(listed alphabetically)

Exhibit I - 2

# EXHIBIT H



**United States Patent and Trademark Office**

**PATENTS**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | *e*Business | eBiz alerts | News | Help

**Patents** > **Search Collections** > **MPEP** > 2263 Time for Response [R-5] - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

Go to **MPEP - Table of Contents**

**browse before**

# 2263 Time for Response [R-5] - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

## 2263 Time for Response [R-5]

A shortened statutory period of 2 months will be set for response to Office actions in reexaminations, except *>as follows. Where< the reexamination results from a court order or litigation is stayed for purposes of reexamination, ** the shortened statutory period will be set at 1 month. >In addition, if (A) there is litigation concurrent with an *ex parte* reexamination proceeding and (B) the reexamination proceeding has been pending for more than one year, the Director or Deputy Director of the Office of Patent Legal Administration (OPLA), Director of the Central Reexamination Unit (CRU), Director of the Technology Center (TC) in which the reexamination is being conducted, or a Senior Legal Advisor of the OPLA, may approve Office actions in such reexamination proceeding setting a one-month or thirty days, whichever is longer, shortened statutory period for response rather than the two months usually set in reexamination proceedings. A statement at the end of the Office action - "One month or thirty days, whichever is longer, shortened statutory period approved," followed by the signature of one of these officials, will designate such approval.< See **MPEP § 2286**. Note, however, that this 1-month policy does NOT apply to the 2-month period for the filing of a statement under **37 CFR 1.530**, which 2-month period is set by **35 U.S.C. 304**.

Where a reexamination proceeding has been stayed because of a copending reissue application, and the reissue application is abandoned, all actions in the reexamination after the stay has been removed will set a 1-month shortened statutory period unless a longer period for response is clearly warranted by nature of the examiner's action; see **MPEP § 2285**.

**browse after**

---

**KEY**: =online business system  💲=fees  📑=forms  ⍰=help  ⚖=laws/regulations  📖=definition (glossary)

---

*The **Inventors Assistance Center** is available to help you on patent matters. Send questions about USPTO programs and services to the **USPTO Contact Center (UCC)**. You can suggest USPTO webpages or material you would like featured on this section by E-mail to the **webmaster@uspto.gov**. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

Exhibit H - 1

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Last Modified: 11/03/2006 12:24:54

Go to **MPEP - Table of Contents**

**EXHIBIT J**



**Melody Kramer <freelancelaw@gmail.com>**

# Reexamination Reform: Structural Changes needed at the PTO, or Why Post-Grant Reform May be Meaningless

2 messages

---

**Wegner, Harold C. <hwegner@foley.com>**                    **Thu, Jun 26, 2008 at 9:38 AM**

Beyond *statutory* reforms, the new Director of the PTO must reallocate the $ 2 billion annual PTO budget to focus a far greater percentage on the Board and to shift more of the responsibility for reexamination to the Board.  The shameful fact not one single merits appeal in an *inter partes* reexamination under a law enacted in the *last century* has *ever* reached the Federal Circuit speaks for itself.

**_Faux_ Victory over _Ex parte_ Reexamination Backlogs:**

"All ex parte patent reexaminations pending for more than two years were processed to final determination."

*Two years*?  Really, just *two* years?  That's what the PTO claims in its latest Annual Report.  Statistics released on June 25, 2008, by Professor Dennis Crouch paint an entirely different picture.

**Nearly Eight (8) Years Pendency for Reexams that Reach the Federal Circuit**: For important reexaminations – measured by those that reach the Federal Circuit – the average pendency approaches eight (8) years.

**111th Congress Patent Reform**

: No matter what *statutory* changes are made in the coming Congress in 2009, and no matter what demands for "special dispatch" may be placed on the system, any post-grant system that relies upon the presently constituted Board is doomed to utter failure. The scant resources devoted to the appellate level in the United States versus Japan are an order of magnitude apart.

The attached paper introduces some of Prof. Crouch's work as well as comparative data involving the Japanese system which *does* properly allocate resources and which *does* avoid the backlog problem faced in the United States.

Regards,

Hal

Exhibit J - 1

# *Ex parte* Reexamination Reform



**Three Year Average Reexamination Pendency***

*"All ex parte patent reexaminations pending for more than two years were processed to final determination."*

-- **United States Patent and Trademark Office**[**]



Ex parte Reexamination Reform

There are serious structural problems with U.S. reexamination – both *ex parte* and *inter partes*. At the heart of the matter are (a) insufficient resources put into the appellate level at the PTO *and* (b) the need to integrate the entire reexamination process under the auspices of the Board.

The $ 2 billion annual PTO budget needs to be reallocated to refocus resources on reexamination.

***Important Reexaminations Remain Pending Three-Plus Years***:  Many if not most *ex parte* reexaminations lose their commercial criticality after three years, resulting in either abandonment or acceptance of narrow claims after that period.

***Seven-Plus Years for Reexaminations Reaching the Federal Circuit:***

Stripping away the "easy" *ex parte* reexaminations – particularly those presented by the patentee himself – and those that involved commercial settlements (where the patentee often then accepts whatever narrow claims may be offered by the Examiner), the remaining reexaminations would have a much higher average pendency than the already unsatisfactory 33.3 month average.

To gauge the pendency of "important" reexaminations, a study was made of all reexaminations that have reached the Federal Circuit for a merits appeal.  The average pendency for a reexamination that involves a decision by the Federal Circuit remains at nearly eight (8) years. [****]

HCW

June 26, 2008

Ex parte Reexamination Reform

## **Endnotes**

[*] The chart and data are taken from Professor Dennis Crouch, *Reexamination Statistics II, Patently O,* Ex Parte June 25, 2008.  His analysis explains the chart, which is based upon his "look[ ] at the 2000+ reexamination certificates that have been published in the Official Gazette since January 2000. * * * *Timing:* The reexamination certificates in my sample had an average pendency of 33.5 months (median 28.5 months).  The PTO's reported average and median are 24.0 months and 18.6 months respectively. The difference apparently comes from their inclusion of reexaminations from the 1980's and 1990's which had much lower pendency than more recent numbers. [PTO Data 1981-2007].  *Outcome & Timing*: Reexaminations that simply resulted in a confirmation that the initial claims are valid were resolved more quickly (averaging 24 months) while those resulting in cancellation of all clams were much slower (averaging 45 months). Cases at the longer end of the spectrum often involved either BPAI appeals or lost files." *Id.*

**United States Patent and Trademark Office Annual Report (2007).

***Data is taken from a paper circulated in 2007, *Patent Reform in the 110th Congress:  Lessons from Tokyo* (*attached*), which includes original U.S. PTO and Japan Patent Office documentation.

**** This data has been previously reported by the present writer in a series of notes and appears in a table, *Ex Parte Reexaminations Pendency for Proceedings involving a Federal Circuit Appeal* (attached).

# *Ex Parte* Reexamination Pendency for Proceedings involving a Federal Circuit Appeal[*]

## Average Reexamination Pendency = 7.7 years

| Reexamination Proceeding | Pendency (mos.) |
|---|---|
| *In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000) | 50 |
| Filed November 1996 Certificate Jan. 2001 | |
| *In re Baker Hughes*, 215 F.3d 1297 (Fed. Cir. 2000) | 87 |
| Filed February 1994 Certificate May 2001 | |
| *In re McNeil-PPC, Inc.*, 2000 WL 426148 (Fed. Cir. 2000) | 80 |
| Filed Nov. 1994 Certificate July 2001 | |
| *In re Fortunet, Inc.*, 2000 WL 420657 (Fed. Cir. 2000) | 89 |
| Filed October 1995  Certificate March 2003 | |
| *In re Lee*, 12 Fed.Appx. 915 (Fed.Cir. 2000) | 74 |
| Filed June 1995 Certificate August 2001 | |
| *In re Laitram Corp.*, 1999 WL 1136829 (Fed.Cir. 1999) | 78 |
| Filed June 1993 Certificate December 1999 | |
| *In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998) | 62 |
| Filed June 1995 Certificate August 2000 | |
| *In re Am. Acad. of Sci. Tech Center*, 367 F.3d 1359 (Fed. Cir. 2004) | 139 |
| Filed June 1994 Certificate January 2006 | |
| *In re Bass*, 314 F.3d 575 (Fed. Cir. 2002) | 106 |
| Filed January 1996  Certificate March 2005 | |
| *In re Morgan*, 87 Fed.Appx. 746 (Fed.Cir. 2004) | 51 |
| Filed August 2000  Certificate November 2004 | |
| *In re Curtis*, 354 F.3d 1347 (Fed. Cir. 2004) | 118 |
| Filed [merged reissue]: Sept. 1994 Est.[**] July 2004 | |
| *In re Inland Steel Co.*, 265 F.3d 1354 (Fed. Cir. 2001) | 113 |
| Filed Jan. 1993  Certificate June  2002 | |
| *In re Modine Mf'g. Co.*, 18 Fed.Appx. 857 (Fed.Cir. 2001) | 134 |
| Filed August 1995 Certificate October 17, 2006 | |
| *In re Icon Health And Fitness, Inc.*, __ F.3d __ (Fed. Cir. 2007) | 113 |
| Filed:  September 1998  Est. 2008[**] | |

---

[*]Search on Westlaw CTAF database for [ti("in re") and reexamination] to identify reexamination cases.  Search on on Lexis database for patent reexamination certificate  involved in the subject cases.

[**]Lexis does not show the issuance of a certificate for two of the cases.  For purposes of this survey a date six months after the January 2004 Federal Circuit decision date is used for the *Curtis* reexamination; similarly, a date six months after *In re Icon* Health is used.

HCW
Search updated August 5, 2007.

**EXHIBIT K**

1

2

3

4

5

## Non-Comprehensive List Of Reexaminations Lasting In Excess Of 7 Years
## From Filing To Issuance Of Certificate
(data as of April 2008)

6

7

| Reexam Control No. | Years to Complete |
|---|---|
| 90/000,342 | 8.1 |
| 90/000,365 | 9.5 |
| 90/000,383 | 8.9 |
| 90/000,523 | 10.2 |
| 90/000,843 | 7.3 |
| 90/001,049 | 6.7 |
| 90/001,089 | 7.0 |
| 90/001,165 | 12.4 |
| 90/001,169 | 7.8 |
| 90/001,235 | 7.8 |
| 90/001,391 | 8.1 |
| 90/001,397 | 7.2 |
| 90/001,544 | 7.3 |
| 90/001,554 | 10.6 |
| 90/001,669 | 10.2 |
| 90/001,772 | 9.8 |
| 90/001,811 | 7.3 |
| 90/001,867 | 14.9 |
| 90/001,869 | 12.7 |
| 90/001,876 | 16.5 |
| 90/001,886 | 7.4 |
| 90/002,107 | 7.5 |
| 90/002,125 | 7.3 |
| 90/002,154 | 17.4 |
| 90/002,339 | 8.1 |
| 90/002,534 | 7.7 |
| 90/002,541 | 12.7 |
| 90/002,641 | 14.2 |
| 90/002,696 | 7.3 |
| 90/002,797 | 7.4 |
| 90/002,901 | 7.8 |

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 90/002,920 | 9.5 |
| 90/002,980 | 9.3 |
| 90/003,101 | 7.4 |
| 90/003,184 | 7.8 |
| 90/003,228 | 8.6 |
| 90/003,232 | 8.6 |
| 90/003,233 | 8.6 |
| 90/003,270 | 8.6 |
| 90/003,346 | 7.2 |
| 90/003,463 | 11.7 |
| 90/003,486 | 8.0 |
| 90/003,488 | 8.2 |
| 90/003,487 | 7.9 |
| 90/003,612 | 8.3 |
| 90/003,646 | 7.6 |
| 90/003,655 | 7.0 |
| 90/003,669 | 8.1 |
| 90/003,679 | 7.5 |
| 90/003,684 | 10.9 |
| 90/003,765 | 7.4 |
| 90/003,782 | 7.9 |
| 90/003,791 | 7.3 |
| 90/003,885 | 12.5 |
| 90/003,911 | 11,2 |
| 90/003,991 | 7.4 |
| 90/003,996 | 10.2 |
| 90/003,998 | 10.7 |
| 90/004,127 | 9.1 |
| 90/004,138 | 10.7 |
| 90/004,176 | 9.1 |
| 90/004,248 | 8.6 |
| 90/004,385 | 8.1 |
| 90/004,386 | 8.1 |
| 90/004,403 | 8.4 |
| 90/004,442 | 8.1 |
| 90/004,518 | 8.7 |
| 90/004,524 | 7.5 |
| 90/004,529 | 7.1 |
| 90/004,574 | 7.8 |
| 90/004,583 | 9.0 |
| 90/004,672 | 8.7 |

| 1 | 90/004,698 | 8.0 |
| 2 | 90/004,782 | 7.9 |
|   | 90/004,783 | 7.1 |
| 3 | 90/004,794 | 7.4 |
| 4 | 90/004,834 | 8.8 |
|   | 90/004,922 | 7.2 |
| 5 | 90/004,933 | 9.6 |
| 6 | 90/004,934 | 7.4 |
|   | 90/004,947 | 7.4 |
| 7 | 90/004,970 | 7.3 |
| 8 | 90/004,998 | 7.5 |
|   | 90/005,020 | 7.3 |
| 9 | 90/005,024 | 7.2 |
| 10 | 90/005,060 | 7.6 |
|   | 90/005,061 | 7.4 |
| 11 | 90/005,062 | 7.7 |
| 12 | 90/005,116 | 7.1 |
|   | 90/005,147 | 8.9 |
| 13 | 90/005,212 | 7.5 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Non-Comprehensive List Of Uncompleted Reexaminations
Already Pending In Excess Of 7 Years From Filing
(data as of April 2008)

| Reexam Control No. | Years Pending[1] |
|---|---|
| 90/004,314 | 11.7 |
| 90/005,546 | 8.3 |
| 90/005,708 | 7.3 |
| 90/005,694 | 7.9 |
| 90/004,950 | 9.9 |
| 90/005,090 | 9.1 |
| 90/005,200 | 9.1 |
| 90/005,401 | 8.4 |
| 90/005,510 | 8.4 |
| 90/005,728 | 7.5 |
| 90/005,220 | 9.1 |
| 90/004,946 | 10.0 |
| 90/003,586 | 12.1 |
| 90/005,571 | 7.5 |
| 90/004,396 | 11.5 |
| 90/005,117 | 9.5 |
| 90/005,368 | 8.8 |
| 90/005,937 | 7.0 |
| 90/005,525 | 8.2 |
| 90/005,592 | 8.2 |
| 90/005,628 | 8.1 |
| 90/005,727 | 7.8 |
| 90/005,509 | 8.5 |
| 90/005,589 | 7.8 |
| 90/005,292 | 9.1 |
| 90/005,710 | 7.8 |

---

[1] Years pending has been calculated from the filing date to the date of the most recent event in the case and has not been corrected for additional passage of time since the last event, therefore, the actual pendency is longer than that listed.

# EXHIBIT L



**United States Patent and Trademark Office**

**PATENTS**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | *e*Business | *e*Biz alerts | News | Help

**Patents** > **Search Collections** > **MPEP** > 2283 Multiple Copending - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

Go to **MPEP - Table of Contents**

**browse before**

# 2283 Multiple Copending - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

## 2283 Multiple Copending *Ex Parte* Reexamination Proceedings [R-5]

**37 CFR 1.565 Concurrent Office proceedings which include an ex parte reexamination proceeding.**

*****

(c) If *ex parte* reexamination is ordered while a prior *ex parte* reexamination proceeding is pending and prosecution in the prior *ex parte* reexamination proceeding has not been terminated, the *ex parte* reexamination proceedings will be consolidated and result in the issuance of a single certificate under § **1.570**. For merger of *inter partes* reexamination proceedings, see § **1.989(a)**. For merger of *ex parte* reexamination and *inter partes* reexamination proceedings, see § **1.989(b)**.

*****

---

This section discusses multiple copending reexamination requests which are filed on the same patent, where none of the requests is an *inter partes* request. If one of the multiple copending reexamination requests is an *inter partes* request, see MPEP § **2686.01**.

In order for a second or subsequent request for *ex parte* reexamination to be granted, a substantial new question of patentability must be raised by the art (patents and/or printed publications) cited in the second or subsequent request for reexamination. MPEP § **2240** provides a discussion as to whether a substantial new question of patentability is raised by the prior art cited in a second or subsequent request for reexamination filed while a reexamination proceeding is pending.

If the second or subsequent request is granted, the decision on whether or not to combine the proceedings will be made by the **\*\*>Central Reexamination Unit (CRU) <** Director where the reexamination is pending. The **\*>CRU<** Director may delegate

this to the * Special Program Examiner (SPRE). No decision on combining the reexaminations should be made until reexamination is actually ordered in the later filed request for reexamination.

## I.  PROCEEDINGS MERGED

If a second request for reexamination is filed **>prior to the issuance of a Notice of Intent to Issue a Reexamination Certificate for the first reexamination proceeding, the proceedings generally will be merged. In this situation, the second request is decided based on the original patent claims, and if reexamination is ordered, the reexamination proceedings generally would be merged.<

After the patent owner and second requester have been given an opportunity to file a statement and reply, respectively, the second reexamination proceeding >generally< will be merged with the first reexamination proceeding, and prosecution will then continue at the most advanced point possible for the first proceeding. It should be noted that if a final rejection has been issued in the first proceeding, prosecution will be ordinarily be reopened where any of the new patents or printed publications presented in the second request are applied to the merged proceeding in a new ground of rejection.

The patent owner will be provided with an opportunity to respond to any new rejection in a merged reexamination proceeding prior to the action being made final. See **MPEP § 2271**. If the reexamination proceedings are merged, a single certificate will be issued based upon the merged proceedings, **37 CFR 1.565(c)**.

## II.  WHEN PROCEEDING IS SUSPENDED

It may also be desirable in certain situations to suspend a proceeding for a short and specified period of time. For example, a suspension of a first reexamination proceeding may be issued to allow time for the patent owner's statement and the requester's reply in a second proceeding prior to merging. Further, after the second proceeding *has been ordered*, it may be desirable to suspend the second proceeding where the first proceeding is presently on appeal before a Federal court to await the court's decision prior to merging. A suspension will only be granted in extraordinary instances, because of the statutory requirements that examination proceed with "special dispatch." The express written approval of the *>CRU or Technology Center (TC)< Director must be obtained. Suspension will <u>not</u> be granted when there is an outstanding Office action.

## III.  MERGER OF REEXAMINATIONS

The following guidelines should be observed when two requests for reexamination directed to a single patent have been filed.

The second request (i.e., Request 2) should be processed as quickly as possible and assigned to the same examiner to whom the first request (i.e., Request 1) is assigned. Request 2 should be decided immediately without waiting the usual period (e.g., for submission of art). If Request 2 is denied, *ex parte* prosecution of Request 1 should continue. If Request 2 is granted, the order in the second

proceeding should be mailed immediately. The two requests should be held in storage until the patent owner's statement and any reply by the requester have been received in Request 2, or until the time for filing same expires. Then, the *>CRU< Director or the *>CRU< Director's delegate will prepare a decision *>whether to merge< the two proceedings.

*>A< decision by the *>CRU< Director *>to merge< the reexamination proceedings should include a requirement that the patent owner maintain identical claims in both files. It will further require that responses by the patent owner, and any other paper filed in the merged proceeding, must consist of a single response, addressed to both files, filed in duplicate, each bearing a signature and containing identifying data for both files, for entry in both files. The decision will point out that both files will be maintained as separate complete files. Where the claims are not the same in both files, the decision of merger will indicate at its conclusion that the patent owner is given 1 month to provide an amendment to make the claims the same in each file. Where the claims are already the same in both files, the decision will indicate at its conclusion that an Office action will be mailed in due course, and that the patent owner need not take any action at present. The decision of merger will be mailed immediately.

Where the merger decision indicates that an Office action will follow, the merged proceeding is returned to the examiner immediately after the decision to issue an Office action. Where the merger decision indicates that the patent owner is given 1 month to provide an amendment to make the claims the same in each file (identical amendments to be placed in all files), the Office of the * SPRE will retain jurisdiction over the merged reexamination proceeding to await submission of the amendment or the expiration of the time to submit the amendment. After the amendment is received and processed by the technical support staff or the time for submitting the amendment expires, the merged proceeding will be returned to the examiner to issue an Office action.

Once the merged proceeding is returned to the examiner for issuance of an Office action, the examiner should prepare an Office action at the most advanced point possible for the first proceeding. Thus, if the first proceeding is ready for a final rejection and the second proceeding does not provide any new information which would call for a new ground of rejection, the examiner should issue a final rejection for the merged proceeding using the guidelines for the prosecution stage set forth below.

If the *ex parte* prosecution stage has not yet begun in Request 1 when Request 2 is received, Request 1 should be processed to the point where it is ready for *ex parte* prosecution. Then, Request 1 is normally held until Request 2 is granted and is ready for *ex parte* action following the statement and reply. Thereafter, the two proceedings would be merged. However, if Request 2 is denied, there would be no merger and prosecution will be carried out solely on Request 1. Note that Request 2 should be determined on its own merits and should not rely on nor refer to the decision issued in Request 1.

In the event that an amendment to make the claims the same in each file is required by the merger decision (identical amendments to be placed in all files) but

Exhibit L - 3

is not timely submitted, any claim that does not contain identical text in all of the merged proceedings should be rejected under 35 U.S.C. **112**, second paragraph, as being indefinite as to the content of the claim, and thus failing to particularly point out the invention.

### IV.   THE PROSECUTION STAGE, AFTER MERGER

When prosecution is appropriate in merged proceedings, a single combined examiner's action will be prepared. Each action will contain the control number of the two proceedings on every page. A single action cover form (having both control numbers penned in at the top) will be provided by the examiner to the clerical staff. The clerical staff will copy the action cover form, and then use the PALM printer to print the appropriate data (A) on the original for the first request and (B) on the copy for the second request. Each requester will receive a copy of the action and both action cover forms, with the transmission form PTOL-465 placed on top of the package. The patent owner will get a copy of both action cover forms and the action itself.

When a "Notice Of Intent To Issue *Ex Parte* Reexamination Certificate" (NIRC) is appropriate, plural notices will be printed. Both reexamination files will then be processed. The TC >or the CRU< should prepare the file of the concurrent proceedings in the manner specified in **MPEP § 2287** before release to Office of Publications.

The above guidelines should be extended to those situations where more than two requests for reexamination are filed for a single patent.

### V.   PROCEEDINGS NOT MERGED

**>Pursuant to 35 U.S.C. **305**, "[a]ll reexamination proceedings under this section… will be conducted with special dispatch within the Office." This statutory provision is grounded on the need for certainty and finality as to the question of patentability raised by the request for reexamination. Thus, if a second request for reexamination is filed after the issuance of a Notice of Intent to Issue a Reexamination Certificate for the first reexamination proceeding, the two proceedings generally will not be merged. If the Office were to merge the two processings, the first reexamination proceeding would need to be withdrawn from its processing for ultimate publication of a reexamination certificate, thus delaying, instead of advancing, prosecution. This would run contrary to the statutory "special dispatch" requirement of 35 U.S.C. **305** and its intent. On the other hand, if the Office does not merge, the first reexamination proceeding can be concluded, and any substantial new question of patentability raised by the second reexamination request can be resolved in the second proceeding, with no delay resulting. The second request is then considered based on the claims in the patent as indicated in the issued reexamination certificate, rather than the original claims of the patent. However, the Office always retains the authority to merge because in some instances, it may be more efficient to merge the two proceedings, which would foster "special dispatch."

Even prior to the issuance of a Notice of Intent to Issue a Reexamination Certificate

for the first reexamination proceeding, there are instances where the Office does not merge an ongoing reexamination proceeding with a subsequent reexamination proceeding, which instances are addressed on a case-by-case basis. For example: If an ongoing reexamination proceeding is ready for decision by the Board of Patent Appeals and Interferences, or is on appeal to the U.S. Court of Appeals for the Federal Circuit, it would be inefficient (and contrary to the statutory mandate for special dispatch) to "pull back" the ongoing reexamination proceeding for merger with a subsequent reexamination. As another example, an ongoing reexamination proceeding might be directed to one set of claims for which a first accused infringer (with respect to the first set) has filed the ongoing request for reexamination. A later reexamination request might then be directed to a different set of claims for which a second accused infringer (with respect to the second set) has filed the request. (See MPEP § **2240** regarding reexamination of fewer than all the patent claims.) In this instance, where there are simply no claims in common, merger would serve only to delay the resolution of the first proceeding. Since reexamination was enacted as an effective alternative to litigation, the ability to decide the question of whether to merge based on the merits of a particular fact pattern must be reserved to the Office.<

For processing of the second reexamination proceeding, see MPEP § **2295**.

## VI.   FEES IN MERGED PROCEEDINGS

Where the proceedings have been merged and a paper is filed which requires payment of a fee (e.g., excess claim fee, fee for request for extension of time, petition fee, appeal fee, brief fee, oral hearing fee), only a single fee need be paid. For example, only one fee need be paid for an appeal brief even though the brief relates to merged multiple proceedings and copies must be filed for each file in the merged proceeding.

## VII.   PETITION TO MERGE MULTIPLE COPENDING REEXAMINATION PROCEEDINGS

No petition to merge multiple reexamination proceedings is necessary since the Office will generally, *sua sponte,* make a decision as to whether or not it is appropriate to merge the multiple reexamination proceedings. If any petition to merge the proceedings is filed prior to the determination ( **37 CFR 1.515**) and order to reexamine ( **37 CFR 1.525**) on the second request, it will not be considered but will be returned to the party submitting the same by the *>CRU< Director. The decision returning such a premature petition will be made of record in both reexamination files, but no copy of the petition will be retained by the Office. See **MPEP § 2267**.

While the patent owner can file a petition to merge the proceedings at any time after the order to reexamine ( **37 CFR 1.525**) on the second request, the better practice is to include any such petition with the patent owner's statement under **37 CFR 1.530**, in the event the *>CRU< Director has not acted prior to that date to merge the multiple reexamination proceedings. If the requester of any of the multiple reexamination proceedings is not the patent owner, that party may petition to merge the proceedings as a part of a reply pursuant to **37 CFR 1.535** in the event the *>CRU< Director has not acted prior to that date to merge the multiple

proceedings. A petition to merge the multiple proceedings which is filed by a party other than the patent owner or one of the requesters of the reexamination will not be considered but will be returned to that party by the *>CRU< Director as being improper under **37 CFR 1.550(g)**.

All decisions on the merits of petitions to merge multiple reexamination proceedings will be made by the *>CRU< Director (or to the *>CRU< Special Program Examiner, if the *>CRU< Director delegates it to him or her).

**browse after**



**KEY**: 🔄=online business system  💲=fees  📖=forms  📑=help  ⚖️=laws/regulations  📖=definition (glossary)

*The **Inventors Assistance Center** is available to help you on patent matters. Send questions about USPTO programs and services to the **USPTO Contact Center (UCC)**. You can suggest USPTO webpages or material you would like featured on this section by E-mail to the **webmaster@uspto.gov**. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

| .**HOME** | **SITE INDEX** | **SEARCH** | **eBUSINESS** | **HELP** | **PRIVACY POLICY** |

Last Modified: 12/05/2006 09:38:06

Go to **MPEP - Table of Contents**

# EXHIBIT M

1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                            SAN JOSE DIVISION

10   Jens Erik Sorensen,                      NO. C 08-00095 JW

11             Plaintiff,               **ORDER DENYING DEFENDANT'S
                                        MOTION TO STAY**
        v.

12
     Lexar Media, Inc.,
13
              Defendant.
14   _____/

15        Plaintiff Jens Erik Sorensen brings this action as trustee of Sorensen Research and

16   Development Trust, alleging that Defendant Lexar Media, Inc.'s "Jump Drive" product infringes

17   U.S. Patent No. 4,935,184 (the "'184 Patent"). The '184 Patent discloses, *inter alia*, a method for

18   forming injection molded plastic. Before the Court is Defendant's Motion to Stay. (hereafter,

19   "Motion," Docket Item No. 12.) The Court found the motion appropriate for submission without

20   oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court DENIES

21   Defendant's Motion to Stay.

22        Defendant moves to stay pending the outcome of a reexamination of the '184 Patent on the

23   grounds that a stay will conserve judicial resources and avoid prejudice to Defendant. (Motion at 3.)

24   Plaintiff contends that a stay will result in undue delay in resolving the issues in this case.

25   (Plaintiff's Opposition to Defendant's Motion to Stay at 5, Docket Item No. 18.)

26        A court has broad discretion to stay an action before it, pending resolution of other

27   proceedings. Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979).

28   This authority includes the discretion to stay an action pending the outcome of reexamination

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    proceedings at the United States Patent and Trademark Office ("PTO").  Ethicon, Inc. v. Quigg, 849

2    F.2d 1422, 1426-27 (Fed. Cir. 1988).  However, "[t]he court is not required to stay judicial

3    resolution in view of the reexaminations."  Viskase Corp. v. American Nat. Can Co., 261 F.3d 1316,

4    1328 (Fed. Cir. 2001).

5         In this case, Defendant has not made a sufficient showing to warrant a stay.  While the '184

6    Patent is in reexamination, the examiner at the PTO has not as of yet cancelled any claims or issued

7    a final office action.  (Declaration of Joseph H. Lee in Support of Defendant's Motion to Stay, Ex.

8    C, Docket Item No. 13.)  A reexamination may take up to several years to run its course.  (Id., Ex. F

9    [PTO *Ex Parte* Reexamination Filing Data, December 31, 2007] at 2.)  As of the 2007, the PTO

10   determined that the average pendency of an *ex parte* reexamination is two years.  (Id.)  Appeals

11   create potential for the process to take even longer.  In that time, the Court could make substantial

12   progress in interpreting the patent at issue and otherwise moving the action toward resolution.

13        Accordingly, the Court DENIES Defendant's Motion to Stay at this time.  The parties shall

14   attend the case management conference currently set for **June 2, 2008 at 10 a.m.** to discuss a

15   schedule for this case.   Pursuant to the Patent Local Rules, the parties shall file a Joint Case

16   Management Statement on or before **May 23, 2008.**

17        In light of this Order, the hearing on the motion presently scheduled for May 5, 2008 is

18   VACATED.

19

20   Dated:  April 30, 2008                                 _____

21                                                          JAMES WARE
                                                            United States District Judge

22

23

24

25

26

27

28                                      2

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

James Michael Kaler michael@kalerlaw.com
Jared  Bobrow jared.bobrow@weil.com
Melody Ann Kramer mak@kramerlawip.com

**Dated:  April 30, 2008**

**Richard W. Wieking, Clerk**

**By:   /s/ JW Chambers**
      **Elizabeth Garcia**
      **Courtroom Deputy**

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28