NANCY J. GEENEN, CA BAR NO. 135968, NGEENEN@FOLEY.COM
KIMBERLY K. DODD, CA BAR NO. 235109, KDODD@FOLEY.COM
**FOLEY & LARDNER LLP**
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3404
TELEPHONE:    415.434-4484
FACSIMILE:    415.434-4507

ROBERT L. BINDER (ADMITTED *PRO HAC VICE*), RBINDER@FOLEY.COM
**FOLEY & LARDNER LLP**
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202
TELEPHONE (414) 271-2400
FACSIMILE (414) 297-4900

PAVAN K. AGARWAL (ADMITTED *PRO HAC VICE*), PAGARWAL@FOLEY.COM
**FOLEY & LARDNER LLP**
3000 K STREET, N.W., SUITE 500
WASHINGTON, D.C. 20007-5143
TELEPHONE: (202) 672-5300
FACSIMILE: (202) 672-5399

Attorneys for Defendant/Counterclaim Plaintiff **Phillips Plastics Corporation**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST<br><br>            Plaintiff,<br><br>   vs.<br><br>PHILLIPS PLASTICS CORPORATION, a Wisconsin Corporation; and DOES 1 THROUGH 100,<br><br>           Defendants. | Case No: 08-CV-03094-MHP<br><br>**PHILLIPS PLASTICS CORPORATION'S REPLY MEMORANDUM ON ALTERNATIVE MOTIONS TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR TO STAY PENDING REEXAMINATION**<br><br>DATE:      SEPTEMBER 8, 2008<br>TIME:      2:00 P.M. |
| PHILLIPS PLASTICS CORPORATION,<br><br>           Counterclaim Plaintiff,<br><br>   vs.<br><br>JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>           Counterclaim Defendant. | |

## I.    ON THE MOTION TO TRANSFER, SORENSEN OFFERS LITTLE REBUTTAL TO THE UNDISPUTED FACTS AND CONTROLLING CASE LAW SHOWING THAT TRANSFER SERVES THE INTERESTS OF JUSTICE IN THIS CASE.

Sorensen has no answer to the numerous cases in this district holding that the pendency of another action between the same parties on the same subject in the transferee district – especially in the case of patents – provides a compelling case for transfer to achieve judicial efficiency and avoid inconsistent results.  *See generally* Phillips init. br. at 6-7.  "Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicative litigation and inconsistent results." *Wiley v. Trendwest Resorts, Inc.*, 2005 WL 1910934, at *3 (N.D. Cal., Aug. 10, 2005).

Even the cases cited by Sorensen so hold.  *See Sun Pharm. Indus, Ltd. v. Eli Lilly & Co.*, No. 07-CV-15087, 2008 WL 1902111, at *5 (E.D. Mich., Apr. 30, 2008) (transfer appropriate for joint claim construction given "the importance of uniform claim construction in patent cases"); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941) ("It is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals  .  .  .  .").

The efficiency argument is even more powerful in this case because the same judge handling the first Sorensen/Phillips case in the transferee district is also handling dozens of other cases involving the '184 patent which will be subject to a joint claim construction.  Indeed, Sorensen himself has moved to consolidate these cases on the grounds of judicial efficiency.  Ex. L to Binder Dec., No. 267.

Sorensen also does not deny that there are minimal connections between either the claims or the parties and the Northern District.  Sorensen has no answer to the numerous cases flatly holding that his choice of the Northern District is entitled to no special deference under these circumstances. *See generally* Phillips init. br. at 7-9.  As this Court

1   observed in *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C-03-3711

2   MHP, 2003 WL 22387598, at *3 (N.D. Cal., Oct. 14, 2003), plaintiff's choice of forum

3   commands only "minimal consideration" if plaintiff does not "reside in the district where

4   he brought the suit, the operative facts have not occurred there and the forum has no

5   particular interest in the parties or subject matter."  In *Williams Advanced Materials, Inc.*

6   *v. Target Technology Co.,* No. 03-CV-276-A, 2007 WL 2245886 (W.D.N.Y., Aug. 1,

7   2007), a case relied on by Sorensen, the Court found little reason to give deference to

8   plaintiff's (like Sorensen's) "newly-acquired desire to litigate in a foreign forum" after

9   previously suing in its home district in related cases. [1]

10       Absent any meaningful rebuttal from Sorensen, the undisputed facts concerning

11   the efficiencies of joinder in the Southern District and the controlling Northern District

12   authorities should be dispositive of the transfer motion.

13       Sorensen argues Phillips has not shown that the balance of convenience tips in

14   favor of the Southern District over the Northern.  However, Phillips has made clear that

15   the convenience of witnesses and parties is not the basis for this transfer motion.  Instead,

16   it is premised on the "interests of justice" factors, discussed above, which count more

17   heavily than the convenience factors in the transfer calculus.  As this Court has observed,

18   "the question of which forum will better serve the interest of justice is of predominant

19   importance on the question of transfer, factors involving the convenience of parties and

20   witnesses are in fact subordinate."  *Wireless Consumers, supra, at *4.*  The interest of

21   justice factor "is the most important factor a court must consider," and may be decisive

22   "in a transfer motion even when all the other factors point the other way."  *Wiley, supra*

23   *at *3*, quoting *London & Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co.*, No. C-896-01512

24   CW, 1996 WL 479013, at *3 (N.D. Cal. Aug. 14, 1996).  *See also Elecs. for Imaging,*

---

[1]      Many of the other cases cited by Sorensen make the same point.  *Sun Pharm. Indus. Ltd.*, 2008 WL 1902111, at *3; *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 889 (N.D. Ohio 1999); *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001).

PHILLIPS' REPLY MEMORANDUM ON ALTERNATIVE MOTIONS TO TRANSFER
CASE NO. 08-03094-MHP

MILW_7570031.3

*Inc. v. Tesseron Ltd.*, No. C-07-05534-CRB, 2008 WL 276567, at *1 (N.D. Cal., Jan. 29, 2008) ("the interest of justice is the most important consideration").

*Alere Medical, Inc. v. Health Hero Network, Inc.*, No. C-07-05054 CRB, 2007 WL 4351019 (N.D. Cal., Dec. 12, 2007), is a case in point. The court transferred a California patent case to Illinois, where another case was pending involving "common technology and products, common parties, and overlapping issues of infringement and validity." *Id.* at *1. Even though many of the witnesses resided in the transferor district, the Court observed that the "interest of justice is the most important consideration," *id.*, and "may be determinative to a particular transfer motion even if the convenience of the parties and witnesses might call for a different result." *Id.* (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559,1565 (Fed. Cir. 1997)). *Accord, Elecs. for Imaging, supra,* at *1. *A fortiori*, in this case where relative convenience is a neutral factor, the interests of justice factors are paramount.

Sorensen also claims that Phillips' motion is an effort at "forum shopping" and "judge shopping" because Phillips prefers to be before Judge Moskowitz in the Southern District, who has ruled for it on the previous stay motions. That is, Sorensen apparently argues the motion should be denied, regardless of its merits, because it is tainted by self-interest. Remarkably, Sorensen cannot bring himself to admit -- although he does not seriously deny -- that he started this action in the Northern District to avoid Judge Moskowitz and that he tried to get the case re-assigned to Judge Ware because he is the only judge who has ever *denied* a '184 stay request.

In any case, Sorensen's discussion of the forum shopping cases misses the point about the role of a party's motivation in choosing where to start an action or where to request transfer of an action. Obviously, in an advocacy system, all legal positions asserted by the parties are based on obtaining an advantage. The fact that both parties are motivated by self-interest is considered an advantage of the advocacy system because it encourages vigorous investigation of the issues. This does not prevent the Court from analyzing the strength of their arguments on the merits and rendering an objective

3

decision.

However, the cases involving transfer of venue recognize two areas where motivation is considered.  First, where the initial selection of venue is not based on recognized factors such as the residence of the plaintiff or the convenience of parties and witnesses, the "special deference" given a plaintiff's choice of forum drops out of the transfer equation because the only motivation for the venue selection must be forum shopping.  As this Court stated in *Wireless Consumers Alliance, supra* at *5, "the transfer statute has a built-in mechanism to remedy the evils of forum shopping by giving little or no weight to the plaintiff's choice of forum away from home and without ties to the controversy."  The Court went on to say that specific "evidence of plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily in the context of this prong . . . ." *Id.*  Significantly, Sorensen has provided no credible explanation for filing in the Northern District other than to avoid a "particular precedent" (the granting of a motion to stay in the other Sorensen/Phillips '184 case) "by a particular judge" (Judge Moskowitz, to whom this case would be assigned under local rules in the Southern District).

Thus, Sorensen's forum shopping motive – or, at least, the absence of the legitimate reasons for selection of the Northern District – is relevant to this motion.

Second, as cases on *defendants'* forum shopping cited by Sorensen hold, if a defendant's motion to transfer based on convenience is illogical or very weak the Court may infer that the only purpose to be served by transfer is to obtain a tactically more desirable forum.  In *Williams Advanced Materials, supra*, the Court found the alleged convenience arguments so spurious as to amount to a "pretense."  The Court cited the general rule that "forum shopping may be inferred where the reasons for choice are wholly frivolous."  *Id.  See also Greater Yellowstone Coalition, supra*, 180 F. Supp. 2d at 130 ("[v]iewing the totality of circumstances, the defendants' request to transfer this case

MILW_7570031.3

to a specific judge is suspect.").[2]

The forum shopping concern described in these cases does *not* apply to Phillips' motion to transfer. Phillips' motion is predicated on the interests of justice factors. Sorensen has not asserted – nor could it – that the factual or legal basis for Phillips' motion is contrived or meritless as was the convenience justification in *Williams Advanced Materials*. To the contrary, there is overwhelming support in the case law for transfer to a forum where another related case (let alone dozens) is pending. Thus, Phillips' subjective motivation is not at issue.[3]

Sorensen also argues that Phillips could have moved to transfer this case to the Western District of Wisconsin based on convenience to Phillips and its witnesses, who are based in Wisconsin. It is true that Wisconsin is a superior venue to the Northern District in terms of convenience if only those two venues are compared. However, when the '184 cases in the Southern District are factored into the analysis, transfer of this case to Wisconsin actually would lead to a highly "inconvenient" result for parties and witnesses. Parties would have to litigate the same issues in two venues thousands of miles apart and many witnesses would have to testify twice, once in Wisconsin and once in California. It is much more preferable, even to a Wisconsin company, to have just one proceeding in California. That is precisely why the courts hold that the convenience and efficiency of avoiding multiple trials – the interests of justice factors – are the most important factors in the transfer analysis, as discussed above.

---

[2]    The other cases cited by Sorensen concerning "forum shopping" and "judge shopping" seem to have been selected based solely on their containing these key words rather than having any applicability to this case. *E.g.*, there are several cases where plaintiff seeks to circumvent the random selection process in its local court.

[3]    Even if it were, Phillips' obvious self-interest in avoiding multiple trials is a legitimate purpose under the "interests of justice" factors.

PHILLIPS' REPLY MEMORANDUM ON ALTERNATIVE MOTIONS TO TRANSFER
CASE NO. 08-03094-MHP

## II.    SORENSEN'S OPPOSITION TO THE STAY MOTION IGNORES CONTROLLING CASE LAW AND RELIES ON EXAGGERATED STATISTICS.

As in the case of the transfer motion, Sorensen's strategy in responding to the stay motion is to simply ignore the controlling facts and law.  Specifically, Sorensen has no answer to the cases in this district holding that stay motions should be "liberally granted" and that the reexamination process should be "deferred to by the courts," *Applera Corp.-Applied Biosystems Group v. Illuminia, Inc.*, 282 F. Supp. 2d 1120, 1129 (N.D. Cal. 2003), especially where, as here, no discovery or proceedings have been held and the plaintiff has a fully adequate remedy at law.  *See* Phillips init. br. at 9-17.

Sorensen's only prejudice argument does not arise from the facts of this case but is a general objection to the patent reexamination system.  Sorensen asserts (at 6) that the average reexamination now takes *five years*, not the two years stated in Patent Office statistics, and that the average reexamination takes 7.7 years if there is an appeal to the Federal Circuit.

However, Sorensen has misstated the data from the Wegner/Crouch materials to exaggerate the delay.  The source of the five-year delay assertion is a blog (Ex. I to Kramer Dec.) stating that Professor Wegner so opined.  However, the materials from Professor Wegner himself show otherwise.  In Ex. J-4, Wegner summarizes research published by Professor Dennis Crouch analyzing the "2000-plus reexamination certificates that have been published in the Official Gazette since January 2000."  He states:

> **TIMING:**  The reexamination certificates in my sample had an average pendency of 33.5 months (median 28.5 months).  The PTO's reported average and median are 24.0 and 18.6 months respectively.

Ex. J-4 to Kramer Aff.

Thus, instead of the *three year* longer duration (five years versus two) alleged by

6

Sorensen, Wegner/Crouch -- Sorensen's source -- reveals only a *nine and one half month* longer duration (33.5 versus 24.0 months).

Since thirteen months have already elapsed since the '184 reexamination was filed, Wegner/Crouch suggests that only 15.5 months remain until the median likely termination date. Sorensen has made no effort to show that he will incur prejudice within that time frame.

Wegner/Crouch also shows that reexaminations resulting in confirmation of the patent's validity take less time, about twenty-four months. Ex. J-4, Kramer Dec. Of course, it is only in cases where the Patent Office takes no major action that plaintiff might have a grievance about the reexamination petition delaying the case for no good reason. The Patent Office properly expedites these cases.

The 7.7 year duration figure for reexaminations with appeals also needs to be analyzed. It is an average of the fourteen appeals for which there are Federal Circuit opinions during the period studied, i.e., 2000 to present. These are "all" the reexaminations that "reached the Federal Circuit for a merits review." Ex. J-3, Kramer Dec. These cases represent less than one percent of the "2,000-plus" reexaminations reviewed by Crouch in the same time period. Ex. J-4. As such, they represent an unlikely worst case scenario, not the likely duration of the reexamination in this case.[4]

Given the strong congressional intent to shift prior art analysis from the courts to the patent office through the reexamination procedure, *see* Phillips' init. br. at 9-12, the courts should not by-pass the reexamination system absent a much more compelling case than presented by Sorensen.

Sorensen argues (at 17) that PTO acceptance of the reexamination petition does "not establish any likelihood of patent invalidity." However, his own cited source (Ex.

---

[4] Sorensen's counsel performed her own analysis and claims there are 90 cases lasting more than seven years. The timeframe for her analysis is not stated but at most these cases would represent 4% of all cases in the Wegner/Crouch study. Also, given the three year average duration, for every one of these cases there must be multiple cases where the duration was less than the average.

E-2 to Kramer Aff., items 9(b) and 9(c)) states that once a reexamination petition is granted, as it has been in this case, the Patent Office rejects claims in whole or in part *75%* of the time. Thus, an invalidity determination is statistically "likely" in the average case. Moreover, in this particular case, Sorensen does not dispute that the PTO has identified 12 separate pieces of prior art raising "substantial new questions of patentability" plus various combinations, giving the PTO an unusual number of bases on which to invalidate claims.

Sorensen also discounts the significance of the Patent Office's granting of reexamination because "little is required beyond properly filling out the paperwork and citing to at least one piece of prior art that was not referenced in the file wrapper." The quotation included in Sorensen's brief (at 5) belies this casual assertion. A finding of "substantial new question of patentability" requires that the patent office determine "that a reasonable examiner would consider the teaching to be important in whether or not the claim is patentable." MPEP § 2242, Ex. G to Kramer Dec. That is, it means that the "new" prior art should have been presented to the Patent Office in the first place. Sorensen failed to present a dozen such "important" pieces of prior art to the examiner in the original process.

Sorensen also argues (at 16) that the stay would not simplify the issues without citing authorities or discussing the issues in depth. He simply ignores the contrary findings by Judge Moscowitz with respect to the '184 reexamination, *Sorensen v. Black & Decker*, Ex. G. to Binder Dec. at 8-9, and the general statements of numerous courts in this district concerning the value of a reexamination even where the patent is validated. *See* Phillips' init. br. at 11, 15-17.

Sorensen contends that Phillips has somehow engaged in improper tactics by waiting "for over a decade" to challenge the patent through reexamination. Yet, since *Sorensen* waited for over twelve years to sue Phillips on the '184 patent after first threatening to do so in 1994 (and waited fourteen years to bring this case), it is hard to understand why Phillips should have taken the patent seriously and requested

8

1    reexamination.

2         Sorensen also claims that the initial reexamination request in the *Black & Decker*

3    case was made under circumstances suggesting dilatory motives.  This claim is based on

4    the actions of Black & Decker, not Phillips.  The reexamination was brought not long

5    after Phillips was joined in that case.  Even if Black & Decker's longer delay was

6    somehow relevant to this motion, Judge Moscowitz expressly rejected the claim of delay-

7    motivated filing in his *Black & Decker* opinion.  Ex. G to Binder Dec., at 6-7.

8         Sorensen speculates that other reexaminations of the '184 patent might be filed for

9    delay purposes in the future.  However, Sorensen has two layers of protection against any

10   abuse.  The Patent Office will grant the petition only upon concluding that the new

11   alleged prior art raises "substantial new questions of patentability."  Even if it grants the

12   request, a new stay motion would have to be brought.  If there is any evidence of

13   impropriety, the Court is not obliged to grant the motion.

14                                <u>**CONCLUSION**</u>

15        For the foregoing reasons, Defendant and Counterclaim Plaintiff Phillips Plastics

16   Corporation respectfully moves the Court to transfer this case to the United States

17   District Court for the Southern District of California or, alternatively, to stay this case

18   pending the conclusion of the Patent Office's reexamination of the '184 patent.

19

20   DATED:   AUGUST 25, 2008                    FOLEY & LARDNER LLP

21

22                                    BY:    _____/s/_____

23                                           ROBERT L. BINDER
                                             Attorneys for Defendant/Counterclaim
24                                           Plaintiff Phillips Plastics Corporation

25

26

27

28

                                        9

MILW_7570031.3